# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| NextPoint Financial Inc., *et al.*, | Case No. 23-10983 (TMH) |
| Debtors in a foreign proceeding.[1] | (Joint Administration Requested) |

### *EX PARTE* MOTION FOR PROVISIONAL RELIEF IN THE FORM OF A TEMPORARY RESTRAINING ORDER AND, AFTER NOTICE AND A HEARING, AN ORDER FOR PROVISIONAL RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE

NextPoint Financial Inc., in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") for the above-captioned debtors (collectively, the "**Debtors**"), which are subject of the proceedings (the "**Canadian Proceedings**") currently pending before the Supreme Court of British Columbia (the "**Canadian Court**"), initiated under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"), respectfully submits this motion (the "**Motion**"), under Rule 65 of the Federal Rules of Civil Procedure (the "**Federal Rules**") made applicable to these proceedings by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for relief available under sections 105(a), 1507,1517, 1519, and 1521 of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of two orders

---

[1] The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are: NextPoint Financial Inc. (6134); LT Holdco, LLC (8090); LT Intermediate Holdco, LLC (0811); SiempreTax+ LLC (6145); JTH Tax LLC (8391); Liberty Tax Holding Corporation (N/A); Liberty Tax Service, Inc. (N/A); JTH Financial, LLC (1522); JTH Properties 1632, LLC (0248); Liberty Credit Repair, LLC (5427); Wefile, LLC (6778); JTH Tax Office Properties, LLC (0248); LTS Software LLC (6450), JTH Court Plaza, LLC (2116); 360 Accounting Solutions LLC (8312); LTS Properties, LLC (9088); NPI Holdco LLC (1936); CTAX Acquisition LLC (6975); Community Tax Puerto Rico LLC (4349); Community Tax LLC (8001); NPLM Holdco LLC (8132); MMS Servicing LLC (7430); LoanMe, LLC (5663); LoanMe Funding, LLC (2305); LM Retention Holdings, LLC (N/A); LoanMe Trust-Prime 2018-1 (0257); LoanMe Trust SBL 2019-1 (N/A); LoanMe Stores, LLC (3810); InsightsLogic, LLC (0818); and LM 2020 CM I SPE, LLC (N/A). The location of the Debtors' headquarters is 500 Grapevine Hwy, Suite 402, Hurst, TX 76054, and the Debtors' mailing address is 1133 Melville St., Suite 2700, Vancouver, BC V6E 4E5.

to maintain the status quo pending this Court's hearing on recognition of the Canadian Proceedings:

a) on an *ex parte* basis, a temporary restraining order in the form attached as **Exhibit A** (the "**TRO**") staying execution against any assets of the Debtors in the United States and prohibiting all persons or entities from commencing or continuing any litigation or any other proceeding, including, without limitation, arbitrations, appeals, mediation or any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever, or taking any other action against or involving the Foreign Representative, the Debtors, or any of the assets of the Debtors located within the territorial jurisdiction of the United States; and

b) after notice and a hearing, an order in the form attached as **Exhibit B** (the "**Provisional Relief Order**", collectively with the TRO, the "**Provisional Relief**") for relief on a provisional basis pending this Court's entry of an order recognizing the Canadian Proceedings.

As set forth below, the Provisional Relief in the form and manner requested in this Motion has been granted in chapter 15 cases in this district. *See, e.g., NewSat Limited*, No. 15-10810 (Bankr. D. Del. Apr. 16, 2015), [D.I. 21 and 80] (entering *ex parte* temporary restraining order on the date of the chapter 15 filing and then, after notice and contested hearing, entering preliminary injunction pending recognition hearing); *In re Electro Sonic Inc.*, No. 14-10240 (Bankr. D. Del. Feb. 11, 2014), [D.I. 18] (*ex parte* provisional relief ordered to stay actions against U.S. assets of Canadian debtor from chapter 15 case commencement through recognition).

ACTIVE\900835605.14

## PRELIMINARY STATEMENT

1.  It is essential to the Debtors' business and sale process that the Debtors have the immediate benefit of a stay against creditor actions to ensure that there is no disruption to the Canadian Proceedings and the Debtors' restructuring efforts. Accordingly, by this motion the Debtors seek entry of an immediate TRO until the provisional relief hearing can be held. Thereafter, the Debtors anticipate having the standard "first-day" type hearing for full provisional relief at the Court's earliest availability so that the formal provisional order can be entered pending a final hearing on recognition of the Canadian Proceedings.

