**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| NEXTPOINT FINANCIAL INC., *et al.*, | Case No. 23-10983 (TMH) |
| Debtors in a foreign proceeding.[1] | (Joint Administration Requested) |

**MOTION OF THE FOREIGN REPRESENTATIVE FOR
CHAPTER 15 RECOGNITION AND FINAL RELIEF**

NextPoint Financial Inc. ("**NextPoint**"), in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") for the above-captioned debtors (collectively, the "**Debtors**" or the "**Company**"), in the proceedings (the "**Canadian Proceedings**") currently pending before the Supreme Court of British Columbia (the "**Canadian Court**"), initiated under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"), by and through their undersigned counsel, respectfully submit this *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* (the "**Motion**") and respectfully refers the Court to and incorporates the following into this Motion by reference, the *Memorandum of Law in Support of Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* (the **"Memorandum of Law"**), seeking entry of a final order recognizing the Canadian Proceedings as foreign main proceedings, or, in the alternative, as foreign non-main proceedings,

---

[1] The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are: NextPoint Financial Inc. (6134); LT Holdco, LLC (8090); LT Intermediate Holdco, LLC (0811); SiempreTax+ LLC (6145); JTH Tax LLC (8391); Liberty Tax Holding Corporation (N/A); Liberty Tax Service, Inc. (N/A); JTH Financial, LLC (1522); JTH Properties 1632, LLC (0248); Liberty Credit Repair, LLC (5427); Wefile, LLC (6778); JTH Tax Office Properties, LLC (0248); LTS Software LLC (6450), JTH Court Plaza, LLC (2116); 360 Accounting Solutions LLC (8312); LTS Properties, LLC (9088); NPI Holdco LLC (1936); CTAX Acquisition LLC (6975); Community Tax Puerto Rico LLC (4349); Community Tax LLC (8001); NPLM Holdco LLC (8132); MMS Servicing LLC (7430); LoanMe, LLC (5663); LoanMe Funding, LLC (2305); LM Retention Holdings, LLC (N/A); LoanMe Trust-Prime 2018-1 (0257); LoanMe Trust SBL 2019-1 (N/A); LoanMe Stores, LLC (3810); InsightsLogic, LLC (0818); and LM 2020 CM I SPE, LLC (N/A). The location of the Debtors' headquarters is 500 Grapevine Hwy, Suite 402, Hurst, TX 76054, and the Debtors' mailing address is 1133 Melville St., Suite 2700, Vancouver, BC V6E 4E5.

ordering the relief requested in this Motion, and granting such other and further relief as appropriate under the circumstances. In support of this Motion, the Foreign Representative incorporates by reference the *Declaration of Peter Kravitz in Support of the Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, or, in the Alternative, Foreign Non-Main Proceedings, (II) Recognition of Foreign Representative, (III) Debtors' Motion for Certain Provisional Relief* (the "**Kravitz Declaration**")[2]. In support of this Motion, the Foreign Representative respectfully states as follows:

# I.
# JURISDICTION AND VENUE

1. This Court has jurisdiction over this case under sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware (Sleet, C.J.), dated February 29, 2012.

2. The Foreign Representative has properly commenced this chapter 15 case under sections 1504 and 1515 of the Bankruptcy Code. This Chapter 15 Petition (defined below) is a core proceeding under section 157(b)(2)(P) of title 28 of the United States Code.

3. Venue for this case is proper in this Court under section 1410 of title 28 of the United States Code because the Debtors have their principal assets in the United States located in Delaware. The Debtors have property in Delaware as a group via their ownership in the equity of Delaware entities and incorporation of certain of the Debtors under Delaware law. Each Debtor also has an interest in a retainer on deposit with DLA Piper LLP (US) in which the Debtor has an ownership interest. These funds are held in a Wells Fargo bank account in accordance with Delaware Rule of Professional Responsibility 1.5. (*See* Kravitz Decl. ¶ 146.)

---

[2] Capitalized terms used in this section but not otherwise defined herein shall have the meaning ascribed to them in the Kravitz Declaration or the Verified Petition, as applicable.

