**Exhibit B**

**Redline of CCAA Vesting Order**

No. S-235288
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C., 1985 c. C-36, AS AMENDED

AND

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF NEXTPOINT
FINANCIAL, INC. AND THOSE PARTIES LISTED ON SCHEDULE "A"

PETITIONERS

**<u>ORDER MADE AFTER APPLICATION</u>**
**APPROVAL AND VESTING ORDER**

|   |   |   |   |   |
|---|---|---|---|---|
| | ) | | ) | |
| | ) | | ) | |
| BEFORE | ) | THE HONOURABLE MADAM | ) | October ~~30~~31, 2023 |
| | ) | JUSTICE FITZPATRICK | ) | |
| | ) | | ) | |

ON THE APPLICATION of the Petitioners coming on for hearing at 800 Smithe Street, Vancouver, BC V6Z 2E1 on this date and on hearing Jeffrey D. Bradshaw ~~and~~, Samantha Arbor and ~~Sean Gillis~~Lydia Huang, articled student, and those other counsel listed on Schedule "◆B" hereto; AND UPON READING the material filed, including the first affidavit of Peter Kravitz sworn July 25, 2023, the ~~third~~fourth affidavit of Peter Kravitz sworn October ●24, 2023 (the "**Kravitz ~~Affiavit~~Affidavit**") ~~,~~ and the ~~Third~~Fourth Report of FTI Consulting Canada Inc. ("**FTI**"), in its capacity as monitor (the "**Monitor**") dated October ~~●~~●27, 2023; AND PURSUANT TO the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), the British Columbia *Supreme Court Civil Rules*, BC Reg 168/2009, and the inherent jurisdiction of this Honourable Court;

THIS COURT ORDERS AND DECLARES that:

**SERVICE AND DEFINITIONS**

1.      The time for service of the Notice of Application for this order and the supporting materials is hereby abridged such that this application is properly returnable today and the need for further service of the Application and supporting materials is hereby dispensed with.

2.    Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to them in the Sale and Investment Solicitation Process approved by Order of this Honourable Court on July 25, 2023 (the "**SISP**"), the Second Amended and Restated Initial Order of this Court dated August 3October 13, 2023 (the "**Initial Order**"), or the Transaction Agreement appended as Exhibit ●"A" to the Kravitz Affidavit (as may be amended, supplemented or otherwise modified from time to time in accordance with the terms thereof and hereof, the "**Transaction Agreement**").

**APPROVAL AND VESTING**

3.    The Transaction Agreement and the transactions contemplated therein (collectively, the "**Transactions**"), including the Implementation Steps, for the acquisition of LT Holdco, LLC, LT Intermediate Holdco, LLC, SiempreTax+ LLC, JTH Tax, LLC, JTH Financial, LLC, JTH Properties 1632, LLC, JTH Tax Office Properties, LLC, Wefile LLC, Liberty Credit Repair, LLC, LTS Properties, LLC, 360 Accounting Solutions, LLC, Liberty Tax Holding Corporation, Liberty Tax Service Inc., JTH Court Plaza, LLC, LTS Software LLC, CTAX Acquisition LLC, Community Tax LLC, and Community Tax Puerto Rico LLC (collectively, the "**Acquired Entities**") are hereby approved and the. The execution of the Transaction Agreement by NextPoint and the Acquired Entities (collectively, the "**NP Entities**") is hereby authorized and approved, with such minor amendments as the NP Entities and the Purchaser may deem necessary, with the approval of the Monitor and subject to the terms of the Support Agreement, or as may be required by the Purchaser pursuant to the terms of the Transaction Agreement. The Petitioners are hereby authorized and directed to perform their obligations under the Transaction Agreement, and to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transactions.

4.    This Order shall constitute the only authorization required by the Petitioners to proceed with the Transactions and no shareholder or other approval shall be required in connection therewith.

