## EXHIBIT B TO NOTICE

**Verified Petition**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| NEXTPOINT FINANCIAL INC., *et al.,* | Case No. 23-10983 (TMH) |
| Debtors in a foreign proceeding.[1] | (Joint Administration Requested) |

### VERIFIED PETITION FOR (I) RECOGNITION OF FOREIGN MAIN PROCEEDINGS, OR, IN THE ALTERNATIVE, FOREIGN NON-MAIN PROCEEDINGS, (II) RECOGNITION OF FOREIGN REPRESENTATIVE, AND (III) RELATED RELIEF UNDER CHAPTER 15 OF THE BANKRUPTCY CODE

NextPoint Financial Inc. ("**NextPoint Financial**"), in its capacity as the duly-appointed foreign representative (the "**Foreign Representative**") for the above-captioned foreign debtors as "debtors" as defined in 11 U.S.C. § 1502 (collectively, the "**Debtors**"), subject to the proceedings (the "**Canadian Proceedings**") currently pending before the Supreme Court of British Columbia (the "**Canadian Court**"), initiated under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36 (as amended, the "**CCAA**"), by and through its undersigned counsel, hereby submits this *Verified Petition for (I) Recognition of Foreign Main Proceedings, or, in the Alternative, Foreign Non-Main Proceedings, (II) Recognition of Foreign Representative, and (III) Related Relief Under Chapter 15 of the Bankruptcy Code* (the "**Verified Petition**") in furtherance of the Official Form 401 Petitions [D.I. No. 1] (each a "**Petition**, and collectively with the Verified Petition, the "**Chapter 15 Petition**"), filed as of the date hereof (the "**Petition Date**") under

---

[1] The Debtors in these chapter 15 proceedings, together with the last four digits of their business identification numbers are: NextPoint Financial Inc. (6134); LT Holdco, LLC (8090); LT Intermediate Holdco, LLC (0811); SiempreTax+ LLC (6145); JTH Tax LLC (8391); Liberty Tax Holding Corporation (N/A); Liberty Tax Service, Inc. (N/A); JTH Financial, LLC (1522); JTH Properties 1632, LLC (0248); Liberty Credit Repair, LLC (5427); Wefile, LLC (6778); JTH Tax Office Properties, LLC (0248); LTS Software LLC (6450); JTH Court Plaza, LLC (2116); 360 Accounting Solutions, LLC (8312); LTS Properties, LLC (9088); NPI Holdco LLC (1936); CTAX Acquisition LLC (6975); Community Tax Puerto Rico LLC (4349); Community Tax LLC (8001); NPLM Holdco LLC (8132); MMS Servicing LLC (7430); LoanMe, LLC (5663); LoanMe Funding, LLC (2305); LM Retention Holdings, LLC (N/A); LoanMe Trust-Prime 2018-1 (0257); LoanMe Trust SBL 2019-1 (N/A); LoanMe Stores LLC (3810); InsightsLogic LLC (0818); and LM 2020 CM I SPE, LLC (N/A).  The location of the Debtors' headquarters is 500 Grapevine Hwy, Suite 402, Hurst, TX 76054, and the Debtors' mailing address is 1133 Melville St., Suite 2700, Vancouver, BC V6E 4E5.

sections 1504 and 1515 of chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing these chapter 15 cases (the "**Chapter 15 Cases**") and seeking an order and final decree granting recognition of the Canadian Proceedings as "foreign main proceedings" or alternatively as foreign non-main proceedings, as each is defined in section 1502(4) of the Bankruptcy Code.

Contemporaneously herewith, and in support of the Chapter 15 Petition, the Foreign Representative files (a) the *Memorandum of Law in Support of Verified Petition for Recognition of Foreign Main Proceeding and Certain Related Relief* (collectively, the "**Recognition Memorandum**"), (b) the *Declaration of Peter Kravitz in Support of Debtors' Verified Petition for (I) Recognition of Foreign Main Proceedings, (II) Recognition of Foreign Representative, and (III) Debtors' Motion for Certain Provisional Relief* ("**Kravitz Declaration**"), and (c) the *Declaration of Colin Brousson as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code*, (the "**Brousson Declaration**").

The Foreign Representative petitions this Court as follows:

## PRELIMINARY STATEMENT

1.      The Debtors are providers of financial and tax services for small businesses and consumers in Canada and the United States. On July 25, 2023, to address the Debtors' overburdened debt structure, the Debtors entered into a Restructuring Support Agreement (the "**RSA**") with certain of their secured creditors whereby, among other things, the Petitioners agreed to commence the Canadian Proceedings pursuant to the CCAA and these ancillary Chapter 15 Cases in the United States. The RSA embodies a restructuring (the "**Restructuring**") by which the Debtors will engage in a marketing and sale and investment solicitation process of the Debtors'

2

businesses to maximize value for all stakeholders. To ensure the success of the Restructuring, the board of directors of NextPoint Financial – which is the ultimate parent company of all of its Debtor subsidiaries – (a) appointed Peter Kravitz to serve as its chief restructuring officer and as an authorized signatory of NextPoint Financial, (b) authorized NextPoint Financial to commence these Chapter 15 Cases to petition this Court for recognition of the Canadian Proceedings as foreign main, or in the alternative, as foreign non-main proceedings, and (c) appointed NextPoint to serve as Foreign Representative of the Debtors. (*See* Petitions, Ex. A). On the Petition Date, the Foreign Representative filed the Chapter 15 Petitions for each of the Debtors, commencing these Chapter 15 Cases.