2.  In support of the requested relief, the Foreign Representative respectfully refers the Court to and incorporates the following into this Motion by reference: the (a) *Verified Petition for (I) Recognition of Foreign Main Proceedings, or, in the Alternative, Foreign Non-Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "**Verified Petition**")[2]; the (b) *Declaration of Peter Kravitz in Support of the Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, or, in the Alternative, Foreign Non-Main Proceedings, (II) Recognition of Foreign Representative, (III) Debtors' Motion for Certain Provisional Relief* (the "**Kravitz Declaration**"); the (c) *Declaration of Colin Brousson as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* (the "**Brousson Declaration**"); and the (d) *Declaration of R. Craig Martin in Support of the Ex Parte Motion for Provisional Relief in the Form of a Temporary Restraining Order Under Section 1519 of the Bankruptcy Code and, After Notice and a Hearing,*

---

[2] Capitalized terms used in this section but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition or the Initial Order, as applicable.

ACTIVE\900835605.14

*an Order for Provisional Relief Under Section 1519 of the Bankruptcy Code* (the "**Martin Declaration**"). The Foreign Representative further represents to the Court as follows:

3. Earlier today (the "**Petition Date**"), the Foreign Representative filed the Verified Petition, seeking, among other things, recognition by this Court of the Canadian Proceedings as "foreign main proceedings" or, in the alternative, "foreign non-main proceedings" and certain related relief (the "**Recognition Order**"). Entry of an order granting the relief requested in this Motion is a condition precedent to the Restructuring Support Agreement entered into by and between the Debtors and their lenders (the "**RSA**") and to the Debtors' ability to obtain essential financing pending the Recognition Order. Entry of the Recognition Order is a condition precedent to the Debtors' obtaining the further financing available under the DIP Term Sheet (as defined below). *See* DIP Term Sheet ¶¶ 8(c) and 24. The Provisional Relief requested in this Motion and the entry of the Recognition Order will provide essential protection of the Debtors and their property located within the territorial jurisdiction of the United States, grant certain charges over the Debtors' Property (defined in the Initial Order[3]), and enable them to maintain their operations and work constructively with their stakeholders regarding the proposed restructuring.

4. The Debtors provide financial and tax services for small businesses and consumers, primarily through a franchise model. In the 2021 tax season, the Debtors' services accounted for approximately 1.25 million individual tax returns in the United States. Due to the Debtors' business in the United States, the Debtors require the Provisional Relief to preserve the value of their operations and businesses while they implement a restructuring of those operations and businesses in the Canadian Proceedings.

---

[3] Defined below in this Motion.

ACTIVE\900835605.14

5.     The RSA requires the (a) wind down of the LoanMe (defined below) operations; (b) commencement of the Canadian Proceedings; (c) commencement of these chapter 15 cases, seeking a temporary restraining order and recognition of these Canadian Proceedings as foreign proceedings; and (d) that the Canadian Court supervise a sales process of the Debtors' assets. *See* RSA ¶ 4(a) to (d).

6.     To finance the Debtors during the pendency of the Canadian Proceedings, the Canadian Court has entered an "Initial Order" authorizing the Debtors to obtain a $25,000,000 postpetition credit facility (the "**DIP Facility** and the loans made available thereunder, the "**DIP Loans**"). The Debtors made a good-faith business decision to enter into a DIP Term Sheet (the "**DIP Term Sheet**"), documenting the terms of the DIP Facility from BP Commercial Funding Trust, Series SPL-X and Drake Enterprises Limited (the "**DIP Lenders**") after arm's-length negotiations. The DIP Term Sheet is conditioned upon, among other things, the granting of a priority charge over the Property (as defined in the Initial Order) in favor of the DIP Lenders to secure the amounts borrowed under the DIP Facility (the "**DIP Lenders' Charge**"). *See* Initial Order ¶ 46. The Initial Order is attached to the Provisional Relief Order as **<u>Exhibit 1</u>**. The DIP Facility was approved, on an interim basis, by the Canadian Court, and the Foreign Representative seeks recognition and enforcement of the approvals granted under the Initial Order, and certain additional protections for the DIP Lenders, pursuant to section 364(e) of the Bankruptcy Code.

7.     Under the DIP Term Sheet and the Initial Order, the Debtors may draw the DIP Loans in multiple advances (each an "**Advance**"), with the timing and amount of each Advance determined by the funding needs of the Debtors and agreed with the DIP Lenders. The DIP Lenders' agreement to make the DIP Loans available to the Debtors is conditioned on the (a)

issuance of an Initial Order; (b) the recognition of the Canadian Proceedings under the chapter 15 cases including the recognition of the DIP Facility, sale and investment process, stalking horse transaction, and (c) approval of the DIP Lenders' Charge. *See* DIP Term Sheet ¶ ¶ 8(c) and 24(g).