4.  The statutory predicates for the relief requested in this Motion are sections 101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521, 1522, and 1524 of title 11 of the United States Code (the "**Bankruptcy Code**").

## II.
## RELIEF REQUESTED

5.  By this Motion, the Foreign Representative seeks the entry of an order, substantially in the form attached to this Motion as **Exhibit A**, recognizing the Canadian Proceedings as foreign main proceedings or, in the alternative, foreign non-main proceedings and granting the Foreign Representative final relief and protections in aid of the Canadian Proceedings as authorized under Chapter 15 of the Bankruptcy Code, including, without limitation, the following:

   a.  All relief provided in aid of the Canadian Proceedings as a foreign main proceeding upon recognition under section 1520 of the Bankruptcy Code, including without limitation, the automatic stay of section 362 of the Bankruptcy Code, which shall apply to the Debtors and any property of the Debtors that is within the territorial jurisdiction of the United States throughout the duration of this chapter 15 case or until otherwise ordered by this Court;

   b.  All relief provided in aid of the Canadian Proceedings as a foreign non-main proceeding upon recognition under section 1521 of the Bankruptcy Code;

   c.  Entrusting the administration, realization, and distribution of the Debtors' assets located within the territorial jurisdiction of the United States to the Foreign Representative in accordance with subsections 1521(a)(5) and 1521(b) of the Bankruptcy Code; and

   d.  Granting as final relief all provisional relief the Court may have granted pursuant to section 1519(a) of the Bankruptcy Code.

- 3 -

## III.
## FACTUAL BACKGROUND

6. This Motion is filed in connection with the *Official Form 401 Petition* [D.I. 1] (the "**Petition**") and the *Verified Petition for (I) Recognition of Foreign Main Proceedings, or, in the Alternative, Foreign Non-Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* [D.I. 5] (the "**Verified Petition**" and together with the Petition, the **"Chapter 15 Petition"**) filed on July 26, 2023 (the "**Petition Date**").

7. As more fully described in the Chapter 15 Petition, NextPoint was incorporated on July 16, 2020, under the Business Corporations Act (British Columbia) as a special purpose acquisition corporation for the purpose of effecting, directly or indirectly, an acquisition of one or more businesses or assets, by way of a business combination. NextPoint acquired Liberty Tax, a leading provider of tax preparation services, and LoanMe, an online lender and loan marketer, in July 2021, and Community Tax, a tax debt resolution service, in December 2021 (in each case indirectly through NPI Holdco LLC).

8. The NextPoint Group provides financial and tax services for small businesses and consumers across Canada and the United States through the following three primary business lines:

   a. a tax preparation and settlement business, operated through Liberty Tax;

   b. a tax debt resolution service, operated through Community Tax; and

   c. a lending and loan marketing business, which previously operated through LoanMe.

9. NextPoint acquired LoanMe in July 2021, for US$110 million. Subsequently, LoanMe performed below expectations, contributing to liquidity strain. LoanMe experienced an elevated rate of charge-offs as they continued to operate the business. This resulted in a significant shortfall in cash compared to the amount required to fund the operations. Such shortfall was

exasperated by the unsustainable debt load following the LoanMe acquisition.

10. Additionally, in response to the novel coronavirus 2019 ("**COVID-19**") pandemic, tax authorities decreased their enforcement steps, which reduced Community Tax's new client creation rates and led to lower revenues, year over year, from both Liberty Tax and Community Tax. As a result, the Debtors are over-leveraged and have significant recurring operating losses, working capital deficiencies, and insufficient cash flow to meet their obligations.

11. Recognizing the need to restructure the NextPoint Group's business and its debt load in order to better position it for long-term success, in June 2022, LoanMe announced that it would cease further loan originations and would only continue to service its outstanding loans. In September 2022, in response to continuing financial difficulties, the NextPoint Group determined that it would be in the best interest of the enterprise to restructure its business to refocus its resources solely on its Liberty Tax and Community Tax segments. The NextPoint Group accordingly announced that it would be winding down the LoanMe segment on a go forward basis. Such wind down efforts have been ongoing.