5.    As of the Effective Time (as defined in the Monitor's Certificate):

(a)    1000694777 Ontario Limited ("**Residual Co. 1**") and 1000694777 USA LLC ("**Residual Co. 2**") shall be companies to which the CCAA applies; and

(b)    Residual Co. 1 and Residual Co. 2 shall be added as Petitioners in these CCAA proceedings and all references in any Order of this Court in respect of these CCAA proceedings to (i) a "Petitioner" or the "Petitioners" shall refer to and include Residual Co. 1 and Residual Co. 2, *mutatis mutandis*, and (ii) "Property" shall include the current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof, of Residual Co. 1 and Residual Co. 2, as applicable, including the Excluded Assets  (the "**Residual Co. Property**"), and, for greater certainty, each of the Charges (excluding the Directors' Charge, which shall be terminated,

released and discharged and be of no further force or effect, without the need for any further act of formality, as of the Effective Time) shall constitute charges on the Residual Co. Property.

6.    5.   Upon delivery of the Monitor's certificate (the **"Monitor's Certificate"**) to the Purchaser, substantially in the form attached as **Schedule "◆C"** hereto, the following shall occur and shall be deemed to have occurred, subject to the terms of the Implementation Steps:

(a) as of the Effective Time:

   (i)    with respect to the Acquired Entities which were not formed or incorporated under the laws of the United States (the "**Non-US Acquired Entities**"), all of the Non-US Acquired Entities' right, title and interest in and to their respective Excluded Assets shall vest absolutely and exclusively in Residual Co. 1;

   (ii)   (a) all of thewith respect to the Acquired Entities formed or incorporated under the laws of the United States (the "**US Acquired Entities**"), all of the US Acquired Entities' right, title and interest in and to thetheir respective Excluded Assets of the Petitioners not listed on Schedule ● of the Transaction Agreement (the "**Acquired Entities**") shall vest absolutely and exclusively in ● ("Residual Co.") 2; and

   (iii)  in each case, all applicable Claims and Encumbrances shall continue to attach to such Excluded Assets with the same nature and priority as they had immediately prior to their transfer;

(b) all Excluded Contracts and Excluded Liabilities (which, for certainty includes all debts, liabilities, obligations, indebtedness, contracts, leases, agreements, and undertakings of any kind or nature whatsoever, whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) of the Non-US Acquired Entities and the US Acquired Entities (in each case, other than the Assumed Liabilities) shall be transferred to, assumed by and vest absolutely and exclusively in Residual Co. 1 and Residual Co. 2, respectively, such that all Excluded Contracts and Excluded Liabilities shall become obligations of Residual Co., 1 and Residual Co. 2, as applicable, and shall no longer be obligations of the Acquired Entities, and the Acquired Entities and all of their remaining assets, licenses, undertakings and properties of every nature and kind whatsoever and wherever situate (collectively, the "**Retained Assets**") shall be and are hereby forever released and discharged from all Excluded Contracts and Excluded Liabilities, and all related Claims and Encumbrances, other than the permitted encumbrances,

easements and restrictive covenants affecting or relating to the Retained Assets listed on Schedule "♦"1.1(b)" of the Transaction Agreement (the "**Permitted Encumbrances**"), are hereby expunged and discharged as against the Retained Assets;

(c) all right, title and interest in and to the Purchased Interests acquired by the Purchaser shall vest absolutely and exclusively in the Purchaser free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "**Claims**") including, without limiting the generality of the foregoing: (x) any encumbrances or charges created by the Initial Order, the SISP Order, or any other Order of this Court, and (y) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (British Columbia) or any other personal property registry system (all of which are collectively referred to as the "**Encumbrances**", which term shall not include the Permitted Encumbrances) and, for greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Purchased Interests are hereby expunged and discharged as against the Purchased Interests;

(d) all equity interests of the Acquired Entities existing prior to the commencement of the Implementation Steps (for greater certainty, other than the Purchased Interests and any issued equity interests owned by any other Acquired Entity or Acquired Entities), as well as all options, conversion privileges, equity-based awards, warrants, securities, debentures, loans, notes or other rights, agreements or commitments of any character whatsoever that are held by any Person (as hereinafter defined) and are convertible or exchangeable for any securities of any of the Acquired Entities, or which require the issuance, sale or transfer by any NP Entity of any shares or other securities of any NP Entity, or which otherwise evidence a right to acquire the Purchased Interests and/or the share capital of any Acquired Entity or otherwise relate thereto, shall be deemed terminated and cancelled or redeemed as provided in the Implementation Steps, as applicable; and

(e) the Acquired Entities shall and shall be deemed to cease to be Petitioners in this CCAA proceeding, and the Acquired Entities shall be deemed to be released from the purview of the Initial Order and all other Orders of this Court granted in respect of these CCAA proceedings, save and except for this Order, the provisions of which (as they related to the Acquired Entities) shall continue to apply in all respects.