2.      Recognition of the Canadian Proceedings is imperative to the success of the Restructuring because it is aimed at protecting the Debtors and their assets within the territorial jurisdiction of the United States from creditor and any other actions once parties learn of the Canadian Proceedings, and it will complement the moratorium imposed under CCAA within Canada. Recognition, if granted, will serve chapter 15's purpose – to allow for centralized administration of the Debtors' assets by establishing a means of coordination between the insolvency court in Canada and this Court and leveling the playing field for the Debtors, their creditors, franchisees and other interested parties in Canada and the United States. Without this Court's recognition of the Canadian Proceedings, the Debtors' operations in the United States may be jeopardized due to creditor and franchisee enforcement actions, which would have a devastating effect on the Debtors and their Restructuring, resulting in diminished, if any, recoveries to the creditors of the Debtors.

3.      The recognition and relief sought by the Foreign Representative in these Chapter 15 Cases will ensure that these Chapter 15 Cases and the Canadian Proceedings are conducted in

3

a fair, efficient, uninterrupted, and centralized manner with the goal of providing utmost protections and maximizing the value of the Debtors' assets for the benefit of all stakeholders, including creditors, preserving jobs of the Debtors and their franchisees, and ensuring uninterrupted service to the Debtors' customers.

4.      As required by section 1515(b) of the Bankruptcy Code, the Petition is accompanied by a copy of the relevant Canadian Court orders commencing the Canadian Proceedings and appointing the Foreign Representative. *See* Petition [D.I. 1].  In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative has also filed a disclosure and verified statement, identifying all foreign proceedings with respect to each Debtor known to the Foreign Representative.  *See* Petition [D.I. 1].  The Foreign Representative respectfully submits that the Chapter 15 Petitions satisfy the requirements of chapter 15 of the Bankruptcy Code because the Canadian Proceedings is a "foreign proceeding" as defined in section 101(23) of the Bankruptcy Code, the Foreign Representative is a "foreign representative" as defined in section 101(24) of the Bankruptcy Code for each of the Debtors, and all other requirements for recognition have been fulfilled.  Additionally, the Chapter 15 Petition satisfies the requirements in sections 1515 and 1517 of the Bankruptcy Code, mandating recognition.  For these reasons, as more fully explained below, the Foreign Representative respectfully requests that the Court grant the relief requested in this Chapter 15 Petition.

4

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over these cases under sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware (Sleet, C.J.), dated February 29, 2012.

6.      The Foreign Representative has properly commenced each case under sections 1504 and 1515 of the Bankruptcy Code.  Recognition of a foreign proceeding and other matters under chapter 15 of the Bankruptcy Code are core matters under 28 U.S.C. § 157(b)(2)(P).

7.      Venue for this case is proper in this Court under section 1410 of title 28 of the United States Code because the Debtors have their principal assets in the United States located in Delaware.  The Debtors have property in Delaware via their indirect ownership in the equity of Delaware entities, and each debtor has an interest in a retainer on deposit with the Delaware office of DLA Piper LLP (US) in which the Debtors have a continuing ownership interest.  These funds are held in a Wells Fargo bank account in accordance with Delaware Rule of Professional Responsibility 1.5.  *See* Kravitz Decl. ¶ 150.

8.      As required by rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Foreign Representative consents to the entry of final orders or judgments by the Court if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

9.      The statutory bases for the relief requested in this Chapter 15 Petition are sections 101(23)-(24), 105(a), 306, 1502, 1504, 1507, 1509, 1510, 1512, 1515, 1516, 1517, 1520, 1521, 1522, and 1524 of the Bankruptcy Code.

5

## FACTUAL BACKGROUND

**A.      The Debtors' Corporate Structure and Business Operations**

10.      NextPoint Financial is a Canada-based company that offers a marketplace for financial services targeting consumers and small businesses. The "**NextPoint Group**," as demonstrated on the corporate chart attached as Exhibit A to the Kravitz Declaration, includes NextPoint Financial and an intermediate holding company, NPI Holdco LLC ("**NPI Holdco**"), incorporated in Delaware, and twenty-nine (29) subsidiaries incorporated in several jurisdictions, and operating through three segments: Liberty Tax, Community Tax, and LoanMe, consisting of the following subsidiaries:

> a.      **Liberty Tax companies**: these companies are comprised of LT Holdco, LLC, LT Intermediate Holdco, LLC, JTH Tax, LLC, JTH Financial, LLC, JTH Properties 1632 LLC, JTH Tax Office Properties, LLC, Wefile LLC, Liberty Credit Repair, LLC, Liberty Tax Holding Corporation, Liberty Tax Service Inc., LTS Software LLC, JTH Court Plaza, LLC, 360 Accounting Solutions, and LLC LTS Properties, LLC (collectively, "**Liberty Tax**"). The various Liberty Tax companies are incorporated under the laws of Ontario, Delaware, and Virginia. The Liberty Tax segment provides income tax services in the United States and Canada with over 250 locations in Canada (headquartered in Markham, Ontario) and 2300 locations in the United States (headquartered in Hurst, Texas). The vast majority of Liberty Tax's operations are franchised to small business owners and operators pursuant to the terms of a franchise agreement with JTH Tax. Liberty Tax also operates a limited number of company-owned offices during tax season in order to meet customer demand.