8.     This Motion also seeks interim application in the territorial jurisdiction of the United States of the following charges against the Debtors' assets in priority to other claims in the Canadian Proceedings (e.g., the equivalent of administrative expenses in a chapter 11 case) granted in the Initial Order during the period between the filing of these cases and final recognition: (a) a charge in favor of the Monitor, counsel to the Monitor, counsel to the Debtors and Foreign Representative (the "**Administration Charge**"); (b) a charge in favor of the directors and officers of the Debtors (the "**Directors' Charge**"); and (c) a charge in favor of the Debtors' Chief Restructuring Officer (the "**CRO Charge**" collectively with the Administration Charge, DIP Lenders' Charge and the Directors' Charge, the "**Charges**"). The Charges are essential to protect the interests of the Debtors as these provide critical parties in the Canadian Proceedings and these chapter 15 cases with a right of payment in order to continue the reorganization of the Debtors without disruptions. *See* Initial Order ¶ ¶ 20, 31 and 41.

9.     The Initial Order stays the continuation or commencement of actions and proceedings against the Debtors and their directors and officers, including any actions or proceedings that may be brought in these chapter 15 cases, to ensure that dissident creditors or stakeholders cannot bypass the Canadian Proceedings by commencing litigation or taking other actions outside of Canada to obtain a greater recovery than other, similarly situated creditors. Initial Order, ¶¶ 21-25. As further explained below, the Debtors' directors and officers are integral to their restructuring efforts, have rights of indemnification against the Debtors, and

6

benefit from the Directors' Charge, such that any judgments obtained against the directors and officers would be a de facto judgment against the Debtors.

10. Without Provisional Relief, during the gap period between the Petition Date and approval of the Recognition Order, parties in the United States might commence proceedings against the Debtors and disrupt the restructuring efforts of the Debtors.

11. The Debtors have counterparties and creditors in the United States based on their franchise model. Without the Provisional Relief, the Debtors run the risk that these counterparties and creditors might not perform their obligations or may seek to exercise remedies prejudicial to the creditors.

12. The Canadian Proceedings enable the Debtors to continue to operate their businesses in the ordinary course. The Provisional Relief will provide the Debtors with sufficient ancillary relief that will further the purpose of the Canadian Proceedings and provide significant assistance to the Canadian Court.

13. The Provisional Relief will also, among other things, avoid creditors within the territorial jurisdiction of the United States from "racing to the courthouse," to the detriment of the Debtors and their creditors. The Provisional Relief provides the Debtors with the necessary breathing room and stability to effectuate the proposed Canadian restructuring during the gap period between the commencement of these cases and the hearing on the recognition.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over these cases under sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware (Sleet, C.J.), dated February 29, 2012.

15.     The Foreign Representative has properly commenced each case under sections 1504 and 1515 of the Bankruptcy Code.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

16.     Venue for these cases is proper in this Court under section 1410 of title 28 of the United States Code because the Debtors have their principal assets in the United States located in Delaware.  The Debtors have property in Delaware via their indirect ownership in the equity of Delaware entities, and each debtor has an interest in a retainer on deposit with the Delaware office of DLA Piper LLP (US) in which the Debtors have a continuing ownership interest.  These funds are held in a Wells Fargo bank account in accordance with Delaware Rule of Professional Responsibility 1.5.  (*See* Kravitz Decl. ¶ 146.)

17.     As required by rule 7008 of the Bankruptcy Rules and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Foreign Representative consents to the entry of final orders or judgments by the Court if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

18.     The bases for the relief requested in this Motion are sections 105(a), 362, 364, 1507, 1517, 1519, and 1521 of the Bankruptcy Code and Local Rule 9013-1(m).

## BACKGROUND

I.      **Effect of Canadian Proceedings and Chapter 15.**

19.     The Initial Order granted under the Canadian Proceedings is not automatically enforceable in the United States.  Chapter 15 of the Bankruptcy Code promotes cooperation between this Court and the Canadian Court to preserve and protect the interests of the Debtors.  Upon recognition of the Canadian Proceedings by way of a Recognition Order from the Court,

8

the Debtors' interests in the United States will be protected and they will be authorized to seek additional relief and assistance form this Court in furtherance of implementing the Canadian Proceedings.

20.     Provisional relief is needed here to protect the Debtors' assets and the interests of all stakeholders. *See* 11 U.S.C. § 1519(a). Although a "petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time," there is necessarily a gap between the time the petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized. 11 U.S.C. § 1517(c). Provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a).