12. In addition to winding down LoanMe, on September 30, 2022, the NextPoint Group completed a financial and organizational restructuring with BP Commercial Funding Trust II, Series SPL-I ("**BP SPL-1**"). Under this arrangement, NextPoint and BP SPL-1 entered into two Assignment of Interest and Foreclosure Consent Agreements: BP SPL-1 received 100% of the equity in two LoanMe special purpose entities in consideration for a zero coupon $12 million promissory note originally maturing on December 31, 2023. On February 27, 2023, NextPoint extended the maturity date and modified the repayment schedule and applicable interest rate to January 2, 2026. The LoanMe special purpose entities represented approximately 90% of LoanMe's loan portfolio.

13. Each of NPI Holdco LLC ("**NPI Holdco**") and LT Holdco, LLC ("**LT Holdco**") are borrowers under a credit agreement, originally dated as of July 2, 2021 and as amended through Amendment No. 5 thereto dated as of June 30, 2023 (as may be amended, restated, supplemented, or otherwise modified from time to time, the "**NP/LT Credit Agreement**") with BP Commercial Funding Trust, Series SPL-X, as administrative agent and collateral agent on behalf of the lenders thereunder (with respect to the NP Revolving Credit Loans (as defined below), the "**NP Lenders**").

14. Under the NP/LT Credit Agreement, the NP Lenders originally agreed to extend a revolving credit facility to NPI Holdco of $200 million. The NP/LT Credit Agreement was subsequently amended and restructured on November 1, 2022 to (i) reduce the maximum revolving credit facility commitment available to NPI Holdco at $130 million, and (ii) provide a new $74.4 million term loan to LT Holdco. As of July 14, 2023, there was approximately $125.7 million in outstanding principal amount of revolving loans borrowed by NPI Holdco under the NP/LT Credit Agreement (the "**NP Revolving Credit Loans**"). Interest is payable on outstanding NP Revolving Credit Loans at a rate of 13% per annum, payable monthly. The NP Revolving Credit Loans mature on July 2, 2025. The draw maturity for additional NP Revolving Credit Loans under the NP/LT Credit Agreement matured on July 2, 2023.

15. While the foregoing resulted in various positive financial and operational benefits for the NextPoint Group, they did not fully address the NextPoint Group's overleveraged financial position and cash flow constraints.

16. As part of its efforts to restructure for the benefit of stakeholders, the NextPoint Group began discussions in or around June 2023, with its primary secured lender, BP Commercial Funding Trust Series SPL-X regarding the terms on which it would support a restructuring of the Petitioners. Such good faith, arm's length negotiations were fruitful and, on July 25, 2023, the BP

Lenders, NextPoint, NPI Holdco, various entities comprising Liberty Tax, Community Tax and various entities comprising LoanMe (the "**RSA Company Parties**") executed a Restructuring Support Agreement (the "**RSA**") to permit the Debtors to pursue a restructuring under the supervision of the Canadian Court for all of the NextPoint Group.

17. The Debtors submitted a Petition to the Canadian Court on July 25, 2023, (the "**Canadian Petition**") in compliance with the CCAA, requesting, among other relief, that the Canadian Court enter an order in relation to the Company and appoint NextPoint Financial Inc. as foreign representative for each of the Debtors. The Canadian Court entered an order (the "**Initial Order**") granting the relief requested in the Petition, and among other things, appointing the proposed foreign representative of the Debtors (the "**Foreign Representative**") as of July 25, 2023.

18. Upon initiation of the Canadian Proceeding, a moratorium on creditor enforcement actions was imposed and creditors actions have been stayed. Yet, without recognition, creditors and other parties not subject to the jurisdiction of the Canadian Court and based in the United States may continue or begin to take action against the Debtors' assets and operations within the United States. Any litigation or enforcement action against the Debtors will destabilize their operations and ability to consummate the Restructuring, including its efforts to find a buyer for the Debtors' businesses, which will ultimately jeopardize the livelihood of the Debtors' 556 employees and result in significantly diminished recoveries for the Debtors' creditors.