7. 6. The Monitor is to (a) provide a copy of the Monitor's Certificate to the parties to the Transaction Agreement; and (b) file with this Court a copy of the Monitor's Certificate

forthwith after delivery thereof in connection with the Transactions as well as a copy of the final form of Transaction Agreement, all related schedules and the Implementation Steps**.**

8.    ~~7.~~ The Monitor may rely on written notice from NextPoint and the Purchaser regarding the satisfaction or waiver of conditions to closing under the Transaction Agreement and shall have no liability with respect to delivery of the Monitor's Certificate.

9.    ~~8.~~ For the purposes of determining the nature and priority of Claims, from and after the Effective Time ~~(as defined in the Monitor's Certificate)~~, all Claims and Encumbrances released, expunged and discharged pursuant to paragraph ~~5~~6, including as against the Acquired Entities, the Retained Assets and the Purchased Interests, shall attach to the Excluded Assets with the same priority as they had immediately prior to the Transactions, as if the Transactions had not occurred.

10.    ~~9.~~ Pursuant to Section 7(3)(c) of the *Canada Personal Information Protection and Electronic Documents Act* or Section 18(1)(o) of the *Personal Information Protection Act of British Columbia*, the Petitioners are hereby authorized, permitted and directed to, at the Effective Time, disclose and transfer to the Purchaser all human resources and payroll information in the Acquired Entities' records pertaining to past and current employees of the Acquired Entities. The Purchaser shall maintain and protect the privacy of such information in accordance with applicable law and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Acquired Entity prior to the Effective Time.

11.    ~~10.~~ At the Effective Time and without limiting the provisions of paragraph ~~5~~6 hereof, the Purchaser and the Acquired Entities shall be deemed released from any and all claims, liabilities (direct, indirect, absolute or contingent) or obligations with respect to any Taxes (including penalties and interest thereon) of, or that relate to, the Petitioners (provided, as it relates to the Purchaser and the Acquired Entities, such release shall not apply to (a) Taxes in respect of the business and operations conducted by the Acquired Entities after the Effective Time; or (b) Taxes expressly assumed as Assumed Liabilities pursuant to the Transaction Agreement), including, without limiting the generality of the foregoing, all Taxes that could be assessed against the Purchaser or the Acquired Entities (including its affiliates and any predecessor corporations) pursuant to section 160 of the *Income Tax Act* (Canada) (the "**Tax Act**"), or proposed section 160.01 of the Tax Act, including as a result of any future amendments or proposed amendments to such provisions or related provisions, or any provincial equivalent, in connection with the Petitioners.

12.    ~~11.~~ Except to the extent expressly contemplated by the Transaction Agreement, all Continuing Contracts to which any of the Acquired Entities are a party upon delivery of the Monitor's Certificate will be and remain in full force and effect upon and following

delivery of the Monitor's Certificate and no individual, firm, corporation, governmental body or agency, or any other entity (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") who is a party to any such arrangement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set-off, dilution or other remedy) or make any demand under or in respect of any such arrangement and no automatic termination will have any validity or effect, by reason of:

(a) any event that occurred on or prior to the Effective Time and is not continuing that would have entitled such Person to enforce those rights or remedies (including defaults or events of default arising as a result of the insolvency of any Petitioner);

(b) the insolvency of any Petitioner or the fact that the Petitioners sought or obtained relief under the CCAA;

(c) any compromises, releases, discharges, cancellations, transactions, arrangements, reorganizations or other steps taken or effected pursuant to the Transaction Agreement, the Transactions or the provisions of this Order, or any other Order of this Court in these CCAA proceedings; or

(d) any transfer or assignment, or any change of control of an Acquired Entity arising from the implementation of the Transaction Agreement, the Transactions or the provisions of this Order.