> b.      **Community Tax companies**: these companies are comprised of CTAX Acquisition LLC, Community Tax Puerto Rico LLC, and Community Tax LLC (collectively, "Community Tax"), and incorporated variously under the laws of Delaware and Illinois.  The Community Tax segment provides tax debt resolution services at both the federal and state level, as well as other tax related services and offers tax resolution services by first investigating outstanding tax debts, then negotiating the resolution of those debts with the IRS, on behalf of their customers. Community Tax is based in Chicago, Illinois and has offices in Jacksonville, Florida and San Juan, Puerto Rico.

> c.      **LoanMe companies**: these companies are comprised of NPLM Holdco LLC, LoanMe, LLC, MMS Servicing LLC, LoanMe Funding, LLC, LM

6

Retention Holdings, LLC, LoanMe Stores LLC, LoanMe Trust Prime 2018-1, LoanMe Trust SBL 2019-1, InsightsLogic LLC, and LM 2020 CM I SPE LLC (collectively, "**LoanMe**"), and incorporated under the laws of Delaware. The LoanMe segment is a specialty finance lender in the U.S. that was previously in the business of originating, acquiring, and marketing unsecured consumer installment loans to individuals and businesses, but has been in the process of winding down operations since June 2022. LoanMe's small business loan program previously operated in 31 States and its personal loan program in nine States.

11.     NextPoint Financial was incorporated on July 16, 2020, under the Business Corporations Act (British Columbia) as a special purpose acquisition corporation for the purpose of effecting, directly or indirectly, an acquisition of one or more businesses or assets, by way of a business combination.  NextPoint Financial acquired Liberty Tax, a leading provider of tax preparation services, and LoanMe, an online lender and loan marketer, in July 2021, and Community Tax, a tax debt resolution service, in December 2021 (in each case indirectly through NPI Holdco).

12.     NextPoint Financial's registered office is in Vancouver, British Columbia. NextPoint Financial does business in the United States and Canada, both directly and through its subsidiaries Liberty Tax, Community Tax, and LoanMe (the "**Subsidiaries**").

## B.     The Debtors' Capital Structure

13.     The Debtors' accrued prepetition funded debt obligations approximate $284 million under their currently outstanding, prepetition credit facilities.

**NP/LT Credit Facility Agreement**

14.     Each of NPI Holdco and LT Holdco, LLC ("**LT Holdco**") are borrowers under a Credit Agreement, originally dated as of July 2, 2021 and as amended through Amendment No. 5 thereto dated as of June 30, 2023 (as may be amended, restated, supplemented, or otherwise modified from time to time, the "**NP/LT Credit Agreement**") with BP Commercial Funding Trust, Series SPL-X, as administrative agent and collateral agent (the "**NP/LT Facility Agent**")

7

on behalf of the lenders thereunder (with respect to the NP Revolving Credit Loans (as defined below), the "**NP Lenders**", and with respect to the LT Term Loan (as defined below), the "**LT Lenders**").

15.     Under the NP/LT Credit Agreement, the NP Lenders originally agreed to extend a revolving credit facility to NPI Holdco of $200 million. The NP/LT Credit Agreement was subsequently amended and restructured on November 1, 2022 to (i) reduce the maximum revolving credit facility commitment available to NPI Holdco at $130 million, and (ii) provide a new $74.4 million term loan to LT Holdco, discussed further below. As of July 14, 2023, there was approximately $125.7 million in outstanding principal amount of revolving loans borrowed by NPI Holdco under the NP/LT Credit Agreement (the "**NP Revolving Credit Loans**"). Interest is payable on outstanding NP Revolving Credit Loans at a rate of 13% per annum, payable monthly. The NP Revolving Credit Loans mature on July 2, 2025. The draw maturity for additional NP Revolving Credit Loans under the NP/LT Credit Agreement matured on July 2, 2023.

16.     All obligations of NPI Holdco under the NP/LT Credit Agreement are secured against all assets of NextPoint Financial, including restricted subsidiaries (subordinated only to the claims of the LT Lenders (as defined below) in respect of the LT Term Loan (as defined below), pursuant to that certain Intercreditor Agreement, dated as of November 1, 2022, by and among the NP/LT Facility Agent, the NP Lenders and the LT Lenders, the "**Intercreditor Agreement")**) and by guarantees provided by NextPoint, all companies comprising Liberty Tax (other than Liberty Tax Holding Corporation and Liberty Tax Service, Inc.) and by three companies within the LoanMe group of companies (NPLM Holdco LLC, LoanMe, LLC and InsightLogic LLC) (collectively, the "**Guarantors**").

**LT Term Loan**

8

17.     LT Holdco is a borrower under the NextPoint Revolver Facility Agreement pursuant to which the NextPoint Facility Agent advanced a term loan of $74.4 million (the "**LT Term Loan**"). As of July 14, 2023, the LT Term Loan was fully drawn. Interest on the LT Term Loan accrues at the SOFR Reference Rate plus 9.50% per annum. The LT Term Loan matures on July 2, 2025.