21.     Without the Provisional Relief in place, the commencement of the Canadian Proceedings and chapter 15 cases could have severe adverse consequences to the Debtors and any property or interests of the Debtors located within the territorial jurisdiction of the United States. As noted in the Kravitz Declaration, the Debtors hold a number of business interests in the United States, including:

   a.     the Liberty Tax group of companies, comprised of LT Holdco, LLC, LT Intermediate Holdco, LLC, JTH Tax LLC, JTH Financial, LLC, JTH Properties 1632 LLC, JTH Tax Office Properties, LLC, Wefile LLC, Liberty Credit Repair, LLC, Liberty Tax Holding Corporation (a Canadian entity), Liberty Tax Service Inc. (a Canadian entity), LTS Software LLC, JTH Court Plaza, LLC, 360 Accounting Solutions LLC, LTS Properties, LLC, and Siempre Tax+ LLC (collectively, "**Liberty Tax**"), unless otherwise stated, incorporated variously under the laws of Delaware and Virginia.

   b.     the Community Tax group of companies, comprised of CTAX Acquisition LLC, Community Tax Puerto Rico LLC, and Community Tax LLC (collectively, "**Community Tax**"), and incorporated variously under the laws of Delaware and Illinois; and

   c.     the LoanMe group of companies, comprised of NPLM Holdco LLC, LoanMe, LLC, MMS Servicing LLC, LoanMe Funding, LLC, LM

Retention Holdings, LLC, LoanMe Stores, LLC, LoanMe Trust Prime 2018-1, Loanme Trust SBL 2019-1, InsightsLogic, LLC, and LM 2020 CM I SPE, LLC (collectively, "**LoanMe**"), incorporated under the laws of Delaware.

22. The Debtors are functionally integrated and consolidated financially. The Debtors:

    a.    have employees that simultaneously maintain responsibilities at various entities;

    b.    have shared services across the subsidiaries; and

    c.    conducts regular intercompany cash transfers.

23. The Debtors provide financial and tax services for small businesses and consumers in the United States with three primary lines of business: (1) a tax preparation and settlement business, operated through Liberty Tax; (2) a tax debt resolution service, operated through Community Tax; and (3) a lending and loan marketing through LoanMe. *See* Kravitz Declaration ¶ 7.

24. As of July 14, 2023, the Debtors owed approximately $284 million to creditors, including approximately:

    a.    $210 million owed to BP Commercial Funding Trust Series SPL-X;

    b.    $45 million owed to Drake Enterprises Limited; and

    c.    $15 million owed to Frontier Capital Group.

25. The Debtors have negotiated with their secured creditors regarding various possible restructuring alternatives to effectuate a value-maximizing restructuring transaction, as documented in the RSA, and create a sustainable capital structure to position the Debtors for long-term success. However, the Debtors have both secured and unsecured creditors located within and subject to the jurisdiction of the United States that are not party to the RSA and could initiate enforcement action against the Debtors in the United States notwithstanding the stay imposed on them by the Initial Order. Consequently, without the protections granted under the

Provisional Relief, such creditors would be able to commence proceedings against the Debtors. In addition to any secured creditors, the Debtors will need to contend with each of their unsecured creditors. The Debtors may find themselves in a situation defending numerous creditor actions in various states or addressing attempts by counterparties to terminate contracts or otherwise assert leverage available in the absence of the Provisional Relief, which will be costly and disruptive to their reorganization efforts in Canada.

26. As discussed above, the Debtors have entered into a DIP Term Sheet in order to facilitate the efficient prosecution of Canadian Proceedings. Entry of the Provisional Relief and the Recognition Order are conditions precedent to the Debtors' access to the essential financing provided through the DIP Facility. *See* DIP Term Sheet ¶¶ 8(c) and 24(g).

II. **The Canadian Proceedings' Stay Period Provisions.**

27. On July 25, 2023, each of the Debtors commenced the Canadian Proceedings under the CCAA with the goal of effectuating the restructuring described in the RSA, all while continuing ordinary course operations. On July 25, 2023, the Canadian Court granted the initial order (the "**Initial Order**").

28. The Initial Order provides "Stay Period" provisions. Paragraphs 21 through 25 of the Initial Order provide as follows:

21. Until and including [August 3, 2023], or such later date as this Court may order (the "Stay Period"), no action, suit or proceeding in any court or tribunal (each, a "Proceeding") against or in respect of the [Debtors] or the Monitor, or affecting the Business or the Property, shall be commenced or continued except with the written consent of the [Debtors] and the Monitor or with leave of this Court, and any and all Proceedings currently under way against or in respect of the [Debtors] or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

22. During the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being

11

"Persons" and each being a "Person") against or in respect of the [Debtors] or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the [Debtors] and the Monitor or leave of this Court.

23.     During the Stay Period, no Proceeding shall be commenced or continued against or in respect of any of the [Debtors'] franchisees (collectively, the "Franchisees"), or any of their current and future assets, business, undertaking and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (collectively, the "Franchisee Property", and together with the Franchisees' business, the "Franchisee Business and Property") including, without limitation, terminating, making any demand, accelerating, amending or declaring in default or taking any enforcement steps under any agreement or agreements, and no default or event of default shall have occurred or be deemed to have occurred under any such agreement or agreements, by reason of:

(a)     The insolvency of the [Debtors];

(b)     Any of the [Debtors] having made a petition to this Court under the CCAA;

(c)     Any of the [Debtors] being party to these proceedings;

(d)     Any of the [Debtors] taking any step related to these proceedings; or

(e)     Any default or cross-default arising from the matters set out in subparagraphs (a), (b), (c) or (d) above (collectively, the "Franchisee Default Events").