19. On July 26, 2023, the duly authorized Foreign Representative filed the Chapter 15 Petition for the Debtors and commenced these chapter 15 cases. The Foreign Representative seeks recognition of the Debtors' Canadian Proceedings as foreign main proceedings within the meaning of section 1502 of the Bankruptcy; alternatively, for those Debtor entities formed under State law

in the United States, the Foreign Representative seeks in the alternative, recognition of those proceedings as foreign nonmain proceedings within the meaning of section 1502 of the Bankruptcy Code.

20. For further background information regarding the Debtors' business, the Canadian Proceedings, and the facts and circumstances necessitating this chapter 15 filing, the Court is respectfully referred to the Chapter 15 Petition, the Verified Petition and the *Declaration of Colin Brousson as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code* (the "**Brousson Declaration**") each of which is incorporated by reference as if set forth fully in this Motion.

## IV.
## BASIS FOR RELIEF

21. The Foreign Representative respectfully submits that the Canadian Proceedings should be recognized by this Court because, as required under section 1517 of the Bankruptcy Code, the Foreign Representative applying for recognition is a person or body, the Canadian Proceeding is a foreign proceeding, and the Petition meets the requirements of section 1515 of the Bankruptcy Code. Additionally, recognition of the Canadian Proceedings does not manifestly violate the public policy of the United States of America.

22. The Foreign Representative is a "person," as contemplated in subsections 101(24) and 101(41) of the Bankruptcy Code, and was duly appointed by the Debtors' directors as foreign representative of each of the Debtors and identified as the Foreign Representative by the Canadian Court in the Initial Order. *See* Petitions Att. and Initial Order 63.

23. The Canadian Proceedings are "foreign proceeding[s]" within the meaning of section 101(23) of the Bankruptcy Code because the Canadian Proceedings are judicial

proceedings conducted in Canada under the law related to insolvency or debt adjustment. Additionally, the Canadian Proceedings are "main" proceedings because the Debtors' center of main interest is in Vancouver, British Columbia, Canada, and, thus, it has its nerve center in Canada. Specifically, the top holding company Debtor is formed under the law of British Columbia, is publicly listed on the Toronto Stock Exchange, where it files consolidated financial reports and other disclosures required by Canadian law for the NextPoint Group, and, prior to the commencement of CCAA, had its registered offices and headquarters in Vancouver, Canada, and, therefore, Canada is presumed to be the center of main interest for the Debtors formed in Canada. See 11 U.S.C. § 1516(c). Moreover, when the Canadian Court took jurisdiction over the Debtors, it implicitly recognized the significance of the Debtors' interests there. Further, now the locus of the Debtors restructuring is in Canada. Since Canada is the center of main interest for the Debtors, the Canadian Proceedings should be recognized as a foreign main proceeding. *Id*. § 1517(b)(1).

24. While certain of the Debtors are formed under the laws of Delaware, Virginia, and Illinois and cannot benefit from the presumption that their center of main interest is in Canada, that presumption can be rebutted with sufficient evidence. Based on the Kravitz Declaration and the arguments set forth in the Memorandum of Law, Debtors formed under those states' laws also have their center of main interest in Canada; should the Court conclude otherwise; however, those entities' Canadian Proceedings qualify as foreign nonmain proceedings for the reasons set out in this Motion.

25. Further, the Petition meets the requirements of section 1515 of the Bankruptcy Code. Specifically, as required by section 1515(b) of the Bankruptcy Code, the Petition is

accompanied by a certified copy of the *Order Made After Application* as endorsed[3] by the Canadian Court, effectuating the Canadian Proceeding. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative filed a statement with the Petition, identifying the Canadian Proceeding as the only pending proceeding with respect to the Debtors and stating that there are no other pending foreign proceedings known to the Foreign Representative. (*See* Petition Att.) Further, as required by section 1515(d) of the Bankruptcy Code, all documents provided pursuant to section 1515(b) of the Bankruptcy Code are in English. Finally, as required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Foreign Representative has also filed a statement, identifying the parties to litigation with respect to the Debtors pending within the United States and the parties against which provisional relief is requested.