13. ~~12.~~ For greater certainty, (a) nothing in paragraph ~~11~~12 hereof shall waive, compromise or discharge any obligations of the Acquired Entities or the Purchaser in respect of any Assumed Liabilities; (b) the designation of any Claim as an Assumed Liability is without prejudice to the Acquired Entities' and the Purchaser's right to dispute the existence, validity or quantum of any such Assumed Liability; and (c) nothing in this Order or the Transaction Agreement shall affect or waive the Acquired Entities' or Purchaser's rights and defences, both legal and equitable, with respect to any Assumed Liability, including, but not limited to, all rights with respect to entitlements to set-offs or recoupments against such Assumed Liability.

14. ~~13.~~ From and after the Effective Time, all Persons shall be deemed to have waived any and all defaults of any Petitioner then existing or previously committed by any Petitioner, or caused by any Petitioner, directly or indirectly, or noncompliance with any covenant, warranty, representation, undertaking, positive or negative pledge, term, provision, condition or obligations, expressed or implied, in any Continuing Contract, existing between such Person and any Acquired Entity directly or indirectly from the filing by the Petitioners under the CCAA and the implementation of the Transactions, including without limitation any of the matters or events listed in paragraph ~~11~~12 hereof, and any and all notices of default and demands for payment or any step or proceeding taken or commenced in connection therewith under a Continuing Contract shall be deemed to

have been rescinded and of no further force or effect; provided that, nothing herein shall be deemed to excuse the Purchaser or the Petitioners from performing their obligations under, or be a waiver of defaults by the Purchaser or the Petitioners under, the Transaction Agreement and the related agreements and documents, or affect the validity of the Implementation Steps.

15. ~~14.~~ From and after the Effective Time, any and all Persons shall be and are hereby forever barred, estopped, stayed and enjoined from commencing, taking, applying for or issuing or continuing any and all steps or proceedings, whether directly, derivatively or otherwise, and including without limitation, administrative hearings and orders, declarations and assessment, commenced, taken or proceeded with or that may be commenced, taken or proceeded with against the Purchaser or the Acquired Entities relating in any way to or in respect of any Excluded Assets, Excluded Contracts or Excluded Liabilities and any other claims, obligations and other matters which are waived, released, expunged or discharged pursuant to this Order; provided that, nothing herein shall affect the validity of the Implementation Steps.

16. ~~15.~~ From and after the Effective Time:

    (a) the nature of the Assumed Liabilities assumed by the Purchaser or retained by the Acquired Entities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of the Transactions or this Order;

    (b)  the nature of the Excluded Liabilities, including, without limitation, their amount and their secured or unsecured status, shall not be affected or altered as a result of their transfer to Residual Co. 1 or Residual Co. 2, as applicable;

    (c) any Person that prior to the Effective Time had a valid right or claim against the Acquired Entities under or in respect of any Excluded Contract or Excluded Liability (each an "**Excluded Liability Claim**") shall no longer have such right or claim against the Acquired Entities but will have an equivalent Excluded Liability Claim against Residual Co. 1 or Residual Co. 2, as applicable, in respect of the Excluded Contract and Excluded Liability from and after the Effective Time in its place and stead, and nothing in this Order limits, lessens or extinguishes the Excluded Liability Claim of any Person as against Residual Co. 1 or Residual Co. 2, as applicable; and

    (d) the Excluded Liability Claim of any Person against Residual Co. 1 or Residual Co. 2, as applicable, following the Effective Time shall have the same rights, priority and entitlement as such Excluded Liability Claim had against the applicable Acquired Entities prior to the Effective Time.

~~16. As of the Effective Time:~~

(a) Residual Co. shall be a company to which the CCAA applies; and

(b) Residual Co. shall be added as a Petitioner in these CCAA proceedings and all references in any Order of this Court in respect of these CCAA proceedings to (i) a "Petitioner" or the "Petitioners" shall refer to and include Residual Co., *mutatis mutandis*, and (ii) "Property" shall include the current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof, of Residual Co. (the "**Residual Co. Property**"), and, for greater certainty, each of the Charges, shall constitute charges on the Residual Co. Property.