18.     All obligations of LT Holdco under the LT Term Loan are secured against the assets of NextPoint, NPI Holdco and LT Holdco, and by guarantees provided by the Guarantors; provided, that pursuant to the Intercreditor Agreement, all property, assets and interests in property owned by the LoanMe group of companies and all equity interests therein are solely for the benefit of the NP Lenders.

**Community Tax Facility**

19.     The Community Tax Facility is comprised of a single advance term loan to CTAX Acquisition LLC ("**CTAX LLC**") as borrower in the amount of $70 million, as follows:

    a.    $45 million of senior debt held by Drake Enterprises Ltd. which bears interest at a rate of 9% per annum (the "**Drake Debt**"). The Drake Debt is secured on a first lien basis against all property and interests in property of CTAX LLC or any subsidiary thereof.

    b.    $15 million of subordinated debt held by Frontier Capital Group Ltd. which bears interest at a rate of 11% per annum (the "**Frontier Debt**"). The Frontier Debt is secured on a second lien basis against all property and interests in property of CTAX LLC or any subsidiary thereof; and

    c.    $10 million of subordinated debt to BP Commercial Funding Trust II, Series SPL-I which bears interest at a rate of 11% per annum, paid monthly (the

9

"**BP Debt**"). The BP Debt is secured on a second lien basis against all property and interests in property of CTAX LLC or any subsidiary thereof, (collectively, the "**Community Tax Facility**").

20.     The Community Tax Facility is guaranteed by both Community Tax Puerto Rico LLC and Community Tax LLC. It may be prepaid, with final repayment due on the maturity date (December 30, 2027), and monthly interest payments beginning on September 1, 2022.

21.     As of May 31, 2023, approximately $70 million was outstanding on the Community Tax Facility.

**Unsecured Debt**

22.     The unsecured debt of the NextPoint Group primarily consists of the following:

    a.     unsecured trade debt which, as of July 21, 2023, totals approximately US$5.25 million in the United States and CA$15,000 in Canada;

    b.     unsecured obligations of approximately $1.4 million owing to Frontier Capital Group, Ltd. under an unsecured note issued by NextPoint and having a maturity date of April 30, 2026 (the "Frontier Note"). Pursuant to the Frontier Note, NextPoint commenced required monthly payments on the Frontier Note of US$45,369.87 on May 1, 2023, and which payments are scheduled to continue for the next 35 months;

    c.     an unsecured loan of US$500,000, advanced by the U.S. Small Business Administration and guaranteed by Jonathan Williams and Bliksum, LLC to LoanMe, LLC, bearing interest at a rate of 3.75%;

    d.     various settlement and litigation related obligations.

23.     In addition to the foregoing unsecured debt, the NextPoint Group has various intercompany obligations outstanding, including the following:

10

    a.      NextPoint is owed approximately US$85 million by its various subsidiaries relating to advances made in order to fund their continuing operations, including US$77.8 million by LoanMe and $7.4 million by Community Tax; and

    b.      Liberty Tax is owed approximately US$30.8 million by NextPoint.

24.      The significant intercompany obligation between Liberty Tax and NextPoint is the result of the disproportionate share of operating costs for the NextPoint Group as a whole that Liberty Tax has borne during the past years. As discussed further below, the Liberty Tax business is profitable and viable and, as a result, has funded approximately US$31 million to NextPoint which, in turn, has pushed such funds down to the Community Tax and LoanMe business lines to fund their daily operations and, since mid-2022, LoanMe's wind down. Such business lines have been unable to either service their debt or fund their normal course operating expenses without funds from Liberty Tax by means of the foregoing intercompany funding arrangements.

### C.      The Debtors' Financial Performance

25.      The NextPoint Group maintains total leverage ratio of approximately 18.8 times debt to earnings before interest, taxes, depreciation, and amortization ("**EBITDA**"), significantly constraining the NextPoint Group's ability to raise additional capital or service its debt obligations. At the Community Tax level, the total leverage ratio is currently above 27.0 times debt to EBITDA. Based on the NextPoint Group's free cash flow metrics, it would take the current organization over twenty-five (25) years to repay solely its principal obligations. The NextPoint Group does not

ACTIVE\1601488298.14

believe there is a viable and sustainable path forward for the business with the current capital structure constraints.

## EVENTS LEADING TO THE COMMENCEMENT OF THE DEBTORS' ADMINISTRATION

26.     The Petitioners are over-leveraged and have recurring operating losses, working capital deficiencies, and insufficient cash flow to meet their obligations. As of July 14, 2023, the NextPoint Group has an outstanding debt load of approximately US$285 million. It has a financial leverage ratio across the enterprise of approximately 18.8, constraining its ability to raise additional capital, service its debt obligations or raise additional capital. Community Tax's financial leverage is currently in excess of 27.0 times debt to EBITDA.

27.     Based on the NextPoint Group's free cash flow metrics, management forecasts that it will take the current organization over twenty-five (25) years to repay its principal obligations (including interest, fees, penalties, etc.). Management is of the view that there is no viable and sustainable path forward for the NextPoint Group based on the current capital structure without a significant restructuring.