24.     During the Stay Period, all rights and remedies of any Person against or in respect of the Franchisees, or affecting the Franchisee Property and Business, as a result of a Franchisee Default Event, are hereby stayed and suspended except with the written consent of the [Debtors] and the Monitor or leave of this Court.

25.     Nothing in this Order, including paragraphs 20 and 21, shall: (i) empower the [Debtors] to carry on any business which the [Debtors] are not lawfully entitled to carry on; (ii) affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA; (iii) prevent the filing of any registration to preserve or perfect a mortgage, charge or security interest (subject to the provisions of Section 39 of the CCAA relating to the priority of statutory Crown securities); or (iv) prevent the registration or filing of a lien or claim for lien or the commencement of a Proceeding to protect lien or other rights that might otherwise be barred or extinguished by

12

the effluxion of time, provided that no further step shall be taken in respect of such lien, claim for lien or Proceeding except for service of the initiating documentation on the [Debtors].

Initial Order, ¶¶ 21-25.

## RELIEF REQUESTED

29.     The Debtors respectfully request that the Court enter the TRO, substantially in the form attached to this Motion as **Exhibit A** as permitted by sections 105(a), 1519, and 1521 of the Bankruptcy Code and Bankruptcy Rule 7065 implementing Federal Rule 65.

30.     The Debtors also request that the Court enter the Provisional Relief Order, substantially in the form attached to this Motion as **Exhibit B**, granting provisional relief, from the Petition Date through the date of entry of the Recognition Order, including:

      a.    Recognition and enforcement of the Initial Order in the United States, on a provisional basis, providing for, among other things:

          i    staying all proceedings, investigations, and remedies taken or that might be taken in respect of the Debtors or any of their property for the Stay Period (as defined in the Initial Order), to the same extent provided in the Initial Order;

          ii    granting the DIP Lenders' Charge with respect to the Debtors' property located in the territorial jurisdiction of the United States to the same extent provided in the Initial Order;

          iii    granting the CRO Charge against the Debtors' property in the territorial jurisdiction of the United States to the same extent provided in the Initial Order for an aggregate amount of $500,000;

          iv    granting the Directors' Charge against the Debtors' property in the territorial jurisdiction of the United States to the same extent provided in the Initial Order for an aggregate amount of $500,000 (as security for the Directors' indemnification obligations owed to the Debtors' directors and officers in their capacity as such); and

          v    granting the Administration Charge against the Debtors' property in the territorial jurisdiction of the United States to the same extent provided in the Initial Order for an aggregate amount of $1,000,000.

ACTIVE\900835605.14

b.   Recognizing the Foreign Representative as the representative of the Debtors within these chapter 15 proceedings with authority to administer the Debtors' assets and affairs in the United States as set forth in the orders entered by this Court.

c.   Applying section 362 of the Bankruptcy Code to each of the Debtors and the property of each of the Debtors within the territorial jurisdiction of the United States.  For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall impose a stay within the territorial jurisdiction of the United States of:

i    The execution of the Debtors' assets;

ii   The commencement or continuation, including the issuance or employment of process of, any judicial, administrative, investigatory or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to exercise any control over the Debtors' assets located in the United States except as authorized by the Debtors in writing;

iii  The creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express consent of the Foreign Representative;

iv   Any act to collect, assess, or recover a claim against any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases; and

v    The setoff of any debt owing to any of the Debtors that arose before the commencement of the Debtors' chapter 15 cases against any claim against of the Debtors.

d.   Finding section 364 of the Bankruptcy Code applicable with respect to each of the Debtors and the property of each of the Debtors that is within the territorial jurisdiction of the United States.  For the avoidance of doubt and without limiting the generality of the foregoing, the Provisional Relief Order shall, without limitation:

i    grant liens and security interests in the Debtors' Property located within the territorial jurisdiction of the United States pursuant to section 364(d)(1) of the Bankruptcy Code in respect of, and in

14

accordance with, the Administration Charge, Directors' Charge, CRO Charge and DIP Lenders' Charge; and

ii    find that any loans made by the DIP Lender in accordance with the DIP Term Sheet prior to the entry of the Recognition Order shall be extended in "good faith" as contemplated by 364(e) of the Bankruptcy Code, such that the validity of DIP Loans, and the priority of the DIP Lenders' Charge in respect of the Debtors' Property located within the territorial jurisdiction of the United States shall not be affected by any reversal or modification of the Provisional Relief Order on appeal or the entry of an order denying the Debtors' request for entry of the Recognition Order.

e.    Granting the Foreign Representative the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a)(3) and 1521 of the Bankruptcy Code.

f.    Providing that notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Provisional Relief Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Provisional Relief Order, and (iii) the Foreign Representative is authorized and empowered, and may, in its discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Provisional Relief Order.