26. Because all of the conditions to the entry of an order recognizing the Canadian Proceedings as foreign main proceedings under the Bankruptcy Code have been satisfied, the Debtors are entitled to have the Canadian Proceedings recognized as "main" proceedings. Upon recognition of the Canadian Proceedings as foreign main proceedings, final relief is authorized by sections 1520 and 1521 of the Bankruptcy Code. In particular:

    a. Upon recognition of the Canadian Proceedings as foreign main proceedings, the Foreign Representative is automatically entitled to the protections of the automatic stay of section 362 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1520(a)(1) and 362.

---

[3] Due to the time of the hearing, the Debtors were not able to obtain a certified copy of the Initial Order; however, Debtors provide the order as entered and will file a supplemental notice of exhibit, attaching the certified copy of the Initial Order once they are able to obtain one.

ACTIVE\1601664069.9

b. Also, upon recognition of the Canadian Proceedings as foreign main proceedings, sections 363, 549, and 552 of the Bankruptcy Code apply to a transfer of an interest of the Debtors in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate.

c. The Court may also suspend the right to transfer, encumber, or otherwise dispose of the Debtors' assets. *See* 11 U.S.C. § 1520(a). To the extent that this relief is not granted under section 1520 of the Bankruptcy Code by applying section 362 of the Bankruptcy Code, the Court may grant this relief pursuant to section 1521(a)(3) of the Bankruptcy Code.

d. Additionally, upon recognition of the Canadian Proceedings as foreign main proceedings, the Foreign Representative is entrusted either as of right under section 1520 of the Bankruptcy Code or with the discretionary approval of the Court under section 1521 of the Bankruptcy Code with the right to operate the Debtors' business, exercise rights and power of a trustee, and administer and realize all or part of the Debtors' assets within the territorial jurisdiction of the United States. *See* 11 U.S.C. §§ 1520(a)(3) and 1521(a)(5).

27. The Court also has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity. *See* 11 U.S.C. §§ 1507 and 1521. The Court's entry of the relief requested by the Chapter 15 Petition and of any additional assistance requested will not prohibit just treatment of holders of claims against the Debtors' property and will not prejudice its creditors.

As such, the Foreign Representative submits that the Court has the discretion to enter the additional assistance set forth in the attached proposed form of order.

## V.
## CONCLUSION

WHEREFORE, for the reasons set forth in this Motion, the Chapter 15 Petition, the Kravitz Declaration, and the Brousson Declaration, including, without limitation, that all requisite elements for the recognition and relief requested by the Motion are met in this case, the Foreign Representative respectfully requests that this Court: (1) enter the proposed order attached to this Motion as **Exhibit A**, recognizing the Canadian Proceeding as foreign main proceedings or, in the alternative, foreign non-main proceedings and granting the requested final relief in aid of the Canadian Proceeding; and (2) grant such other and further relief as this Court determines to be fair and appropriate under the circumstances.

*[Remainder of Page Left Intentionally Blank]*

Dated: July 26 2023  
      Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*  
R. Craig Martin, Esq. (DE 5032)  
1201 N. Market Street, Suite 2100  
Wilmington, DE 19801  
Telephone: (302) 468-5700  
Facsimile: (302) 394-2462  
Email:  craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese, Esq. (*pro hac vice* admission pending)  
Jamila Justine Willis, Esq. (*pro hac vice* admission pending)  
1251 Avenue of the Americas  
New York, New York 10020  
Telephone: (212) 335-4500  
Facsimile: (212) 335-4501  
Email:  rachel.albanese@us.dlapiper.com  
        jamila.willis@us.dlapiper.com

*Counsel to the Foreign Representative*