**PRE-CLOSING REORGANIZATION**

17.    In completing the transactions contemplated in the Implementation Steps, the Petitioners be and are hereby authorized:

(a)    to execute and deliver any documents and assurances governing or giving effect to the Implementation Steps as the Petitioners and the Purchaser, in their discretion, may deem to be reasonably necessary or advisable to conclude the Implementation Steps, including the execution of such deeds, contracts or documents, as may be contemplated in the Transaction Agreement and all such deeds, contracts or documents are hereby ratified, approved and confirmed; and

(b)    to take such steps as are, in the opinion of the Petitioners and the Purchaser, necessary or incidental to the implementation of the Implementation Steps.

18.    The Petitioners be and are hereby permitted to execute and file notices of alteration, articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Implementation Steps and that such articles, documents or other instruments shall be deemed to be duly authorized, valid and effective notwithstanding any requirement under federal or provincial law to obtain director or shareholder approval with respect to such actions or to deliver any statutory declarations that may otherwise be required under corporate law to effect the Implementation Steps.

19.    This Order shall constitute the only authorization required by the Petitioners to proceed with the Implementation Steps and no director, shareholder or regulatory approval shall be required in connection with any of the steps contemplated pursuant to the

Implementation Steps save for those authorizations contemplated in the Transaction Agreement.

20. The Registrar of Companies ~~and the director~~ appointed pursuant to the British Columbia *Business Corporations Act* ~~be and are~~is hereby authorized and directed to accept and receive any articles of amendment, amalgamation, continuance or reorganization or such other documents or instruments as may be required to permit or enable and effect the Implementation Steps contemplated in the Transaction Agreement, filed by either the Petitioners, Residual Co. 1 or Residual Co. 2, as the case may be.

**RELEASES**

21. Effective as of the Effective Time, (a) the current and former directors, officers, employees, legal counsel and advisors of the Acquired Entities; (b) the Monitor and its legal counsel; (c) the CRO; and (d) the DIP Lenders, the Purchaser and their respective affiliates, and each of their respective current and former directors, officers, employees, legal counsel and advisors (in such capacities, collectively, the "**Released Parties**") shall be deemed to be forever irrevocably released by the Releasing Parties (as hereinafter defined) and discharged from any and all present and future claims (including, without limitation, claims for contribution or indemnity), liabilities, indebtedness, demands, actions, causes of action, counterclaims, suits, damages, judgments, executions, recoupments, debts, sums of money, expenses, accounts, liens, taxes, recoveries, and obligations of any nature or kind whatsoever (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, matured or unmatured or due or not yet due, in law or equity and whether based in statute or otherwise) based in whole or in part on any act or omission, transaction, dealing or other occurrence existing or taking place on or prior to the Effective Time (and, with respect to the current or former directors or officers of the Acquired Entities, on and after July 25, 2023), or undertaken or completed in connection with or pursuant to the terms of this Order, in respect of, relating to, or arising out of (x) the Petitioners, the business, operations, assets, property and affairs of the Petitioners wherever or however conducted or governed, the administration and/or management of the Petitioners, these CCAA proceedings and/or the U.S. Proceedings, or (y) the Transaction Agreement, the Support Agreement, any agreement, document, instrument, matter or transaction involving the Petitioners arising in connection with or pursuant to any of the foregoing, and/or the consummation of the Transactions (collectively, subject to the excluded matters below, the "**Released Claims**"), which Released Claims shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties~~; provided that, nothing~~.

22. Nothing in this paragraph or paragraph 21 shall waive, discharge, release, cancel or bar (A) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA or claim with respect to any act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, or

(B) any obligations of any of the Released Parties under or in connection with the Transaction Agreement, the Support Agreement and/or any agreement, document, instrument, matter or transaction involving the Petitioners arising in connection with or pursuant to any of the foregoing. "**Releasing Parties**" means any and all Persons (besides the Petitioners and their respective current and former affiliates), and their current and former affiliates' current and former members, directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, participants, subsidiaries, affiliates, partners, limited partners, general partners, affiliated investment funds or investment vehicles, managed accounts or funds, and each of their respective current and former members, equity holders, officers, directors, managers, principals, members, management companies, advisor board members, investment fund advisors or managers, employees, agents, trustees, investment managers, financial advisors, partners, legal counsel, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