28.     The current financial situation faced by the NextPoint Group is the result of macroeconomic factors caused by the novel coronavirus 2019 pandemic ("**COVID-19**"), which led to an unsustainable capital structure driven by outsized leverage to the businesses' ability to service.

29.     In response to COVID-19, tax authorities decreased their enforcement steps, which reduced Community Tax's new client creation rates and led to lower revenues, year over year, from both Liberty Tax and Community Tax.

30.     As a result, the Debtors are over-leveraged and have significant recurring operating losses, working capital deficiencies, and insufficient cash flow to meet their obligations.

12

31.     Recognizing the need to restructure the NextPoint Group's business and its debt load in order to better position it for long-term success, in June 2022, LoanMe announced that it would cease further loan originations and would only continue to service its outstanding loans. In September 2022, in response to continuing financial difficulties, the NextPoint Group determined that it needed to restructure its business to refocus its resources solely on its Liberty Tax and Community Tax segments. The NextPoint Group accordingly announced that it would be winding down the LoanMe segment on a go forward basis. Such wind down efforts have been ongoing.

32.     In addition to winding down LoanMe, on September 30, 2022, the NextPoint Group completed a financial and organizational restructuring with BP Commercial Funding Trust II, Series SPL-I ("**BP SPL-1**") in which NextPoint and BP SPL-1 entered into two Assignment of Interest and Foreclosure Consent Agreements. Pursuant to such agreements, BP SPL-1 received 100% of the equity in two LoanMe special purpose entities in consideration for a $12.0 million promissory note of NextPoint in favour of BP SPL-1 at a zero coupon, with an original maturity date of December 31, 2023. On February 27, 2023, NextPoint extended the maturity date and modified the repayment schedule and applicable interest rate. The maturity date was extended to January 2, 2026, with the zero-coupon staying in place through maturity. The LoanMe special purpose entities represented approximately 90% of LoanMe's loan portfolio.

33.     Finally, as discussed above, on November 1, 2022, NextPoint and the NextPoint Facility Agent entered into a Waiver and Amendment to the NextPoint Revolving Credit Agreement, which, among other things, set the maximum revolving credit facility commitment at $130.0 million and provided for a new $74.4 million term loan to LT Holdco. Proceeds from the new LT Term Loan were used by the NextPoint Group to provide additional working capital and

13

ACTIVE\1601488298.14

to pay down the outstanding principal balance drawn under the existing NextPoint Revolving Credit Agreement.

34.     While the foregoing resulted in various positive financial and operational benefits for the NextPoint Group, such efforts were not sufficient to address the NextPoint Group's overleveraged financial position and cash flow constraints.

35.     As part of its efforts to restructure for the benefit of stakeholders, the NextPoint Group commenced discussions in or about June 2023, with its primary secured lender, Basepoint Capital (through its various wholly owned funding trusts comprising the NextPoint Facility Lenders and BP Debt lenders, collectively, the "**BP Lenders**"), regarding the terms on which it would support a restructuring of the Debtors. Such good faith, arm's-length negotiations were fruitful and, on July 25, 2023, the BP Lenders, NextPoint, NPI Holdco, various entities comprising Liberty Tax, Community Tax and various entities comprising LoanMe (the "**RSA Company Parties**") executed the RSA.

36.     Despite the Debtors' efforts in executing a restructuring, certain of the Debtors' lenders have not participated in the process. Specifically, Frontier Capital Group Ltd. is not a party to the RSA. Additionally, during the months leading up to the commencement of the Debtors' administration, the Debtors have received multiple communications from various shareholders threatening to commence litigation and take further action.

37.     The Debtors have operations throughout the United States and have many creditors and contract counterparties in the United States that may be in a position to take action against the Debtors.

## COMMENCEMENT OF THE DEBTORS' ADMINISTRATION UNDER THE ACT

38.     After careful consideration of the Debtors' financial position, including seeking external professional advice of legal and financial advisers, in May 2023, NextPoint Financial retained Province, LLC to advise with respect to restructuring alternatives. Shortly thereafter, in July of 2023, Peter Kravitz was appointed as Chief Restructuring Officer.

39.     On July 25, 2023, NextPoint Financial entered into an RSA the BP Lenders (various wholly owned funding trusts of Basepoint Capital comprising the NextPoint Facility Lenders and BP Debt lenders), Drake and the RSA Company Parties (NextPoint, NPI Holdco, various entities comprising Liberty Tax, Community Tax and various entities comprising LoanMe) entered into the RSA.

40.     Under the terms of the RSA, the BP Lenders, Drake and the RSA Company Parties have agreed to cooperate with each other in good faith and use commercially reasonable efforts with respect to the pursuit, approval, implementation and consummation of the Restructuring contemplated by the RSA as well as the negotiation, drafting, execution and delivery of the Definitive Documents (as defined in the RSA) to implement the Restructuring.

41.     The RSA parties have also agreed to a series of milestones that will help guide the restructuring process:[2]

| Milestone | Date |
|---|---|
| RSA Company Parties shall commence proceedings under the CCAA in the Canadian Court and obtained an Initial Order in form and substance satisfactory to the BP Lenders, acting reasonably | July 26, 2023 |

---

[2]     In the event of any conflict or inconsistency between the terms and conditions hereof and any terms or conditions set forth in any purchase order or other document relating to the transactions contemplated by this Agreement, the terms and conditions set forth in this Agreement shall prevail. Capitalized terms used but not defined in this paragraph shall have the meanings ascribed to them in the RSA.