## BASIS FOR RELIEF

31.    The Foreign Representative has contemporaneously filed the Verified Petition and a motion for recognition for entry of a final order that the Canadian Proceedings are foreign main proceedings or, in the alternative, foreign non-main proceedings under section 1517 of the Bankruptcy Code. Section 1519 of the Bankruptcy Code permits the Court "[f]rom the time of filing a petition for recognition until [it] rules on the petition" to grant provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a) (emphasis added). Sections

1519(a)(1)–(3) of the Bankruptcy Code define the scope of available provisional relief, which

includes:

    a.    staying execution of the Debtors' assets;

    b.    entrusting the administration or realization of all or part of the Debtors' assets located in the United States to the foreign representative, or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

    c.    any relief referred to in paragraph (3), (4), or (7) of section 1521(a).[4]

    32.    The Foreign Representative seeks provisional relief under sections 105(a) and 1519

of the Bankruptcy Code. Among other things, the Foreign Representative seeks imposition of

sections 362 of the Bankruptcy Code for the purpose of maintaining the status quo until the Court

rules on the Debtors' chapter 15 petition.

    33.    The Provisional Relief requested here is an "effective mechanism" to implement

the chapter 15 policies of promoting cooperation between courts of the United States and courts

of foreign countries involved in cross-border restructuring cases. The "fair and efficient

administration of cross border [cases] that protects the interest of all creditors, and other

---

[4] Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter [11 U.S.C. §§ 1501-1532] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief, including—

    *   *   *

    (3) suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) [11 U.S.C. § 1520(a)];

    (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities; [and]

    *   *   *

    (7) granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) [11 U.S.C. §§ 522, 544, 545, 547, 548, 550, and 724(a)].

11 U.S.C. §1521(a).

interested entities," including the Debtors, is essential to the "protection and maximization of the value of the [Debtors'] assets." 11 U.S.C. § 1501(a).

34. Furthermore, bankruptcy courts have imposed the section 362 stay or ordered similar relief to maintain the status quo pending recognition or disposition of foreign proceedings in ancillary cases under both chapter 15 of the Bankruptcy Code, including in respect of recognition proceedings that relate to restructurings of corporations in Canadian courts. *See, e.g.*, *In re Acerus Pharms. Corp.*, No. 23-10111 (Bankr. D. Del. Jan. 31, 2023) [D.I. 25] (granting provisional relief under section 362 of the Bankruptcy Code); *In re Yatsen Grp. of Cos. Inc.*, No. 21-10073 (Bankr. D. Del. Jan. 27, 2021) [D.I. 23] (same); *In re Hematite Holdings Inc.*, No. 20-12387 (Bankr. D. Del. Sept. 23, 2020) [D.I. 10] (same); *In re CDS Holdings, Inc.*, No. 20-11719 (Bankr. D. Del. July 2, 2020) [D.I. 37] (same); *In re DAVIDsTEA Inc.*, No. 20-11802 (Bankr. D. Del. July 9, 2020) [D.I. 21] (same); *In re Lone Pine Res. Inc.,* No. 13-12487 (Bankr. D. Del. Sept. 26, 2013) [D.I. 18] (same); *In re Just Energy Grp. Inc.,* No. 21-30823 (Bankr. S.D. Tex. Mar. 9, 2021) [D.I. 23] (same); *In re Essar Steel Algoma Inc.*, No. 15-12271 (Bankr. D. Del. Nov. 10, 2015) [D.I. 35-3] (same).

I.     **The Court Should Grant the Debtors' *Ex Parte* Provisional Relief akin to a Temporary Restraining Order Pending a Hearing for the Provisional Relief Order.**

38. This Motion seeks the TRO to protect the Debtors and their assets during the period between the commencement of these cases and entry of the Provisional Relief Order. The United States Supreme Court has held that *ex parte* restraining orders may be issued to preserve "the status quo only for so long as is necessary to hold a hearing." *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local 70*, 415 U.S. 423, 439 (1974). Rule 65(b) of the Federal Rules, made applicable by Bankruptcy Rule 7065, requires that to obtain an *ex parte* temporary restraining order, the applicant must show that "immediate and irreparable injury, loss

or damage would result to the applicant before the adverse party or that party's attorney can be heard in opposition." *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979); *see also In re Prudential Lines. Inc.*, 107 B.R. 832, 835 n.4 (Bankr. S.D.N.Y. 1989) (granting temporary restraining order where the moving party established a "summary showing of its necessity in order to prevent immediate and irreparable injury").