23. 22. Effective as of the Effective Time, the Released Parties shall be deemed to be forever irrevocably released by each of the Petitioners and their respective current and former affiliates, and discharged from, any and all Released Claims held by the Petitioners and such current and former affiliates as of the Effective Time, which Released Claims shall be deemed to be fully, finally, irrevocably and forever waived, discharged, released, cancelled and barred as against the Released Parties; provided that, nothing in this paragraph shall waive, discharge, release, cancel or bar (a) any claim that is not permitted to be released pursuant to section 5.1(2) of the CCAA or claim with respect to any act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence; or (b) any obligations of any of the Released Parties under or in connection with the Transaction Agreement, the Support Agreement, and/or any agreement, document, instrument, matter or transaction involving the Petitioners arising in connection with or pursuant to any of the foregoing; provided further that, the releases set forth in this paragraph shall not include, nor limit or modify in any way, any claim (or any defenses) which any of the Petitioners may hold or be entitled to assert against any Released Party as of the Effective Time relating to any contracts, leases, agreements, licenses, bank accounts or banking relationships, accounts receivable, invoices, or other ordinary course obligations which are remaining in effect following the Effective Time., subject to the limitations set forth in paragraph 22(A) and (B).

24. 23. Without affecting or limiting the releases set forth in paragraphs 21 and 22through 23 hereof, effective as of the Effective Time, none of (a) the current and former directors, officers, employees, legal counsel and advisors of the Acquired Entities; (b) the Monitor and its legal counsel; (c) the CRO; and (d) the DIP Lenders, the Purchaser

and their respective affiliates, and their respective current and former directors, officers, employees, legal counsel and advisors (in such capacities, collectively, the "**Exculpated Parties**"), shall have or incur, and each Exculpated Party is ~~released and~~ exculpated from, any Causes of Action (as hereinafter defined) against such Exculpated Party for any act or omission in respect of, relating to, or arising out of the Transaction Agreement, the Support Agreement and/or the consummation of the Transactions, these CCAA proceedings, the U.S. Proceedings, the formulation, preparation, dissemination, negotiation, filing or consummation of the Transaction Agreement, the Support Agreement and all related agreements and documents, any transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Transactions, the pursuit of approval and consummation of the Transactions or the recognition thereof in the United States, and/or the transfer of assets and liabilities pursuant to this Order, except for ~~Causes of Action~~causes of action related to any act or omission that is determined by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence. ~~"**Causes of Action**" means any action, claim, cross claim, third party claim, damage, judgment, cause of action, controversy, demand, right, action, suit, obligation, liability, debt, account, defense, offset, power, privilege, license, lien, indemnity, interest, guaranty, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract or in tort, at law or in equity, or pursuant to any other theory of law or otherwise.~~.

25. ~~24.~~ All Persons are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to any and all claims or ~~Causes of Actions~~causes of actions released pursuant to this Order (including but not limited to the Released Claims), from (a) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any of the Released Parties or Exculpated Parties; (b) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or Exculpated Parties or their respective property; (c) commencing, conducting, continuing or making in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes a claim or might reasonably be expected to make a claim, in any manner or forum, including by way of contribution or indemnity or other relief, against one or more of the Released Parties or Exculpated Parties; (d) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any Encumbrance of any kind against the Released Parties or Exculpated Parties or their respective property;

or (e) taking any actions to interfere with the consummation of the Transactions; and any such proceedings will be deemed to have no further effect against such parties and will be released, discharged or vacated without cost.

26.    25. Without affecting or limiting the releases set forth in paragraphs 21 and 22through 23 hereof, effective as of the Effective Time, each Consenting Party (as hereinafter defined) shall be deemed to have consented and agreed to paragraphs 21 through 2525 hereof. "**Consenting Parties**" means any Person who is, at the Effective Time, a party to the Support Agreement.