15

| | |
|---|---|
| The Foreign Representative of the RSA Company Parties shall have commenced the Chapter 15 Proceedings and sought a temporary restraining order in the U.S. Bankruptcy Court to provide "stay" relief pending entry of an order recognizing the Initial Order (defined below) | July 26, 2023 |
| RSA Company Parties shall serve an application for approval of the sales and investment solicitation process ("**SISP**") in the Canadian Court | July 27, 2023 |
| Foreign Representative shall file a motion with the U.S. Bankruptcy Court for entry of an order recognizing and enforcing the Initial Order | 2 business days after entry of the Initial Order |
| RSA Company Parties shall obtain an order from the Canadian Court approving the SISP (the "**SISP Order**"), subject to court availability | August 4, 2023 |
| The Foreign Representative shall file a motion with the U.S. Bankruptcy Court for an order recognizing and enforcing the SISP Order | 2 business days after entry of the SISP Order |
| The Foreign Representative shall obtain an order recognizing and enforcing the Initial Order | August 25, 2023 |
| The Foreign Representative shall obtain an order recognizing and enforcing the SISP Order | August 28, 2023 |
| RSA Company Parties shall obtain a vesting order from the Canadian Court, subject to court availability | September 15, 2023 if no letters of intent are received by the deadline set forth in the SISP; October 6, 2023, if no Qualified Bids are received by the Qualified Bid Deadline; or 9 days after the completion of the Auction |
| The Foreign Representative shall file a motion with the U.S. Bankruptcy Court for an order recognizing and enforcing the vesting order | 2 business days after entry of the Vesting Order |
| The Foreign Representative shall obtain the Vesting Recognition Order | 14 days after the entry of the Vesting Order |
| The Restructuring shall close, provided that to the extent the only condition to the closing of the Restructuring that remains outstanding is the receipt of regulatory approval(s), the Outside Date shall automatically be extended for another 60 days | 14 days after the date that the Foreign Representative obtains the Vesting Recognition Order (the "**Initial Outside Date**") or such later dates as may be determined by the Required Consenting BP Lenders on written notice to the other Parties (the "**Outside Date**") |

ACTIVE\1601488298.14

42.     On July 25, 2023, the Debtors commenced the Canadian Proceedings to implement the Restructuring under the supervision of the Canadian Court. The same day, the Canadian Court entered an initial order (the "**Initial Order**") appointing FTI Consulting Canada Inc. as monitor and authorizing NextPoint Financial to act as Foreign Representative of the Debtors, with Mr. Kravitz having been granted authority in the Initial Order to act as the chief restructuring officer of the Debtors and an authorized officer of the Canadian Court.

## THE CHAPTER 15 FILING

43.     On the date hereof (the "**Petition Date**"), the Foreign Representative filed petitions under chapter 15 of the Bankruptcy Code for recognition of the Canadian Proceedings, thereby commencing the Debtors' Chapter 15 Cases.

44.     Also on the Petition Date, the Foreign Representative filed that certain *Ex Parte Motion for Temporary Restraining Order and Other Provisional Relief Under Section 1519 of the Bankruptcy Code and, After Notice and a Hearing, a Preliminary Injunction* (the "**Provisional Relief Motion**") seeking entry of an order (the "**Provisional Relief Order**") granting the relief requested in the Provisional Relief Motion shortly after the commencement of these Chapter 15 Cases.

45.     The Foreign Representative anticipates that the Canadian Court will enter an amended and restated Initial Order (the "**Amended and Restated Initial Order**") on or around August 3, 2023. A description of the relief provided in the Initial Order is set forth below and in the Provisional Relief Motion filed contemporaneously herewith.  By entry of the Amended and Restated Initial Order, the relief granted in the Initial Order will be extended beyond the initial ten (10) day period.

17

46.     Additional information about the Debtors' business and operations, the events leading up to the filing of these Chapter 15 Cases, and the facts and circumstances surrounding the Canadian Proceedings and these Chapter 15 Cases are set forth in the contemporaneously filed Kravitz Declaration, incorporated into this Verified Petition by this reference.

## RELIEF REQUESTED

47.     Based on the foregoing, the Kravitz Declaration, and the Brousson Declaration offered in support of the Chapter 15 Petition, together with the materials attached to them, the Foreign Representative requests that this Court recognize the Canadian Proceedings as a foreign main proceeding under sections 101(23), 1502(4), and 1517 of the Bankruptcy Code and grant related relief under sections 1520 and 1521 of the Bankruptcy Code.