39.    Courts have not, it should be noted, required full or literal compliance with Rule 65(b) requirements, in respect of provisional relief under Bankruptcy Code section 1519.  For example, provisional relief can be ordered on an *ex parte* basis at case commencement through and pending recognition without the need for a preliminary injunction hearing or the filing of an adversary proceeding. *See In re Daehan Shipbuilding Co., Ltd.*, No. 14-12391 (Bankr. S.D.N.Y. Aug. 21, 2014) [D.I. 3 & 8] (provisional relief ordered in a single step within three days of chapter 15 commencement through recognition); *In re Electro Sonic Inc.*, No. 14-10240 (Bankr. D. Del. Feb. 11, 2014) [D.I. 18] (*ex parte* provisional relief ordered to stay actions against U.S. assets of Canadian debtor from chapter 15 case commencement through recognition); *see also In re Pro-Fit Holdings, Ltd.*, 391 B.R. 850, 860-65 (Bankr. C.D. Cal. 2008) (applying Bankruptcy Code section 362 provisionally, pending recognition, and noting that because section 362 relief was being sought, no adversary was required and the rules applicable to the ordinary issuance of an injunction were inapplicable).

40.    The issuance of an *ex parte* temporary restraining order is appropriate in these cases as the Debtors are in need of immediate relief following the issuance of the Initial Order. Without a provisional stay of all proceedings against the Debtors and assets (including the Litigation, as defined below) in the territory of the United States, the purpose of the Canadian Proceeding will be frustrated by allowing certain creditors to be improperly preferred and by

interfering with the Debtors' assets and business operations in violation of the stay granted under the Initial Order by the Canadian Court.

41. Although certain of the Debtors' secured lenders have entered into forbearance agreements and the RSA, there remain both secured and unsecured creditors who are aware of the Debtors' now-public circumstances and have the ability to initiate enforcement action against the Debtors. Further, the Debtors have significant valuable assets and business operations in the United States. Absent the Provisional Relief, certain secured and unsecured creditors of the Debtors who are aware of the Canadian Proceedings may initiate action against the Debtors' assets in the United States (or other legal action) or counterparties to contracts may seek to terminate them or commence remedial or actions to rescind under those contracts in violation of the stay in the Canadian Proceeding. Any additional actions by creditors, counterparties, or any other legal action against the Debtors will further restrict the Debtors' control over their business, thereby hindering progress in the Canadian Proceeding.

42. In addition, continuation of existing litigation or commencement of additional litigation against the Debtors in the United States will distract the Debtors' management at a critical juncture in the Debtors' restructuring and increase defense costs.

43. In light of these risks, the Initial Order imposed a broad stay protective of the Debtors and their assets. Commencement or continuation of litigation against the Debtors and their assets in the United States violates this stay. The requested relief is, therefore, among other things, in aid of the requirements of the Initial Order granted in the Canadian Proceedings by the Canadian Court.

ACTIVE\900835605.14

II.     **Provisional Relief Order Is Urgently Needed to Protect the Debtors' Assets and Restructuring Efforts.**

44.     The Provisional Relief Order is sought to continue to protect the Debtors' assets and the interests of their creditors as a whole until a Recognition Order is granted by this Court. *See* 11 U.S.C. § 1519(a).   Because a chapter 15 debtor is not automatically entitled to the protection of the automatic stay under section 362 of the Bankruptcy Code or any other provisions of the Bankruptcy Code, the Debtors urgently need an order granting provisional relief.  Without the limited application of section 362, there is a real and significant risk that certain of the Debtors' stakeholders, many of whom are located within the United States and are subject to personal jurisdiction of this Court but who may not be subject to the personal jurisdiction of the Canadian Court, may commence actions in the United States that are more properly the subject of the Canadian Proceedings or that could interfere with the Canadian Proceedings.

45.     In particular, the Foreign Representative is concerned that creditors may try to take advantage of the Debtors' connections to the United States to take actions in the United States to interfere with the Canadian Court's ability to adjudicate the Canadian Proceedings, which would not only hinder the orderly administration of the debtors' affairs but threaten to unravel the restructuring efforts that the Debtors seek to implement pursuant to the Canadian Proceedings.   These risks are precisely what provisional relief under section 1519 of the Bankruptcy Code is intended to address.  *See, e.g., In re Calpine Corp.,* 354 B.R. 45, 48–50 (Bankr. S.D.N.Y. 2006) (finding the debtor would suffer irreparable harm to its reorganization if litigation was not stayed); *In re Petition of Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (finding that the debtors would suffer irreparable harm if local creditors sought to interfere with the reorganization process); *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000)

20

("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors.")