27.    26. Notwithstanding:

(a)    these proceedings;

(b)    any applications for a bankruptcy order now or hereafter issued pursuant to the BIA in respect of the Petitioners, Residual Co. 1 or Residual Co. 2, and any bankruptcy order issued pursuant to any such applications; and

(c)    any assignment in bankruptcy made by or in respect of any of the Petitioners or Residual Co. 1 or Residual Co. 2;

the Transaction Agreement and the Transactions (including without limitation the transfer and vesting of the Excluded Assets, the Excluded Contracts and the Excluded Liabilities in Residual Co. 1 and Residual Co. 2, the transfer and vesting of the Purchased Interests in and to the Purchaser authorized herein or pursuant to the Transaction Agreement and the Implementation Steps) shall be binding on any trustee in bankruptcy that may be appointed in respect of any of the Petitioners and/or Residual Co. 1 and/or Residual Co. 2, as applicable, and shall not be void or voidable by creditors of the Petitioners or Residual Co. 1 or Residual Co. 2, nor shall they constitute nor be deemed to be a transfer at undervalue, fraudulent preference, assignment, fraudulent conveyance, or other reviewable transaction under the CCAA, the *Bankruptcy and Insolvency Act* or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

28.    27. Nothing in this Order, including the release of the Acquired Entities from the purview of the CCAA proceedings pursuant to paragraph 5(e)(e) hereof and the addition of Residual Co. as a Petitioner1 and Residual Co. 2 as Petitioners in these CCAA proceedings, shall affect, vary, derogate from, limit or amend, and FTI shall continue to have the benefit of, any and all rights and approvals and protections in favour of the Monitor at law or pursuant to the CCAA, the Initial Order, this Order, any other Orders in these CCAA proceedings or otherwise, including all approvals, protections and stays of proceedings in favour of FTI in its capacity as Monitor, all of which are expressly continued and confirmed.

**GENERAL**

29. ~~28.~~ Having been advised of the provisions of Multilateral Instrument 61-101 "Protection of Minority Security Holders in Special Transactions" relating to the requirement for "minority" shareholder approval in certain circumstances, no meeting of shareholders or other holders of Equity Claims (as defined in the CCAA) in the Petitioners is required to be held in respect of the Transactions and accordingly, there is no requirement to send any disclosure document related to the Transactions to such holders.

30. ~~29.~~ Following the Effective Time, the Purchaser shall be authorized to take all steps as may be necessary to effect the discharge of the Claims and Encumbrances (other than the Permitted Encumbrances) as against the Purchased Interests, the Acquired Entities and the Retained Assets.

31. ~~30.~~ Following the Effective Time, the title of these proceedings shall be hereby changed by removing the current Petitioners that are not Excluded Entities and adding Residual Co. 1 and Residual Co. 2.

32. ~~31.~~ Endorsement of this order by counsels other than counsel for the Petitioners is hereby dispensed with.

33.    32. THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body, wherever located, to give effect to this Order and to assist the Petitioners and their agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Petitioners as may be necessary or desirable to give effect to this Order or to assist the Petitioners and its agents in carrying out the terms of this Order.

THE FOLLOWING PARTIES APPROVE THE FORM OF THIS ORDER AND CONSENT TO EACH OF THE ORDERS, IF ANY, THAT ARE INDICATED ABOVE AS BEING BY CONSENT:

_____

Signature of ☑ lawyer for the Petitioners
DLA Piper (Canada) LLP (Jeffrey D. Bradshaw)