48.     After notice and a hearing at which this Chapter 15 Petition is considered, the Foreign Representative seeks entry of a final order, substantially in the form attached to the Recognition Motion as Exhibit A (the "**Proposed Recognition Order**"), granting relief (collectively, the "**Relief Requested**"), including, but not limited to:

   a.     Recognition of the Canadian Proceedings as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code;

   b.     In the alternative should the Court find that any of the Debtors do not have their center of main interest in Canada, as foreign nonmain proceedings pursuant to section 1517(b)(2) of the Bankruptcy Code;[3]

   c.     Recognition the Foreign Representative as a "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Canadian Proceedings;

---

[3] For reference, the Debtors that are not formed under Canadian law are: LT Holdco, LLC; LT Intermediate Holdco, LLC; SiempreTax+ LLC; JTH Tax LLC; JTH Financial, LLC; JTH Properties 1632, LLC; Liberty Credit Repair, LLC; Wefile, LLC; JTH Tax Office Properties, LLC; LTS Software LLC, JTH Court Plaza, LLC; 360 Accounting Solutions, LLC; LTS Properties, LLC; NPI Holdco LLC; CTAX Acquisition LLC; Community Tax Puerto Rico LLC; Community Tax LLC; NPLM Holdco LLC; MMS Servicing LLC; LoanMe, LLC; LoanMe Funding, LLC; LM Retention Holdings, LLC; LoanMe Trust-Prime 2018-1; LoanMe Trust SBL 2019-1; LoanMe Stores LLC; InsightsLogic LLC; and LM 2020 CM I SPE, LLC.

18

d.  gives full force and effect within the territorial jurisdiction of the United States to the Initial Order, the Amended and Restated Initial Order, including all extensions or amendments thereof authorized by the Canadian Court;

e.  grants the Debtors all the relief afforded pursuant to section 1520 of the Bankruptcy Code, including but not limited to the "automatic stay" under section 362 of the Bankruptcy Code, which shall apply with respect to the Debtors and the Debtors' property that is now or in the future located within the territorial jurisdiction of the United States;

f.  extends on a final basis (pursuant to section 1521(a)(6) of the Bankruptcy Code) the relief granted under the Provisional Relief Order (as defined below) and grants such further additional relief requested herein and as otherwise authorized by sections 1507 and 1521 of the Bankruptcy Code, as applicable, as the Court deems necessary;[4] and

g.  provides such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

49.  For the reasons set forth in this Verified Petition, and as more fully set forth in the Recognition Motion and the Memorandum of Law in support thereof, the Court should enter the Proposed Recognition Order, as the Foreign Representative meets the standards for obtaining the relief requested herein and otherwise satisfies the statutory requirements for recognition and related relief under chapter 15 of the Bankruptcy Code.

37.  The Foreign Representative respectfully submits that the Court should recognize the Canadian Proceedings, as required under section 1517 of the Bankruptcy Code, because the Foreign Representative applying for recognition is a "person," the Canadian Proceedings are "foreign main proceedings" or alternatively "foreign nonmain proceedings" within the meaning of section 1502 of the Bankruptcy Code, and the Petition meets the requirements of section 1515 of the Bankruptcy Code.

---

[4] The Debtors anticipate the Amended and Restated Initial Order will be entered approximately ten (10) days from the entry of the Initial Order in a form substantially similar to the form attached as Exhibit 2 to the Motion for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code.

19

38.     Section 1517(a) of the Bankruptcy Code authorizes the Court to enter a final order, after notice and a hearing, recognizing a foreign proceeding if (i) such proceeding is a foreign main proceeding or a foreign nonmain proceeding, (ii) the foreign representative applying for recognition is a person or body and (iii) the application for recognition was properly filed in accordance with section 1515 of the Bankruptcy Code. *See* 11 U.S.C. § 1517(a).  Section 1517(b) of the Bankruptcy Code further provides that a proceeding shall be recognized as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interest. *See* 11 U.S.C. § 1517(a).

39.     The Foreign Representative is a "person[s]" within the meaning of section 101(41) of the Bankruptcy Code that has been appointed by the Canadian Court, as memorialized in the Initial Order, and expressly authorized by the Canadian Court to commence these cases under chapter 15 of the Bankruptcy Code by filing the Chapter 15 Petition for recognition of the Canadian Proceedings. *See* 11 U.S.C. § 1504.  The Canadian Proceedings are "foreign proceedings" within the meaning of section 101(23) of the Bankruptcy Code because, among other reasons, it is a collective judicial proceeding conducted in Canada under the law related to insolvency or debt adjustment, and the assets and affairs of the Debtors are subject to supervision by the Canadian Court for the purpose of reorganization or liquidation.

40.     Further, as required by section 1515(b) of the Bankruptcy Code, the Chapter 15 Petition is accompanied by a true copy of the decision commencing the Canadian Proceedings and appointing the Foreign Representative of the Debtors.  *See* Petition [D.I. 1], Ex. A.  The decision commencing the Canadian Proceedings is in English and, thus, comports with section 1515(d) of the Bankruptcy Code.  *Id*.  In accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative has filed a statement disclosing that, to the best of its knowledge, there are no other

20

foreign proceedings pending with respect to the Debtors. The Foreign Representative has, therefore, satisfied the conditions requiring entry of an order recognizing the Canadian Proceedings. *See* 11 U.S.C. § 1517(a). Additionally, recognition of the Canadian Proceedings is not manifestly contrary to the public policy of the United States. Based on the foregoing, the Foreign Representative petitions the Court for entry of an order recognizing the Canadian Proceedings.