46. An action against any of the Debtors at this time would severely impair the Debtors' restructuring efforts and result in damage to the value of their assets and harm to other creditors and other stakeholders. Liberty Tax, LoanMe and Community Tax are defendants in certain pending litigation (respectively the "**Liberty Tax Litigation**", "**LoanMe Litigation**" and the "**Community Tax Litigation**", collectively the "**Litigation**"). A list of the Litigation is attached as **<u>Exhibit C</u>**. If these Litigations were permitted to proceed until the recognition of these foreign proceedings, they may subject the Debtors to continued costs and potential judgements that would be detrimental to the Debtors and, ultimately, the Debtors' creditors. Any judgements against any of the Debtors at this time would severely impair the Debtors' restructuring efforts and result in damage to the value of their assets and harm to other creditors and other stakeholders.

## III. The Requested Relief Meets the Standard for a Preliminary Injunction.

47. Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e). Courts have held that "where there is a showing that the action sought to be enjoined would burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the Court may issue injunctive relief." *See Rosetta Res. Operating LP v. Pogo Producing Co.* (*In re Calpine Corp.*), No. 05-60200, 2007 WL 1302604, at *3 (Bankr. S.D.N.Y, Apr. 30, 2007) (*citing In re Alert Holdings Inc.*, 148 B.R. 194 (Bankr. S.D.N.Y. 1992)); *see also, In re Innua Can. Ltd.*, No. 09-16362, 2009 WL 1025088, at *3 (Bankr. D. N.J. Mar. 25, 2009) (ordering provisional stay applying Bankruptcy Code section 362(a) where provisional stay

21

necessary to prevent "further dissipation of assets"). In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the requested injunction is denied; (c) granting preliminary relief will not result in greater harm to the nonmoving party; and (d) the public interest favors such relief. *In re Nortel Networks UK Ltd.*, 538 B.R. 699, 704–05 (Bankr. D. Del. 2015) (citing *United States v. Bell*, 414 F.3d 474, 478 n.2 (3d Cir. 2005)); (*see also Rogers v. Corbett*, 468 F.3d 188, 192 (3d Cir. 2006) (citations omitted); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted)). The granting of immediate provisional relief is appropriate here as the Debtors satisfy the applicable standard as set forth in the Memorandum of Law in support of this Motion.

## SECURITY

48.    The Debtors are not required to provide any security in connection with this injunction. *See* Fed. R. Bankr. P. 7065 ("Rule 65 . . . applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)").

## WAIVER OF BANKRUPTCY RULE 1007(A)(4)(B)

49.    Contemporaneously with the filing of this Motion, the Foreign Representative filed the Lists Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 (the "**Bankruptcy Disclosures**"). Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code, unless the court orders otherwise. As set forth in this Motion and as reflected in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the stay similar to that available under section 362 of the Bankruptcy Code that would specifically, but not exclusively, affect those parties. The relief sought herein could likewise affect other

parties to the extent any party might commence litigation against the Debtors or enforce against their property.

50. The disclosure provided in the Rule 1007 statement with respect to this Motion is sufficient to satisfy Bankruptcy Rule 1007(a)(4)(b). However, and given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion as applied to parties that will be generally affected by the provisional relief order especially in light of the extensive number of parties that the Debtors did include in the Bankruptcy Disclosures.

## NOTICE

51. The Foreign Representative respectfully requests that this Court, by means of the proposed TRO attached as **Exhibit A**, grant immediate relief to the Debtors in accordance with Rule 65(b)(1) of the Federal Rules and the Martin Declaration is submitted in support. The Foreign Representative further respectfully requests that this Court schedule a hearing on entry of the Provisional Relief Order in accordance with Rule 65 of the Federal Rules (such date, the "**Hearing Date**"). The Foreign Representative proposes that once a Hearing Date has been set by the Court, the Foreign Representative will provide notice of this Motion consistent with Bankruptcy Rule 2002(q) and Local Rule 9013-1(m), as further set forth in the *Motion for Order (A) Scheduling Hearing on Recognition of Chapter 15 Petitions and (B) Specifying Form and Manner of Service of Notice and (C) Authorizing Redaction of Certain Personally Identifiable Information of Individual Stakeholders* (the "**Notice Procedures Motion**"), filed contemporaneously with this Motion. The Foreign Representative submits that such notice is sufficient in view of the facts and circumstances, and no other or further notice need be provided.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE the Foreign Representative respectfully requests that this Court enter the TRO, substantially in the form attached hereto as **Exhibit A** and the Provisional Relief Order, substantially in the form attached hereto as **Exhibit B**, granting the requested relief and such other and further relief as may be just and proper.

Dated: July 26, 2023
      Wilmington, Delaware

Respectfully submitted,

**DLA Piper, LLP (US)**

/s/ *R. Craig Martin*
R. Craig Martin (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email: craig.martin@us.dlapiper.com

*-and-*

Rachel Ehrlich Albanese (*pro hac vice* admission pending)
Jamila Justine Willis (*pro hac vice* admission pending)
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com
jamila.willis@us.dlapiper.com

*Counsel to the Foreign Representative*

ACTIVE\900835605.14