BY THE COURT

REGISTRAR

**Schedule "A"**

1. NextPoint Financial, Inc.

2. NPI Holdco LLC

**Liberty Tax Entities**

1. LT Holdco, LLC

2. LT Intermediate Holdco, LLC

3. SiempreTax+ LLC

4. JTH Tax LLC

5. Liberty Tax Holding Corporation

6. Liberty Tax Service, Inc.

7. JTH Financial, LLC

8. JTH Properties 1632, LLC

9. Liberty Credit Repair, LLC

10. Wefile LLC

11. JTH Tax Office Properties, LLC

12. LTS Software LLC

13. JTH Court Plaza, LLC

14. 360 Accounting Solutions, LLC

15. LTS Properties, LLC

**Community Tax Entities**

1. CTAX Acquisition LLC

2. Community Tax Puerto Rico LLC

3. Community Tax LLC

**Loan Me Entities**

1. NPLM Holdco LLC

2. MMS Servicing LLC

3. LoanMe, LLC

4.   LoanMe Funding, LLC

5.   LM Retention Holdings, LLC

6.   LoanMe Stores LLC

7.   LM BP Holdings, LLC

8.   InsightsLogic LLC

9.   LM 2020 CM I SPE, LLC

**Schedule "B" – List of Counsel**

| Name of Counsel | Party Representing |
| --- | --- |
| Lisa Hiebert | The Monitor |
| Mary Buttery, KC<br><br>Marc Wasserman<br><br>Dave Rosenblat | BasePoint |
| Lance Williams | First Century Bank, N.A. |
| Martin Sennott | Drake Enterprises Ltd. |
| David Gruber | TMI Trust Company |
| Kieran Siddall | Chilmark |
|  |  |
|  |  |
|  |  |

- 4 -

**Schedule "◆C" – Monitor's Certificate**

No. S-235288
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,
R.S.C., 1985 c. C-36, AS AMENDED

AND

IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF NEXTPOINT
FINANCIAL, INC. AND THOSE PARTIES LISTED ON SCHEDULE "A"

**MONITOR'S CERTIFICATE**

A. Pursuant to an Initial Order of the Honourable Madam Justice Fitzpatrick of the British Columbia Supreme Court (the "**Court**") dated July 25, 2023, the Petitioners were granted protection from their creditors pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-46, as amended (as amended, the "**CCAA**"), and FTI Consulting Canada Inc. was appointed as the monitor (the "**Monitor**").

B. Pursuant to an Approval and Vesting Order of the Court dated ●October 31, 2023 (the "**Order**"), the Court approved the transactions (collectively, the "**Transactions**") contemplated by the Transaction Agreement (as amended in the form attached as Exhibit ● hereto, the "**Transaction Agreement**") and ordered, *inter alia*, (a) that all of the Acquired Entities' right, title and interest in and to the Excluded Assets, the Excluded Contracts and the Excluded Liabilities shall vest absolutely and exclusively in and to Residual Co. 1 and Residual Co. 2, as applicable; and (b) the vesting of all of the right, title and interest in and to the Purchased Interests absolutely and exclusively in and to the Purchaser, free and clear of any Encumbrances.

C. Capitalized terms used but not defined herein have the meanings ascribed to them in the Order.

**THE MONITOR CERTIFIES** the following:

1. ~~1.~~ The Monitor has received written confirmation from the Purchaser and NextPoint, in form and substance satisfactory to the Monitor, that all conditions to closing have been satisfied or waived by the parties to the Transaction Agreement.

- 5 -

2. This Monitor's Certificate was delivered by the Monitor at _____ on _____, 2023 (the "**Effective Time**").

**FTI CONSULTING CANADA INC., in its capacity as Monitor of the Petitioners, and not in its personal capacity**

By: _____

    Name:

    Title:

**Schedule "♦" – Permitted Encumbrances**

No. S-235288
Vancouver Registry

**IN THE SUPREME COURT OF BRITISH COLUMBIA**

IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT,
R.S.C., 1985 c. C-36, AS AMENDED

AND

IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT OF NEXTPOINT FINANCIAL, INC. AND
THOSE PARTIES LISTED ON SCHEDULE "A"

PETITIONERS

---

**ORDER MADE AFTER APPLICATION**

---

DLA Piper (Canada) LLP
Barristers & Solicitors
Suite 2700
1133 Melville Street
Vancouver, BC  V6E 4E5

Tel. No. 604.687.9444
Fax No. 604.687.1612

File No.:  109926-00007                    SAA/day

CAN: 45063313.3CAN: 45063313.7
LEGAL_1:82448646.4

| Summary report:<br>**Litera Compare for Word 11.2.0.54 Document comparison done on<br>10/31/2023 7:19:28 PM** | |
| --- | --- |
| **Style name:** DLAPiper | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:**<br>C:\Users\ns43253\AppData\Local\Litera\Temp\A69557\2023-10-11 Order made<br>After Application - RVO.DOCX | |
| **Modified filename:**<br>C:\Users\ns43253\AppData\Local\Litera\Temp\A69557\2023-10-31 Order made<br>After Application - RVO.docx | |
| **Changes:** | |
| Add | 177 |
| Delete | 87 |
| Move From | 10 |
| Move To | 10 |
| Table Insert | 1 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 285 |