41.     The Canadian Proceedings should be recognized as foreign main proceedings. Indeed, the Debtors' center of main interest is in Vancouver, British Columbia, Canada, and, thus, it has its nerve center in Canada. Specifically, the top holding company foreign debtor is formed under the law of British Columbia and, prior to the commencement of Canadian Proceeding, had its registered offices in Vancouver, Canada, and, therefore, Canada is presumed to be the center of main interest for the Debtors formed in Canada. *See* 11 U.S.C. § 1516(c). Moreover, when the Canadian Court took jurisdiction over the Debtors, it implicitly recognized the significance of the Debtors' interests there. Further, Nextpoint Financial is a reporting issuer for purposes of applicable Canadian securities laws and listed on the Toronto Stock Exchange ("**TSX**") (although currently subject to a cease trade order). It has been obligated to meet its continuous disclosure obligations (including filing the consolidated financial statements) and other disclosures such as material change reports in connection with events occurring at the subsidiary level. Since Canada is the center of main interest for the Debtors, the Canadian Proceedings should be recognized as a foreign main proceeding. *Id*. § 1517(b)(1). While certain of the Debtors are formed under the laws of Delaware, Virginia, and Illinois and cannot benefit from the presumption that their center of main interest is in Canada, that is merely a presumption that can be rebutted with sufficient evidence. Based on the Kravitz Declaration and the arguments set forth in the Recognition

21

Memorandum, those Debtors formed under those states' laws also have their center of main interest in Canada; should the Court conclude otherwise, however, those entities Canadian Proceedings qualify as foreign nonmain proceedings for the reasons set out in the Recognition Motion.

42.     Upon recognition of the Canadian Proceedings as a foreign main proceeding, final relief is authorized by sections 1520 and 1521 of the Bankruptcy Code.  In particular:

    a.    Upon recognition of the Canadian Proceedings as a foreign main proceeding, the Foreign Representatives are automatically entitled to the protections of the automatic stay of section 362 of the Bankruptcy Code. *See* 11 U.S.C. §§ 1520(a)(1), 362.

    b.    Also, upon recognition of the Canadian Proceedings as a foreign main proceeding, sections 363, 549 and 552 of the Bankruptcy Code apply to a transfer of an interest of the Debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of the estate.  *See* 11 U.S.C. § 1520(a)(2).

    c.    Further, upon recognition of the Canadian Proceedings as a foreign main proceeding, unless the Court orders otherwise, the Foreign Representatives may operate the Debtors' business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552 of the Bankruptcy Code.  *See* 11 U.S.C. § 1520(a)(3).

    d.    The Court may also suspend the right to transfer, encumber or otherwise dispose of the Debtors' assets.  *See* 11 U.S.C. § 1520(a).  To the extent that this relief is not granted under section 1520 of the Bankruptcy Code by applying section 362 of the Bankruptcy Code, the Court may grant this relief pursuant to section 1521(a)(3) of the Bankruptcy Code.

    e.    Additionally, upon recognition of the Canadian Proceedings as a foreign main proceeding, the Foreign Representatives are entrusted, if not as of right under section 1520 of the Bankruptcy Code, with the discretionary approval of the Court under section 1521 of the Bankruptcy Code with the right to operate the Debtors' business, exercise rights and power of a trustee, and are entitled to administer and realize all or part of the Debtors' assets within the territorial jurisdiction of the United States.  See 11 U.S.C. § 1521(a)(5).

    f.    Upon recognition of the Canadian Proceedings as a foreign proceeding, the Court may, at the request of the Foreign Representatives, grant any additional relief that may be available to a trustee (except for the relief

22

available under sections 522, 544, 545, 547, 548, 550 and 724(a)), including the protections afforded in section 365(e) of the Bankruptcy Code.

43.     The Court also has the power to provide additional assistance to a foreign representative under the Bankruptcy Code or other laws of the United States, consistent with the principles of comity.  *See* 11 U.S.C. §§ 1507 and 1521.  The Court's entry of the relief requested by the Chapter 15 Petition and of any additional assistance requested will not prohibit just treatment of holders of claims against the Debtors' property and will not prejudice their creditors. As such, the Foreign Representative submits that the Court has the discretion to enter the additional assistance set forth in the attached proposed form of order.

## CONCLUSION

WHEREFORE, NextPoint Financial, by and through its authorized officer Mr. Kravitz, in its capacity as Foreign Representative of the Debtors, respectfully petitions the Court for recognition and relief under chapter 15 of the Bankruptcy Code, the relief requested here, and for such other relief and assistance as may be necessary.

*[Remainder of page intentionally left blank.]*

23

Dated: July 26, 2023
      Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*
R. Craig Martin, Esq. (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email:  craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese, Esq. (*pro hac vice* admission pending)
Jamila Justine Willis, Esq. (*pro hac vice* admission pending)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email:  rachel.albanese@us.dlapiper.com
      jamila.willis@us.dlapiper.com

*Counsel to the Foreign Representative*

ACTIVE\1601488298.14

**VERIFICATION OF PETITION**

I, Peter Kravitz, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America as follows:

I am the Chief Restructuring Officer of NextPoint Financial Inc., the authorized foreign representative for the Debtors. As such, I have full authority to verify the foregoing Verified Petition on behalf of the Debtors.

I have read the foregoing Verified Petition, and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 26, 2023
Vancouver, British Columbia

*/s/ Peter Kravitz*
Peter Kravitz
CRO of NextPoint Financial Inc.

25