# Exhibit B

## Reply

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| In re:<br><br>NEXTPOINT FINANCIAL INC., et al.,<br><br>Debtors in a foreign proceeding. | Chapter 15<br><br>Case No. 23-10983 (TMH)<br><br>(Jointly Administered)<br><br>Re: D.I. 80 & 88<br><br>Hearing Date: November 6, 2023, at 11:00 a.m. |
|---|---|

**FOREIGN REPRESENTATIVE'S REPLY TO AREA DEVELOPERS' OBJECTION TO MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE CCAA VESTING ORDER, (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF**

NextPoint Financial Inc., in its capacity as Foreign Representative for each of the above-captioned foreign debtors (the "**Debtors**"), including JTH Tax, Inc. d/b/a Liberty Tax Service ("**Liberty**"), files this reply (the "**Reply**") to the objection filed by Gorilla Tax Services, Inc., Sarkauskas Empire Inc., Sarkauskas Enterprises, LLC, Mufeed Haddad, Mary Johnson, Mark Johnson, Michael Budka, and M&M Business Group, LP (collectively, the "**Area Developers**") [D.I. 88] (the "**Objection**") to the *Motion of the Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the CCAA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors' Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [D.I. 80] (the "**Motion**").[1] In support of this Reply, the Foreign Representative respectfully states as follows:

[1] Capitalized terms used but not defined in this Reply have the meaning set forth in the Motion or the Area Developer Agreements, as applicable.

**REPLY**

1. The relief sought in the Motion is the culmination of extensive negotiations and between the Purchaser, the Foreign Representative, the Debtors, and the Monitor, resulting in approval of a complex and complicated transaction by a court in Canada. The Motion seeks the assistance of this Court to apply that Canadian approval in the United States.

2. The Area Developers, the only parties who have challenged these transactions in the U.S.— and who did not object at all to the approval in Canada — have objected to the Motion on the basis that the requested relief in the Motion fails to sufficiently protect the interests of the Area Developers. In reaching this erroneous conclusion, the Area Developers raise four principal arguments, none of which is meritorious:

- ***First***, the Area Developers contend that, to the extent the franchise agreements but not the Area Developer Agreements are to be retained by the Debtors, the relief requested must provide for cure of defaults and adequate assurance of future performance. This argument fails because, as discussed below, the Area Developers *are not parties to the franchise agreements* and have no rights under those agreements.

- ***Second***, the Area Developers argue that, to the extent that the Area Developer Agreements and the franchise agreements are to be treated as excluded assets and transferred to a residual company, the Court must protect their rights under as licensees of intellectual property under section 365(n) of the Bankruptcy Code. This argument fails for at least two reasons. First, and as noted above, the Area Developers are not parties to the franchise agreements and are not entitled to assert rights under any licenses afforded in those agreements. And second, the Area Developer Agreements, themselves, grant extremely limited trademark licenses that are not subject to section 365(n), and which are being disclaimed in accordance with Canadian law.

- ***Third***, the Area Developers contend that, to the extent that Liberty has collected postpetition franchise fees and royalties under the franchise agreements and has failed to pay the Area Developers their designated portion of such franchise fees and royalties, such amounts must be turned over to the Area Developers. The Area Developers cite no facts in support of these assertions. Instead, this appears to be a continuation of universally unsuccessful prepetition litigation related to a roundly rejected contention that the Area Developer Agreements are perpetual. To the extent that there are postpetition fees owing, that is an issue of Canadian law and should have been addressed at the CCAA Vesting Order Hearing.

- ***Finally***, the Area Developers object to the proposed third-party releases and exculpation provisions set forth in the Motion. As set forth herein, courts routinely approve similar third-party releases that are included in foreign restructuring plans.

3. Fundamentally, the Area Developers' arguments are based on a flawed premise. Contrary to their assertion, they are not parties to the underlying franchise agreements. Their rights to recruit potential franchisees and receive certain fees and royalties if a franchise agreement is entered into between Liberty and a franchisee sourced by the Area Developer arise under the Area Developer Agreements. The Area Developers' contractual rights do not implicate section 365(n) of the Bankruptcy Code, *Tempnology*, or any other provision that would preclude granting the Motion.

4. Accordingly, the Motion should be granted and the Objection overruled.

**RELEVANT FACTUAL BACKGROUND**

5. Liberty offers franchises to operate its tax return preparation services. As part of marketing its franchises, Liberty contracts with "area developers" who agree to market to potential franchisees in exchange for a percentage of royalties generated by franchisees in their designated area. The objecting parties are eight of Liberty's "area developers."

6. Each objecting Area Developer is or was a party to an Area Developer Agreement (the "**Area Developer Agreements**") with Liberty, copies of which are attached hereto as **Exhibit A-1 through A-15**. Four of the Area Developer Agreements were active as of the Petition Date. ("**Active AD Agreements**"). Eleven of the Area Developer Agreements were not active as of the Petition Date due to non-renewal[2] ("**Inactive AD Agreements**"). These Active AD Agreements and Inactive AD Agreements are identified on **Appendix A** attached hereto.

[2] A number of the Area Developers who were parties to Inactive AD Agreements have litigation pending against one or more of the Debtors. This litigation has routinely found that, despite Area Developers' arguments to the contrary, there is no perpetual right to serve as an area developer. *See, e.g.*, *JTH Tax LLC v. Grabowski*, No. 19 C 8123, 2021 WL 3857794, at *6 (N.D. Ill. Aug. 30, 2021), *reconsideration denied sub nom. JTH Tax LLC v. Rocci*, No. 19 C 8123,

7.      With respect to the Inactive AD Agreements, a notice of Non-Renewal ("**Notice of Non-Renewal**") was mailed to the relevant Area Developer between August 14, 2019 and November 28, 2022. Copies of those Notices of Non-Renewal are attached hereto as **Exhibit B**.

8.      With respect to the Active AD Agreements, on October 27, 2023, the Foreign Representative mailed notices of disclaimers to the four applicable Area Developers, providing notice of the intent to disclaim or resiliate (analogs to rejection under the CCAA) the Active AD Agreements [D.I. 97].  Copies of the notices of disclaimer are attached hereto as **Exhibit C**. As stated in the notices of disclaimers, parties have fifteen (15) days after the day on which notice is given to apply to the Canadian Court for an order that the agreement is not to be disclaimed or resiliated.  Accordingly, the deadline to respond to the notices of disclaimers is November 13, 2023.

9.      On October 31, 2023, the Canadian Court held a hearing on and entered the CCAA Vesting Order ("**CCAA Vesting Order Hearing**"). No objections were raised by the Area Developers or any other third party to the relief requested at the CCAA Vesting Order Hearing.

10.     On November 1, 2023, the Foreign Representative filed a *Notice of Filing of (I) CCAA Vesting Order and (II) Final Transaction Agreement [D.I. 91]*, attaching the CCAA Vesting Order, a redline of the CCAA Vesting Order against the version filed with the Motion, an executed copy of the Transaction Agreement, and a redline of the Transaction Agreement against the version filed with the Motion.

11.     The Active AD Agreements are identified as Excluded Assets on Schedule 2.2 of the Transaction Agreement.

---

2021 WL 4844099 (N.D. Ill. Oct. 17, 2021) (finding that because the Area Developer failed to meet minimum requirements, Liberty was entitled to refuse renewal).

12.     Contrary to their assertion that they are "deemed" parties to various Liberty franchise agreements, *see* Obj. ¶¶ 3-4, there is no provision in the Area Developer Agreements, the franchise agreements, or under applicable law which provides that an Area Developer would be a party to any franchise agreement, which is likely why the Area Developers do not cite to language in any of the controlling agreements to support their position.  The Area Developers were not signatories to the franchise agreements that they sold.

13.     The Area Developer Agreements define the rights of the Liberty and the applicable Area Developer.  Importantly, the Area Developer Agreements expressly state that "Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system." *See* Section 8.2 of Area Developer Agreement, attached as **Exhibit A**.  While the Area Developer Agreements provide the Area Developer with the right to use Liberty's trademarks during the term for the sole purpose of advertising the availability of franchises for sale within the territory, any marketing involving Liberty's trademarks must be approved in writing by Liberty, and this approval can be granted or withheld in Liberty's sole discretion. *Id*.

## ARGUMENT

### I.      The Area Developer's Rights Are Appropriately Protected.

14.     The Area Developer Agreements have either been non-renewed prior to the Petition Date or are subject to disclaimer under Canadian law and are not being transferred pursuant to the CCAA Vesting Order.  This treatment is consistent with the rights granted under those agreements and applicable law.  The concept of "sufficient protection" is procedural and is designed to ensure that the US-based creditor has the right to participate in the foreign proceedings. Here, notices have been provided to the Area Developers and they can assert their entitlements in Canada for that court to address. The mechanism in Canada for payment of these claims is not dissimilar to the way they would be treated in the United States, as further discussed below.

A. **<u>The Active AD Agreements Are Not Licenses to Operate Locations and Are Not IP or Trademark Licenses.</u>**

15. The Area Developers contend that the Debtors license "a system for the operation of tax return preparation offices within specified territories." Obj. ¶1. This is fundamentally incorrect. The Area Developer Agreements provide a license for the Area Developer to advertise the availability of franchise locations and territories for sale by Liberty to potential franchisee candidates. Area Developer Agreement, at ¶8.2. The agreements *do not* grant a license for the operation of Liberty-branded tax return preparation offices. *Id*. The Area Developer Agreements specify that Liberty owns the franchise system, its trademarks, and all other intellectual property associated with the franchise system. *Id.* While Active Area Developers have a limited right to use Liberty's trademarks during the term for the sole purpose of advertising the availability of franchises within the Area Developer's territory, this limited grant requires Liberty's prior written consent, which may be withheld in Liberty's sole discretion. *Id.*

16. Accordingly, the Active AD Agreements[3] are routine executory contracts, not specialized IP licenses, that can be disclaimed under Canadian law (and, in a plenary proceeding in the U.S., would be subject to rejection under section 365 without implicating any of the concerns addressed by section 365(n) or *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019)). The Area Developers have no special rights that are implicated, or that must be protected. Their rights are limited to that of a counterparty to a contract under Canadian law. CCAA § 32 (detailing the rights of counterparties to executory contracts).[4]

[3] Those Area Developers who have Inactive AD Agreements do not hold any trademark license. Any protections under section 365(n)/*Tempnology* only apply to rights in existence as of the Petition Date. Therefore, as a matter of law, the Debtors do not have the right to assume or preserve agreements with any Area Developer that was terminated or nonrenewed prior to filing for chapter 15 protection.

[4] For ease of reference, copies of all Canadian legal statutes referenced in this Reply are attached as **<u>Exhibit D</u>** hereto.

### B. The Area Developers Are Not Parties to Franchise Agreements.

17. Similarly, the Area Developers attempt to bolster their argument that they are entitled to special intellectual property related rights by stating, without attaching a single exhibit, that they are "deemed" parties to any franchise agreement that a proposed candidate entered into or enters into with Liberty in the specified territory. Obj. ¶3. This is incorrect. Nowhere in the Objection do the Area Developers explain what provision of the Area Developer Agreements they are relying upon in making that determination.[5] This is because there is no such provision. The franchise agreements do not include Area Developers as a party, signatory, or otherwise.

18. Because the Area Developers are not parties to the franchise agreements that they market, they are not entitled to any rights that a *franchisee* may be entitled to. Their rights are limited to that of a counterparty to a contract under Canadian law. CCAA § 32 (detailing the rights of counterparties to executory contracts).

### C. Section 365(n) of the Bankruptcy Code Does Not Apply on these Facts.

19. Even if the Area Developers had shown that the Area Developer Agreements were subject to the provisions of section 365(n) and *Tempnology* (and they have not), this Court should

---

[5] Liberty is aware that the Area Developers have been referencing an expired form of franchise agreement from 2008, which purports to make the Area Developer a party to the franchise agreement. Not included in rights, if any, granted to Area Developers under the franchise agreement are the rights to use Liberty trademarks, which are expressly granted to the franchisee.

Further, the referenced form of franchise agreement was entered into in 2008 and (1) has since expired and (2) relates to a territory that is not covered by any of the Area Developers. The Area Developers are not parties to franchise agreements in general and certainly not to old, expired franchise agreements from 2008. Even if they were a party, the Area Developers may not enforce contracts that expired well over 15 years ago. *See, e.g., Rockbridge Area Conservation Council v Virginia Outdoors Foundation,* No. CL15-186, 2018 WL 1053753, at *3 (Va.Cir.Ct. Feb. 23, 2018) ("The Court thus finds and concludes that VOF is not liable for breach of contract in this case, because the contract expired by its terms, and in effect left no contract to breach."); *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 206 (1991) ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied"); *17A Am. Jur. 2d Contracts § 519* ("Where a contract specifies the period of its duration, it terminates on the expiration of such period. An expired contract releases all its parties from their respective contractual obligations."). Liberty's standard franchise agreement is five years. *More recent franchise agreements do not appear to contain the referenced language.*

exercise its discretion and not apply those provisions to the cases here.  It is axiomatic that not all provisions of the Bankruptcy Code automatically apply in chapter 15 cases even upon recognition. *See* 11 U.S.C. § 1520 (listing certain Bankruptcy Code provisions that automatically apply upon recognition of a foreign main proceeding).  Not listed among them is section 365 of the Bankruptcy Code or its subsection 365(n).  Instead, the purpose of chapter 15 is to recognize and aid foreign courts, not to provide a second bite at the apple to parties who are dissatisfied with the rulings of foreign courts.  *In re Just Energy Group Inc.*, Case No. 21-30823, Hr'g Tr. 24:12-22, Dec. 1, 2022 ("What we are doing here today is not second-guessing the Canadian court. That is the opposite of what we are supposed to do today. We are determining whether the orders of the Canadian court should be recognized in the United States, and the argument that you are making as to why this is admissible is that perhaps the judge in Canada could have made a different decision. But that does not go to whether we should recognize the order, which at this point you have not suggested any reason why those proceedings were in some manner so irregular that they are not entitled to recognition."); *Id.*, Hr'g Tr. 17:20 – 18:2, Dec. 15, 2022 ("Well, let me just say that largely the job of a recognition court is not to serve as an appellate court to the Canadian proceeding, but is to determine whether what the Canadian proceeding has undertaken somehow offends U.S. law or is inconsistent with U.S. law, things of that nature. But if you knew the Canadian proceeding since March of 1 2021, then you had an opportunity to present this evidence in Canada, which has been rejected.").  Here, the Area Developers were on full notice of the CCAA proceedings and chose not to appear, objecting only now in the chapter 15.

20.     The Area Developers cite to *Jaffe v. Samsung Electronics Company, Limited* for the proposition that licensees in a chapter 15 bankruptcy proceeding were entitled to the protections afforded by section 365(n) of the Bankruptcy Code. *See* Obj. ¶9. Section 365(n) of the Bankruptcy Code applies to "Intellectual Property" as defined in section 101 of the Bankruptcy

Code.  Under section 101(35A) of the Bankruptcy Code, intellectual property "means-(A) trade secret; (B) invention, process design, or plant protected under title 35; (C) patent application; (D) plant variety; (F) work of authorship protected under chapter 9 of title 17."  11 U.S.C. § 101 (35A).  Notably, trademarks are excluded by omission from the definition of "intellectual property" under this section.  Under the Active AD Agreements, the only intellectual property that may be implicated is a license to use Liberty trademarks.  Consequently, section 365(n) of the Bankruptcy Code does not apply here.

21.     Moreover, the *Jaffe* and *Qimonda* decisions are factually distinct from the present situation.  Both decisions focused heavily on evidence presented at trial, with the bankruptcy court in *Qimonda* indicating the issue on balance was "close" but finding compelling the facts and circumstances of the industry-specific issues raised during the trial. *In re Qimonda AG*, 462 B.R. 165 (Bankr. E.D. Va. 2011).

22.     The Area Developer Agreements specify that Liberty owns the franchise system, its trademarks and all other intellectual property associated with the franchise system, and the Area Developer Agreements only provide the Area Developer with the right to use Liberty's trademarks during the term for the sole purpose of advertising the availability of franchises within the territory. *See* Section 8.2 of Area Developer Agreement.  This is not an intellectual property right that can be used by the Area Developer under section 365(n) because it still requires Liberty's prior written consent to such use and states that such consent may be withheld in Liberty's sole discretion. *Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14 (4th Cir. 2013) is irrelevant here because the Area Developer Agreements allow Liberty to withhold consent for the use of the intellectual property at any time.

23.     Further, unlike in *Jaffe* where it was presumed that there were fewer protections provided under German law, the CCAA proceedings already ensure sufficient protection of creditors. A determination of sufficient protection "requires a balancing of the respective parties'

interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (citing *AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013)); *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012)).  Courts have explained "sufficient protection" as embodying three basic principles:  the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the foreign proceeding, and the distribution of proceeds of the foreign estate substantially in accordance with the order prescribed by U.S. law.  *ENNIA Caribe Holding N.V.*, 596 B.R. at 322 (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 740 (Bankr. S.D.N.Y. 2009)).

24.    As further discussed in the Motion, the CCAA is a just and reasonable procedure, as previously recognized by numerous United States courts, and principles of comity dictate that the law of the plenary proceeding govern over congruent considerations of U.S. law.  *See* Mot. ¶43; *Cornfeld v. Invs. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) ("The fact that the foreign country involved is Canada is significant. It is well-settled in New York that the judgments of the Canadian courts are to be given effect under principles of comity. . . . More importantly, Canada is a sister common law jurisdiction with procedures akin to our own, and thus there need be no concern over the adequacy of the procedural safeguards of Canadian proceedings.") (internal quotation marks and citations omitted); *see also In re Grant Forest Prod., Inc.*, 440 B.R. 616, 622 (Bankr. D. Del. 2010); *In re Crystallex Int'l Corp.*, No. 11-14074 (LSS), 2022 WL 17254660, at *6 (Bankr. D. Del. Nov. 28, 2022).

25.    In Canada, there are protections afforded to licensees of intellectual property under the CCAA which are largely similar to those granted under section 365(n) of the Bankruptcy Code. Section 32(6) of the CCAA provides that "[i]f the company has granted a right to use intellectual property to a party to an agreement, the disclaimer or resiliation does not affect the party's right to use the intellectual property — including the party's right to enforce an exclusive use — during

the term of the agreement, including any period for which the party extends the agreement as of right, as long as the party continues to perform its obligations under the agreement in relation to the use of the intellectual property." CCAA §32(6). Further, the protections provided to creditors are arguably even more robust than those provided in the U.S., as the CCAA provides for the existence of a Monitor to act as a neutral third party and requires that the Monitor approve the proposed disclaimer or resiliation (a process which was undertaken here). CCAA §32(1). Lastly, in considering whether to disclaim contracts, the Canadian Court is to consider several factors, including whether the disclaimer would likely cause significant financial hardship to a party to the agreement. CCAA §32(4). To the extent the Area Developers wish to object to the disclaiming of their Area Developer Agreements, they can and should apply to the Canadian Court.

26. Accordingly, this Court should overrule the Objection and find that section 365(n) does not apply to prohibit the disclaimer or exclusion of the Area Developer Agreements, and that the objection should be addressed in the Canadian Proceedings.

**II. The Area Developers Have Not Shown that Liberty Collected Franchise Fees that Must Be Turned Over and Entitlement, if any, to Postpetition Franchise Fees Is a Matter of Canadian Law.**

27. The Area Developers contend that, to the extent that Liberty has collected postpetition franchise fees and royalties under the franchise agreements and has failed to pay the Area Developers their designated portion of franchise fees and royalties, these amounts must be turned over to the Area Developers. The Area Developers cite no facts in support of this contention and mere conjecture is not sufficient to raise a factual dispute on this point. Moreover, this argument appears to be a continuation of a roundly rejected position proffered by Area Developers that were parties to the Inactive AD Agreements that the Area Developer Agreements are perpetual (and that they are then entitled to perpetual franchise fee royalties) and does not serve as a basis to overrule the Motion. *See, e.g., JTH Tax LLC v. Grabowski*, No. 19 C 8123, 2021 WL 3857794, at

*6 (N.D. Ill. Aug. 30, 2021), *reconsideration denied sub nom. JTH Tax LLC v. Rocci*, No. 19 C 8123, 2021 WL 4844099 (N.D. Ill. Oct. 17, 2021) (finding that because the area developer failed to meet minimum requirements, Liberty was entitled to refuse renewal).

28. To the extent there are postpetition franchise fees that are owed under Active AD Agreements, that is an issue of Canadian law and should have been addressed at the CCAA Vesting Order Hearing. The Area Developers' unfounded statements are nothing more than distraction and attempts to thwart a wholly permissible and authorized transaction, simply because they do not agree with their proposed treatment thereunder.

**<u>III. The Third Party Releases Should Be Enforced.</u>**

29. Finally, in a single sentence without citation, the Area Developers object to the proposed third-party releases and exculpation provisions set forth in the Motion on the grounds that the Motion fails to identify any basis for such relief under the Bankruptcy Code. Obj. ¶12. Granting comity to the Transaction Agreement and CCAA Vesting Order should appropriately extend to the releases and exculpations provided for therein. "[P]rinciples of enforcement of foreign judgments and comity in chapter 15 cases strongly counsel approval of enforcement in the United States of the third-party non-debtor release and injunction provisions [appropriately granted in a foreign proceeding], even if those provisions could not be entered in a plenary chapter 11 case." *In re Metcalfe & Mansfield*, 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010); *Avanti*, 582 B.R. 603, 619 (Bankr. S.D.N.Y. 2018) (enforcing a scheme and sanction order including third-party releases); *In re Sino-Forest Corp.*, 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013) ("[W]here third-party releases are not categorically prohibited, it cannot be argued that the issuance of such releases is manifestly contrary to public policy . . . .").

30. Courts have enforced similar third-party releases in various foreign proceedings. Recognition of such releases is appropriate and routinely granted to foreign debtors through

chapter 15 of the Bankruptcy Code. *See, e.g.*, *In re Acerus Pharma. Corp.*, No. 23-10111 (TMH) (Bankr. D. Del. June 13, 2023) (D.I. 78) (granting recognition to orders issued by the Canadian court, including the releases set forth therein); *In re Avanti*, 582 B.R. at 606 (recognizing and enforcing a United Kingdom scheme and sanction order where "failure of a U.S. bankruptcy court to enforce [certain third-party releases] could result in prejudicial treatment of creditors to the detriment of the Debtor's reorganization"); *In re Sino-Forest Corp.*, 501 B.R. at 665 (enforcing foreign order containing third-party releases); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 687 (Bankr. S.D.N.Y. 2017) (recognizing and enforcing terms of Cayman scheme that released subsidiary guarantees); *In re Catalyst Paper Corp.*, No. 16-12419 (CSS), 2017 WL 5479405, at *2 (Bankr. D. Del. Jan. 20, 2017) (granting recognition to orders issued by the Canadian court, including the releases set forth therein); *In re CDS U.S. Holdings, Inc.*, No. 20-11719 (CSS) (Bankr. D. Del. Oct. 29, 2020) (D.I. 112) (recognizing and giving effect in the United States to the Approval and Vesting Order entered in the Canadian Proceeding, including third-party releases therein).

31. The same circumstances are present here. If the Court declines to enforce the release, exculpation, and injunction provisions set forth in the in the CCAA Vesting Order, then creditors could seek to obtain judgments in the U.S. against the Debtors or other Released Parties (as defined in the CCAA Vesting Order). This outcome would undermine the Canadian Proceedings and the Canadian Court's order and would result in prejudicial treatment of certain creditors and parties in interest to the detriment of the Debtors' reorganization efforts and will prevent the fair and efficient administration of the restructuring contemplated in the Transaction Agreement.

32. If creditors are permitted to commence actions in the United States in contravention of the CCAA Vesting Order, Transaction Agreement, and the release, exculpation, and injunction

provisions set forth therein, the Foreign Representative and the Debtors will be forced to waste resources defending those actions. The relief requested is necessary to achieve comity and prevent parties from undermining the purpose of the CCAA Vesting Order and the authority of the Canadian Court.

## CONCLUSION

The Foreign Representative respectfully submits that, for the reasons set forth herein, the Objection should be overruled and the Motion granted.

November 3, 2023
Wilmington, Delaware

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*

R. Craig Martin, Esq. (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email: craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese, Esq. (admitted *pro hac vice*)
Jamila Justine Willis, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com
jamila.willis@us.dlapiper.com

*Counsel to the Foreign Representative*

**Appendix A**

The Active AD Agreements consist of:

- Area Developer Agreement dated as of July 13, 2018 by and among JTH Tax, Inc. and Mike Budka and Mufeed Haddad (Entity 4711);
- Area Developer Agreement dated as of August 15, 2018 by and among JTH Tax, Inc. and M&M Business Group L.P. (Entity 2532);
- Area Developer Agreement dated as of August 15, 2018 by and among JTH Tax, Inc. and Mufeed Haddad (Entity 4693); and
- Area Developer Agreement dated as of February 28, 2014 by and among JTH Tax, Inc. and Mufeed Haddad (Entity 7700).

The Inactive AD Agreements consist of:

- Area Developer Agreement dated as of July 25, 2006 by and among JTH Tax, Inc. and Gorilla Tax Services, Inc. (Entity 4248);
- Area Developer Agreement dated as of October 29, 2007 by and among JTH Tax, Inc. and Gorilla Tax Services, Inc. (Entity 4248);
- Area Developer Agreement dated as of October 29, 2007 by and among JTH Tax, Inc. and Sarkauskas Empire Inc. (Entity 4738);
- Area Developer Agreement dated as of June 7, 2007 by and among JTH Tax, Inc. and Sarkauskas Empire Inc. (Entity 4738);
- Area Developer Agreement dated as of December 29, 2006 by and among JTH Tax, Inc. and Sarkauskas Enterprises, LLC (Entity 4671);
- Area Developer Agreement dated as of October 29, 2007 by and among JTH Tax, Inc. and Sarkauskas Enterprises, LLC (Entity 4671);
- Area Developer Agreement dated as of April 8, 2009 by and among JTH Tax, Inc. and Sarkauskas Enterprises, LLC (Entity 4671);
- Area Developer Agreement dated as of August 13, 2007 by and among JTH Tax, Inc. and Mufeed Haddad (Entity 4878);
- Area Developer Agreement dated as of January 23, 2008 by and among JTH Tax, Inc. and Mufeed Haddad, Michael N. Budka, Mark C. Johnson, and Mary G. Johnson, as Tenants in Common (Entity 5167);

- Area Developer Agreement dated as of November 28, 2012 by and among JTH Tax, Inc. and M&M Business Group, LP (Entity 2532); and

- Area Developer Agreement dated as of December 3, 2014 by and among JTH Tax, Inc. and M&M Business Group, LP (Entity 2532).

# Exhibit A-1

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Indianapolis, IN DMA

**AREA DEVELOPER AGREEMENT**

**EXHIBIT B**

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

**TABLE OF CONTENTS**

1. SERVICES ..... 3
2. EXCLUSIVITY ..... 7
3. FEES AND COMMISSIONS ..... 7
4. MINIMUM AREA DEVELOPER PERFORMANCE ..... 9
5. FRANCHISOR — FRANCHISEE RELATIONSHIP ..... 10
6. NON-COMPETE AND NO SOLICITATION ..... 11
7. TERM AND TERMINATION ..... 12
8. MISCELLANEOUS ..... 14
9. DEATH OR INCAPACITY ..... 19
10. CONFIDENTIAL INFORMATION ..... 19
11. COUNTERPARTS AND ELECTRONIC SIGNATURE ..... 20
12. HEADINGS ..... 21
13. AGREEMENT ..... 21

SCHEDULE A TO THE AREA DEVELOPER AGREEMENT ..... 22
SCHEDULE B TO THE AREA DEVELOPER AGREEMENT ..... 23

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Indianapolis, IN DMA

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, area developer ("Area Developer") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

### 1.1 Area Developer Services.

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations Training ("EOT") and Hands On Training ("HOT") to be awarded a Franchise.

(c) **Limitation of Services.** Area Developer may only offer those services or products through the Area Developer business as authorized by Liberty in this Agreement or the area developer operations manual ("Area Developer Operations Manual" or "Manual"), unless Liberty provides prior written approval.

### 1.2 Area Developer Support Services and Obligations.

(a) **Operational Support.** Area Developer will be responsible for coaching the Liberty system as described in the Area Developer Operations Manual and will provide Franchisees with timely local support, day-to-day operational help, marketing advice and feedback. Area Developer will host quarterly designated marketing area (DMA) meetings in person or through electronic means. Through these DMA meetings and as required by Liberty, Area Developer will disseminate information, collaborate with Franchisees, discuss advertising and address other issues that may arise or later be specified by Liberty. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Area Developer agrees to address reasonable company-owned store issues that may arise or be specified by Liberty. "Company-owned" refers to a store owned and operated by Liberty, an affiliate entity or an entity under the control of Liberty or any of its employees.

(b) **Customer Service.** Area Developer shall use best efforts to ensure that all Franchisees provide all appropriate services as outlined in the Franchisee Operations Manual and the Area Developer Operations Manual, abide by customer service policies issued by Liberty and timely respond to customer complaints and issues. Area Developer must operate in a manner that protects the goodwill, reputation of Liberty and the service marks and trademarks of Liberty (collectively "Marks).

(c) **Site Selection.** Area Developer shall provide site selection assistance in accordance with the Area Developer Operations Manual including, but not limited to, utilization of a company that we designate providing retail business intelligence solutions, and current Electronic Return Originator ("ERO") data. Final site selection must be approved by Liberty.

(d) **Franchisee Budgets, Profit and Loss Statements and Action Plans.** Area Developer shall review and approve Franchisee budgets, profit and loss statements, action plans and the Marketing Plan Generator for submission to corporate for final approval in accordance with the deadlines provided by Liberty.

(e) **Agreement Facilitation.** Area Developers shall review and facilitate Franchisee applications to Liberty for financing, transfers, fee releases, sales, terminations and the like, subject to final approval by Liberty.

(f) **Required Attendance.** Area Developer, or Area Developer's approved representative, shall attend area developer training and EOT within six months of closing. Additionally, Area Developer will attend all meetings that may be required by Liberty.

(g) **Manual.** Area Developer shall provide all assistance and support described in the Area Developer Operations Manual, the Operations Manual provided to Liberty Franchisees and Area Developers and all updates to these Manuals.

(h) **Contract Enforcement.** Upon termination or expiration of the franchise agreement between Liberty and any Franchisee (a "Former Franchisee"), Area Developer will assist Liberty in enforcing the post termination obligations set forth in its franchise agreement with that Former Franchisee ("Post Termination Obligations"), but Area Developer will have no duty to initiate court or other legal proceeding. These obligations include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers of the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof and obtaining all copies of the Former Franchisee's Operations Manual, including any updates, and performing other reasonable duties as may be assigned by Liberty to assist in the transition or closure of an office.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

(i) **Fair Dealing.** Area Developer must deal fairly with Liberty and Liberty's existing Franchisees, suppliers, partners, service providers, employees and anyone else with whom Area Developer has contact related to the rights and obligations granted herein. Area Developer shall not take unfair advantage through manipulation, concealment, abuse of privileged information, misrepresentation of facts or any other unfair dealing practice.

1.3 **Liberty Obligations.**

(a) **Area Developer Operations Manual.** Liberty will provide an Area Developer Operations Manual and various updates to the Manual to provide requirements of operation and offer guidance in performing Area Developer services.

(b) **Initial and Advanced Training.** Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in Sections 1.1 and 1.2. At present, Liberty provides a three to four day initial Area Developer training course, which Area Developer and any manager working for Area Developer must attend and successfully complete within six months of closing. Liberty also requires Area Developer to attend EOT within six months of closing. Liberty may also provide and require Area Developer's attendance at advanced or other trainings that may be offered at select locations or Liberty may offer such training on the web or electronically. Although Liberty does not charge attendance at training, Area Developer must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation incurred in attending any training that Liberty provides.

(c) **Disclosure Document.** Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's development services.

1.4 **Joint Duties.** Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5 **Personal Involvement.** Area Developer must render the Area Developer and support services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes Liberty's initial Area Developer training course and who is not later disapproved by Liberty. Area Developer acknowledges and agrees that Liberty shall not, and shall have no right or authority to, control Area Developer's employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of Area Developer's employees. Area Developer acknowledges and agrees that all employees shall be Area Developer's exclusive employees and shall not be employees of Liberty nor joint employees of Area Developer and Liberty. Liberty neither dictates nor controls labor or employment matters for area developers and their employees.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

1.6 **Reports.** Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify, reports detailing Area Developer's activities, sales and other information that may be requested.

1.7 **Reviews.** Liberty reserves the right to review Area Developer's business operations, in person, by mail, or electronically. Liberty may inspect Area Developer's operations and obtain paper and electronic business records related to the business and any other operations taking place through Area Developer's business. Area Developer must send Liberty any business records requested within five (5) business days of receiving Liberty's request for records and shall be responsible for any costs related to this transmission. Liberty has the right to require that Area Developer implement a plan to resolve any issues that Liberty discovers.

## 2. EXCLUSIVITY

2.1 **Exclusivity.** Except as otherwise permitted in this Agreement, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A ("Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories") as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees.** If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such individual will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS

3.1 **Initial Fee.** Area Developer will pay Liberty $ _______ upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee.** Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to ____% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees (except on interest already due and owing before the first of the month following the Effective Date of this Agreement), paid to Liberty by a Franchisee for a franchise within the Territory during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees") except amounts already due and owing before the first of the month following the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee in the Territory pays to Liberty during the Term, except change fees already due and owing before the first of the month following the Effective Date of this Agreement.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

3.3 **Franchise Royalties.** Pursuant to the franchise agreement between a Franchisee and Liberty, each Franchisee is required to pay royalties associated with the operation of a franchised territory ("Royalties"). Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to _________% of all ongoing Royalties received by Liberty, if any, from a Franchisee in the Territory during the Term (except Royalties already due and owing before the first of the month following the Effective Date of the Area Developer Agreement.)

Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the first of the month following the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

3.4 **Demand for Payment.** Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects.** Liberty may provide to Area Developer leads of prospective Franchisees within the Territory. Area Developer may not opt out of receiving leads. Liberty will set fees based upon the cost and the difficulty of acquiring the leads and Area Developer agrees to pay such fees.

3.6 **Fee for Internal Sales.** If Liberty's own franchise development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (subject to a $6,000 minimum or such other amount as is established pursuant to Section 3.5). Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material.** Liberty may charge and Area Developer agrees to pay a reasonable charge for preparing, procuring, printing, and/or sending advertising materials and Disclosure Documents to Area Developer.

3.8 **Terminal Services.** Liberty may charge and Area Developer agrees to pay a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker.** Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees ("Franchise Broker"). To participate in this opportunity, Area Developer agrees to pay a proportionate share of the Broker's fee for any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory. Area Developer's share of Broker's fee shall be based on the proportion of initial Franchise Fee and Royalties that Area Developer receives under Sections 3.2 and 3.3. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalties under Sections 3.2

and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 which amounts to $4,550.

3.10 **Payment.** In any month that Liberty receives Franchise Fees, Royalties, interest on promissory notes for Franchise Fees (and such amounts are not already due and owing before the first of the month following the Effective Date of this agreement) from Franchisees in Area Developer's Territory, Liberty will pay Area Developer its share of these amounts not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Franchise Fees, Royalties and interest only with respect to amounts actually collected, and Liberty will be entitled to take credits against previous payments to Area Developer to the extent that any Franchise Fees, Royalty or interest payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

3.11 **Late Fees.** Payments for charges Liberty bills to Area Developer are due within thirty (30) days of billing and will be subject to an 12% per annum late fee, or the maximum allowed by law if less.

3.12 **Fee Amounts.** From time to time, Liberty will set and publish the fee amounts under Sections 3.5 and 3.7-3.8.

3.13 **Expenses.** Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14 **Referral Fees.** Liberty may offer referral fees to individuals that refer new Franchisees to Liberty. These referral fees do not apply to Area Developer for Candidates that become Franchisees in Area Developer's Territory.

3.15 **Automatic Payment Transfer**. All of the revenue that Area Developer is to receive under the Area Developer Agreement, or any other agreement between Area Developer and Liberty or Liberty's affiliate entities, shall initially be paid to Liberty. Liberty will remit any remaining balance to Area Developer from the above described revenue after deducting monies Area Developer owes to Liberty, and deducting monies to hold for application to upcoming amounts due to Liberty including, but not limited to, unbilled amounts.

3.16 **Transfer Fee.** If Area Developer transfers its rights and obligations under this Agreement, or an interest in this Agreement that results in a change in control of the entity, Area Developer must pay to Liberty a transfer fee of $10,000 at the time of transfer. This fee is subject to increase or decrease in future area developer agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

4.1 **Minimum Requirements.** Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30.

If Area Developer does not meet the Minimum Requirements, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the requirements were not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirements for that year. Liberty will only be entitled to delete Undeveloped Territories. Undeveloped Territories as used herein is defined as unsold territories which have not generated at least $40,000 in Net Fees in any one of the two prior fiscal years. Net Fees as used herein is defined as all revenue from all services and products offered by the franchisee pursuant to the franchise agreement between the franchisee and Liberty (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns) after approved deductions for customer discounts/refunds, send a friends and cash in a flash. Liberty's notice will designate which Undeveloped Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Undeveloped Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees, Royalties or interest paid with respect to any current or future franchisee or company-owned store within the specified Undeveloped Territories and such territories will no longer be deemed a part of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1 **Disclosure.** Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of Franchisees, including providing the current Disclosure Document, prepared by Liberty, to all Candidates within the time frame provided by law. In most jurisdictions, this disclosure is currently required fourteen (14) calendar days before the signing of a binding agreement between the Candidate and Liberty or any payment by the Candidate to Liberty. Area Developer will ensure that any disclosure made in any form complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Disclosure Document, but will not be responsible for improper disclosure due to inadequacies or errors in Liberty's most current Disclosure Document.

5.2 **Financial Performance Representations.** Except as may be expressly stated in Item 19 of Liberty's most current Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

5.3 **Improper Representations.** Area Developer will make no representations to any Candidate that conflicts with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warranties to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments.** Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity.** Area Developer will indemnify, defend and hold Liberty and its parent company, affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding (including attorneys' fees and costs) brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Area Developer agrees to reasonable cooperation in the defense of any claim. The Indemnified Parties shall have the right to control settlement and selection of counsel and defense of any claim.

## 6. NON-COMPETE AND NO SOLICITATION

6.1 **Non-Compete.**

(a) **In-Term.** Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees pursuant to the terms of this Agreement or as otherwise may be authenticated in writing by Liberty, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees or as otherwise may be allowed by Liberty) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term.** Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a

franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans except, if applicable, in Area Developer's capacity as a Liberty Area Developer pursuant to a valid, Liberty Area Developer Agreement.

6.2 **No Solicitation.**

(a) **In-Term.** Except with the written permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term.** Except with the written permission of Liberty, Area Developer will not, for a period of two years after expiration, termination or transfer of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise any franchised business including, but not limited to, an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3 **Severability.** If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7. TERM AND TERMINATION

7.1 **Term.** This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term").

7.2 **Renewal.** Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement and all other agreements with Liberty and Liberty's affiliates, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing Liberty's then

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

current Area Developer Agreement which may contain materially different terms. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above.

7.3 **Termination.**

(a) **Termination by Area Developer.** Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) **Termination by Liberty Without Opportunity to Cure.** Liberty may terminate this Agreement effective upon the date of Liberty's sending written notice of termination to Area Developer, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer, or someone acting under Area Developer's supervision and control, commits a violation of any law, ordinance, rule or regulation of a government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, commits any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against Area Developer or the Area Developer Business relating to compliance with applicable tax laws and regulations or laws and regulations related to this Agreement and the Area Developer Business, and such proceeding or action is not resolved or dismissed in favor of Area Developer, or the Area Developer Business, within thirty (30) days of its initiation; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, submits false reports to Liberty, knowingly maintains false books or records, or fails to disclose a material fact that is requested in any such form or report, or refuses to fill out or completely fill out such form or report, or tender supporting documentation upon reasonable request; or

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

(iv) Area Developer becomes insolvent, is unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or Area Developer makes a general assignment for the benefit of creditors.

(c) **Termination by Liberty After Opportunity to Cure.** Liberty may terminate this Agreement if Area Developer fails to perform any obligation under this Agreement or any other Agreement between the parties or between Area Developer and Liberty's affiliates ("Breach") and such failure has continued for thirty (30) days after Liberty sent written notice of such Breach to Area Developer. Additionally, Liberty may terminate this Agreement if Area Developer commits any of the following breaches and such breach is not cured within fourteen (14) days after Liberty sends written notice of such breach to Area Developer:

(i) Any amount owing to Liberty Liberty's parent company or affiliate entities (collectively, "Liberty Companies"), whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that Area Developer has materially and substantively underreported revenue; or

(ii) Area Developer abandons active operation of the business; or

(iii) Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this Agreement; or

(iv) Area Developer commits three or more breaches of this Agreement, or any other agreement with Liberty or the Liberty Companies to which Area Developer is a party, within any twelve (12) month period.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination, cancellation, expiration, transfer of this Agreement, or exercise by Liberty of the rights provided by Section 4 and Area Developer will remain liable to Liberty for all amounts owed to Liberty.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, Sections 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 8. MISCELLANEOUS

8.1 **Relationship.** Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or

relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership.** Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's Marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names.** Area Developer will not use the word "JTH," "LTS," "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+", "360", "360 Accounting" or the name, or any portion of the name of Liberty's affiliate entities, as any part of the name of a corporation, LLC or other entity (except as may be agreed between Area Developer and Liberty's affiliate entity in a separate franchise agreement with such affiliate entity). Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4 **Assignment.** Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Agreement. Area Developer's interest under this Agreement may be transferred or assigned only if Area Developer complies with the provisions in this Section. No interest may be transferred unless Area Developer is in full compliance with this Agreement and current in all monies owed to Liberty. Upon Liberty's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

(a) **Liberty's Right of First Refusal.** If Area Developer has received and desires to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, Liberty shall have the option (the "Right of First Refusal") to purchase such interest as hereinafter provided. Within fourteen (14) days of receipt of the offer, Area Developer shall offer the Right of First Refusal to Liberty by providing written notice to Liberty which shall include a copy of the signed offer to purchase that Area Developer received ("Notice"). Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the said purchase. Liberty will notify Area Developer in writing within fifteen (15) days of its receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty, there shall immediately arise between Liberty

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

and Area Developer, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by Area Developer.

(b) **Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer (or Area Developer's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, Area Developer must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(c) **Transfer of Interest Within Area Developer.** A transfer of interest within an Area Developer that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners. At the time of the desired transfer of interest within an entity, Area Developer must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity. Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time of transfer. Further, if the transfer of interest results in a change in control of the entity, Area Developer must pay to Liberty the transfer fee required at the time of transfer.

(d) **Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, Area Developer may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that Area Developer satisfies the conditions in Section 8.4(e) and completes the sale within ninety (90) days from the date that Liberty received Notice from Area Developer. If Area Developer does not conclude the proposed sale transaction within this 90-day period, the Liberty's Right of First Refusal shall continue in full force and effect.

(e) **Additional Requirements and Obligations for Transfer.**

i) The proposed transferee(s) must complete Liberty's Area Developer application and pass Liberty's application screening in place at the time of transfer.

ii) The proposed transferee(s) must sign the Liberty amendment forms and/or the then current Area Developer Agreement and must personally assume and be bound by all of the terms, covenants and conditions therein.

iii) The proposed transferee(s) must attend and successfully complete Area Developer Training.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

iv) Area Developer shall sign Liberty's transfer and release forms required by Liberty at the time of transfer and pay to Liberty a transfer fee of $10,000.00.

8.5 **Publicity.** Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6 **Operations Manual, Specifications, and Equipment.** Liberty may issue specifications to guide Area Developer in the provision of Services hereunder. Liberty has an Area Developer Operations Manual that Area Developer agrees to follow. Liberty may issue computer and equipment requirements. At present, Area Developer is required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network. Liberty also requires Area Developer to use an appropriate sales lead and contact information database or software to keep track of Area Developer's contacts with prospective Franchisees and may issue recommendations or requirements in this regard. Liberty may change Liberty's Area Developer Operations Manual and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace. Area Developer agrees to be bound by all future changes.

8.7 **Maintenance of Liberty Goodwill.** Area Developer agrees not to disparage Liberty, Liberty's parent company or affiliate entities or their current and former employees or directors. During the term of this Agreement, Area Developer also agrees not to do any act harmful, prejudicial, or injurious to any or all of the Liberty Companies.

8.8 **Governing Law.**

(a) **Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on Area Developer's behalf if the Territory shown on Schedule A below is located outside of Virginia.

(b) **Jurisdiction and Venue.** In any suit brought by any or all of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer consents to venue and personal jurisdiction in the state court in the city or county where Liberty's national office is located and the federal courts located in the State where Liberty's national office is located (presently Virginia Beach, Virginia state courts and the United States District Courts located in the Commonwealth of Virginia). In any suit brought against any or all of the Liberty Companies, including present and former employees and agents of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal courts located in the State where Liberty's national office is located (presently, the United States District Courts located in the Commonwealth of Virginia.) or if neither federal subject matter nor diversity jurisdiction exists, in

the state court located in the city or county where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

(c) **Jury Waiver.** In any trial between Area Developer and any or all of the Liberty Companies, including present and former employees and agents of Liberty, Liberty's parent company or any affiliate entity, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer and Liberty waive their respective rights to a jury trial and agree to have such action tried by a judge.

(d) **Class Action Waiver.** Area Developer agrees that any claim Area Developer may have against any or all of the Liberty Companies, including past and present employees and agents of the Liberty Companies, shall be brought individually and Area Developer shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Companies.

(e) **No Punitive Damages.** In any lawsuit, dispute or claim between or against Area Developer and any or all of the Liberty Companies, including present and former agents and employees of the Liberty Companies, Area Developer and Liberty waive their respective rights, if any, to seek or recover punitive or exemplary damages.

(f) **Attorneys' Fees and Costs.** Area Developer agrees to reimburse the Liberty Companies for all expenses reasonably incurred (including attorneys' fees and costs): (i) to enforce the terms of this Agreement or any obligation owed to any or all of the Liberty Companies by Area Developer (whether or not the Liberty Companies initiate the legal proceeding, unless the Liberty Companies initiate and fail to substantially prevail in such court or formal legal proceeding); and (ii) in the defense of any claim Area Developer asserts against us on which the Liberty Companies substantially prevail in court or other formal legal proceedings.

(g) **Anti-Terror.** Area Developer represents and warrants that no Area Developer signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx. Further, Area Developer represents and warrants that no Area Developer signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law. The foregoing constitutes continuing representations and warranties, and Area Developer shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

8.9 **Severability.** If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

8.10 **Notices.** Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, Telephone: (757) 493-8855. Any such notice may also be given to Area Developer in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for Area Developer. Liberty may also give notice to Area Developer by e-mail.

8.11 **Burdens and Benefits.** This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

8.12 **Entire Agreement.** This Agreement, including the Schedules, is the entire agreement between Area Developer and Liberty with respect to the subject matter contained herein. This Agreement supersedes all other prior oral and written agreements and understandings between Area Developer and Liberty with respect to the subject matter herein. However, nothing in this or any related agreement is intended to disclaim the representations Liberty made in the area developer disclosure document Liberty furnished to Area Developer.

8.13 **Amendment and Waiver.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

8.14 **Financing.** If Liberty provides financing, Area Developer must submit annual financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. Area Developer agrees to submit the required information at the time and in the format specified by Liberty.

## 9. DEATH OR INCAPACITY

9.1 **Assistance and Reimbursement.** In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render assistance to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for reasonable expenditures incurred.

9.2 **Required Time Frames.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless either:

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

(a) Area Developer or his/her legal representative fails for a period of one hundred and eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

(b) Such assignment is not completed within one year after death or incapacity.

9.3 **Termination for Death or Incapacity.** Liberty shall have the right to terminate this Agreement if one of the conditions in Section 9.2 is not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 7 regarding termination. Further, the terms and conditions of Section 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 10. CONFIDENTIAL INFORMATION

10.1 **Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer ("Confidential Information"). Liberty may disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to Area Developer and Area Developer's representatives. During the term of this Agreement and following the expiration or termination of this Agreement, Area Developer covenants not to directly or indirectly communicate, divulge, or use Confidential Information for its benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing. Upon the expiration, termination or nonrenewal of this Agreement, Area Developer agrees that it will never use or disclose, and will not permit any of its representatives to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business which provides services substantially similar to those stated herein. This provision shall not apply to information that: (a) at the time of disclosure is readily available to the public; (b) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) is subsequently lawfully and in good faith obtained by Area Developer from an independent third party without breach of this Agreement; (d) was in Area Developer's possession prior to the date of Liberty's disclosure to Area Developer; or (e) is disclosed to others in accordance with the terms of a prior written authorization between Area Developer and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

10.2 **Interest.** Area Developer will acquire no interest in Liberty's Confidential Information but is provided the right to use the Confidential Information disclosed for the purposes of developing and operating pursuant to this Agreement. Area Developer acknowledges that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

distributed, utilized or reproduced in any form or by any means, without our prior written consent.

10.3 **Use In Term.** Area Developer agrees that it will (a) refrain from using the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt and implement all reasonable procedures, including but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including but not limited to, restrictions on disclosure to employees of Area Developer and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

10.4 **Use Following Term.** Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 12. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to be a part of this Agreement.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

## 13. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The Area Developer signature of an individual or individuals constitutes their personal agreement to such terms. The Area Developer signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of area developer also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 8.8 above concerning governing law, including, but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Area Developer Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Area Developer Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Area Developer signators specifically agree to indemnify and hold Liberty harmless related to the removal of parties under this provision. All signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

***Signatures on Following Page.***

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Indianapolis, IN DMA

**Area Developer: Mike Budka and Mufeed Haddad** **Entity Number: 4711**

**SIGNATORS:**

By: DocuSigned by: 90550E42EA174DF...
(Signature)

Mike Budka
(Printed Name)

Title:__________

Address: 375 CAMEO WAY
BREA CA 92823

Ownership Percentage:_____%

By: DocuSigned by: 5F29904A0B95474...
(Signature)

Mufeed Haddad
(Printed Name)

Title:__________

Address: 4045 humboldt ln
yorba linda, ca. 92886

Ownership Percentage:____%

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:_____%

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By:__________

Printed Name:__________

Title:__________

Effective Date: 7/13/18

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

**SCHEDULE A TO THE AREA DEVELOPER AGREEMENT**
**TERRITORY**

**Indianapolis, IN DMA**

**TERRITORY**

**The counties of :**
White, IN
Cass, IN
Miami, IN
Carroll, IN
Howard, IN
Grant, IN
Blackford, IN
Clinton, IN
Tipton, IN
Fountain, IN
Montgomery, IN
Boone, IN
Hamilton, IN
Madison, IN
Delaware, IN
Randolph, IN
Putnam, IN
Hendricks, IN
Marion, IN
Hancock, IN
Henry, IN
Morgan, IN
Johnson, IN
Shelby, IN
Rush, IN
Fayette, IN
Owen, IN
Monroe, IN
Brown, IN
Bartholomew, IN
Decatur, IN
Lawrence, IN

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

**Currently divided by JTH Tax, Inc. into  100  Franchise Territories.**



DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Schedule B

**MINIMUM REQUIREMENTS**

At closing there are 25 JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each Franchisee that is a party to a franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/Franchisees such that the following cumulative minimum development obligations are met during the term of the Area Developer Agreement:

| Development Period Ending | Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office |
|---|---|
| 2019 | 27 |
| 2020 | 30 |
| 2021 | 33 |
| 2022 | 38 |
| 2023 | 43 |
| 2024 | 48 |
| 2025 | 53 |
| 2026 | 58 |
| 2027 | 63 |
| 2028 | 68 |

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

4711

# INDIANA ADDENDUM
# TO THE AREA DEVELOPER AGREEMENT

This Addendum forms a part of the Area Developer Agreement dated ______________________, between Liberty Tax Service and Mike Budka and Mufeed Haddad, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Section 5.5 of the Area Developer agreement is supplemented with the addition of the following language: "Notwithstanding the foregoing, you do not indemnify us for liability caused by your proper reliance on or use of procedures or materials provided by us or caused by our negligence."

2. Section 7.2 of the Area Developer agreement is modified to provide that upon renewal you will not be required to release us as to any liabilities arising under Indiana Code § 23-2-2.7.

3. Section 7.2 concerning Renewal is modified to delete the requirement that Area Developer must give Liberty a general release to renew.

4. Section 8.8 concerning Governing Law is deleted and in its place is substituted the following language:

1. "You agree to bring any claim against us, including our present and former employees, agents, and affiliates, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association."

**AREA DEVELOPER:**
**Mike Budka and Mufeed Haddad**

DocuSigned by:
By:____________________
90550E42EA174DF...
Mike Budka

DocuSigned by:
By:____________________
5F29904A9B95474...
Mufeed Haddad

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By:____________________

Printed Name: ________________

Title: ____________________

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

Entity 4711

## SCHEDULE "C" TO THE AREA DEVELOPER AGREEMENT

### Special Stipulation to the Area Developer Agreement- Term

To the extent of any conflict between the following and the provisions of the Area Developer Agreement ("Agreement") between Area Developer and JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty"), the Special Stipulation shall control:

The following language is removed from Section 7.1 of the Area Developer Agreement:

**Term.** This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term").

And is replaced with the following:

**Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

By executing this Agreement, you, your officers and principles, individually and on behalf of all heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges Liberty, its past and present employees, agents, officers, area developers, directors, its subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by you against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

This Stipulation may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single instrument. Delivery of an executed counterpart of a signature page to this Stipulation by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Stipulation. The words "execution," "signed," "signature," and words of similar import in the Stipulation shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified by this Special Stipulation, the terms of the Area Developer Agreement remain in full force and effect. This Special Stipulation supersedes any prior similar Special Stipulation between the parties with respect to this subject matter.

**Area Developer:**
**Mike Budka and Mufeed Haddad**

DocuSigned by:
By: 90550E42EA174DF...
Mike Budka

DocuSigned by:
By: 5F29004A9B95474...
Mufeed Haddad

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By:

Printed Name:

Title:

Effective Date: 7/13/18

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

## SPECIAL STIPULATION TO THE LIBERTY AREA DEVELOPER AGREEMENT

To the extent of any conflict between the following and the provisions of the Area Developer Agreement ("Area Developer Agreement"), the Special Stipulation shall control:

1. Section 7.2 of the JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") Area Developer Agreement is hereby deleted and replaced with the following:

   **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer with the right to enter into a new agreement with Liberty for the provision of the services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for he renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

By executing this Agreement, you, your officers and principles, individually and on behalf of all heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges Liberty, its past and present employees, agents, officers, area developers, directors, its subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by you against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

This Special Stipulation supersedes any prior similar Special Stipulation between the parties with respect to this subject matter. Except to the extent modified above, the terms of the Area Developer Agreement remain in full force and effect unless otherwise modified in writing signed by the parties.

**Area Developer:**
**Mike Budka and Mufeed Haddad**

DocuSigned by:
By: ______________________
90550E42EA174DF...
Mike Budka

DocuSigned by:
By: ______________________
5E29904A9B95474
Mufeed Haddad

**JTH TAX, Inc. d/b/a**
**LIBERTY TAX SERVICE**

By: ______________________

Printed Name: ______________________

Title: ______________________

Effective Date: 7/13/18

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

4711

**SPECIAL STIPULATION TO THE LIBERTY AREA DEVELOPER AGREEMENT LEADS**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement ("Area Developer Agreement"), the Special Stipulation shall control:

1. Section 3.5 of the JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") Area Developer Agreement is hereby deleted and replaced with the following:

   **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $6,500 of leads per year, and may purchase more if offered, but is not obligated to.

By executing this Agreement, you, your officers and principles, individually and on behalf of all heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges Liberty, its past and present employees, agents, officers, area developers, directors, its subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by you against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

This Special Stipulation supersedes any prior similar Special Stipulation between the parties with respect to this subject matter. Except to the extent modified above, the terms of the Area Developer Agreement remain in full force and effect unless otherwise modified in writing signed by the parties.

**Area Developer:**
**Mike Budka and Mufeed Haddad**

By: DocuSigned by: [signature] 90550E42EA174DF...
Mike Budka

By: DocuSigned by: [signature] 5F29904A9B95474...
Mufeed Haddad

**JTH TAX, Inc. d/b/a**
**LIBERTY TAX SERVICE**

By: [signature]

Printed Name: ______________________

Title: ______________________

Effective Date: 7/13/18

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

**Acknowledgment of Early Renewal of Area Developer Agreement**

The undersigned Area Developer acknowledges that the Area Developer Agreement entered into by and between Area Developer and JTH Tax, Inc. d/b/a Liberty Tax Service dated April 20, 2007 was for a ten (10) year term which was extended to a twelve year term via a Special Stipulation dated August 5, 2010, and is now set to expire on April 20, 2019. The parties hereby acknowledge, desire, and consent to the early renewal of the Area Developer Agreement and enter into a new Area Developer Agreement for a ten (10) year term commencing on the effective date of this Agreement. The parties acknowledge that they are under no obligation to renew the Area Developer Agreement at this earlier date and desire and do so of their own free will. Area Developer further acknowledges that Area Developer has been accorded ample time and opportunity to consult with advisors of its own choosing about renewing the Area Developer Agreement pursuant to this Acknowledgement.

Area Developer and all of Area Developer's guarantors, members, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge JTH Tax, Inc. d/b/a Liberty Tax Service, its past and present agents, employees, officers, directors, area developers, successors, assigns and affiliates (collectively "Liberty Released Parties") from any and all claims, actions, causes of action, contractual rights, demands, damages, costs, loss of services, expenses and compensation which Area Developer could assert against the Liberty Released Parties or any of them up through and including the date of this Renewal and Release, including, but not limited to, any claim related to the early renewal of the Area Developer Agreement.

**AREA DEVELOPER:**
**Mike Budka and Mufeed Haddad**

By: DocuSigned by: 90550E42EA174DF...
Mike Budka

By: DocuSigned by: 5F29904A9B95474...
Mufeed Haddad

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: ____________________

Printed Name: ____________________

Title: ____________________

Date: 7/13/18

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

## SPECIAL STIPULATION TO THE LIBERTY AREA DEVELOPER AGREEMENT

To the extent of any conflict between the following and the provisions of the Area Developer Agreement ("Area Developer Agreement"), the Special Stipulation shall control:

1. Section 3.1 of the JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") Area Developer Agreement is hereby deleted and replaced with the following:

   Initial fee paid by Area Developer to Liberty in the Area Developer Agreement dated April 20, 2007 was $2,395,000. Area Developer will pay Liberty no additional development fees upon renewal of said agreement, all or any debt still owed under said Agreement will remain in effect upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

2. Section 3.2 of the Area Developer Agreement is hereby deleted and replaced with the following:

   Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on Franchise Fees or Royalties (except on interest already due and owing before the first of the month following the Effective Date of the original area developer agreement dated April 20, 2007 ("Original Area Developer Agreement")), paid to Liberty by a Franchisee for a franchise within the Territory during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees") except amounts already due and owing before the first of the month following the Effective Date of the Original Area Developer Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee in the Territory pays to Liberty during the Term, except change fees already due and owing before the first of the month following the Effective Date of the Original Area Developer Agreement.

3. Section 3.3 of the Area Developer Agreement is hereby deleted and replaced with the following:

   Pursuant to the franchise agreement between a Franchisee and Liberty, each Franchisee is required to pay royalties associated with the operation of a franchised territory ("Royalties"). Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing Royalties paid by Franchisees to Liberty in Area Developer's Territory during the Term, if any, (except Royalties due and owing before the first of the month following the Effective Date of Original Area Developer Agreement).

   Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the first of the month following the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

By executing this Agreement, you, your officers and principles, individually and on behalf of all heirs, legal representatives, successors and assigns, and each assignee of this agreement by accepting assignment of the same, hereby forever releases and discharges Liberty, its past and present employees, agents, officers, area developers, directors, its subsidiary and affiliated corporations and franchisees, their respective past and present employees, agents, officers, directors, from any and all claims which could be asserted by you against any such persons and entities through the date of this Agreement, except obligations set forth or re-affirmed herein.

DocuSign Envelope ID: 7E21FFBB-DB54-4381-BD32-A453031CC8C3

This Special Stipulation supersedes any prior similar Special Stipulation between the parties with respect to this subject matter. Except to the extent modified above, the terms of the Area Developer Agreement remain in full force and effect unless otherwise modified in writing signed by the parties.

**AREA DEVELOPER:**
**Mike Budka and Mufeed Haddad**

DocuSigned by:

By: 90550E42EA174DF...
Mike Budka

DocuSigned by:

By: 5F29904A9B95474...
Mufeed Haddad

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By:____________________

Printed Name:____________________

Title:____________________

Effective Date: 7/13/18

# Exhibit A-2

DocuSign Envelope ID: 31310542-9D5B-4514-BA9E-0C9AD730B54A Case 23-10983-TMH Doc 131 Filed 11/09/23 Page 53 of 487

**Los Angeles (SOUTHEAST), CA**

LIBERTY
TAX
SERVICE®

**AREA DEVELOPER AGREEMENT**

**EXHIBIT B**

Area Developer Agreement 7-17, as amd. 3-18

# TABLE OF CONTENTS

**1.** **SERVICES** . . . . 3
**2.** **EXCLUSIVITY** . . . . 7
**3.** **FEES AND COMMISSIONS** . . . . 7
**4.** **MINIMUM AREA DEVELOPER PERFORMANCE** . . . . 9
**5.** **FRANCHISOR — FRANCHISEE RELATIONSHIP** . . . . 10
**6.** **NON-COMPETE AND NO SOLICITATION** . . . . 11
**7.** **TERM AND TERMINATION** . . . . 12
**8.** **MISCELLANEOUS** . . . . 14
**9.** **DEATH OR INCAPACITY** . . . . 19
**10.** **CONFIDENTIAL INFORMATION** . . . . 19
**11.** **COUNTERPARTS AND ELECTRONIC SIGNATURE** . . . . 20
**12.** **HEADINGS** . . . . 21
**13.** **AGREEMENT** . . . . 21

**SCHEDULE A TO THE AREA DEVELOPER AGREEMENT** . . . . 22
**SCHEDULE B TO THE AREA DEVELOPER AGREEMENT** . . . . 23

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, area developer ("Area Developer") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

1.1 **Area Developer Services.**

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations Training ("EOT") and Hands On Training ("HOT") to be awarded a Franchise.

(c) **Limitation of Services.** Area Developer may only offer those services or products through the Area Developer business as authorized by Liberty in this Agreement or the area developer operations manual ("Area Developer Operations Manual" or "Manual"), unless Liberty provides prior written approval.

1.2 **Area Developer Support Services and Obligations**.

(a) **Operational Support.** Area Developer will be responsible for coaching the Liberty system as described in the Area Developer Operations Manual and will provide Franchisees with timely local support, day-to-day operational help, marketing advice and feedback. Area Developer will host quarterly designated marketing area (DMA) meetings in person or through electronic means. Through these DMA meetings and as required by Liberty, Area Developer will disseminate information, collaborate with Franchisees, discuss advertising and address other issues that may arise or later be specified by Liberty. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

Area Developer agrees to address reasonable company-owned store issues that may arise or be specified by Liberty. "Company-owned" refers to a store owned and operated by Liberty, an affiliate entity or an entity under the control of Liberty or any of its employees.

(b) **Customer Service.** Area Developer shall use best efforts to ensure that all Franchisees provide all appropriate services as outlined in the Franchisee Operations Manual and the Area Developer Operations Manual, abide by customer service policies issued by Liberty and timely respond to customer complaints and issues. Area Developer must operate in a manner that protects the goodwill, reputation of Liberty and the service marks and trademarks of Liberty (collectively "Marks).

(c) **Site Selection.** Area Developer shall provide site selection assistance in accordance with the Area Developer Operations Manual including, but not limited to, utilization of a company that we designate providing retail business intelligence solutions, and current Electronic Return Originator ("ERO") data. Final site selection must be approved by Liberty.

(d) **Franchisee Budgets, Profit and Loss Statements and Action Plans.** Area Developer shall review and approve Franchisee budgets, profit and loss statements, action plans and the Marketing Plan Generator for submission to corporate for final approval in accordance with the deadlines provided by Liberty.

(e) **Agreement Facilitation.** Area Developers shall review and facilitate Franchisee applications to Liberty for financing, transfers, fee releases, sales, terminations and the like, subject to final approval by Liberty.

(f) **Required Attendance.** Area Developer, or Area Developer's approved representative, shall attend area developer training and EOT within six months of closing. Additionally, Area Developer will attend all meetings that may be required by Liberty.

(g) **Manual.** Area Developer shall provide all assistance and support described in the Area Developer Operations Manual, the Operations Manual provided to Liberty Franchisees and Area Developers and all updates to these Manuals.

(h) **Contract Enforcement.** Upon termination or expiration of the franchise agreement between Liberty and any Franchisee (a "Former Franchisee"), Area Developer will assist Liberty in enforcing the post termination obligations set forth in its franchise agreement with that Former Franchisee ("Post Termination Obligations"), but Area Developer will have no duty to initiate court or other legal proceeding. These obligations include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers of the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof and obtaining all copies of the Former Franchisee's Operations Manual, including any updates, and performing other reasonable duties as may be assigned by Liberty to assist in the transition or closure of an office.

(i) **Fair Dealing.** Area Developer must deal fairly with Liberty and Liberty's existing Franchisees, suppliers, partners, service providers, employees and anyone else with whom Area Developer has contact related to the rights and obligations granted herein. Area Developer shall not take unfair advantage through manipulation, concealment, abuse of privileged information, misrepresentation of facts or any other unfair dealing practice.

1.3    **Liberty Obligations.**

(a)    **Area Developer Operations Manual.**  Liberty will provide an Area Developer Operations Manual and various updates to the Manual to provide requirements of operation and offer guidance in performing Area Developer services.

(b)    **Initial and Advanced Training.**  Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in Sections 1.1 and 1.2.  At present, Liberty provides a three to four day initial Area Developer training course, which Area Developer and any manager working for Area Developer must attend and successfully complete within six months of closing. Liberty also requires Area Developer to attend EOT within six months of closing.  Liberty may also provide and require Area Developer's attendance at advanced or other trainings that may be offered at select locations or Liberty may offer such training on the web or electronically. Although Liberty does not charge attendance at training, Area Developer must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation incurred in attending any training that Liberty provides.

(c)    **Disclosure Document.**  Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's development services.

1.4    **Joint Duties.**  Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.  However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5    **Personal Involvement.**  Area Developer must render the Area Developer and support services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes Liberty's initial Area Developer training course and who is not later disapproved by Liberty.  Area Developer acknowledges and agrees that Liberty shall not, and shall have no right or authority to, control Area Developer's employees. Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of Area Developer's employees.  Area Developer acknowledges and agrees that all employees shall be Area Developer's exclusive employees and shall not be employees of Liberty nor joint employees of Area Developer and Liberty. Liberty neither dictates nor controls labor or employment matters for area developers and their employees.

1.6    **Reports.**  Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify, reports detailing Area Developer's activities, sales and other information that may be requested.

1.7    **Reviews.**  Liberty reserves the right to review Area Developer's business operations, in person, by mail, or electronically. Liberty may inspect Area Developer's operations and obtain paper and electronic business records related to the business and any other operations taking place through Area Developer's business.  Area Developer must send Liberty

any business records requested within five (5) business days of receiving Liberty's request for records and shall be responsible for any costs related to this transmission. Liberty has the right to require that Area Developer implement a plan to resolve any issues that Liberty discovers.

**2. EXCLUSIVITY**

2.1 **Exclusivity.** Except as otherwise permitted in this Agreement, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A ("Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories") as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees.** If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such individual will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS**

3.1 **Initial Fee.** Area Developer will pay Liberty $ **_______** upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee.** Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to ____% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees (except on interest already due and owing before the first of the month following the Effective Date of this Agreement), paid to Liberty by a Franchisee for a franchise within the Territory during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees") except amounts already due and owing before the first of the month following the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee in the Territory pays to Liberty during the Term, except change fees already due and owing before the first of the month following the Effective Date of this Agreement.

3.3 **Franchise Royalties.** Pursuant to the franchise agreement between a Franchisee and Liberty, each Franchisee is required to pay royalties associated with the operation of a franchised territory ("Royalties"). Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to _________% of all ongoing Royalties received by Liberty, if any, from a Franchisee in the Territory during the Term (except Royalties already due and owing before the first of the month following the Effective Date of the Area Developer Agreement.)

Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the first of the month following the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

3.4    **Demand for Payment.**  Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Franchisee or other person or entity to Liberty.

3.5    **Fee for Franchisee Prospects.**  Liberty may provide to Area Developer leads of prospective Franchisees within the Territory. Area Developer may not opt out of receiving leads. Liberty will set fees based upon the cost and the difficulty of acquiring the leads and Area Developer agrees to pay such fees.

3.6    **Fee for Internal Sales.**  If Liberty's own franchise development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (subject to a $6,000 minimum or such other amount as is established pursuant to Section 3.5). Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material.**  Liberty may charge and Area Developer agrees to pay a reasonable charge for preparing, procuring, printing, and/or sending advertising materials and Disclosure Documents to Area Developer.

3.8    **Terminal Services.**  Liberty may charge and Area Developer agrees to pay a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker.**  Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees ("Franchise Broker"). To participate in this opportunity, Area Developer agrees to pay a proportionate share of the Broker's fee for any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory. Area Developer's share of Broker's fee shall be based on the proportion of initial Franchise Fee and Royalties that Area Developer receives under Sections 3.2 and 3.3. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalties under Sections 3.2 and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 which amounts to $4,550.

3.10    **Payment.**  In any month that Liberty receives Franchise Fees, Royalties, interest on promissory notes for Franchise Fees (and such amounts are not already due and owing before the first of the month following the Effective Date of this agreement) from Franchisees in Area Developer's Territory, Liberty will pay Area Developer its share of these amounts not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Franchise Fees, Royalties and interest only with respect to amounts actually collected, and Liberty will be entitled to take credits

against previous payments to Area Developer to the extent that any Franchise Fees, Royalty or interest payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

3.11 **Late Fees.** Payments for charges Liberty bills to Area Developer are due within thirty (30) days of billing and will be subject to an 12% per annum late fee, or the maximum allowed by law if less.

3.12 **Fee Amounts.** From time to time, Liberty will set and publish the fee amounts under Sections 3.5 and 3.7-3.8.

3.13 **Expenses.** Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14 **Referral Fees.** Liberty may offer referral fees to individuals that refer new Franchisees to Liberty. These referral fees do not apply to Area Developer for Candidates that become Franchisees in Area Developer's Territory.

3.15 **Automatic Payment Transfer**. All of the revenue that Area Developer is to receive under the Area Developer Agreement, or any other agreement between Area Developer and Liberty or Liberty's affiliate entities, shall initially be paid to Liberty. Liberty will remit any remaining balance to Area Developer from the above described revenue after deducting monies Area Developer owes to Liberty, and deducting monies to hold for application to upcoming amounts due to Liberty including, but not limited to, unbilled amounts.

3.16 **Transfer Fee.** If Area Developer transfers its rights and obligations under this Agreement, or an interest in this Agreement that results in a change in control of the entity, Area Developer must pay to Liberty a transfer fee of $10,000 at the time of transfer. This fee is subject to increase or decrease in future area developer agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE

4.1 **Minimum Requirements.** Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30.

If Area Developer does not meet the Minimum Requirements, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the requirements were not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirements for that year. Liberty will only be entitled to delete Undeveloped Territories. Undeveloped Territories as used herein is defined as unsold territories which have not generated at least $40,000 in Net Fees in any one of the two prior

fiscal years.  Net Fees as used herein is defined as all revenue from all services and products offered by the franchisee pursuant to the franchise agreement between the franchisee and Liberty (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns) after approved deductions for customer discounts/refunds, send a friends and cash in a flash.  Liberty's notice will designate which Undeveloped Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Undeveloped Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees, Royalties or interest paid with respect to any current or future franchisee or company-owned store within the specified Undeveloped Territories and such territories will no longer be deemed a part of this Agreement.  This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

## 5.    FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1    **Disclosure.**   Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of Franchisees, including providing the current Disclosure Document, prepared by Liberty, to all Candidates within the time frame provided by law. In most jurisdictions, this disclosure is currently required fourteen (14) calendar days before the signing of a binding agreement between the Candidate and Liberty or any payment by the Candidate to Liberty.  Area Developer will ensure that any disclosure made in any form complies with the applicable franchise disclosure laws.  Area Developer will be responsible for providing Liberty's most current Disclosure Document, but will not be responsible for improper disclosure due to inadequacies or errors in Liberty's most current Disclosure Document.

5.2    **Financial Performance Representations.**   Except as may be expressly stated in Item 19 of Liberty's most current Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3    **Improper Representations.**   Area Developer will make no representations to any Candidate that conflicts with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warranties to any party not authorized in writing by Liberty.

5.4    **No Unauthorized Commitments.**   Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5    **Indemnity.**   Area Developer will indemnify, defend and hold Liberty and its parent company, affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding (including attorneys' fees and costs) brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section

5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Area Developer agrees to reasonable cooperation in the defense of any claim. The Indemnified Parties shall have the right to control settlement and selection of counsel and defense of any claim.

**6. NON-COMPETE AND NO SOLICITATION**

6.1 **Non-Compete.**

(a) **In-Term.** Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees pursuant to the terms of this Agreement or as otherwise may be authenticated in writing by Liberty, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees or as otherwise may be allowed by Liberty) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term.** Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans except, if applicable, in Area Developer's capacity as a Liberty Area Developer pursuant to a valid, Liberty Area Developer Agreement.

6.2 **No Solicitation.**

(a) **In-Term.** Except with the written permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term.** Except with the written permission of Liberty, Area Developer will not, for a period of two years after expiration, termination or transfer of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise any franchised business

including, but not limited to, an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3    **Severability.**  If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision.  Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7.    TERM AND TERMINATION

7.1    **Term.**  This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term").

7.2    **Renewal.**  Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement and all other agreements with Liberty and Liberty's affiliates, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement.  If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.  There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty.  Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing Liberty's then current Area Developer Agreement which may contain materially different terms. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above.

7.3    **Termination.**

(a)    **Termination by Area Developer.**   Area Developer may terminate this Agreement at any time through written notice of termination to Liberty.  Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b)    **Termination by Liberty Without Opportunity to Cure.**  Liberty may terminate this Agreement effective upon the date of Liberty's sending written notice of termination to Area Developer, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i)    Area Developer, or someone acting under Area Developer's supervision and control, commits a violation of any law, ordinance, rule or regulation of a

government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, commits any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against Area Developer or the Area Developer Business relating to compliance with applicable tax laws and regulations or laws and regulations related to this Agreement and the Area Developer Business, and such proceeding or action is not resolved or dismissed in favor of Area Developer, or the Area Developer Business, within thirty (30) days of its initiation; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, submits false reports to Liberty, knowingly maintains false books or records, or fails to disclose a material fact that is requested in any such form or report, or refuses to fill out or completely fill out such form or report, or tender supporting documentation upon reasonable request; or

(iv) Area Developer becomes insolvent, is unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or Area Developer makes a general assignment for the benefit of creditors.

(c) **Termination by Liberty After Opportunity to Cure.** Liberty may terminate this Agreement if Area Developer fails to perform any obligation under this Agreement or any other Agreement between the parties or between Area Developer and Liberty's affiliates ("Breach") and such failure has continued for thirty (30) days after Liberty sent written notice of such Breach to Area Developer. Additionally, Liberty may terminate this Agreement if Area Developer commits any of the following breaches and such breach is not cured within fourteen (14) days after Liberty sends written notice of such breach to Area Developer:

(i) Any amount owing to Liberty Liberty's parent company or affiliate entities (collectively, "Liberty Companies"), whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that Area Developer has materially and substantively underreported revenue; or

(ii) Area Developer abandons active operation of the business; or

(iii) Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this Agreement; or

(iv) Area Developer commits three or more breaches of this Agreement, or any other agreement with Liberty or the Liberty Companies to which Area Developer is a party, within any twelve (12) month period.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination, cancellation, expiration, transfer of this Agreement, or exercise by Liberty of the rights provided by Section 4 and Area Developer will remain liable to Liberty for all amounts owed to Liberty.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, Sections 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

**8. MISCELLANEOUS**

8.1 **Relationship.** Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership.** Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's Marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names.** Area Developer will not use the word "JTH," "LTS," "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+", "360", "360 Accounting" or the name, or any portion of the name of Liberty's affiliate entities, as any part of the name of a corporation, LLC or other entity (except as may be agreed between Area Developer and Liberty's affiliate entity in a separate franchise agreement with such affiliate entity). Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the

provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4    **Assignment.**    Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Agreement.  Area Developer's interest under this Agreement may be transferred or assigned only if Area Developer complies with the provisions in this Section.  No interest may be transferred unless Area Developer is in full compliance with this Agreement and current in all monies owed to Liberty.  Upon Liberty's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

(a)    **Liberty's Right of First Refusal.**  If Area Developer has received and desires to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, Liberty shall have the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.  Within fourteen (14) days of receipt of the offer, Area Developer shall offer the Right of First Refusal to Liberty by providing written notice to Liberty which shall include a copy of the signed offer to purchase that Area Developer received ("Notice").  Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the said purchase.  Liberty will notify Area Developer in writing within fifteen (15) days of its receipt of the Notice if it plans to exercise the Right of First Refusal.  Upon the transmission of notice by Liberty, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by Area Developer.

(b)    **Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Area Developer (or Area Developer's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, Area Developer must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity.  Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(c)    **Transfer of Interest Within Area Developer.**  A transfer of interest within an Area Developer that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners.  At the time of the desired transfer of interest within an entity, Area Developer must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity.  Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time

of transfer.  Further, if the transfer of interest results in a change in control of the entity, Area Developer must pay to Liberty the transfer fee required at the time of transfer.

(d)     **Right of First Refusal Not Exercised By Liberty.**  If Liberty does not exercise the Right of First Refusal, Area Developer may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that Area Developer satisfies the conditions in Section 8.4(e) and completes the sale within ninety (90) days from the date that Liberty received Notice from Area Developer.  If Area Developer does not conclude the proposed sale transaction within this 90-day period, the Liberty's Right of First Refusal shall continue in full force and effect.

(e)     **Additional Requirements and Obligations for Transfer.**

    i)    The proposed transferee(s) must complete Liberty's Area Developer application and pass Liberty's application screening in place at the time of transfer.

    ii)   The proposed transferee(s) must sign the Liberty amendment forms and/or the then current Area Developer Agreement and must personally assume and be bound by all of the terms, covenants and conditions therein.

    iii)  The proposed transferee(s) must attend and successfully complete Area Developer Training.

    iv)   Area Developer shall sign Liberty's transfer and release forms required by Liberty at the time of transfer and pay to Liberty a transfer fee of $10,000.00.

8.5     **Publicity.**  Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6     **Operations Manual, Specifications, and Equipment.**  Liberty may issue specifications to guide Area Developer in the provision of Services hereunder.  Liberty has an Area Developer Operations Manual that Area Developer agrees to follow.  Liberty may issue computer and equipment requirements.  At present, Area Developer is required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network.  Liberty also requires Area Developer to use an appropriate sales lead and contact information database or software to keep track of Area Developer's contacts with prospective Franchisees and may issue recommendations or requirements in this regard. Liberty may change Liberty's Area Developer Operations Manual and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace.  Area Developer agrees to be bound by all future changes.

8.7     **Maintenance of Liberty Goodwill.**  Area Developer agrees not to disparage Liberty, Liberty's parent company or affiliate entities or their current and former employees or directors. During the term of this Agreement, Area Developer also agrees not to do any act harmful, prejudicial, or injurious to any or all of the Liberty Companies.

8.8    **Governing Law.**

(a)    **Virginia Law.**  This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer.  Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.  However, the Virginia Retail Franchising Act does not apply to any claims by or on Area Developer's behalf if the Territory shown on Schedule A below is located outside of Virginia.

(b)    **Jurisdiction and Venue.**  In any suit brought by any or all of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer consents to venue and personal jurisdiction in the state court in the city or county where Liberty's national office is located and the federal courts located in the State where Liberty's national office is located (presently Virginia Beach, Virginia state courts and the United States District Courts located in the Commonwealth of Virginia).  In any suit brought against any or all of the Liberty Companies, including present and former employees and agents of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal courts located in the State where Liberty's national office is located (presently, the United States District Courts located in the Commonwealth of Virginia.) or if neither federal subject matter nor diversity jurisdiction exists, in the state court located in the city or county where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

(c)    **Jury Waiver.**  In any trial between Area Developer and any or all of the Liberty Companies, including present and former employees and agents of Liberty, Liberty's parent company or any affiliate entity, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer and Liberty waive their respective rights to a jury trial and agree to have such action tried by a judge.

(d)    **Class Action Waiver.**  Area Developer agrees that any claim Area Developer may have against any or all of the Liberty Companies, including past and present employees and agents of the Liberty Companies, shall be brought individually and Area Developer shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Companies.

(e)    **No Punitive Damages.**  In any lawsuit, dispute or claim between or against Area Developer and any or all of the Liberty Companies, including present and former agents and employees of the Liberty Companies, Area Developer and Liberty waive their respective rights, if any, to seek or recover punitive or exemplary damages.

(f)    **Attorneys' Fees and Costs.**  Area Developer agrees to reimburse the Liberty Companies for all expenses reasonably incurred (including attorneys' fees and costs): (i) to enforce the terms of this Agreement or any obligation owed to any or all of the Liberty Companies by Area Developer (whether or not the Liberty Companies initiate the legal proceeding, unless the Liberty Companies initiate and fail to substantially prevail in such court or formal legal proceeding); and (ii) in the defense of any claim Area Developer asserts against us on which the Liberty Companies substantially prevail in court or other formal legal proceedings.

    (g)   **Anti-Terror.**  Area Developer represents and warrants that no Area Developer signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx.  Further, Area Developer represents and warrants that no Area Developer signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law.  The foregoing constitutes continuing representations and warranties, and Area Developer shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

    8.9   **Severability.**  If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability.  Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

    8.10   **Notices.**  Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, Telephone: (757) 493-8855.  Any such notice may also be given to Area Developer in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for Area Developer.  Liberty may also give notice to Area Developer by e-mail.

    8.11   **Burdens and Benefits.**  This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

    8.12   **Entire Agreement.**  This Agreement, including the Schedules, is the entire agreement between Area Developer and Liberty with respect to the subject matter contained herein.  This Agreement supersedes all other prior oral and written agreements and understandings between Area Developer and Liberty with respect to the subject matter herein.  However, nothing in this or any related agreement is intended to disclaim the representations Liberty made in the area developer disclosure document Liberty furnished to Area Developer.

    8.13   **Amendment and Waiver.**  No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party.  No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

8.14 **Financing.** If Liberty provides financing, Area Developer must submit annual financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. Area Developer agrees to submit the required information at the time and in the format specified by Liberty.

## 9. DEATH OR INCAPACITY

9.1 **Assistance and Reimbursement.** In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render assistance to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for reasonable expenditures incurred.

9.2 **Required Time Frames.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless either:

(a) Area Developer or his/her legal representative fails for a period of one hundred and eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

(b) Such assignment is not completed within one year after death or incapacity.

9.3 **Termination for Death or Incapacity.** Liberty shall have the right to terminate this Agreement if one of the conditions in Section 9.2 is not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 7 regarding termination. Further, the terms and conditions of Section 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 10. CONFIDENTIAL INFORMATION

10.1 **Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer ("Confidential Information"). Liberty may disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to Area Developer and Area Developer's representatives. During the term of this Agreement and following the expiration or termination of this Agreement, Area Developer covenants not to directly or indirectly communicate, divulge, or use Confidential Information for its benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing. Upon the expiration, termination or nonrenewal of this Agreement, Area Developer agrees that it will never use or disclose, and will not permit any of its representatives to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business which provides services substantially similar to those stated herein. This provision shall not apply to information that: (a) at the time of disclosure is readily available to the public; (b) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) is subsequently lawfully and in good faith obtained by Area Developer from an

independent third party without breach of this Agreement; (d) was in Area Developer's possession prior to the date of Liberty's disclosure to Area Developer; or (e) is disclosed to others in accordance with the terms of a prior written authorization between Area Developer and Liberty.  The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

      10.2    **Interest.** Area Developer will acquire no interest in Liberty's Confidential Information but is provided the right to use the Confidential Information disclosed for the purposes of developing and operating pursuant to this Agreement. Area Developer acknowledges that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without our prior written consent.

      10.3    **Use In Term.** Area Developer agrees that it will (a) refrain from using the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt and implement all reasonable procedures, including but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including but not limited to, restrictions on disclosure to employees of Area Developer and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

      10.4    **Use Following Term.** Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11.    COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement.  The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 12.    HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to be a part of this Agreement.

## 13. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The Area Developer signature of an individual or individuals constitutes their personal agreement to such terms. The Area Developer signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of area developer also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 8.8 above concerning governing law, including, but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Area Developer Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Area Developer Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Area Developer signators specifically agree to indemnify and hold Liberty harmless related to the removal of parties under this provision. All signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

***Signatures on Following Page.***

**Area Developer: M&M Business Group L.P.** **Entity Number: 2532**

**SIGNATORS:**

By: DocuSigned by: 90550E42EA174DF...
(Signature)

Michael Budka
(Printed Name)

Title: Partner

Address: 375 S CAMEO WAY
BREA CA 92823

Ownership Percentage: 50 %

By: DocuSigned by: 5F29904A9B95474...
(Signature)

Mufeed Haddad
(Printed Name)

Title: CFO/COO

Address: 4045 humboldt ln
Yorba Linda, ca. 92886

Ownership Percentage: 50 %

By:____________________
(Signature)

____________________
(Printed Name)

Title:____________________

Address:____________________

____________________

Ownership Percentage:_____%

By:____________________
(Signature)

____________________
(Printed Name)

Title:____________________

Address:____________________

____________________

Ownership Percentage:____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: DocuSigned by: 849FAC60A44640E...

Printed Name: Nicole Ossenfort

Title: CEO

Effective Date:____________________

# SCHEDULE A TO THE AREA DEVELOPER AGREEMENT TERRITORY

**Los Angeles (SOUTHEAST), CA**

Schedule A

**TERRITORY**

**The counties of:**

**Los Angeles County, CA (Included part of):**

NORTHWEST of SR-39 from the Los Angeles/Orange County Line to Stage Rd.
NORTHEAST of Stage Rd from SR-39 to the Los Angeles/Orange County Line.
NORTHWEST of the Los Angeles/Orange County Line from Stage Rd to SR-91.
SOUTHWEST of SR-91 from the Los Angeles/Orange County Line to Coyote Creek.
NORTHWEST of Coyote Creek from SR-91 to Del Amo Blvd.
NORTH of Del Amo Blvd from Coyote Creek to I-605.
EAST of I-605 from Del Amo Blvd to SR-91.
NORTH of SR-91 from I-605 to I-710.
EAST of I-710 from SR-91 to I-105.
NORTHEAST of I-105 from I-710 to S Alameda St.
EAST of S Alameda St from I-105 to Martin Luther King Blvd.
SOUTH of Martin Luther King Blvd continuing SOUTH of Century Blvd continuing SOUTH of Abbott Rd from S Alameda St to I-710.
SOUTHEAST of I-710 from Abbott Rd to SR-42.
NORTH of SR-42 from I-710 to Los Angeles River.
EAST of Los Angeles River from SR-42 to S Atlantic Blvd.
SOUTHEAST of S Atlantic Blvd from Los Angeles River to SR-60.
NORTH of SR-60 from S Atlantic Blvd to I-710.
EAST of I-710 from SR-60 to I-10.
SOUTHEAST of I-10 from I-710 to S Fremont Ave.
SOUTHWEST of S Fremont Ave from I-10 to S Monterey Pass Rd.
SOUTHEAST of S Monterey Pass Rd continuing SOUTH of W Garvey Ave from S Fremont Ave to San Gabriel Blvd.
WEST of San Gabriel Blvd continuing SOUTHWEST of N San Gabriel Blvd from W Garvey Ave to Whittier Narrows Dam County Recreational Area.
SOUTHWEST of Whittier Narrows Dam County Recreational Area from N San Gabriel Blvd to I-605.
NORTHWEST of I-605 from Whittier Narrows Dam County Recreational Area to Beverly Blvd.
SOUTHWEST of Beverly Blvd from I-605 to Pickering Ave.
WEST of Pickering Ave from Beverly Blvd to Mar Vista St.
SOUTHWEST of Mar Vista St from Pickering Ave to Colima Rd.
NORTHWEST of Colima Rd from Mar Vista St to Mulberry Dr.
SOUTH of Mulberry Dr from Colima Rd to Scott Ave.
EAST of Scott Ave from Mulberry Dr to Lambert Rd.
SOUTHWEST of Lambert Rd continuing SOUTH of W Lambert Rd from Scott Ave to the Los Angeles/Orange County Line.
WEST of the Los Angeles/Orange County Line from W Lambert Rd to SR-39.

**Orange County, CA (Included Part of):**

WEST of continuing NORTHWEST of Beach Blvd from W Lambert Rd to the Los Angeles/Orange County Line.
EAST of the Los Angeles/Orange County Line from S Beach Blvd to W Lambert R.
SOUTH of W Lambert Rd from the Los Angeles/Orange County Line to S Beach Blvd.

**Currently divided by JTH Tax, Inc. into  22  Franchise Territories.**



Schedule B

**MINIMUM REQUIREMENTS**

At closing there are twelve (12) JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each Franchisee that is a party to a franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/Franchisees such that the following cumulative minimum development obligations are met during the term of the Area Developer Agreement:

| **Development Period Ending** | **Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office** |
|---|---|
| 2019 | 13 |
| 2020 | 13 |
| 2021 | 15 |
| 2022 | 15 |
| 2023 | 17 |
| 2024 | 17 |
| 2025 | 19 |
| 2026 | 19 |
| 2027 | 21 |
| 2028 | 21 |

# Exhibit A-3

**Raleigh-Durham-Fayetteville, NC**

# AREA DEVELOPER AGREEMENT

# EXHIBIT B

# TABLE OF CONTENTS

1. **SERVICES** .......... 3
2. **EXCLUSIVITY** .......... 7
3. **FEES AND COMMISSIONS** .......... 7
4. **MINIMUM AREA DEVELOPER PERFORMANCE** .......... 9
5. **FRANCHISOR — FRANCHISEE RELATIONSHIP** .......... 10
6. **NON-COMPETE AND NO SOLICITATION** .......... 11
7. **TERM AND TERMINATION** .......... 12
8. **MISCELLANEOUS** .......... 14
9. **DEATH OR INCAPACITY** .......... 19
10. **CONFIDENTIAL INFORMATION** .......... 19
11. **COUNTERPARTS AND ELECTRONIC SIGNATURE** .......... 20
12. **HEADINGS** .......... 21
13. **AGREEMENT** .......... 21

**SCHEDULE A TO THE AREA DEVELOPER AGREEMENT** .......... 22
**SCHEDULE B TO THE AREA DEVELOPER AGREEMENT** .......... 23

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, area developer ("Area Developer") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

1.1 **Area Developer Services.**

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations Training ("EOT") and Hands On Training ("HOT") to be awarded a Franchise.

(c) **Limitation of Services.** Area Developer may only offer those services or products through the Area Developer business as authorized by Liberty in this Agreement or the area developer operations manual ("Area Developer Operations Manual" or "Manual"), unless Liberty provides prior written approval.

1.2 **Area Developer Support Services and Obligations**.

(a) **Operational Support.** Area Developer will be responsible for coaching the Liberty system as described in the Area Developer Operations Manual and will provide Franchisees with timely local support, day-to-day operational help, marketing advice and feedback. Area Developer will host quarterly designated marketing area (DMA) meetings in person or through electronic means. Through these DMA meetings and as required by Liberty, Area Developer will disseminate information, collaborate with Franchisees, discuss advertising and address other issues that may arise or later be specified by Liberty. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

Area Developer agrees to address reasonable company-owned store issues that may arise or be specified by Liberty. "Company-owned" refers to a store owned and operated by Liberty, an affiliate entity or an entity under the control of Liberty or any of its employees.

(b) **Customer Service.** Area Developer shall use best efforts to ensure that all Franchisees provide all appropriate services as outlined in the Franchisee Operations Manual and the Area Developer Operations Manual, abide by customer service policies issued by Liberty and timely respond to customer complaints and issues. Area Developer must operate in a manner that protects the goodwill, reputation of Liberty and the service marks and trademarks of Liberty (collectively "Marks).

(c) **Site Selection** Area Developer shall provide site selection assistance in accordance with the Area Developer Operations Manual including, but not limited to, utilization of a company that we designate providing retail business intelligence solutions, and current Electronic Return Originator ("ERO") data. Final site selection must be approved by Liberty.

(d) **Franchisee Budgets, Profit and Loss Statements and Action Plans.** Area Developer shall review and approve Franchisee budgets, profit and loss statements, action plans and the Marketing Plan Generator for submission to corporate for final approval in accordance with the deadlines provided by Liberty.

(e) **Agreement Facilitation.** Area Developers shall review and facilitate Franchisee applications to Liberty for financing, transfers, fee releases, sales, terminations and the like, subject to final approval by Liberty.

(f) **Required Attendance.** Area Developer, or Area Developer's approved representative, shall attend area developer training and EOT within six months of closing. Additionally, Area Developer will attend all meetings that may be required by Liberty.

(g) **Manual.** Area Developer shall provide all assistance and support described in the Area Developer Operations Manual, the Operations Manual provided to Liberty Franchisees and Area Developers and all updates to these Manuals.

(h) **Contract Enforcement.** Upon termination or expiration of the franchise agreement between Liberty and any Franchisee (a "Former Franchisee"), Area Developer will assist Liberty in enforcing the post termination obligations set forth in its franchise agreement with that Former Franchisee ("Post Termination Obligations"), but Area Developer will have no duty to initiate court or other legal proceeding. These obligations include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers of the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof and obtaining all copies of the Former Franchisee's Operations Manual, including any updates, and performing other reasonable duties as may be assigned by Liberty to assist in the transition or closure of an office.

(i) **Fair Dealing.** Area Developer must deal fairly with Liberty and Liberty's existing Franchisees, suppliers, partners, service providers, employees and anyone else with whom Area Developer has contact related to the rights and obligations granted herein. Area Developer shall not take unfair advantage through manipulation, concealment, abuse of privileged information, misrepresentation of facts or any other unfair dealing practice.

1.3    **Liberty Obligations.**

(a)    **Area Developer Operations Manual.**  Liberty will provide an Area Developer Operations Manual and various updates to the Manual to provide requirements of operation and offer guidance in performing Area Developer services.

(b)    **Initial and Advanced Training.**  Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in Sections 1.1 and 1.2.  At present, Liberty provides a three to four day initial Area Developer training course, which Area Developer and any manager working for Area Developer must attend and successfully complete within six months of closing.  Liberty also requires Area Developer to attend EOT within six months of closing.  Liberty may also provide and require Area Developer's attendance at advanced or other trainings that may be offered at select locations or Liberty may offer such training on the web or electronically.  Although Liberty does not charge attendance at training, Area Developer must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation incurred in attending any training that Liberty provides.

(c)    **Disclosure Document.**  Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's development services.

1.4    **Joint Duties.**    Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.  However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5    **Personal Involvement.**  Area Developer must render the Area Developer and support services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes Liberty's initial Area Developer training course and who is not later disapproved by Liberty.  Area Developer acknowledges and agrees that Liberty shall not, and shall have no right or authority to, control Area Developer's employees.  Liberty shall have no right or authority with respect to the hiring, termination, discipline, work schedules, pay rates or pay methods of Area Developer's employees.  Area Developer acknowledges and agrees that all employees shall be Area Developer's exclusive employees and shall not be employees of Liberty nor joint employees of Area Developer and Liberty. Liberty neither dictates nor controls labor or employment matters for area developers and their employees.

1.6    **Reports.**  Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify, reports detailing Area Developer's activities, sales and other information that may be requested.

1.7    **Reviews.**    Liberty reserves the right to review Area Developer's business operations, in person, by mail, or electronically. Liberty may inspect Area Developer's operations and obtain paper and electronic business records related to the business and any other operations taking place through Area Developer's business.  Area Developer must send Liberty

any business records requested within five (5) business days of receiving Liberty's request for records and shall be responsible for any costs related to this transmission. Liberty has the right to require that Area Developer implement a plan to resolve any issues that Liberty discovers.

## 2. EXCLUSIVITY

2.1 **Exclusivity.** Except as otherwise permitted in this Agreement, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A ("Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories") as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees.** If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such individual will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS

3.1 **Initial Fee.** Area Developer will pay Liberty $ _______ upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee.** Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to ____% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees (except on interest already due and owing before the first of the month following the Effective Date of this Agreement), paid to Liberty by a Franchisee for a franchise within the Territory during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees") except amounts already due and owing before the first of the month following the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee in the Territory pays to Liberty during the Term, except change fees already due and owing before the first of the month following the Effective Date of this Agreement.

3.3 **Franchise Royalties.** Pursuant to the franchise agreement between a Franchisee and Liberty, each Franchisee is required to pay royalties associated with the operation of a franchised territory ("Royalties"). Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to _________% of all ongoing Royalties received by Liberty, if any, from a Franchisee in the Territory during the Term (except Royalties already due and owing before the first of the month following the Effective Date of the Area Developer Agreement.)

Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the first of the month following the Effective Date of this Agreement.  The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

3.4     **Demand for Payment.**  Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Franchisee or other person or entity to Liberty.

3.5     **Fee for Franchisee Prospects.**  Liberty may provide to Area Developer leads of prospective Franchisees within the Territory. Area Developer may not opt out of receiving leads. Liberty will set fees based upon the cost and the difficulty of acquiring the leads and Area Developer agrees to pay such fees.

3.6     **Fee for Internal Sales.**  If Liberty's own franchise development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (subject to a $6,000 minimum or such other amount as is established pursuant to Section 3.5).  Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7     **Advertising and Selling Material.**  Liberty may charge and Area Developer agrees to pay a reasonable charge for preparing, procuring, printing, and/or sending advertising materials and Disclosure Documents to Area Developer.

3.8     **Terminal Services.**  Liberty may charge and Area Developer agrees to pay a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9     **Use of Franchise Broker.**  Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees ("Franchise Broker").  To participate in this opportunity, Area Developer agrees to pay a proportionate share of the Broker's fee for any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory. Area Developer's share of Broker's fee shall be based on the proportion of initial Franchise Fee  and Royalties that Area Developer receives under Sections 3.2 and 3.3. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalties under Sections 3.2 and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 which amounts to $4,550.

3.10    **Payment.**  In any month that Liberty receives Franchise Fees, Royalties, interest on promissory notes for Franchise Fees (and such amounts are not already due and owing before the first of the month following the Effective Date of this agreement) from Franchisees in Area Developer's Territory, Liberty will pay Area Developer its share of these amounts not later than the last day of the next calendar month.  In no case will Liberty advance funds to Area Developer, or be liable for payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Franchise Fees, Royalties and interest only with respect to amounts actually collected, and Liberty will be entitled to take credits

against previous payments to Area Developer to the extent that any Franchise Fees, Royalty or interest payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

3.11 **Late Fees.** Payments for charges Liberty bills to Area Developer are due within thirty (30) days of billing and will be subject to an 12% per annum late fee, or the maximum allowed by law if less.

3.12 **Fee Amounts.** From time to time, Liberty will set and publish the fee amounts under Sections 3.5 and 3.7-3.8.

3.13 **Expenses.** Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14 **Referral Fees.** Liberty may offer referral fees to individuals that refer new Franchisees to Liberty. These referral fees do not apply to Area Developer for Candidates that become Franchisees in Area Developer's Territory.

3.15 **Automatic Payment Transfer**. All of the revenue that Area Developer is to receive under the Area Developer Agreement, or any other agreement between Area Developer and Liberty or Liberty's affiliate entities, shall initially be paid to Liberty. Liberty will remit any remaining balance to Area Developer from the above described revenue after deducting monies Area Developer owes to Liberty, and deducting monies to hold for application to upcoming amounts due to Liberty including, but not limited to, unbilled amounts.

3.16 **Transfer Fee.** If Area Developer transfers its rights and obligations under this Agreement, or an interest in this Agreement that results in a change in control of the entity, Area Developer must pay to Liberty a transfer fee of $10,000 at the time of transfer. This fee is subject to increase or decrease in future area developer agreements by the amount of change in the *Consumer Price Index – All Urban Consumers*, published by the U.S. Department of Labor, or a reasonably similar successor index, from the index as of the Effective Date.

## 4.    MINIMUM AREA DEVELOPER PERFORMANCE

4.1 **Minimum Requirements.** Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30.

If Area Developer does not meet the Minimum Requirements, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the requirements were not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirements for that year. Liberty will only be entitled to delete Undeveloped Territories. Undeveloped Territories as used herein is defined as unsold territories which have not generated at least $40,000 in Net Fees in any one of the two prior

fiscal years. Net Fees as used herein is defined as all revenue from all services and products offered by the franchisee pursuant to the franchise agreement between the franchisee and Liberty (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns) after approved deductions for customer discounts/refunds, send a friends and cash in a flash. Liberty's notice will designate which Undeveloped Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Undeveloped Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees, Royalties or interest paid with respect to any current or future franchisee or company-owned store within the specified Undeveloped Territories and such territories will no longer be deemed a part of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

## 5.    FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1    **Disclosure.**  Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of Franchisees, including providing the current Disclosure Document, prepared by Liberty, to all Candidates within the time frame provided by law. In most jurisdictions, this disclosure is currently required fourteen (14) calendar days before the signing of a binding agreement between the Candidate and Liberty or any payment by the Candidate to Liberty.  Area Developer will ensure that any disclosure made in any form complies with the applicable franchise disclosure laws.  Area Developer will be responsible for providing Liberty's most current Disclosure Document, but will not be responsible for improper disclosure due to inadequacies or errors in Liberty's most current Disclosure Document.

5.2    **Financial Performance Representations.**  Except as may be expressly stated in Item 19 of Liberty's most current Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3    **Improper Representations.**  Area Developer will make no representations to any Candidate that conflicts with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warranties to any party not authorized in writing by Liberty.

5.4    **No Unauthorized Commitments.**  Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5    **Indemnity.**  Area Developer will indemnify, defend and hold Liberty and its parent company, affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding (including attorneys' fees and costs) brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section

5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4. Area Developer agrees to reasonable cooperation in the defense of any claim. The Indemnified Parties shall have the right to control settlement and selection of counsel and defense of any claim.

## 6. NON-COMPETE AND NO SOLICITATION

### 6.1 **Non-Compete.**

(a) **In-Term.** Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees pursuant to the terms of this Agreement or as otherwise may be authenticated in writing by Liberty, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees or as otherwise may be allowed by Liberty) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term.** Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in any franchised business including, but not limited to, a franchised business offering income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans except, if applicable, in Area Developer's capacity as a Liberty Area Developer pursuant to a valid, Liberty Area Developer Agreement.

### 6.2 **No Solicitation.**

(a) **In-Term.** Except with the written permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term.** Except with the written permission of Liberty, Area Developer will not, for a period of two years after expiration, termination or transfer of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise any franchised business

including, but not limited to, an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3 **Severability.** If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7. TERM AND TERMINATION

7.1 **Term.** This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term").

7.2 **Renewal.** Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement and all other agreements with Liberty and Liberty's affiliates, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing Liberty's then current Area Developer Agreement which may contain materially different terms. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above.

7.3 **Termination.**

(a) **Termination by Area Developer.** Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) **Termination by Liberty Without Opportunity to Cure.** Liberty may terminate this Agreement effective upon the date of Liberty's sending written notice of termination to Area Developer, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer, or someone acting under Area Developer's supervision and control, commits a violation of any law, ordinance, rule or regulation of a

government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, commits any act that is or could be, in Liberty's determination, harmful, prejudicial or injurious to the Liberty brand or any of the Affiliated Companies or any employee, franchisee, area developer or agent of such companies, or if the IRS or any federal, state or local governmental entity or agency initiates a criminal, civil or administrative proceeding or takes any administrative action against Area Developer or the Area Developer Business relating to compliance with applicable tax laws and regulations or laws and regulations related to this Agreement and the Area Developer Business, and such proceeding or action is not resolved or dismissed in favor of Area Developer, or the Area Developer Business, within thirty (30) days of its initiation; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, submits false reports to Liberty, knowingly maintains false books or records, or fails to disclose a material fact that is requested in any such form or report, or refuses to fill out or completely fill out such form or report, or tender supporting documentation upon reasonable request; or

(iv) Area Developer becomes insolvent, is unable to pay debts as they come due or take any steps to seek protection from creditors, or if a receiver (permanent or temporary) is appointed by a creditor or a court of competent authority, or Area Developer makes a general assignment for the benefit of creditors.

(c) **Termination by Liberty After Opportunity to Cure.** Liberty may terminate this Agreement if Area Developer fails to perform any obligation under this Agreement or any other Agreement between the parties or between Area Developer and Liberty's affiliates ("Breach") and such failure has continued for thirty (30) days after Liberty sent written notice of such Breach to Area Developer. Additionally, Liberty may terminate this Agreement if Area Developer commits any of the following breaches and such breach is not cured within fourteen (14) days after Liberty sends written notice of such breach to Area Developer:

(i) Any amount owing to Liberty Liberty's parent company or affiliate entities (collectively, "Liberty Companies"), whether related to the Territory or not, is more than thirty (30) days past due, or Liberty determines that Area Developer has materially and substantively underreported revenue; or

(ii) Area Developer abandons active operation of the business; or

(iii) Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this Agreement; or

(iv) Area Developer commits three or more breaches of this Agreement, or any other agreement with Liberty or the Liberty Companies to which Area Developer is a party, within any twelve (12) month period.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination, cancellation, expiration, transfer of this Agreement, or exercise by Liberty of the rights provided by Section 4 and Area Developer will remain liable to Liberty for all amounts owed to Liberty.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, Sections 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

**8. MISCELLANEOUS**

8.1 **Relationship.** Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership.** Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's Marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names.** Area Developer will not use the word "JTH," "LTS," "Dona Libertad," "Liberty," "Libtax", "Siempre", "SiempreTax," "SiempreTax+", "360", "360 Accounting" or the name, or any portion of the name of Liberty's affiliate entities, as any part of the name of a corporation, LLC or other entity (except as may be agreed between Area Developer and Liberty's affiliate entity in a separate franchise agreement with such affiliate entity). Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the

provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4    **Assignment.**    Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms.  Liberty does not permit a sub-license of the Agreement.  Area Developer's interest under this Agreement may be transferred or assigned only if Area Developer complies with the provisions in this Section.  No interest may be transferred unless Area Developer is in full compliance with this Agreement and current in all monies owed to Liberty.  Upon Liberty's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

(a)    **Liberty's Right of First Refusal.**  If Area Developer has received and desires to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, Liberty shall have the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.  Within fourteen (14) days of receipt of the offer, Area Developer shall offer the Right of First Refusal to Liberty by providing written notice to Liberty which shall include a copy of the signed offer to purchase that Area Developer received ("Notice").  Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of Liberty's Right of First Refusal to close the said purchase.  Liberty will notify Area Developer in writing within fifteen (15) days of its receipt of the Notice if it plans to exercise the Right of First Refusal.  Upon the transmission of notice by Liberty, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by Area Developer.

(b)    **Transfer to Controlled Entity.**  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Area Developer (or Area Developer's managers, members, owners, partners, shareholders or officers as of the date of this Agreement) is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, Area Developer must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest, and provide Liberty with the applicable organizational documents of the business entity.  Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their respective individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(c)    **Transfer of Interest Within Area Developer.**  A transfer of interest within an Area Developer that is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership is changing and not the identity of the owners.  At the time of the desired transfer of interest within an entity, Area Developer must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer and provide Liberty with the applicable organizational documents of the business entity.  Each such person of the Controlled Entity shall sign, on behalf of the business entity and in their individual capacity, the amendment and release forms and/or area developer agreement as required by Liberty at the time

of transfer.  Further, if the transfer of interest results in a change in control of the entity, Area Developer must pay to Liberty the transfer fee required at the time of transfer.

(d)    **Right of First Refusal Not Exercised By Liberty.**  If Liberty does not exercise the Right of First Refusal, Area Developer may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that Area Developer satisfies the conditions in Section 8.4(e) and completes the sale within ninety (90) days from the date that Liberty received Notice from Area Developer.  If Area Developer does not conclude the proposed sale transaction within this 90-day period, the Liberty's Right of First Refusal shall continue in full force and effect.

(e)    **Additional Requirements and Obligations for Transfer.**

i)    The proposed transferee(s) must complete Liberty's Area Developer application and pass Liberty's application screening in place at the time of transfer.

ii)    The proposed transferee(s) must sign the Liberty amendment forms and/or the then current Area Developer Agreement and must personally assume and be bound by all of the terms, covenants and conditions therein.

iii)   The proposed transferee(s) must attend and successfully complete Area Developer Training.

iv)   Area Developer shall sign Liberty's transfer and release forms required by Liberty at the time of transfer and pay to Liberty a transfer fee of $10,000.00.

8.5    **Publicity.**  Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6    **Operations Manual, Specifications, and Equipment.**    Liberty may issue specifications to guide Area Developer in the provision of Services hereunder.  Liberty has an Area Developer Operations Manual that Area Developer agrees to follow.  Liberty may issue computer and equipment requirements.  At present, Area Developer is required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network.  Liberty also requires Area Developer to use an appropriate sales lead and contact information database or software to keep track of Area Developer's contacts with prospective Franchisees and may issue recommendations or requirements in this regard. Liberty may change Liberty's Area Developer Operations Manual and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace.  Area Developer agrees to be bound by all future changes.

8.7    **Maintenance of Liberty Goodwill.**    Area Developer agrees not to disparage Liberty, Liberty's parent company or affiliate entities or their current and former employees or directors. During the term of this Agreement, Area Developer also agrees not to do any act harmful, prejudicial, or injurious to any or all of the Liberty Companies.

8.8    **Governing Law.**

(a)    **Virginia Law.** This Agreement is effective upon its acceptance in Virginia by Liberty's authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on Area Developer's behalf if the Territory shown on Schedule A below is located outside of Virginia.

(b)    **Jurisdiction and Venue.** In any suit brought by any or all of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer consents to venue and personal jurisdiction in the state court in the city or county where Liberty's national office is located and the federal courts located in the State where Liberty's national office is located (presently Virginia Beach, Virginia state courts and the United States District Courts located in the Commonwealth of Virginia). In any suit brought against any or all of the Liberty Companies, including present and former employees and agents of the Liberty Companies, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal courts located in the State where Liberty's national office is located (presently, the United States District Courts located in the Commonwealth of Virginia.) or if neither federal subject matter nor diversity jurisdiction exists, in the state court located in the city or county where Liberty's National Office is located (presently the City of Virginia Beach, Virginia).

(c)    **Jury Waiver.** In any trial between Area Developer and any or all of the Liberty Companies, including present and former employees and agents of Liberty, Liberty's parent company or any affiliate entity, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer and Liberty waive their respective rights to a jury trial and agree to have such action tried by a judge.

(d)    **Class Action Waiver.** Area Developer agrees that any claim Area Developer may have against any or all of the Liberty Companies, including past and present employees and agents of the Liberty Companies, shall be brought individually and Area Developer shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against any or all of the Liberty Companies.

(e)    **No Punitive Damages.** In any lawsuit, dispute or claim between or against Area Developer and any or all of the Liberty Companies, including present and former agents and employees of the Liberty Companies, Area Developer and Liberty waive their respective rights, if any, to seek or recover punitive or exemplary damages.

(f)    **Attorneys' Fees and Costs.** Area Developer agrees to reimburse the Liberty Companies for all expenses reasonably incurred (including attorneys' fees and costs): (i) to enforce the terms of this Agreement or any obligation owed to any or all of the Liberty Companies by Area Developer (whether or not the Liberty Companies initiate the legal proceeding, unless the Liberty Companies initiate and fail to substantially prevail in such court or formal legal proceeding); and (ii) in the defense of any claim Area Developer asserts against us on which the Liberty Companies substantially prevail in court or other formal legal proceedings.

(g)    **Anti-Terror.**  Area Developer represents and warrants that no Area Developer signatory to this Agreement is identified, either by name or an alias, pseudonym or nickname, on the lists of "Specially Designated Nationals" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx.  Further, Area Developer represents and warrants that no Area Developer signatory to this Agreement has violated, and agrees not to violate, any law prohibiting corrupt business practices, money laundering or the aid or support of Persons who conspire to commit acts of terror against any Person or government, including acts prohibited by the U.S. Patriot Act, U.S. Executive Order 13224, or any similar law.  The foregoing constitutes continuing representations and warranties, and Area Developer shall immediately notify Liberty in writing of the occurrence of any event or the development of any circumstance that might render any of the foregoing representations and warranties false, inaccurate or misleading.

8.9    **Severability.**  If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability.  Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

8.10    **Notices.**  Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, Telephone: (757) 493-8855.  Any such notice may also be given to Area Developer in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for Area Developer.  Liberty may also give notice to Area Developer by e-mail.

8.11    **Burdens and Benefits.**  This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

8.12    **Entire Agreement.**  This Agreement, including the Schedules, is the entire agreement between Area Developer and Liberty with respect to the subject matter contained herein.  This Agreement supersedes all other prior oral and written agreements and understandings between Area Developer and Liberty with respect to the subject matter herein.  However, nothing in this or any related agreement is intended to disclaim the representations Liberty made in the area developer disclosure document Liberty furnished to Area Developer.

8.13    **Amendment and Waiver.**  No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party.  No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

8.14 **Financing.** If Liberty provides financing, Area Developer must submit annual financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. Area Developer agrees to submit the required information at the time and in the format specified by Liberty.

**9. DEATH OR INCAPACITY**

9.1 **Assistance and Reimbursement.** In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render assistance to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for reasonable expenditures incurred.

9.2 **Required Time Frames.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless either:

(a) Area Developer or his/her legal representative fails for a period of one hundred and eighty (180) days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

(b) Such assignment is not completed within one year after death or incapacity.

9.3 **Termination for Death or Incapacity.** Liberty shall have the right to terminate this Agreement if one of the conditions in Section 9.2 is not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 7 regarding termination. Further, the terms and conditions of Section 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

**10. CONFIDENTIAL INFORMATION**

10.1 **Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer ("Confidential Information"). Liberty may disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to Area Developer and Area Developer's representatives. During the term of this Agreement and following the expiration or termination of this Agreement, Area Developer covenants not to directly or indirectly communicate, divulge, or use Confidential Information for its benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing. Upon the expiration, termination or nonrenewal of this Agreement, Area Developer agrees that it will never use or disclose, and will not permit any of its representatives to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business which provides services substantially similar to those stated herein. This provision shall not apply to information that: (a) at the time of disclosure is readily available to the public; (b) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) is subsequently lawfully and in good faith obtained by Area Developer from an

independent third party without breach of this Agreement; (d) was in Area Developer's possession prior to the date of Liberty's disclosure to Area Developer; or (e) is disclosed to others in accordance with the terms of a prior written authorization between Area Developer and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

      10.2   **Interest.** Area Developer will acquire no interest in Liberty's Confidential Information but is provided the right to use the Confidential Information disclosed for the purposes of developing and operating pursuant to this Agreement. Area Developer acknowledges that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without our prior written consent.

      10.3   **Use In Term.** Area Developer agrees that it will (a) refrain from using the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt and implement all reasonable procedures, including but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including but not limited to, restrictions on disclosure to employees of Area Developer and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

      10.4   **Use Following Term.** Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11.    COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 12.    HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to be a part of this Agreement.

## 13. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The Area Developer signature of an individual or individuals constitutes their personal agreement to such terms. The Area Developer signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

The individual signators signing on behalf of area developer also agree jointly and severally to perform all the obligations in and relating to this Agreement, including, but not limited to, all obligations related to the covenants not to compete, covenants not to solicit, confidentiality obligations, obligations to make payments specified herein, pay any other promissory notes and other debts due to Liberty, pay for products later ordered from Liberty and the obligations stated in **Section 8.8 above concerning governing law, including, but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only.** If the Area Developer Agreement is held in the name of a business entity and it is later determined by Liberty that the entity is no longer valid or in good standing with the laws of the applicable state of organization or that an individual has been removed as a part of the business entity pursuant to applicable state law or otherwise, Liberty shall have the right to modify the Area Developer Agreement to reflect the then current business structure with the signatures of only those that remain as valid members, officers, partners, directors or sole proprietor of the then current business structure. All Area Developer signators specifically agree to indemnify and hold Liberty harmless related to the removal of parties under this provision. All signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other signators. Except as specified herein, no person or entity is a third-party beneficiary of this Agreement.

***Signatures on Following Page.***

**Area Developer: Mufeed Haddad** **Entity Number: 4693**

**SIGNATORS:**

By: DocuSign by: 5E29904A9B95474
(Signature)

Mufeed Haddad
(Printed Name)

Title:

Address: 4045 humboldt ln
Yorba Linda ca 92886

Ownership Percentage:_____%

By:
(Signature)

(Printed Name)

Title:

Address:

Ownership Percentage:____%

By:
(Signature)

(Printed Name)

Title:

Address:

Ownership Percentage:_____%

By:
(Signature)

(Printed Name)

Title:

Address:

Ownership Percentage:____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: DocuSigned by: 849FAC60A44640E...

Printed Name: Nicole Ossenfort

Title: CEO

Effective Date:

# SCHEDULE A TO THE AREA DEVELOPER AGREEMENT
# TERRITORY

## Raleigh-Durham-Fayetteville, NC

Schedule A

**TERRITORY**

**The counties of:**

**Person, NC**
**Granville, NC**
**Vance, NC**
**Warren, NC**
**Orange, NC**
**Durham, NC**
**Wake, NC**
**Franklin, NC**
**Chatham, NC**
**Moore, NC**
**Lee, NC**
**Harnett, NC**
**Johnston, NC**
**Hoke, NC**
**Cumberland, NC**
**Scotland, NC**

**Robeson, NC** (*including **only** the following part of*)**:**

NORTHWEST of I-95 from the Robeson/Cumberland County Line to the North Carolina/South Carolina State Line.
NORTHEAST of the North Carolina/South Carolina State Line from I-95 to the Robeson/Scotland County Line.
SOUTHEAST of the Robeson/Scotland County Line from the North Carolina/South Carolina State Line to the Robeson/Hoke County Line.
SOUTHEAST of the Robeson/Hoke County Line from the Robeson/Scotland County Line to the Robeson/Cumberland County Line.
SOUTHWEST of the Robeson/Cumberland County Line from the Robeson/Hoke County Line to I-95.

**Currently divided by JTH Tax, Inc. into 68 Franchise Territories.**

Caswell
Person
Granville
Vance
Warren
Orange
Durham
Franklin
Alamance
SEST021
Nash
Chatham
Wake
Wilson
Johnston
Lee
Harnett
Moore
Wayne
Cumberland
Sampson
Richmond
Hoke
Duplin
Scotland
Robeson
Bladen
Marlboro

Schedule B

**MINIMUM REQUIREMENTS**

At closing there are thirty-three (33) JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each Franchisee that is a party to a franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/Franchisees such that the following cumulative minimum development obligations are met during the term of the Area Developer Agreement:

| Development Period Ending | Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office |
|---|---|
| 2019 | 34 |
| 2020 | 35 |
| 2021 | 37 |
| 2022 | 39 |
| 2023 | 42 |
| 2024 | 45 |
| 2025 | 48 |
| 2026 | 52 |
| 2027 | 56 |
| 2028 | 60 |

# Exhibit A-4



# AREA DEVELOPER AGREEMENT

## EXHIBIT B

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. | SERVICES | 3 |
| 2. | EXCLUSIVITY | 5 |
| 3. | FEES AND COMMISSIONS | 6 |
| 4. | MINIMUM AREA DEVELOPER PERFORMANCE | 8 |
| 5. | FRANCHISOR — FRANCHISEE RELATIONSHIP | 8 |
| 6. | NON-COMPETE AND NO SOLICITATION | 9 |
| 7. | TERM AND TERMINATION | 10 |
| 8. | MISCELLANEOUS | 12 |
| 9. | DEATH OR INCAPACITY | 16 |
| 10. | CONFIDENTIAL INFORMATION | 16 |
| 11. | COUNTERPARTS | 17 |
| 12. | HEADINGS | 18 |
| 13. | AGREEMENT | 18 |
| Schedule A | | 20 |
| Schedule B | | 21 |

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, area developer ("Area Developer") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

### 1.1 Area Developer Services.

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations Training ("EOT") and Hands On Training ("HOT") to be awarded a Franchise.

(c) **Limitation of Services.** Area Developer may only offer those services or products through the Area Developer business as authorized by Liberty in this Agreement or the area developer operations manual ("Area Developer Operations Manual" or "Manual"), unless Liberty provides prior written approval.

### 1.2 Area Developer Support Services and Obligations.

(a) **Operational Support.** Area Developer will be responsible for coaching the Liberty system as described in the Area Developer Operations Manual and will provide Franchisees with timely local support, day-to-day operational help, marketing advice and feedback. Area Developer will host quarterly designated marketing area (DMA) meetings in person or through electronic means. Through these DMA meetings and as required by Liberty, Area Developer will disseminate information, collaborate with Franchisees, discuss advertising and address other issues that may arise or later be specified by Liberty. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising. Area Developer agrees to address reasonable company-owned store issues that may arise or be specified by Liberty. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

(b) **Customer Service.** Area Developer shall use best efforts to ensure that all Franchisees provide all appropriate services as outlined in the Franchisee Operations Manual and the Area Developer Operations Manual, abide by customer service policies issued by Liberty and timely respond to customer complaints and issues. Area Developer must operate in a manner that protects the goodwill, reputation of Liberty and the service marks and trademarks of Liberty (collectively "Marks).

(c) **Site Selection.** Area Developer shall provide site selection assistance in accordance with the Area Developer Operations Manual including, but not limited to, utilization of a company that we designate providing retail business intelligence solutions, and current Electronic Return Originator ("ERO") data. Final site selection must be approved by Liberty.

(d) **Budgets, Profit and Loss Statements and Action Plans.** Area Developer shall review and approve Franchisee budgets, profit and loss statements, action plans and the Marketing Plan Generator for submission to corporate for final approval in accordance with the deadlines provided by Liberty.

(e) **Agreement Facilitation.** Area Developers shall review and facilitate Franchisee applications to Liberty for financing, transfers, fee releases, sales, terminations and the like, subject to final approval by Liberty.

(f) **Required Attendance.** Area Developer, or Area Developer's approved representative, shall attend area developer training and EOT within six months of closing. Additionally, Area Developer will attend all meetings that may be required by Liberty.

(g) **Manual.** Area Developer shall provide all assistance and support described in the Area Developer Operations Manual, the Operations Manual provided to Liberty Franchisees and Area Developers and all updates to these Manuals.

(h) **Contract Enforcement.** Upon termination or expiration of the franchise agreement between Liberty and any Franchisee (a "Former Franchisee"), Area Developer will assist Liberty in enforcing the post termination obligations set forth in its franchise agreement with that Former Franchisee ("Post Termination Obligations"), but Area Developer will have no duty to initiate court or other legal proceeding. These obligations include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers of the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof and obtaining all copies of the Former Franchisee's Operations Manual, including any updates, and performing other reasonable duties as may be assigned by Liberty to assist in the transition or closure of an office.

1.3 <u>Liberty Obligations</u>.

(a) **Area Developer Operations Manual.** Liberty will provide an Area Developer Operations Manual and various updates to the Manual to provide requirements of operation and offer guidance in performing Area Developer services.

(b)    **Initial and Advanced Training.** Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in Sections 1.1 and 1.2. At present, Liberty provides a three to four day initial Area Developer training course, which Area Developer and any manager working for Area Developer must attend and successfully complete within six months of closing. Liberty also requires Area Developer to attend EOT within six months of closing. Liberty may also provide and require Area Developer's attendance at advanced or other trainings that may be offered at select locations or Liberty may offer such training on the web or electronically. Although Liberty does not charge attendance at training, Area Developer must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation incurred in attending any training that Liberty provides.

(c)    **Disclosure Document.** Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's Development Services.

1.4    **Joint Duties.**    Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5    **Personal Involvement.** Area Developer must render the Area Developer and support services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course and who is not later disapproved by Liberty.

1.6    **Reports.** Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify, reports detailing Area Developer's activities, sales and other information that may be requested.

1.7    **Reviews.** Liberty reserves the right to review Area Developer's business operations, in person, by mail, or electronically. Liberty may inspect Area Developer's operations and obtain paper and electronic business records related to the business and any other operations taking place through Area Developer's business. Area Developer must send Liberty any business records requested within five (5) business days of receiving Liberty's request for records and shall be responsible for any costs related to this transmission. Liberty has the right to require that Area Developer implement a plan to resolve any issues that Liberty discovers.

## 2.    EXCLUSIVITY

2.1    **Exclusivity.** Except as otherwise permitted in this Agreement, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A ("Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication)

or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories") as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees.** If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such individual will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS

3.1 **Initial Fee.** Area Developer will pay Liberty $ **622,000** upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee.** Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to **50%** of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees or royalties (except on interest already due and owing before the date of this Agreement), paid to Liberty by a Franchisee during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees" and "Royalties"), for the first time that a territory is purchased by a franchisee, except Franchise Fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties.** Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to **50%** of all ongoing Royalties received by Liberty, if any, from a Franchisee during the Term except Royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

3.4 **Demand for Payment.** Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects.** Liberty may provide to Area Developer leads of prospective Franchisees within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees based upon the cost and the difficulty of acquiring the leads and Area Developer agrees to pay these fees.

3.6    **Fee for Internal Sales.** If Liberty's own franchise development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (provided that in the case of a prospective Franchisee under a special stipulation agreement whereby no Franchisee Fee is paid, this amount shall be deemed to be payable under section 3.5 and be $6,000 or such other amount as is established pursuant to Section 3.5). Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material.** Liberty may charge and Area Developer agrees to pay a reasonable charge for preparing, procuring, printing, and/or sending advertising materials and Disclosure Documents to Area Developer.

3.8    **Terminal Services.** Liberty may charge and Area Developer agrees to pay a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker.** Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees ("Franchise Broker"). To participate in this opportunity, Area Developer agrees to pay a proportionate share of the Broker's fee for any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory. Area Developer's share of Broker's fee shall be based on the proportion of initial Franchise Fee and Royalties that Area Developer receives under Sections 3.2 and 3.3. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalty under Sections 3.2 and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 which amounts to $4,550.

3.10    **Payment.** In any month that Liberty receives Franchise Fees, Royalties, or interest on promissory notes (if such interest is on Franchise Fees or Royalties and are not already due and owing before the date of this agreement) from Franchisees in Area Developer's Territory, Liberty will pay Area Developer its share of Royalties, Franchise Fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Royalties only with respect to Royalties actually collected, and Liberty will be entitled to take credits against previous Royalty payments to Area Developer to the extent that any Royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

3.11    **Late Fees.** Payments for charges Liberty bills to Area Developer are due within 30 days of billing and will be subject to an 12% per annum late fee, or the maximum allowed by law if less.

3.12    **Fee Amounts.** From time to time, Liberty will set and publish the fee amounts under Sections 3.5 and 3.7-3.8.

3.13    **Expenses.** Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14    **Referral Fees.** Liberty may offer referral fees to individuals that refer new Franchisees to Liberty. These referral fees do not apply to Area Developer for Candidates that become Franchisees in Area Developer's Territory.

## 4.    MINIMUM AREA DEVELOPER PERFORMANCE

4.1    **Minimum Requirements.** Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. If Area Developer does not meet the Minimum Requirements, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the requirements were not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirements for that year. Liberty's notice will designate which unsold Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Franchise Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees and Royalties paid with respect to Franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories (Initial Fee x (Total Population of Deleted Territories/Total Population of Franchised Territories)). For this calculation, Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5.    FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1    **Disclosure.** Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of Franchisees, including providing the Disclosure Document, prepared by Liberty, to all Candidates within the time frame provided by law. In most jurisdictions, this disclosure is currently required fourteen (14) calendar days before the signing of a binding agreement between the Candidate and Liberty or making any payment by the Candidate to Liberty. Area Developer will ensure that any disclosure made in any form complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing

Liberty's most current Disclosure Document, but will not be responsible for improper disclosure due to inadequacies or errors in Liberty's most current Disclosure Document.

5.2    **Financial Performance Representations.** Except as may be expressly stated in Item 19 of Liberty's most current unit Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3    **Improper Representations.** Area Developer will make no representations to any Candidate that conflicts with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warranties to any party not authorized in writing by Liberty.

5.4    **No Unauthorized Commitments.** Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5    **Indemnity.** Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4.

## 6.    NON-COMPETE AND NO SOLICITATION

6.1    **Non-Compete.**

(a)    **In-Term.** Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service Franchisees pursuant to the terms of this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service Franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b)    **Post-Term.** Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

6.2    **No Solicitation.**

(a)    **In-Term.** Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity.

(b)    **Post-Term.** Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration, termination or transfer of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3    **Severability.** If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7.    TERM AND TERMINATION

7.1    **Term.** This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

7.2    **Renewal.** Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by

signing Liberty's then current Area Developer Agreement. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above.

7.3 **Termination.**

(a) **Termination by Area Developer.** Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) **Termination by Liberty Without Opportunity to Cure.** Liberty may terminate this Agreement effective upon the date of Liberty's sending written notice of termination to Area Developer, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a violation of any law, ordinance, rule or regulation of a government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, or fails to disclose a material fact that is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Forms are appended to the accompanying Disclosure Document as Exhibits D-2 and D-3.

(c) **Termination by Liberty After Opportunity to Cure.** Liberty may terminate this Agreement if Area Developer fails to perform any obligation under this Agreement or any other Agreement between the parties ("Breach") and such failure has continued for thirty (30) days after Liberty sent written notice of such Breach to Area Developer. In the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement fourteen (14) days after Liberty sends written notice of delinquency to Area Developer. If Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this Agreement, Liberty may terminate this Agreement fourteen (14) days after Liberty sends written notice to cure.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, Sections 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 8. MISCELLANEOUS

8.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's Marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names. Area Developer will not use the name "Liberty," "libtax," or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4 **Assignment**. Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Agreement. Area Developer's interest under this Agreement may be transferred or assigned only if Area Developer complies with the provisions in this Section. No interest may be transferred unless Area Developer is in full compliance with this Agreement and current in all monies owed to Liberty. Upon Liberty's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

(a) **Liberty's Right of First Refusal.** If Area Developer has received and desires to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or

any interest in it, Liberty shall have the option (the "Right of First Refusal") to purchase such interest as hereinafter provided. Within fourteen (14) days of receipt of the offer, Area Developer shall offer the Right of First Refusal to Liberty by providing written notice to Liberty which shall include a copy of the signed offer to purchase that Area Developer received ("Notice"). Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of our Right of First Refusal to close the said purchase. Liberty will notify Area Developer in writing within fifteen (15) days of its receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by Area Developer.

(b)     **Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, Area Developer must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the amendment and release forms and/or Area Developer Agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(c)     **Transfer of Interest Within Area Developer.** A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, Area Developer must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer. Each such person of the Controlled Entity shall sign the amendment and release forms and/or Area Developer Agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(d)     **Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, Area Developer may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that Area Developer satisfies the conditions in Section 8.4(e) and completes the sale within ninety (90) days from the date that Liberty received Notice from Area Developer. If Area Developer does not conclude the proposed sale transaction within this 90-day period, the Liberty's Right of First Refusal shall continue in full force and effect.

(e)     **Additional Requirements and Obligations for Transfer.**

   i)   The proposed transferee(s) must complete Liberty's Area Developer application and pass Liberty's application screening in place at the time of transfer.

   ii)  The proposed transferee(s) must sign the Liberty amendment forms and/or Area



Developer Agreement in place at the time of transfer and must personally assume and be bound by all of the terms, covenants and conditions therein.

iii) The proposed transferee(s) must attend and successfully complete Area Developer Training.

iv) Area Developer shall sign Liberty's transfer and release forms required by Liberty at the time of transfer and pay to Liberty a transfer fee of $10,000.00.

8.5    **Publicity.** Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6    **Operations Manual, Specifications, and Equipment.** Liberty may issue specifications to guide Area Developer in the provision of Services hereunder. Liberty has an Area Developer Operations Manual that Area Developer agrees to follow. Liberty may issue computer and equipment requirements. At present, Area Developer is required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network. Liberty also requires Area Developer to use an appropriate sales lead and contact information database or software to keep track of Area Developer's contacts with prospective Franchisees and may issue recommendations or requirements in this regard. Liberty may change Liberty's Area Developer Operations Manual and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace. Area Developer agrees to be bound by all future changes.

8.7    **Maintenance of Liberty Goodwill.** Area Developer agrees not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, Area Developer also agrees not to do any act harmful, prejudicial, or injurious to Liberty.

8.8    **Governing Law.**

(a)    **Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on Area Developer's behalf if the Territory shown on Schedule A below is located outside of Virginia.

(b)    **Jurisdiction and Venue.** In any suit brought by Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer consents to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against Liberty, including Liberty's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither

federal subject matter or diversity jurisdiction exists, in the city or county state court located where Liberty's National Office is (presently the City of Virginia Beach, Virginia).

(c) **Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer and Liberty agree to waive our rights to a jury trial and instead have such action tried by a judge.

(d) **Class Action Waiver.** Area Developer agrees that any claim Area Developer may have against Liberty, including Liberty's past and present employees and agents, shall be brought individually and Area Developer shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

(e) **No Punitive Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Liberty, Area Developer and Liberty agree to waive our rights, if any, to seek or recover punitive damages.

8.9 **<u>Severability</u>.** If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

8.10 **<u>Notices</u>.** Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, Telephone: (757) 493-8855. Any such notice may also be given to Area Developer in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for Area Developer. Liberty may also give notice to Area Developer by e-mail.

8.11 **<u>Burdens and Benefits</u>.** This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

8.12 **<u>Entire Agreement</u>.** This Agreement, including the Schedules, is the entire agreement between Area Developer and Liberty with respect to the subject matter contained herein. This Agreement supersedes all other prior oral and written agreements and understandings between Area Developer and Liberty with respect to the subject matter herein. However, nothing in this or any related agreement is intended to disclaim the representations Liberty made in the franchise disclosure document Liberty furnished to Area Developer.

8.13    **Amendment and Waiver.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

8.14    **Financing.** If Liberty provides financing, Area Developer must submit annual financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. Area Developer agrees to submit the required information at the time and in the format specified by Liberty.

## 9.    DEATH OR INCAPACITY

9.1    **Assistance and Reimbursement.** In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render assistance to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for reasonable expenditures incurred.

9.2    **Required Time Frames.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless either:

(a) Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

(b) Such assignment is not completed within one year after death or incapacity.

9.3    **Termination for Death or Incapacity.** Liberty shall have the right to terminate this Agreement if one of the conditions in Section 9.2 is not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 7 regarding termination. Further, the terms and conditions of Section 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 10.    CONFIDENTIAL INFORMATION

10.1    **Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer ("Confidential Information"). Liberty may disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to Area Developer and Area Developer's representatives. During the term of this Agreement and following the expiration or termination of this Agreement, Area Developer covenants not to directly or indirectly communicate, divulge, or use Confidential Information for its benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing. Upon the expiration, termination or nonrenewal of this Agreement, Area Developer agrees that it will never use or disclose, and will not permit any of its representatives

to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business which provides services substantially similar to those stated herein. This provision shall not apply to information that: (a) at the time of disclosure is readily available to the public; (b) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) is subsequently lawfully and in good faith obtained by Area Developer from an independent third party without breach of this Agreement; (d) was in Area Developer's possession prior to the date of Liberty's disclosure to Area Developer; or (e) is disclosed to others in accordance with the terms of a prior written authorization between Area Developer and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

10.2    **Interest.** Area Developer will acquire no interest in Liberty's Confidential Information but is provided the right to use the Confidential Information disclosed for the purposes of developing and operating pursuant to this Agreement. Area Developer acknowledges that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without our prior written consent.

10.3    **Use In Term.** Area Developer agrees that it will (a) refrain from using the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt and implement all reasonable procedures, including but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including but not limited to, restrictions on disclosure to employees of Area Developer and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

10.4    **Use Following Term.** Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11.    COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument.



## 12.   HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to be a part of this Agreement.

## 13.   AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the Area Developer signatures of all individuals to this Agreement in, any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **Section 8.8 above concerning governing law, including, but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to Liberty, and pay for products later ordered from Liberty.  All signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other signators.

**Area Developer:** Mufeed Haddad **Entity Number:** 7700

**SIGNATORS:**

By: ____________________
(Signature)

MUFEED HADDAD
(Printed Name)

Title: ____________________

Address: 3793 Quarter Horse Dr
Yorba Linda, CA 92886

Ownership Percentage: 100 %

By: ____________________
(Signature)

____________________
(Printed Name)

Title: ____________________

Address: ____________________

Ownership Percentage: ____%

By: ____________________
(Signature)

____________________
(Printed Name)

Title: ____________________

Address: ____________________

Ownership Percentage: ____%

By: ____________________
(Signature)

____________________
(Printed Name)

Title: ____________________

Address: ____________________

Ownership Percentage: ____%

**JTH TAX, INC. d/b/a**
**LIBERTY TAX SERVICE**

By: ____________________

Printed Name: John Hewitt

Title: CEO

Effective Date: 2/28/14

**Charleston-Hunting, WV-KY-OH**

# Schedule A

**TERRITORY**

**The counties of :**

Boyd County, KY
Carter County, KY
Elliott County, KY
Floyd County, KY
Greenup County, KY
Johnson County, KY
Lawrence County, KY
Lewis County, KY
Martin County, KY
Pike County, KY
Athens County, OH
Gallia County, OH
Jackson County, OH
Lawrence County, OH
Meigs County, OH
Scioto County, OH
Vinton County, OH
Boone County, WV
Braxton County, WV
Cabell County, WV
Calhoun County, WV
Clay County, WV
Jackson County, WV
Kanawha County, WV
Lincoln County, WV
Logan County, WV
Mason County, WV
Mingo County, WV
Nicholas County, WV
Putnam County, WV
Roane County, WV
Wayne County, WV
Wirt County, WV

currently divided by JTH Tax, Inc. into 59 Franchise Territories.

Hocking
Washington
Tyler
Ross
Vinton
Wood
Ritchie
Doddridge
Highland
Pike
Meigs
Jackson
Wirt
Gilmer
Gallia
Adams
Scioto
Mason
Calhoun
Roane
Braxton
Lawrence
Lewis
Putnam
Clay
Webster
Boyd
Nicholas
Rowan
Elliott
Wayne
Boone
Menifee
Morgan
Johnson
Martin
Mingo
Wolfe
Summers
Wyoming
Floyd
Breathitt
Knott
Perry
Mercer
Giles
Leslie
Bland

Schedule B

## MINIMUM REQUIREMENTS

At closing there are 15 JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each Franchisee that is a party to a franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/Franchisees such that the following cumulative minimum development obligations are met during the term of the Area Developer Agreement:

| Development Period Ending | Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office |
|---|---|
| April 30, 2014 | 15 |
| April 30, 2015 | 16 |
| April 30, 2016 | 17 |
| April 30, 2017 | 18 |
| April 30, 2018 | 19 |
| April 30, 2019 | 20 |
| April 30, 2020 | 21 |
| April 30, 2021 | 23 |
| April 30, 2022 | 25 |
| April 30, 2023 | 29 |
| April 30, 2024 | 33 |

# Exhibit A-5

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners and desires to provide continuing services (the "Services") on Liberty's behalf to Franchise owners; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

**1. SERVICES.**

1.1 **Area Developer Services.**

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed Effective Operations Training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

1.2 **Support Services.**

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS.

3.1 **Initial Fee**. Area Developer will pay Liberty $625,872 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8 **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 [reserved]

3.10 **Payment**. With respect to any month in which Liberty receives franchise fees or royalties from Franchisees, Liberty will pay Area Developer its share of royalties or franchise fees not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees or royalties. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties or franchise fees will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties and franchise fees was calculated.

3.11 **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise

Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5.   FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1   **Disclosure**.   In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. **Area Developer may not offer or solicit franchises until receipt of this completed Offering Circular**. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2   **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3   **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4   **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

### 7.1 Non-Compete.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

### 7.2 No Solicitation.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8. TERM AND TERMINATION.

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2   **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the Minimum Requirement and the other terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal.

8.3   **Termination**.

(a)   Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b)   Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i)   Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii)   Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii)   Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv)   Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4   **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees or royalties received by Liberty subsequent to the date of termination or expiration.

## 9. MISCELLANEOUS.

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, franchise or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity which enters into this Area Developer Agreement.** Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. (a) Liberty may assign all or a portion of this Agreement without Area Developer's prior consent to an assignee who agrees to remain bound by its terms. Area Developer may not assign all or a portion of this Agreement except in compliance with this Section 9.4. If this Agreement is held by joint tenants, any transfer of this Agreement must be joined in by all joint tenants, except any joint tenant who is deceased or under a legal disability. In any event, Area Developer will not be entitled to assign all or a portion of this Agreement at any time when Area Developer is in breach of this Agreement or has failed to meet the Minimum Requirements for the immediately proceeding fiscal year of the Company.

(b) Area Developer may assign this Agreement to an Affiliate, which shall be deemed to be any entity of which Area Developer or Area Developer's equity owners as of the

date of this Agreement are the beneficial owners of all of the voting ownership interests. If Area Developer desires to assign this Agreement to an Affiliate, Area Developer must give Liberty written notice specifying the name of the Affiliate and the name and address of each officer, director, shareholder, member, partner or other person affiliated with the Affiliate. An assignment to any Affiliate shall be effective upon the Affiliate's execution of such assignment documents as Liberty may reasonably require. Liberty will not charge any fee in connection with an assignment to an Affiliate.

(c) If Area Developer receives and desires to accept a signed, bona fide offer from a third party (an "Offeror") to acquire Area Developer or Area Developer's rights under this Agreement, Area Developer shall grant Liberty the option (the "Option") to terminate this Agreement on the basis described in this Section 9.4(c). The Option shall be triggered by Area Developer's written notice to Liberty accompanied by a copy of the executed offer (the "Offer Notice"). Liberty shall have the right to terminate this Agreement upon the payment to Area Developer of the price (and upon the terms) set forth in the Offer Notice. However, Liberty may substitute cash for any non-cash form of payment proposed and will have sixty (60) days following the date of Liberty's exercise of the Option to close the purchase under the Option. Liberty's exercise of the Option must be made by written notice to Area Developer within fifteen (15) days after its receipt of the Offer Notice. If Liberty does not exercise its Option, Area Developer may complete the proposed sale or assignment strictly upon the terms set forth in the Offer Notice; provided, however, that if the sale or assignment to the Offeror is not completed within ninety (90) days of the date of the Offer Notice, Area Developer may not consummate the sale or assignment without again giving Liberty the Option provided for in this Section 9.4 (c).

(d) A transfer of an ownership interest in Area Developer or a permitted Affiliate shall constitute an assignment of this Agreement, and shall be treated as an assignment subject to Section 9.4 (c).

(e) Notwithstanding the terms of Section 9.4(c), Area Developer may not complete the sale or assignment to an Offeror unless the Offeror complies with the reasonable requirements imposed by Liberty relating to the sale or assignment, Offeror attends and successfully completes our then current Area Developer Training program and meets our then current qualifications, both Area Developer and Offeror sign Liberty's then current transfer and release forms, and Area Developer pays Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain

competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9 **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10 **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11 **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12 **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13 **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14 **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15 **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10. DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a. Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to the terms of this Agreement; or,

b. Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply



to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    GUARANTY

The Area Developer below, and if it is an entity, all its officers, directors, partners, and members, agree to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, and pay any other promissory notes aand other debts due to us. Likewise, for and in consideration of this Agreement, the signatures of the individual(s) below also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us.  The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Name of Area Developer:** Gorilla Tax Services, Inc.

**Type (Sole Proprietor, LLC, Corp., Jt. Tenants, Partnership):** Corporation

**Entity Number:** 4248

**GUARANTORS:**

By: [signature]
(Signature)

Brad Sarkauskas
(Printed Name)

Title:

Address: 14 E. Davenport ST
Rhinelander, WI 54501

715-365-6500
(Telephone Number)

Percentage of Ownership (if entity): 100 %

By:
(Signature)

(Printed Name)

Title:

Address:

(Telephone Number)

Percentage of Ownership (if entity): %

By:
(Signature)

(Printed Name)

Title:

Address:

(Telephone Number)

Percentage of Ownership (if entity): %

By:
(Signature)

(Printed Name)

Title:

Address:

(Telephone Number)

Percentage of Ownership (if entity): %

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: July 25, 2006

Schedule A

**TERRITORY**

The counties of :

**Madison DMA:**
Columbia County, WI
Dane County, WI
Grant County, WI
Green County, WI
Iowa County, WI
Juneau County, WI
Lafayette County, WI
Marquette County, WI
Richard County, WI
Rock County, WI
Sauk County, WI

**Wausau-Rhinelander DMA:**
Vilas County, WI
Price County, WI
Oneida County, WI
Forest County, WI
Taylor County, WI
Lincoln County, WI
Langlade County, WI
Marathon County, WI
Wood County, WI
Portage County, WI
Adams County, WI

which shall be divided by JTH Tax, Inc. into 49 Franchise Territories.

Schedule B

## MINIMUM REQUIREMENT

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2007 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twelve total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for fifteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nineteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty-one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty-five total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Sections 4.1, 8.2 and 8.3 are clarified to also indicate that deletion of Territories, as explained under Section 4.1, shall be Liberty's sole remedy for failure of Area Developer to meet Minimum Requirements and that any such failure to meet Minimum Requirements shall not be grounds for termination or non-renewal.

**Area Developer: Brad Sarkauskas**

By: ______________________
Brad Sarkauskas, Managing Member

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

Date: July 25, 2006

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated July 25, 2006, between Liberty Tax Service and Gorilla TAX Services Inc the Broker.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

Brad Sarkauskas
(Printed Name)

By: [signature]
(Signature)

Title: President

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt
President/CEO

# EXHIBIT M

## ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 18, 2005. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda
C. Promissory Note
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
E. List of State Administrators and Registered Agents
F. Table of Contents of Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

6/15/06
Date you received this Offering Circular

| [signature] | |
|---|---|
| Signature | Signature |
| Brad Sarkauskas | |
| Printed Name | Printed Name |
| 3630 County N | |
| Address | Address |
| Rhinelander, WI 54501 | |
| 715-365-6500 (Telephone number) | (Telephone number) |

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

7/3/06
Date you received this
Area Developer Agreement

[signature]
Your Signature

Brad Sarkauskas
Your Printed Name

Your Signature

Your Printed Name

Comp Officer Jane M.

LIBERTY TAX SERVICE

COPY

Rep: Mark Johnson

Date Closed: 7/25/06

**SALES JOURNAL ENTRY / AREA DEVELOPER**

AD: Brad Sarkauskas - ~~Sarkauskas Insurance Solutions Inc.~~ GORILLA TAX SERVICES Inc

ENTITY NUMBER: 4248

TOTAL PURCHASE PRICE: 625,872

TERRITORY(IES):

Madison DMA - See attached county List

Wausau Rhinelander DMA - see attached county List

CHECK: $ 10,000 (#2143) DATE: 7/12/06

CHECK: $ DATE:

CHECK: $ DATE:

CHECK: $ DATE:

CHECK: $ DATE:

PROMISSORY NOTE: $ 615,872

PROMISSORY NOTE: $

PROMISSORY NOTE: $

PROMISSORY NOTE: $

COMMENTS:

Purchase & Sale - For Territories - WI013 & WI088

- The Balance of the Credit of the two Territories will go on the AD Fee..

LIBERTY TAX SERVICE
2802 RIB MOUNTIAN DR
WAUSAU WI 54401
715-845-6600

79-1161/0759

2143

7/12/06

PAY TO THE ORDER OF Liberty Tax Service $10,000.00

Ten thousand & 00/100 DOLLARS

Peoples STATE BANK
Financial Advantage For Your Lifetime
www.psbwi.com

Memo

Schedule A

**TERRITORY**

The counties of:

**Madison DMA:**
Columbia County, WI
Dane County, WI
Grant County, WI
Green County, WI
Iowa County, WI
Juneau County, WI
Lafayette County, WI
Marquette County, WI
Richard County, WI
Rock County, WI
Sauk County, WI

**Wausau-Rhinelander DMA:**
Vilas County, WI
Price County, WI
Oneida County, WI
Forest County, WI
Taylor County, WI
Lincoln County, WI
Langlade County, WI
Marathon County, WI
Wood County, WI
Portage County, WI
Adams County, WI

which shall be divided by JTH Tax, Inc. into 49 Franchise Territories.

# AREA DEVELOPER TRACKING

| Date | A. D.(Entity) Name | State of DMA | UFOC Rec'd | AD Agrm't Rec'd | Bio Frm Rec'd & date | Name of Principals | Name of Sales Agent | Bio Form Rec'd | Training Date | Type of Organiz. Papers, other Documents & fees Needed | Open/Closed Status |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2006 | Steve Doletzky | **Florida** | 5/17/2006 | 6/1/2006 | 6/3/2006 | Steve Doletzky | Mark Johnson | yes | training stip | Closed 75/06 | Closed |
| 6/28/2006 | Tax Service Ventures, LLC | **Florida, Georgia** | 6/8/2006 | 6/8/2006 | Bio Update 5/1/06 | Ed Foy | Mark Johnson | yes | expansion | Closed 75/06 | Closed |
| 7/17/2006 | Gorilla Tax Services, Inc. | **Wisconsin** | 6/15/2006 | 7/3/2006 | 7/12/2006 | Brad Sarkauskas | Mark Johnson | yes | 7/17/2006 | Closed 7/25/2006 | Closed |
| 7/17/2006 | Phelts Business Services, LLC | **Georgia** | 6/19/2006 | 7/5/2006 | 7/5/2006 | John A. Phelts | Mark Johnson | yes | 7/17/2006 | Closed 7/20/2006 | Closed |
| 7/21/206 | Nikki Shelstad | **Wisconsin** | 12/6/2006 | 6/29/2006 | Bio Update 5/15/06 | Nikki Shelstad | Mark Johnson | yes | expansion | Needs Minnesota Addendum to close. | Pending |
| 7/21/2006 | Double Eagle Tax, LLC | **Minnesota & Wisconsin** | 6/19/06(Gary) | 7/3/06 (Gary) | 7/11/06 (Gary) | Gary & Roberta Heitkamp | Mark Johnson | yes | 7/17/2006 | Needs Exhibit M, Bio Form and Minnesota & Wisconsin addendums, spec. stip signed by Roberta & JTH signature. | Pending |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4248 | Gorilla Tax Services, Inc | Contract Closed/Active | | |
| **Ownership Type** | **Bank Handling Fee** | **EIN** | **Termination Date** | **Entity Age** |
| Corporation | To Franchisee | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | | |
| ☐ | ☑ | None | | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | [redacted] | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| Ann | Sarkauskas | [redacted] | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport Street | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (715)365-6510 | | brad@newnorth.net | | |

## Alternate Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| | | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| | | | Alabama | |
| **Phone** | | | | |
| | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| Brad Sarkauskas | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 14 E. Davenport Street | Rhinelander | Wisconsin | 54501 |

## Entity Territory Information

No territory information available for this entity

## Territory Office Information

No territory office information available for this entity

## Entity Notes

Closed 7/25/2006 on territories in the counties of Columbia, Dane, Grant, Green, Iowa, Juneau, Lafayette, Marquette, Richard, Rock, Sauk, Vilas, Price, Oneida, Forest, Taylor, Lincoln, Langlade, Marathon, Wood, Portage and Adams County, WI, to be divided into 43 franchise territories - [illegible]

| Edit History | | | | |
|---|---|---|---|---|
| **Edit Date/Time** | **Field Name** | **New Value** | **Original Value** | **Changed By** |
| 7/18/2006 9:51:30 PM | EntityName | Gorilla Tax Services, Inc | Brad Sarkauskas | franchiseadmin |
| 7/11/2006 3:01:37 PM | ContactFirstName | Brad | | franchiseadmin |
| 7/11/2006 3:01:37 PM | ContactLastName | Sarkauskas | | franchiseadmin |
| 7/11/2006 3:01:37 PM | Address | 14 E. Davenport Street | | franchiseadmin |
| 7/11/2006 3:01:37 PM | City | Rhinelander | | franchiseadmin |
| 7/11/2006 3:01:37 PM | StateProvince | WI | AL | franchiseadmin |
| 7/11/2006 3:01:37 PM | ZipPostalCode | 54501 | | franchiseadmin |
| 7/11/2006 3:01:37 PM | PhoneNumber | 7153656510 | | franchiseadmin |
| 7/11/2006 3:01:37 PM | Email | brad@newnorth.net | | franchiseadmin |
| 7/11/2006 3:01:37 PM | BillingName | Brad Sarkauskas | | franchiseadmin |
| 7/11/2006 3:01:37 PM | BillingAddress | 14 E. Davenport Street | | franchiseadmin |
| 7/11/2006 3:01:37 PM | BillingCity | Rhinelander | | franchiseadmin |
| 7/11/2006 3:01:37 PM | BillingStateProvince | WI | AL | franchiseadmin |
| 7/11/2006 3:01:37 PM | BillingZipPostalCode | 54501 | | franchiseadmin |

# Exhibit A-6

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES.

### 1.1 Area Developer Services.

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

### 1.2 Support Services.

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee.** Area Developer will pay Liberty $345,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8    **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10    **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11    **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12    **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13    **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4.    MINIMUM AREA DEVELOPER PERFORMANCE.

4.1    **Minimum Requirements**.  Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30.  The Minimum Requirement is set forth in Schedule B.  If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year.  Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete.  Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement.  This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects.  Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A.  For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5.    FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1    **Disclosure**.  In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet.  From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any.  Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular.  If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty.  Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws.  Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this

Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

7.1 **Non-Compete**.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2 **No Solicitation**.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax



preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

**8. TERM AND TERMINATION.**

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 9. MISCELLANEOUS.

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of



domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. We may assign this Agreement to an assignee who agrees to remain bound by its terms. We do not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us. If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

d. You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided

that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and

personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

    **c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

    **d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

    **e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

    9.9   **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

    9.10   **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

    9.11   **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

    9.12   **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation,

statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13    **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14    **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15    **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.    Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.    Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** Gorilla Tax Services Inc **Entity Number:** 4748

**Type:** Corp **(Sole Proprietor, LLC, Corp, Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: ______________________
(Signature)

Brad Sarkauskas
(Printed Name)

Title: Pres.

Address: 14 E. Davenport St.
Rhinelander, WI 54501

Ownership Percentage: 100 % (See note below)

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

Ownership Percentage: ____% (See note below)

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

Ownership Percentage: _____% (See note below)

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

Ownership Percentage: ____% (See note below)

**LIBERTY TAX SERVICE**

By: ______________________
John T. Hewitt, President/CEO

Effective Date: 10/29/07

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of :

South Bend- Elkhart DMA:

Elkhart, IN
Fulton, IN
Kosciusko, IN
Lagrange, IN
Marshall, IN
Pulaski, IN
St. Joseph, IN
Starke, IN
Berrien, MI
Cass, MI

which shall be divided by JTH Tax, Inc. into 32 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for five total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for sixteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nineteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-five total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Sections 4.1, 8.2 and 8.3 are clarified to also indicate that deletion of Territories, as explained under Section 4.1, shall be Liberty's sole remedy for failure of Area Developer to meet Minimum Requirements and that any such failure to meet Minimum Requirements shall not be grounds for termination or non-renewal.

Gorilla Tax Services, Inc

**Area Developer:** ~~**Brad Sarkauskas**~~ Upon **LIBERTY TAX SERVICE**

By:______________________
Brad Sarkauskas, ~~Managing Member~~
President

By:______________________
John Hewitt, CEO

Date: 10/29/07

**INDIANA ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Gorilla Tax Services, Inc (Brad Santa Lucas), the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Section 5.5 of the Area Developer agreement is supplemented with the addition of the following language: "Notwithstanding the foregoing, you do not indemnify us for liability caused by your proper reliance on or use of procedures or materials provided by us or caused by our negligence."

2. Section 8.2 of the Area Developer agreement is modified to provide that upon renewal you will not be required to release us as to any liabilities arising under Indiana Code § 23-2-2.7.

3. Section 8.2 concerning Renewal is modified to delete the requirement that Area Developer must give Liberty a general release to renew.

4. Section 9.7 concerning Governing Law is deleted and in its place is substituted the following language:

> "You agree to bring any claim against us, including our present and former employees, agents, and affiliates, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association."

**AREA DEVELOPER:**

By:____________________

By:____________________

**LIBERTY TAX SERVICE**

By:____________________
John Hewitt, CEO

## WISCONSIN ADDENDUM
## TO THE AREA DEVELOPER AGREEMENT

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Gorilla Tax Services Inc. (Brad Sarkauskas) the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By: [signature]

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

Gorilla Tax Services, Inc

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

[signature]
Signature

Brad Sarkauskas
Printed Name

3630 County N
Address

Rhinelander WI

715 365 6500 (Telephone number)

Signature

Printed Name

Address

(Telephone number)

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

[signature]
Signature

Brad Sarkauskas
Printed Name

3630 County N
Address

Rhinelander WI

715 365 6500 (Telephone number)

Signature

Printed Name

Address

(Telephone number)

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

**Upon receiving the Area Developer Agreement, please enter today's date in the line immediately below and sign and return this Acknowledgment to Liberty Tax Service at the address above.**

10/17/07
Date you received Area Developer Agreement

[signature]
Your Signature

Co-Owner's Signature

Brad Sarkauskas
Your Printed Name

Co-Owner's Printed Name

Co-Owner's Signature

Co-Owner's Printed Name

**COMPLIANCE OFFICER:** Jane
**REP:** Erica Caicedo
**DATE CLOSED:** → 10/29/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Gorilla Tax Services, Inc

**ENTITY NUMBER:** 4248 **TOTAL PURCHASE PRICE:** 345,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** IN, MT

**LOCATED:** South Bend-Elkhart DMA
(See Attached Sheet)

---

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $345,000 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** Area Development Fee

Schedule A

**TERRITORY**

The counties of :

<u>South Bend- Elkhart DMA:</u>

Elkhart, IN
Fulton, IN
Kosciusko, IN
Lagrange, IN
Marshall, IN
Pulaski, IN
St. Joseph, IN
Starke, IN
Berrien, MI
Cass, MI

which shall be divided by JTH Tax, Inc. into 32 Franchise Territories.

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4248 | Gorilla Tax Services, Inc | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity Age** |
| Corporation | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| Ann | Sarkauskas | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport Street | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (715)365-6510 | | brad@newnorth.net | | |

## Shipping Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| | | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| | | | Alaska | |
| **Phone** | | | | |
| | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| Brad Sarkauskas | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 14 E. Davenport Street | Rhinelander | Wisconsin | 54501 |

## Entity Region Information

## Entity Territory Information

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

AD entity. Closed 7/25/2006 on territories in the counties of Columbia, Dane, Grant, Green, Iowa, Juneau, Lafayette, Marquette, Richard, Rock, Sauk, Vilas, Price, Oneida, Forest, Taylor, Lincoln, Langlade, Marathon, Wood, Portage and Adams County, WI, to be divided into 49 franchise territories - jem Closed on counties in the States of IN, MI (south Bend-Elkhart DMA) on 10/29/07. jpm

| Edit History | | | | |
|---|---|---|---|---|
| **Edit Date/Time** | **Field Name** | **New Value** | **Original Value** | **Changed By** |
| 8/23/2006 5:09:33 PM | AltStateProvince | | | sa |
| 8/23/2006 5:03:00 PM | AltStateProvince | | AL | sa |

# Exhibit A-7

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

**1. SERVICES.**

1.1 **Area Developer Services.**

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

1.2 **Support Services.**

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee**. Area Developer will pay Liberty $80,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8    **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10    **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11    **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12    **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13    **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but



will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this

Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

7.1 **Non-Compete**.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2 **No Solicitation**.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax

preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8. TERM AND TERMINATION.

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

**9. MISCELLANEOUS.**

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of

domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. We may assign this Agreement to an assignee who agrees to remain bound by its terms. We do not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us. If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

d. You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided

that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5    **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6    **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7    **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8    **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and

personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9    **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10    **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11    **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12    **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation,

statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13    **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14    **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15    **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.    Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.    Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** Sarkauskas Empire, Inc **Entity Number:** 4738

**Type:** Corp **(Sole Proprietor, LLC, Corp, Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature]
(Signature)
Brad Sarkauskas
(Printed Name)
Title: Pres
Address: 14 E. Davenport St
Rhinelander, WI 54501

Ownership Percentage: 30% (See note below)

By: [signature]
(Signature)
Becky Hubbard
(Printed Name)
Title: Treasurer
Address: 14 E. Davenport St
Rhinelander, WI 54501

Ownership Percentage: 10 % (See note below)

By: [signature]
(Signature)
Stan Sarkauskas
(Printed Name)
Title: Vice Pres.
Address: 14 E. Davenport St.
Rhinelander, WI 54501

Ownership Percentage: 30% (See note below)

By: James M. Sarkauskas
(Signature)
JAMES M. SARKAUSKAS
(Printed Name)
Title: V. P.
Address: 14 East Davenport St
Rhinelander, WIS 54501

Ownership Percentage: 30% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 10/29/07

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of :

<u>Green Bay – Appleton DMA Part of: Counties included</u>

Marinette, WI
Oconto, WI
Menominee, WI
Shawano, WI
Waupaca, WI
Waushara, WI
Green Lake, WI
Door, WI
Menominee, MI

which shall be divided by JTH Tax, Inc. into 12 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for four total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for eight total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.



h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Sections 4.1, 8.2 and 8.3 are clarified to also indicate that deletion of Territories, as explained under Section 4.1, shall be Liberty's sole remedy for failure of Area Developer to meet Minimum Requirements and that any such failure to meet Minimum Requirements shall not be grounds for termination or non-renewal.

Sarkauskas Empire, Inc.

**Area Developer: ~~Brad Sarkauskas~~** JPM **LIBERTY TAX SERVICE**

By:______________________ By:______________________

Brad Sarkauskas, ~~Managing Member~~ President John Hewitt, CEO

Date: 10/29/07

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Sar Kaus Las Empire, Inc, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ______________________

By: ______________________

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Sarkauskas Empire, Inc, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By: [signature]

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Sarkauskas Empire, Inc, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ______________________

By: ______________________

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated ________________________, between Liberty Tax Service and ____________________________, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By: [signature] Jarrod M. Sarkauskas

**LIBERTY TAX SERVICE**

By: ________________________
John Hewitt, CEO

Slaitauskas Empire

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated ________________________, between Liberty Tax Service and ______________________________, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By: [signature]

**LIBERTY TAX SERVICE**

By:________________________
John Hewitt, CEO

DocuSign Envelope ID: 58334806-9337-47FF-9A6[illegible]82FF883030

Entity 4738

**ASSIGNMENT AND AMENDMENT TO AREA DEVELOPER AGREEMENTS**

This ASSIGNMENT AND AMENDMENT to the Area Developer Agreements is made on the Effective Date listed below by and between Sarkauskas Empire Inc., Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc., Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc., Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc., (collectively "Amended Area Developer"), James Sarkauskas, individually and as former Vice President of Sarkauskas Empire Inc., ("Former Guarantor") (Former Guarantor and Amended Area Developer are referred to as "Former Area Developer" when referred to collectively herein) and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Area Developer has a license to operate certain Area Developer territories pursuant to written area developer agreements entered into June 7, 2007 and October 29, 2007 for the area developer territories set forth in the Schedule "A" of the area developer agreements (the "Area Developer Agreements"); and

Whereas Former Area Developer and Amended Area Developer desire, to amend the Area Developer Agreements to remove Former Guarantor as a guarantor thereon.

Now, therefore, in consideration of the mutual covenants and agreement herein, the parties hereto agree as follows:

1. Amended Area Developer shall remain as a guarantor of the Area Developer Agreements and shall be responsible for all obligations pursuant to the Area Developer Agreements, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Area Developer Agreements, whether accrued prior to or after this agreement.

2. James Sarkauskas is hereby removed as a guarantor of the Area Developer Agreements; however, agrees to remain bound by the post-termination covenants contained therein.

3. Amended Area Developer agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Former Area Developer shall be guaranteed.

4. Furthermore, Former Franchisee and Amended Franchisee warrant that Sarkauskas Empire Inc. is in good standing under the laws of its state of organization, as of the date of this assignment and amendment and, further, confirm that Sarkauskas Empire Inc. shall remain in good standing and shall abide by all laws of its state of organization including, but not limited to, the filing of all required reports and payment of all required fees throughout the duration of ownership.

5. Former Area Developer, Amended Area Developer and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

6. This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute

one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified above, the terms of the Area Developer Agreements remain in full force and effect.

**Accepted and Agreed to:**

**FORMER AREA DEVELOPER:**
**Sarkauskas Empire Inc.**

By: ______________________
Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc.

By: ______________________
Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________
James Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________
Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc.

**JTH TAX, INC., d/b/a**
**LIBERTY TAX SERVICE**

By: ______________________

Print: John Hewitt

Title: CEO

By: ______________________

Print: Kathy Donovan

Title: VP, CFO

Effective Date: 6/22/2015

**AMENDED AREA DEVELOPER:**
**Sarkauskas Empire Inc.**

By: ______________________
Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc.

By: ______________________
Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________
Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc.

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT
OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

**Upon receiving the Area Developer Agreement, please enter today's date in the line immediately below and sign and return this Acknowledgment to Liberty Tax Service at the address above.**

10/17/07
Date you received Area Developer Agreement

[signature]
Your Signature

[signature]
Co-Owner's Signature

Brad Sarkauskas
Your Printed Name

Becky Hubbard
Co-Owner's Printed Name

[signature]
Co-Owner's Signature

[signature]
Co-Owner's Printed Name

Sarkauskas Empire, Inc.

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

[signature]
Signature

Stan Sarkauskus
Printed Name

5155 Pine Creek Rd.
Address

Rhinelander, WI

715-365-6500
(Telephone number)

[signature]
Signature

JAMES M. SARKAUSKAS
Printed Name

Address

(Telephone number)

Sarkauskas Lumber, Inc.

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

[signature]
Signature

Stan Sarkauskas
Printed Name

5155 Pine Creek Rd.
Address

Rhinelander, WI

715.365.6500
(Telephone number)

[signature]
Signature

JAMES M. SARKAUSKAS
Printed Name

Address

(Telephone number)

Sarkauskas Empire, Inc

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

| [signature] | [signature] |
|---|---|
| Signature | Signature |
| Brad Sarkauskas | Becky Hubbard |
| Printed Name | Printed Name |
| 3630 County K | 7263 Mildred Pkwy |
| Address | Address |
| Rhinelander WI | Rhinelander WI |
| 715 365 6500 (Telephone number) | 715 365 6500 (Telephone number) |

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

[signature]
Signature

Brad Sarkauskas
Printed Name

3630 County K
Address

Rhinelander WI

715 365 6500 (Telephone number)

[signature]
Signature

Becky Hubbard
Printed Name

7263 Mildred Pkwy
Address

Rhinelander WI

715 365 6500 (Telephone number)

**COMPLIANCE OFFICER:** Jane
**REP:** Erica Caicedo
**DATE CLOSED:** 10/29/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Sarkauskas Empire, Inc.

**ENTITY NUMBER:** 4738 **TOTAL PURCHASE PRICE:** 80,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** WI, MI

**LOCATED:** Green Bay-Appleton DMA (part of)
See attached list of counties

---

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $80,000 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** Area Development Fee

Schedule A

**TERRITORY**

The counties of :

Green Bay – Appleton DMA Part of: Counties included

Marinette, WI
Oconto, WI
Menominee, WI
Shawano, WI
Waupaca, WI
Waushara, WI
Green Lake, WI
Door, WI
Menominee, MI

which shall be divided by JTH Tax, Inc. into 12 Franchise Territories.

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4738 | Sarkauskas Empire, Inc | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity Age** |
| Corporation | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (715)365-6500 | | brad@newnorth.net | | |

## Shipping Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | | Rhinelander | Wisconsin | 54501 |
| **Phone** | | | | |
| | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| Brad Sarkauskas | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | Rhinelander | Wisconsin | 54501 |

## Entity Region Information

## Entity Territory Information

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

AD Entity closed on counties in the state of Illinois (Peoria-Bloomington DMA & Champaign & Springfield-Decatur DMA 6/7/07. jpm closed on counties in the States of Wisconsin & Michigan (Green Bay-Appleton DMA (Part of) on 10/29/07. jpm

**Edit History**

# Exhibit A-8

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

**1. SERVICES.**

1.1 **Area Developer Services.**

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

1.2 **Support Services.**

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS.

3.1 **Initial Fee.** Area Developer will pay Liberty $630,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for



the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8    **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10    **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11    **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12    **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13    **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this

Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3    **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7.    NON-COMPETE AND NO SOLICITATION.

7.1    **Non-Compete**.

(a)    **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement.

(b)    **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2    **No Solicitation**.

(a)    **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b)    **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

**8. TERM AND TERMINATION.**

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely



fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv)    Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4    **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5    **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 9.    MISCELLANEOUS.

9.1    **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2    **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3    **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission.

Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. (a) Liberty may assign this Agreement without Area Developer's prior consent to an assignee who agrees to remain bound by its terms. Area Developer may not assign this Agreement or any interest in this Agreement except in compliance with this Section 9.4. If this Agreement is held by joint tenants or tenants in common, any transfer of this Agreement or any interest in this Agreement must be joined in by all joint tenants or tenant in common, except any tenant who is deceased or under a legal disability. In any event, Area Developer will not be entitled to assign this Agreement or any interest in this Agreement at any time when Area Developer is in breach of this Agreement or has failed to meet the Minimum Requirements for the immediately proceeding fiscal year of the Company.

(b) Area Developer may assign this Agreement to an Affiliate, which shall be deemed to be any entity of which Area Developer or Area Developer's equity owners as of the date of this Agreement are the beneficial owners of all of the voting ownership interests. If Area Developer desires to assign this Agreement to an Affiliate, Area Developer must give Liberty written notice specifying the name of the Affiliate and the name and address of each officer, director, shareholder, member, partner or other person affiliated with the Affiliate. An assignment to any Affiliate shall be effective upon the Affiliate's execution of such assignment documents as Liberty may reasonably require. Liberty will not charge any fee in connection with an assignment to an Affiliate.

(c) If Area Developer receives and desires to accept a signed, bona fide offer from a third party (an "Offeror") to acquire Area Developer or Area Developer's rights under this Agreement, Area Developer shall grant Liberty the option (the "Option") to terminate this Agreement on the basis described in this Section 9.4(c). The Option shall be triggered by Area Developer's written notice to Liberty accompanied by a copy of the executed offer (the "Offer Notice"). Liberty shall have the right to terminate this Agreement upon the payment to Area Developer of the price (and upon the terms) set forth in the Offer Notice. However, Liberty may substitute cash for any non-cash form of payment proposed and will have sixty (60) days following the date of Liberty's exercise of the Option to close the purchase under the Option. Liberty's exercise of the Option must be made by written notice to Area Developer within fifteen (15) days after its receipt of the Offer Notice. If Liberty does not exercise its Option, Area Developer may complete the proposed sale or assignment strictly upon the terms set forth in the Offer Notice; provided, however, that if the sale or assignment to the Offeror is not completed within ninety (90) days of the date of the Offer Notice, Area Developer may not consummate the sale or assignment without again giving Liberty the Option provided for in this Section 9.4 (c).

(d) A transfer of an ownership interest in Area Developer or a permitted Affiliate shall constitute an assignment of this Agreement, and shall be treated as an assignment subject to Section 9.4 (c).

(e) Notwithstanding the terms of Section 9.4(c), Area Developer may not complete the sale or assignment to an Offeror unless the Offeror complies with the reasonable requirements imposed by Liberty relating to the sale or assignment, Offeror signs Liberty's then current version of this Area Developer Agreement, Offeror attends and successfully completes our then current Area Developer Training program and meets Liberty's then current

qualifications, both Area Developer and Offeror sign Liberty's then current transfer and release forms, and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5    **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6    **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7    **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8    **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such

claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9 **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10 **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11 **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12 **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13 **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14 **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15 **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred.   Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.   Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.   Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement.  Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement.   The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms.   The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us.  The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** Sarkauskas Empire, Inc **Entity Number:** 4738

**Type:** __________ **(Sole Proprietor, LLC, (Corp.) Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature]
(Signature)
Brad Sarkauskas
(Printed Name)
Title: ~~Managing Member~~ President jpn
Address: 14 E. Davenport St
Rhinelander, WI 54501

Ownership Percentage: 30% (See note below)

By: [signature]
(Signature)
Stan Sarkauskas
(Printed Name)
Title: ~~Member~~ jpm
Address: 14 E. Davenport St
Rhinelander, WI

Ownership Percentage: 30% (See note below)

By: [signature]
(Signature)
James Sarkauskas
(Printed Name)
Title: ~~Member~~ jpm
Address: 14 E Davenport St
Rhinelander WI

Ownership Percentage: 30% (See note below)

By: [signature]
(Signature)
Rebecca Hubbard
(Printed Name)
Title: ~~Member~~ jpm
Address: 14 E. Davenport St
Rhinelander WI 54501

Ownership Percentage: 10% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 6/7/07

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of:

Peoria-Bloomington DMA
Putnam, IL
Stark, IL
Marshall, IL
Peoria, IL
Fulton, IL
Mason, IL
Tazewell, IL
McLean, IL
Livingston, IL
Woodford, IL

Champaign & Springfield-Decatur DMA
Champaign, IL
Christian, IL
Coles, IL
Cumberland, IL
De Witt, IL
Douglas, IL
Edgar, IL
Effingham, IL
Ford, IL
Iroquois, IL
Logan, IL
Macon, IL
Menard, IL
Morgan, IL
Moultrie, IL
Piatt, IL
Sangamon, IL
Shelby, IL
Vermilion, IL

which shall be divided by JTH Tax, Inc. into 62 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for five total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for ten total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for fifteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.



h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for forty two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for forty seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Sections 4.1, 8.2 and 8.3 are clarified to also indicate that deletion of Territories, as explained under Section 4.1, shall be Liberty's sole remedy for failure of Area Developer to meet Minimum Requirements and that any such failure to meet Minimum Requirements shall not be grounds for termination or non-renewal.

SarKauskas Empire, Inc

**Area Developer:** ~~**Brad Sarkauskas**~~ jpm **LIBERTY TAX SERVICE**

By: ______________________ By: ______________________

Brad Sarkauskas, ~~Managing Member~~ jpm President

John Hewitt, CEO

Date: 6/7/07

# WISCONSIN ADDENDUM
# TO THE AREA DEVELOPER AGREEMENT

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and Brad Sarkauskas, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By:________________________

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and Stan Sarkauskas, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By: ______________________

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

# WISCONSIN ADDENDUM
# TO THE AREA DEVELOPER AGREEMENT

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and James Sarkauskas, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: [signature]

By:____________________

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and Becky Hubbard, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ______________________

By: ______________________

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

# ILLINOIS ADDENDUM
# TO THE AREA DEVELOPER AGREEMENT

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and Brad Sarkauskas, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Any condition, stipulation, or provision of the Area Developer Agreement purporting to bind you to waive compliance with any provision of the Illinois Franchise Disclosure Act or any other law of the state of Illinois is void.

2. Paragraph 9.7.a. providing for the application of Virginia law is deleted. Instead, Illinois law shall apply to disputes between the parties with respect to this Agreement or dealings of the parties related thereto.

3. Paragraph 9.7.b. providing for jurisdiction and venue is deleted and the following is substituted in its place:

> "You agree to bring any claim against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association in the city or county where our National Headquarters office is located, presently Virginia Beach, Virginia."

4. Paragraph 19-11 is deleted and the following is substituted in its place:

> "This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings except for or other than those contained in the Uniform Franchise Offering Circular (UFOC) between you and us with respect to the subject matter herein."

**AREA DEVELOPER:**

By: [signature]

By: ____________________

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

**ILLINOIS ADDENDUM
TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and Stan Sarkauskas, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Any condition, stipulation, or provision of the Area Developer Agreement purporting to bind you to waive compliance with any provision of the Illinois Franchise Disclosure Act or any other law of the state of Illinois is void.

2. Paragraph 9.7.a. providing for the application of Virginia law is deleted. Instead, Illinois law shall apply to disputes between the parties with respect to this Agreement or dealings of the parties related thereto.

3. Paragraph 9.7.b. providing for jurisdiction and venue is deleted and the following is substituted in its place:

> "You agree to bring any claim against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association in the city or county where our National Headquarters office is located, presently Virginia Beach, Virginia."

4. Paragraph 19-11 is deleted and the following is substituted in its place:

> "This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings except for or other than those contained in the Uniform Franchise Offering Circular (UFOC) between you and us with respect to the subject matter herein."

**AREA DEVELOPER:**

By: ______________________

By: ______________________

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

**ILLINOIS ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 6/7/07, between Liberty Tax Service and James Sarkauskas, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Any condition, stipulation, or provision of the Area Developer Agreement purporting to bind you to waive compliance with any provision of the Illinois Franchise Disclosure Act or any other law of the state of Illinois is void.

2. Paragraph 9.7.a. providing for the application of Virginia law is deleted. Instead, Illinois law shall apply to disputes between the parties with respect to this Agreement or dealings of the parties related thereto.

3. Paragraph 9.7.b. providing for jurisdiction and venue is deleted and the following is substituted in its place:

> "You agree to bring any claim against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association in the city or county where our National Headquarters office is located, presently Virginia Beach, Virginia."

4. Paragraph 19-11 is deleted and the following is substituted in its place:

> "This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings except for or other than those contained in the Uniform Franchise Offering Circular (UFOC) between you and us with respect to the subject matter herein."

**AREA DEVELOPER:**

By: James M. Sarkauskas

By:____________________

**LIBERTY TAX SERVICE**

By:____________________
John Hewitt, CEO

**ILLINOIS ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 4/7/07, between Liberty Tax Service and Rebecca Hubbard, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Any condition, stipulation, or provision of the Area Developer Agreement purporting to bind you to waive compliance with any provision of the Illinois Franchise Disclosure Act or any other law of the state of Illinois is void.

2. Paragraph 9.7.a. providing for the application of Virginia law is deleted. Instead, Illinois law shall apply to disputes between the parties with respect to this Agreement or dealings of the parties related thereto.

3. Paragraph 9.7.b. providing for jurisdiction and venue is deleted and the following is substituted in its place:

> "You agree to bring any claim against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association in the city or county where our National Headquarters office is located, presently Virginia Beach, Virginia."

4. Paragraph 19-11 is deleted and the following is substituted in its place:

> "This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings except for or other than those contained in the Uniform Franchise Offering Circular (UFOC) between you and us with respect to the subject matter herein."

**AREA DEVELOPER:**

By: [signature]

By: ______________________

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

DocuSign Envelope ID: 58334806-9337-47FF-9A6[illegible]82FF883030

Entity 4738

## ASSIGNMENT AND AMENDMENT TO AREA DEVELOPER AGREEMENTS

This ASSIGNMENT AND AMENDMENT to the Area Developer Agreements is made on the Effective Date listed below by and between Sarkauskas Empire Inc., Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc., Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc., Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc., (collectively "Amended Area Developer"), James Sarkauskas, individually and as former Vice President of Sarkauskas Empire Inc., ("Former Guarantor") (Former Guarantor and Amended Area Developer are referred to as "Former Area Developer" when referred to collectively herein) and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Area Developer has a license to operate certain Area Developer territories pursuant to written area developer agreements entered into June 7, 2007 and October 29, 2007 for the area developer territories set forth in the Schedule "A" of the area developer agreements (the "Area Developer Agreements"); and

Whereas Former Area Developer and Amended Area Developer desire, to amend the Area Developer Agreements to remove Former Guarantor as a guarantor thereon.

Now, therefore, in consideration of the mutual covenants and agreement herein, the parties hereto agree as follows:

1. Amended Area Developer shall remain as a guarantor of the Area Developer Agreements and shall be responsible for all obligations pursuant to the Area Developer Agreements, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Area Developer Agreements, whether accrued prior to or after this agreement.

2. James Sarkauskas is hereby removed as a guarantor of the Area Developer Agreements; however, agrees to remain bound by the post-termination covenants contained therein.

3. Amended Area Developer agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Former Area Developer shall be guaranteed.

4. Furthermore, Former Franchisee and Amended Franchisee warrant that Sarkauskas Empire Inc. is in good standing under the laws of its state of organization, as of the date of this assignment and amendment and, further, confirm that Sarkauskas Empire Inc. shall remain in good standing and shall abide by all laws of its state of organization including, but not limited to, the filing of all required reports and payment of all required fees throughout the duration of ownership.

5. Former Area Developer, Amended Area Developer and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

6. This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute

DocuSign Envelope ID: 58334806-9337-47FF-9A[illegible]082FF883030

Entity 4738

one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified above, the terms of the Area Developer Agreements remain in full force and effect.

**Accepted and Agreed to:**

**FORMER AREA DEVELOPER:**
**Sarkauskas Empire Inc.**

By: ______________________ (DocuSigned by: 4FC54C053C254DB...)
Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc.

By: ______________________ (DocuSigned by: 48CF404E14E6424)
Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________ (DocuSigned by: F4F431CCF1F44D1...)
James Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________ (DocuSigned by: 79938A86F25840F)
Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc.

**JTH TAX, INC., d/b/a**
**LIBERTY TAX SERVICE**

By: ______________________ (DocuSigned by: 83D67DE5A673434...)

Print: John Hewitt

Title: CEO

By: ______________________ (DocuSigned by: 83D67DE5A675434)

Print: Kathy Donovan

Title: VP, CFO

Effective Date: 6/22/2015

**AMENDED AREA DEVELOPER:**
**Sarkauskas Empire Inc.**

By: ______________________ (DocuSigned by: 4FC54C053C254DB...)
Bradley Sarkauskas, individually and as President of Sarkauskas Empire Inc.

By: ______________________ (DocuSigned by: 48CF404E14E6424)
Stanley Sarkauskas, individually and as Vice President of Sarkauskas Empire Inc.

By: ______________________ (DocuSigned by: 79938A86F25840F)
Rebecca Hubbard, individually and as Treasurer of Sarkauskas Empire Inc.

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this Area Developer Agreement

[signature]
Your Signature

Stanley E. Sarkauskas
Your Printed Name

Your Signature

Your Printed Name

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this
Area Developer Agreement

Your Signature

Stanley E. Sarkauskas
Your Printed Name

Your Signature

Your Printed Name

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this
Area Developer Agreement

[signature]
Your Signature

JAMES M. SARKAUSKAS
Your Printed Name

Your Signature

Your Printed Name

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this Area Developer Agreement

[signature]
Your Signature

JAMES M. SARKAUSKAS
Your Printed Name

Your Signature

Your Printed Name

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this
Area Developer Agreement

[signature]
Your Signature

Rebecca A. Hubbard
Your Printed Name

Your Signature

Your Printed Name

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this
Area Developer Agreement

[signature]
Your Signature

Rebecca A. Hubbard
Your Printed Name

Your Signature

Your Printed Name

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this
Area Developer Agreement

[signature]
Your Signature

Brad Sarkauskas
Your Printed Name

Your Signature

Your Printed Name

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

4/25/2007
Date you received this Area Developer Agreement

[signature]
Your Signature

Brad Sarkauskas
Your Printed Name

Your Signature

Your Printed Name



EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated August 4, 2006. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

4-2-07
Date you received this Offering Circular

[signature] Signature | [signature] Signature

JAMES SARKAUSKAS Printed Name | Rebecca A Hubbard Printed Name

Address | Address

(Telephone number) | (Telephone number)

Rec'd
6/5/07
JPm

Ok - per Carl
14 days reg. meet
JPm

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR- ILLINOIS

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) FOURTEEN (14) CALENDAR DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) FOURTEEN (14) CALENDAR DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated August 4, 2006. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

11/22/06
Date you received this Offering Circular

[signature]
Signature

Brad Sarkauskas
Printed Name

Address

(Telephone Number)

[signature]
Signature

Stan Sarkauskas
Printed Name

Address

(Telephone Number)

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR- ILLINOIS

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) FOURTEEN (14) CALENDAR DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) FOURTEEN (14) CALENDAR DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated August 4, 2006. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

11/22/06
Date you received this Offering Circular

[signature]
Signature

Brad Sarkauskas
Printed Name

Address

(Telephone Number)

[signature]
Signature

Stan Sarkauskas
Printed Name

Address

(Telephone Number)

**COMPLIANCE OFFICER:** Jane M
**REP:** Mark Johnson
**DATE CLOSED:** 6/7/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Sarkauskas Empire, Inc. (Brad, Stan & James Sarkauskas & Rebecca Hubbard)

**ENTITY NUMBER:** 4738 **TOTAL PURCHASE PRICE:** $630,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** IL (Peoria-Bloomington DMA)

**LOCATED:** please see attached

**CHECK:** $ 590,000 **DATE:** 5/9/07 (100)

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $ 40,000 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** AD Deal

Schedule A

**TERRITORY**

The counties of:

Peoria-Bloomington DMA
Putnam, IL
Stark, IL
Marshall, IL
Peoria, IL
Fulton, IL
Mason, IL
Tazewell, IL
McLean, IL
Livingston, IL
Woodford, IL

Champaign & Springfield-Decatur DMA
Champaign, IL
Christian, IL
Coles, IL
Cumberland, IL
De Witt, IL
Douglas, IL
Edgar, IL
Effingham, IL
Ford, IL
Iroquois, IL
Logan, IL
Macon, IL
Menard, IL
Morgan, IL
Moultrie, IL
Piatt, IL
Sangamon, IL
Shelby, IL
Vermilion, IL

which shall be divided by JTH Tax, Inc. into 62 Franchise Territories.

SARKAUSKAS EMPIRE INC.
14 E DAVENPORT STREET
RHINELANDER, WI 54501

79-57/759 261
2233077235

100[illegible]

DATE 5/9/07

PAY TO THE ORDER OF Liberty Tax Service $ 590,000.00

Five hundred ninety thousand & 00/100 DOLLARS

Associated Bank
associatedbank.com

MEMO

MP

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

**Entity Information**

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4738 | Sarkauskas Empire, Inc | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity Age** |
| Corporation | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

**Contact Information**

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (715)365-6500 | | brad@newnorth.net | | |

**Shipping Information**

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | | Rhinelander | Wisconsin | 54501 |
| **Phone** | | | | |
| | | | | |

**Billing Address**

| Name | | | |
|---|---|---|---|
| Brad Sarkauskas | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 14 E. Davenport St. | Rhinelander | Wisconsin | 54501 |

**Entity Territory Information**

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

AD Entity closed on counties in the state of Illinois (Peoria-Bloomington DMA & Champaign & Springfield-Decatur DMA 6/7/07. jpm

| Edit History | | | | |
|---|---|---|---|---|
| **Edit Date/Time** | **Field Name** | **New Value** | **Original Value** | **Changed By** |
| 6/7/2007 11:11:26 AM | PhoneNumber | 7153656500 | | franchiseadmin |
| 6/7/2007 11:11:26 AM | Email | brad@newnorth.net | | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltContactFirstName | Brad | | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltContactLastName | Sarkauskas | | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltAddress | 14 E. Davenport St. | | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltCity | Rhinelander | | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltStateProvince | WI | AL | franchiseadmin |
| 6/7/2007 11:11:26 AM | AltZipPostalCode | 54501 | | franchiseadmin |
| 6/7/2007 11:11:26 AM | BillingName | Brad Sarkauskas | | franchiseadmin |
| 6/7/2007 11:11:26 AM | BillingAddress | 14 E. Davenport St. | | franchiseadmin |
| 6/7/2007 11:11:26 AM | BillingCity | Rhinelander | | franchiseadmin |
| 6/7/2007 11:11:26 AM | BillingStateProvince | WI | AL | franchiseadmin |
| 6/7/2007 11:11:26 AM | BillingZipPostalCode | 54501 | | franchiseadmin |
| 6/7/2007 11:11:26 AM | MasterBrokerEntity | 1 | 0 | franchiseadmin |

# Exhibit A-9

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

**1. SERVICES.**

1.1 **Area Developer Services.**

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

1.2 **Support Services**.

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c)     Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding.    These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d)     Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2.    At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete.    Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations.    Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e)     Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.    However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3     **Personal Involvement**.    Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4     **Reports**.    Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2.     EXCLUSIVITY

2.1     **Exclusivity**.    Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory").    This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees.    As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee.** Area Developer will pay Liberty $309,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8 **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10 **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11 **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.



## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this

Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

### 7.1 Non-Compete.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

### 7.2 No Solicitation.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.



7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

**8. TERM AND TERMINATION.**

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely

fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

**9. MISCELLANEOUS.**

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission.

Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. (a) Liberty may assign this Agreement without Area Developer's prior consent to an assignee who agrees to remain bound by its terms. Area Developer may not assign this Agreement or any interest in this Agreement except in compliance with this Section 9.4. If this Agreement is held by joint tenants or tenants in common, any transfer of this Agreement or any interest in this Agreement must be joined in by all joint tenants or tenant in common, except any tenant who is deceased or under a legal disability. In any event, Area Developer will not be entitled to assign this Agreement or any interest in this Agreement at any time when Area Developer is in breach of this Agreement or has failed to meet the Minimum Requirements for the immediately proceeding fiscal year of the Company.

(b) Area Developer may assign this Agreement to an Affiliate, which shall be deemed to be any entity of which Area Developer or Area Developer's equity owners as of the date of this Agreement are the beneficial owners of all of the voting ownership interests. If Area Developer desires to assign this Agreement to an Affiliate, Area Developer must give Liberty written notice specifying the name of the Affiliate and the name and address of each officer, director, shareholder, member, partner or other person affiliated with the Affiliate. An assignment to any Affiliate shall be effective upon the Affiliate's execution of such assignment documents as Liberty may reasonably require. Liberty will not charge any fee in connection with an assignment to an Affiliate.

(c) If Area Developer receives and desires to accept a signed, bona fide offer from a third party (an "Offeror") to acquire Area Developer or Area Developer's rights under this Agreement, Area Developer shall grant Liberty the option (the "Option") to terminate this Agreement on the basis described in this Section 9.4(c). The Option shall be triggered by Area Developer's written notice to Liberty accompanied by a copy of the executed offer (the "Offer Notice"). Liberty shall have the right to terminate this Agreement upon the payment to Area Developer of the price (and upon the terms) set forth in the Offer Notice. However, Liberty may substitute cash for any non-cash form of payment proposed and will have sixty (60) days following the date of Liberty's exercise of the Option to close the purchase under the Option. Liberty's exercise of the Option must be made by written notice to Area Developer within fifteen (15) days after its receipt of the Offer Notice. If Liberty does not exercise its Option, Area Developer may complete the proposed sale or assignment strictly upon the terms set forth in the Offer Notice; provided, however, that if the sale or assignment to the Offeror is not completed within ninety (90) days of the date of the Offer Notice, Area Developer may not consummate the sale or assignment without again giving Liberty the Option provided for in this Section 9.4 (c).

(d) A transfer of an ownership interest in Area Developer or a permitted Affiliate shall constitute an assignment of this Agreement, and shall be treated as an assignment subject to Section 9.4 (c).

(e) Notwithstanding the terms of Section 9.4(c), Area Developer may not complete the sale or assignment to an Offeror unless the Offeror complies with the reasonable requirements imposed by Liberty relating to the sale or assignment, Offeror signs Liberty's then current version of this Area Developer Agreement, Offeror attends and successfully completes our then current Area Developer Training program and meets Liberty's then current

qualifications, both Area Developer and Offeror sign Liberty's then current transfer and release forms, and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such



claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9 **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10 **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11 **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12 **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13 **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14 **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15 **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred.  Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

   a.   Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

   b.   Such assignment is not completed within one year after death or incapacity.

   If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement.  Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement.  The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms.  The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us.  The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** Sarkauskas Enterprises LLC **Entity Number:** 4671

**Type:**__________ **(Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature]
(Signature)

Brad Sarkauskas
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

By: [signature]
(Signature)

Stan Sarkauskas
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 12/29/06

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of:

Rockford DMA:

Boone County, IL
Lee County, IL
Ogle County, IL
Stephenson County, IL
Winnebago County, IL

Davenport-Rock Island-Moline:

Jo Daviess County, IL
Carroll County, IL
Whiteside County, IL
Rock Island County, IL
Henry County, IL
Bureau County, IL
Mercer County, IL
Henderson County, IL
Warren County, IL
Knox County, IL

which shall be divided by JTH Tax, Inc. into 28 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2007 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for four total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twelve total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h.  For the period beginning May 1 following the Effective Date of this Area Developer
    Agreement through the following April 30th, 2014 you the Area Developer must identify
    and secure Candidates/Franchisees such that Franchise Agreements for fourteen total
    franchise territories (as defined by JTH) have been executed by such
    Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i.  For the period beginning May 1 following the Effective Date of this Area Developer
    Agreement through the following April 30th, 2015 you the Area Developer must identify
    and secure Candidates/Franchisees such that Franchise Agreements for sixteen total
    franchise territories (as defined by JTH) have been executed by such
    Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j.  For the period beginning May 1 following the Effective Date of this Area Developer
    Agreement through the following April 30th, 2016 you the Area Developer must identify
    and secure Candidates/Franchisees such that Franchise Agreements for eighteen total
    franchise territories (as defined by JTH) have been executed by such
    Candidates/Franchisees and such Franchise Agreements remain in effect and operation.



**ILLINOIS ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 12/29/06, between Liberty Tax Service and Sarkauskas Enterprises LLC, the Area Developer. To the extent this Addendum shall be deemed to be inconsistent with any of the terms or conditions of the Area Developer Agreement or its Exhibits, the terms of this Addendum shall govern.

1. Any condition, stipulation, or provision of the Area Developer Agreement purporting to bind you to waive compliance with any provision of the Illinois Franchise Disclosure Act or any other law of the state of Illinois is void.

2. Paragraph 9.7.a. providing for the application of Virginia law is deleted. Instead, Illinois law shall apply to disputes between the parties with respect to this Agreement or dealings of the parties related thereto.

3. Paragraph 9.7.b. providing for jurisdiction and venue is deleted and the following is substituted in its place:

> "You agree to bring any claim against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, solely in arbitration before the American Arbitration Association in the city or county where our National Headquarters office is located, presently Virginia Beach, Virginia."

4. Paragraph 19-11 is deleted and the following is substituted in its place:

> "This Agreement is the entire agreement between you and us. This Agreement supersedes all other prior oral and written agreements and understandings except for or other than those contained in the Uniform Franchise Offering Circular (UFOC) between you and us with respect to the subject matter herein."

**AREA DEVELOPER:**

By: ______________________

By: ______________________

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 12/29/06, between Liberty Tax Service and Sarkauskas Enterprises, LLC, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By:____________________

By:____________________

**LIBERTY TAX SERVICE**

By:____________________
John Hewitt, CEO

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

Upon receiving the Area Developer Agreement, please sign this acknowledgment and return it to Liberty Tax Service at the address above.

11/22/06
Date you received this
Area Developer Agreement

Your Signature

Brad Sarkauskas
Your Printed Name

Your Signature

Stan Sarkauskas
Your Printed Name

**EXHIBIT M**

**ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR- ILLINOIS**

**THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.**

**IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:**

**(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR**
**(2) FOURTEEN (14) CALENDAR DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR**
**(3) FOURTEEN (14) CALENDAR DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.**

**YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.**

**IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.**

**Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.**

**I have received a Uniform Franchise Offering Circular dated August 4, 2006. This Circular included the following Exhibits:**

**A. State Effective Dates and Offering Circular Addenda**
**B. Area Developer Agreement and Area Developer Agreement Addenda**
**C. Promissory Notes**
**D-1. Renewal and Release & Transfer and Release Forms**
**D-2. Biographical Information Form**
**D-3. Biographical Information Form- Annual Update**
**D-4. Confidentiality Agreement**
**D-5. Franchise Broker Agreements**
**E. List of State Administrators and Registered Agents**
**F. Table of Contents of Operations Manual**
**G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business**
**H. Financial Statements**
**I. Franchise Broker/Lead Generator Sources**
**J.-K. Reserved**
**L. Acknowledgment of Receipt of Completed Franchise Agreement**
**M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular**

11/22/06
**Date you received this Offering Circular**

[signature]
**Signature**

Brad Sarkauskas
**Printed Name**

**Address**

**(Telephone Number)**

[signature]
**Signature**

Stan Sarkauskas
**Printed Name**

**Address**

**(Telephone Number)**



Compliance Officer: Jane M.

Rep: Mark Johnson

Date Closed: 12/29/06

**SALES JOURNAL ENTRY / AREA DEVELOPER**

AD: Brad Sarkauskas - Sarkauskas Enterprises, LLC

ENTITY NUMBER: 4671 TOTAL PURCHASE PRICE: 309,000

TERRITORY(IES): Rockford DMA and
Davenport-Rock-Island-Moline DMA
(Please see attached county list)

---

CHECK: $ 61,800 (1001) DATE: 12/19/06

CHECK: $ DATE:

CHECK: $ DATE:

CHECK: $ DATE:

CHECK: $ DATE:

PROMISSORY NOTE: $ 247,200 PROMISSORY NOTE: $

PROMISSORY NOTE: $ PROMISSORY NOTE: $

COMMENTS:

Schedule A

**TERRITORY**

The counties of:

Rockford DMA:

Boone County, IL
Lee County, IL
Ogle County, IL
Stephenson County, IL
Winnebago County, IL

Davenport-Rock Island-Moline:

Jo Daviess County, IL
Carroll County, IL
Whiteside County, IL
Rock Island County, IL
Henry County, IL
Bureau County, IL
Mercer County, IL
Henderson County, IL
Warren County, IL
Knox County, IL

which shall be divided by JTH Tax, Inc. into 28 Franchise Territories.

1001

**SARKAUSKAS ENTERPRISES**
14 E. DAVENPORT ST.
RHINELANDER, WI 54501

79-57/759 261

DATE 12/9/05

PAY TO THE ORDER OF Liberty Tax Service $ 61,800.00

Sixty one thousand eight hundred & 00/100 DOLLARS

Associated Bank
associatedbank.com

FOR

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4671 | Sarkauskas Enterprises, LLC | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity /** |
| Limited Liability Company (LLC) | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | | |
| ☐ | ☑ | None | | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E Davenport St | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (757)365-6500 | | brad@sarkauskas.com | | |

## Shipping Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| | | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| | | | Alabama | |
| **Phone** | | | | |
| | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| | | | |
| **Address** | **City** | **State** | **Zip Code** |
| | | Alabama | |

## Entity Territory Information

No territory information available for this entity

## Territory Office Information

No territory office information available for this entity

**Entity Notes**

AD Entity.  Closed on counties in the State of Illinois (Rockford DMA
and Davenport-Rock Island-Moline DMA) 12/29/06. jpm

**Edit History**

# Exhibit A-10

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

**1. SERVICES.**

1.1 **Area Developer Services.**

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

1.2 **Support Services.**

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c)     Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding.   These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d)     Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2.  At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete.   Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations.  Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e)     Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.   However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3     **Personal Involvement**.  Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4     **Reports**.  Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2.    EXCLUSIVITY

2.1     **Exclusivity**.  Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory").  This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees.  As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee**. Area Developer will pay Liberty $170,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8 **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10 **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11 **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

**6. CONFIDENTIALITY.**

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this

Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3    **Return of Information.**  Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7.    NON-COMPETE AND NO SOLICITATION.

7.1    **Non-Compete**.

(a)    **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b)    **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2    **No Solicitation**.

(a)    **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b)    **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax

preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

**8. TERM AND TERMINATION.**

8.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 9. MISCELLANEOUS.

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of



domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**.  We may assign this Agreement to an assignee who agrees to remain bound by its terms.  We do not permit a sub-license of the Agreement.  Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions.  No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us.  If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a.  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b.  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us.  We do not charge a transfer fee for this change.

c.  A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing.  At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us.  We do not charge a transfer fee for this change.

d.  You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice").  We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase.  Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice.  Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e.  If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided

that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and

personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9    **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10    **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11    **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12    **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation,

statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13   **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14   **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15   **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.   DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.   Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.   Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.   AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** Sarkauskas Enterprises LLC **Entity Number:** 4671

**Type:** LLC **(Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature]
(Signature)

Brad Sarkauskas
(Printed Name)

Title: Managing Member

Address: 14 E. Davenport St, Rhinelander, WI 54501

Ownership Percentage: 50% (See note below)

By: [signature]
(Signature)

Stan Sarkauskas
(Printed Name)

Title: Member

Address: 14 E. Davenport St. Rhinelander, WI 54501

Ownership Percentage: 50% (See note below)

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

By:__________
(Signature)

__________
(Printed Name)

Title:__________

Address:__________

Ownership Percentage:____% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 10/29/07

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of :

Columbia-Jefferson City DMA:

Chariton, MO
Randolph, MO
Howard, MO
Boone, MO
Audrain, MO
Cooper, MO
Callaway, MO
Montgomery, MO
Morgan, MO
Moniteau, MO
Cole, MO
Osage, MO
Miller, MO
Maries, MO

which shall be divided by JTH Tax, Inc. into 17 Franchise Territories.

Schedule B

## MINIMUM REQUIREMENTS

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for four total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for eight total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for ten total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.



h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for eleven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twelve total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**Special Stipulations**

To the extent of any conflict between the following and the provisions of the Area Developer Agreement, the following special stipulation(s) shall control:

1. Sections 4.1, 8.2 and 8.3 are clarified to also indicate that deletion of Territories, as explained under Section 4.1, shall be Liberty's sole remedy for failure of Area Developer to meet Minimum Requirements and that any such failure to meet Minimum Requirements shall not be grounds for termination or non-renewal.

Sarkauskas Enterprises, LLC

**Area Developer:** ~~**Brad Sarkauskas**~~ JPM **LIBERTY TAX SERVICE**

By:____________________________
Brad Sarkauskas, Managing Member

By:____________________________
John Hewitt, CEO

Date: 10/29/07

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated 10/29/07, between Liberty Tax Service and Sarkauskas Enterprises, LLC the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ____________________

By: ____________________

**LIBERTY TAX SERVICE**

By: ____________________
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated ________________________, between Liberty Tax Service and ____________________________, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ________________________

By: ________________________

**LIBERTY TAX SERVICE**

By: ________________________
John Hewitt, CEO

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated ________________________, between Liberty Tax Service and ____________________________, the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:**

By: ________________________

By: ________________________

**LIBERTY TAX SERVICE**

By: ________________________
John Hewitt, CEO

DocuSign Envelope ID: 7405B5CF-F27E-4EE9-8[illegible]-C7918CD2D4F2

Entity 4671

# ASSIGNMENT AND AMENDMENT TO AREA DEVELOPER AGREEMENTS

This ASSIGNMENT AND AMENDMENT to the Area Developer Agreements is made on the Effective Date listed below by and between Sarkauskas Enterprises, LLC, Bradley Sarkauskas, individually and as Sole Member of Sarkauskas Enterprises, LLC, (collectively "Amended Area Developer"), Stanley Sarkauskas, individually and as Member of Sarkauskas Enterprises, LLC ("Former Guarantor") (Former Guarantor and Amended Area Developer are referred to as "Former Area Developer" when referred to collectively herein) and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Area Developer has a license to operate certain Area Developer territories pursuant to written area developer agreements entered into December 29, 2006 and April 8, 2009 for the area developer territories set forth in the Schedule "A" of the area developer agreements (the "Area Developer Agreements"); and

Whereas Former Area Developer and Amended Area Developer desire, to amend the Area Developer Agreements to remove Former Guarantor as a guarantor thereon.

Now, therefore, in consideration of the mutual covenants and agreement herein, the parties hereto agree as follows:

1. Amended Area Developer shall remain as a guarantor of the Area Developer Agreements and shall be responsible for all obligations pursuant to the Area Developer Agreements, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Area Developer Agreements, whether accrued prior to or after this agreement.

2. Stanley Sarkauskas is hereby removed as a guarantor of the Area Developer Agreements; however, agrees to remain bound by the post-termination covenants contained therein.

3. Amended Area Developer agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Former Area Developer shall be guaranteed.

4. Furthermore, Former Franchisee and Amended Franchisee warrant that Sarkauskas Enterprises, LLC is in good standing under the laws of its state of organization, as of the date of this assignment and amendment and, further, confirm that Sarkauskas Enterprises, LLC shall remain in good standing and shall abide by all laws of its state of organization including, but not limited to, the filing of all required reports and payment of all required fees throughout the duration of ownership.

5. Former Area Developer, Amended Area Developer and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

6. This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a

DocuSign Envelope ID: 7405B5CF-F27E-4EE9-8B-C7918CD2D4F2

manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified above, the terms of the Area Developer Agreements remain in full force and effect.

**Accepted and Agreed to:**

**FORMER AREA DEVELOPER:**
**Sarkauskas Enterprises, LLC**

DocuSigned by:
By: [signature] 4EC54C053C254D8...
Bradley Sarkauskas, individually and as Member Sarkauskas Enterprises, LLC

DocuSigned by:
By: [signature] 48CF404E14E6424...
Stanley Sarkauskas, individually and as Member Sarkauskas Enterprises, LLC

**AMENDED AREA DEVELOPER:**
**Sarkauskas Enterprises, LLC**

DocuSigned by:
By: [signature] 4EC54C053C254D8...
Bradley Sarkauskas, individually and as Sole Member Sarkauskas Enterprises, LLC

**JTH TAX, INC., d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
By: [signature] 89D87DE5A075434...

Print: John Hewitt

Title: CEO

DocuSigned by:
By: [signature] 83D87DE6A675434...

Print: Kathy Donovan

Title: VP, CFO

Effective Date: 6/18/2015

**EXHIBIT L**

**ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT**

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

**Upon receiving the Area Developer Agreement, please enter today's date in the line immediately below and sign and return this Acknowledgment to Liberty Tax Service at the address above.**

10/17/07
Date you received Area Developer Agreement

[signature]
Your Signature

Brad Sarkauskas
Your Printed Name

[signature]
Co-Owner's Signature

Stan Sarkauskas
Co-Owner's Printed Name

Co-Owner's Signature

Co-Owner's Printed Name

Sarkauskas Enterprises, LLC

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

| | |
|---|---|
| [signature] | [signature] |
| Signature | Signature |
| Brad Sarkauskas | Stan Sarkauskas |
| Printed Name | Printed Name |
| 3630 County V | 5155 Pine Creek Rd. |
| Address | Address |
| Rhinelander WI | Rhinelander, WI |
| 715 365 6500 (Telephone number) | 715·365·6500 (Telephone number) |

Sarkauskas Enterprises, LLC

EXHIBIT M

ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

10/12/07
Date you received this Offering Circular

| | |
|---|---|
| [signature] | [signature] |
| Signature | Signature |
| Brad Sarkauskas | Stan Sarkauskas |
| Printed Name | Printed Name |
| 3630 County N | 5155 Pine Creek Rd. |
| Address | Address |
| Rhinelander WI | Rhinelander, WI |
| 715 365 6500 (Telephone number) | 715.365.6500 (Telephone number) |

**COMPLIANCE OFFICER:** Jane
**REP:** Erica Caicedo
**DATE CLOSED:** 10/29/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Sarkauskas Enterprises, LLC (Brad & Stan Sarkauskas

**ENTITY NUMBER:** 4671 **TOTAL PURCHASE PRICE:** 170,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** MO

**LOCATED:** Columbia - Jefferson City DMA
(See attach list of Counties)

---

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $ 170,000 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** Area Development Fee

Schedule A

## TERRITORY

The counties of :

<u>Columbia-Jefferson City DMA:</u>

Chariton, MO
Randolph, MO
Howard, MO
Boone, MO
Audrain, MO
Cooper, MO
Callaway, MO
Montgomery, MO
Morgan, MO
Moniteau, MO
Cole, MO
Osage, MO
Miller, MO
Maries, MO

which shall be divided by JTH Tax, Inc. into 17 Franchise Territories.

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

**Entity Information**

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4671 | Sarkauskas Enterprises, LLC | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity A** |
| Limited Liability Company (LLC) | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

**Contact Information**

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Brad | Sarkauskas | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 14 E Davenport St | | Rhinelander | Wisconsin | 54501 |
| **Phone** | **Fax** | **Email** | | |
| (757)365-6500 | | brad@sarkauskas.com | | |

**Shipping Information**

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| | | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| | | | Alabama | |
| **Phone** | | | | |
| | | | | |

**Billing Address**

| Name | | | |
|---|---|---|---|
| | | | |
| **Address** | **City** | **State** | **Zip Code** |
| | | Alabama | |

**Entity Region Information**

**Entity Territory Information**

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

AD Entity. Closed on counties in the State of Illinois (Rockford DMA and Davenport-Rock Island-Moline DMA) 12/29/06. jpm Closed on counties in the State of Missouri (Columbia-Jefferson City DMA) on 10/29/07. jpm

| Edit History | | | | |
|---|---|---|---|---|
| **Edit Date/Time** | **Field Name** | **New Value** | **Original Value** | **Changed By** |
| 4/25/2007 11:17:39 AM | StatusDescription | Contract Closed/Active | Application In | sa |
| 4/25/2007 11:17:39 AM | EntityAge | 1 | | sa |

**Entity 4671**

**General Information**

Entity Name: Sarkauskas Enterprises LL(

Entity Type: Area Developer

Entity Status: Contract Closed/Active

Ownership Type: Limited Liability Company (LLC)

EIN

Termination Date

Broker: None

**Contact Information**

**Owner**

| First Name | Last Name | Date of Birth |
|---|---|---|
| Brad | Sarkauskas | |

**Spouse**

| First Name | Last Name | Date of Birth |
|---|---|---|
| | | |

Address: 14 E Davenport St

City: Rhinelander

State/Province: Wisconsin

Zip/Postal Code: 54501

Phone: (715) 365-6500

Fax

Email: brad@sarkauskas.com

**Shipping Information**

Address

City

State/Province
Alabama

Zip/Postal Code

Phone

**Settings**

Withholding Type: Standard Fee Intercept

Support Level: [Select]

Honor Roll: ☑

**Pricing Curve**

| Start Date | Pricing Curve |
|---|---|
| 1/1 | 80% |
| 1/26 | 100% |
| 2/15 | 70% |
| 4/10 | 100% |

**Notes**

AD Entity. Closed on counties in the State of Illinois (Rockford DMA and Davenport-Rock Island-Moline DMA) 12/29/06. jpm Closed on counties in the State of MIssouri (Columbia-Jefferson City DMA) on 10/29/07. jpm

**Entity Breakdown**

| Id | Name | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|

# Exhibit A-11

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefore.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES.

### 1.1 Area Developer Services.

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

### 1.2 Support Services.

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee**. Area Developer will pay Liberty $31,000 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material**.  Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Disclosure Documents which Liberty provides for Area Developer's use.

3.8    **Terminal Services**.  Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker**.  From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above.  For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10    **Payment**.  With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month.  In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest.  Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11    **Late Fees**.  Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12    **Fee Amounts**.  From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13    **Expenses**.  Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.



## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Disclosure Document, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently fourteen calendar days before signing of a binding agreement between the Candidate and Liberty or making any payment by the Candidate to Liberty, in most jurisdictions. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Disclosure Document approved for use by the Area Developer, but will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Disclosure Document.

5.2 **Financial Performance Representations**. Except as may be expressly provided in Liberty's most current Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3    **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Disclosure Document or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4    **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5    **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6.    CONFIDENTIALITY.

6.1    **Definition.**  As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement.  The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2    **Confidentiality.**  Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information.  If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3    **Return of Information.**  Upon termination of this Agreement, each receiving

party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

7.1 **Non-Compete**.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2 **No Solicitation**.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3 **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the



existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8.    TERM AND TERMINATION.

8.1    **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2    **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3    **Termination**.

(a)    Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b)    Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i)    Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii)    Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii)    Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Forms are appended to the accompanying Disclosure Document as Exhibits D-2 and D-3.

(c) Liberty may terminate this Agreement if Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

**9. MISCELLANEOUS.**

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. We may assign this Agreement to an assignee who agrees to remain

bound by its terms. We do not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us. If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

d. Within fourteen (14) days of receipt of the offer, you shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer

application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Area Developer Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction

exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9    **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10    **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (800) 880-6432. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

9.11    **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12    **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13    **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14 **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15 **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10. DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a. Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b. Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The signatories waive any right to presentment, demand or notice of non-performance and the right to require us to proceed against the other signatories.

**Area Developer:** Sarkauskas Enterprises, LLC **Entity Number:** 4671

**Type:** LLC **(Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS:**

| | |
|---|---|
| By: [signature] (Signature) | By: [signature] (Signature) |
| Brad Sarkauskas (Printed Name) | Stan Sarkauskas (Printed Name) |
| Title: Member | Title: Member |
| Address: 14 E. Davenport St Rhinelander, WI 54501 | Address: 14 E. Davenport St. Rhinelander, WI 54501 |
| Ownership Percentage: 50% (See note below) | Ownership Percentage: 50% (See note below) |
| By:______ (Signature) | By:______ (Signature) |
| ______ (Printed Name) | ______ (Printed Name) |
| Title:______ | Title:______ |
| Address:______ | Address:______ |
| Ownership Percentage:____% (See note below) | Ownership Percentage:____% (See note below) |

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 4/8/09

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of :

Marquette DMA:

Keweenaw, MI
Houghton, MI
Ontonagon, MI
Baraga, MI
Iron, MI
Marquette, MI
Dickinson, MI
Alger, MI
Delta, MI
Schoolcraft, MI
Florence, WI

which shall be divided by JTH Tax, Inc. into 4 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for two total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2018 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2019 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

**WISCONSIN ADDENDUM**
**TO THE AREA DEVELOPER AGREEMENT**

This Addendum forms a part of the Area Developer Agreement dated April 8, 2009, between Liberty Tax Service and Sarkaus Kas Entep, LLC the Area Developer.

1. If the Area Developer Agreement contains any provisions that conflict with the Wisconsin Fair Dealership Law, the provisions of this Addendum shall prevail to the extent of such conflict.

2. Sections 8.2 and 8.3 of the Area Developer Agreement are amended to include the following language:

> With respect to franchises governed by Wisconsin law, the franchisor will comply with Wisconsin Statutes, Chapter 135, Section 135.04 which requires, except in certain circumstances, that a franchisee be given 90 days notice of termination, cancellation, nonrenewal or substantial change in competitive circumstance of the franchise agreement with 60 days to cure.

**AREA DEVELOPER:** Sarkaus Kas Entep, LLC

By: [signature]

By: [signature]

**LIBERTY TAX SERVICE**

By: [signature]
John Hewitt, CEO

DocuSign Envelope ID: 7405B5CF-F27E-4EE9-8B■■-C7918CD2D4F2

Entity 4671

# ASSIGNMENT AND AMENDMENT TO AREA DEVELOPER AGREEMENTS

This ASSIGNMENT AND AMENDMENT to the Area Developer Agreements is made on the Effective Date listed below by and between Sarkauskas Enterprises, LLC, Bradley Sarkauskas, individually and as Sole Member of Sarkauskas Enterprises, LLC, (collectively "Amended Area Developer"), Stanley Sarkauskas, individually and as Member of Sarkauskas Enterprises, LLC ("Former Guarantor") (Former Guarantor and Amended Area Developer are referred to as "Former Area Developer" when referred to collectively herein) and JTH Tax, Inc. d/b/a Liberty Tax Service ("Franchisor").

Whereas Former Area Developer has a license to operate certain Area Developer territories pursuant to written area developer agreements entered into December 29, 2006 and April 8, 2009 for the area developer territories set forth in the Schedule "A" of the area developer agreements (the "Area Developer Agreements"); and

Whereas Former Area Developer and Amended Area Developer desire, to amend the Area Developer Agreements to remove Former Guarantor as a guarantor thereon.

Now, therefore, in consideration of the mutual covenants and agreement herein, the parties hereto agree as follows:

1. Amended Area Developer shall remain as a guarantor of the Area Developer Agreements and shall be responsible for all obligations pursuant to the Area Developer Agreements, including, but not limited to, the payments of any and all promissory notes or other amounts owed to Franchisor in relation to the Area Developer Agreements, whether accrued prior to or after this agreement.

2. Stanley Sarkauskas is hereby removed as a guarantor of the Area Developer Agreements; however, agrees to remain bound by the post-termination covenants contained therein.

3. Amended Area Developer agrees, in consideration of Franchisor's consent, to enter into a separate Guaranty Agreement whereby all accounts and notes receivable balances owed by Former Area Developer shall be guaranteed.

4. Furthermore, Former Franchisee and Amended Franchisee warrant that Sarkauskas Enterprises, LLC is in good standing under the laws of its state of organization, as of the date of this assignment and amendment and, further, confirm that Sarkauskas Enterprises, LLC shall remain in good standing and shall abide by all laws of its state of organization including, but not limited to, the filing of all required reports and payment of all required fees throughout the duration of ownership.

5. Former Area Developer, Amended Area Developer and guarantors hereby further agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge Franchisor and its past and present employees, directors, officers, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

6. This Assignment and Amendment may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a

DocuSign Envelope ID: 7405B5CF-F27E-4EE9-8D[illegible]C7918CD2D4F2

manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based record keeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

Except as modified above, the terms of the Area Developer Agreements remain in full force and effect.

**Accepted and Agreed to:**

**FORMER AREA DEVELOPER:**
**Sarkauskas Enterprises, LLC**

DocuSigned by:
By: ______________________
4FC54C053C254DB...
Bradley Sarkauskas, individually and as Member Sarkauskas Enterprises, LLC

DocuSigned by:
By: ______________________
48CF404F14F8424...
Stanley Sarkauskas, individually and as Member Sarkauskas Enterprises, LLC

**AMENDED AREA DEVELOPER:**
**Sarkauskas Enterprises, LLC**

DocuSigned by:
By: ______________________
4FC54C053C254DB...
Bradley Sarkauskas, individually and as Sole Member Sarkauskas Enterprises, LLC

**JTH TAX, INC., d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
By: ______________________
83DB7DE5A675434...

Print: John Hewitt

Title: CEO

DocuSigned by:
By: ______________________
83DB7DE5A675434...

Print: Kathy Donovan

Title: VP, CFO

Effective Date: 6/18/2015

**EXHIBIT M**
**RECEIPT**

This disclosure document summarizes certain provisions of the franchise agreement and other information in plain language. Read this disclosure document and all agreements carefully.

If Liberty Tax Service offers you a franchise, we must provide this disclosure document to you at least 14 days before you sign a binding agreement or make a payment to us in connection with the proposed franchise sale or grant. Under Michigan, Rhode Island, and Washington law, if applicable, we must provide this disclosure document to you 10 business days before signing any contract or making any payment relating to the franchise relationship. Under Maryland and Oklahoma law, if applicable, we must provide this disclosure document to you at the earliest of the first personal meeting or 10 business days before signing any contract or making any payment relating to the franchise relationship.

If we do not deliver this disclosure document on time or if it contains a false or misleading statement, or a material omission, a violation of federal law and State law may have occurred and should be reported to the Federal Trade Commission, Washington, D.C. 20580 and the state agency listed on Exhibit E.

Date of Issuance: January 15, 2009

See Exhibit E for our registered agents authorized to receive service of process.

If a Franchise Broker was involved in this sale, the name, principal business address and telephone number of the Broker follows:

Name of Broker: N/A

Broker Telephone Number: N/A

Broker Principal Business Address: N/A

I have received a disclosure document dated 7-08 Amended 1-09 that included the following Exhibits:

A. State Effective Dates and Disclosure Document Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Area Developer Sales Agent Disclosure Form Annual Update and Instructions and Area Developer Contact Information Update Form and Instructions
D-4. Confidentiality Agreement
D-5. Franchise Broker Commission Agreement
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I.-L. Reserved
M. Receipt

3/18/09
Date you received this Disclosure Document

**PROSPECTIVE AREA DEVELOPER:**

If a business entity:

Sarkauskas Enterprises LLC
Name of Business Entity

By: [signature]
Signature

Rod Sarkauskas, member
Printed Name/Title

14 E. Davenport St.
Address

Rhinelander, WI

715-365-6506 (Telephone number)

By: [signature]
Signature

Stan Sarkauskas, Member
Printed Name/Title

14 E. Davenport St.
Address

Rhinelander, WI 54501

715.365.6500 (Telephone number)

If an individual:

Signature

Printed Name

Address

(Telephone number)

Signature

Printed Name

Address

(Telephone number)



LIBERTY
TAX
SERVICE

**COMPLIANCE OFFICER: Jane Murphy**

**REP: Erica Caicedo**

**DATE CLOSED:** 4/8/09

## SALES JOURNAL ENTRY / AREA DEVELOPER

**AD:** Sarkauskas Enterprises, LLC (Brad & Stan Sarkauskas)

**ENTITY NUMBER:** 4671 **TOTAL PURCHASE PRICE:** $31,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** MI and WI

**LOCATED:** Marquette DMA

(Expansion)

---

**CHECK:** $ 15,500 (1134) **DATE:** 4/4/09

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $ 15,500 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** AD Expansion

Schedule A

**TERRITORY**

The counties of :

<u>Marquette DMA:</u>

Keweenaw, MI
Houghton, MI
Ontonagon, MI
Baraga, MI
Iron, MI
Marquette, MI
Dickinson, MI
Alger, MI
Delta, MI
Schoolcraft, MI
Florence, WI

which shall be divided by JTH Tax, Inc. into 4 Franchise Territories.

1134

**SARKAUSKAS ENTERPRISES**
14 E. DAVENPORT ST.
RHINELANDER, WI 54501

DATE 4/4/09

79-57/759 261

PAY TO THE ORDER OF Liberty Tax Service $ 15,500.00

Fifteen thousand five hundred & 00/100 DOLLARS

Associated Bank
associatedbank.com

FOR AD 4671

**Entity 4671**

**General Information**

Entity Name
Sarkauskas Enterprises LL(

Entity Type
Area Developer

Entity Status
Contract Closed/Active

Ownership Type
Limited Liability Company (LLC)

EIN

Termination Date

Broker
None

**Contact Information**

**Owner**

| First Name | Last Name | Date of Birth |
|---|---|---|
| Brad | Sarkauskas | |

**Spouse**

| First Name | Last Name | Date of Birth |
|---|---|---|

Address
14 E Davenport St

City
Rhinelander

State/Province
Wisconsin

Zip/Postal Code
54501

Phone
(715) 365-6500

Fax

Email
brad@sarkauskas.com

**Shipping Information**

Address

City

State/Province

Alabama

Zip/Postal Code

Phone

**Settings**

Withholding Type: Standard Fee Intercept

Support Level: [Select]

Honor Roll: ☑

**Pricing Curve**

| Start Date | Pricing Curve |
|---|---|
| 1/1 | 80% |
| 1/26 | 100% |
| 2/15 | 70% |
| 4/10 | 100% |

**Notes**

AD Entity. Closed on counties in the State of Illinois (Rockford DMA & Davenport-Rock Island-Moline DMA) 12/29/06. jpm Closed on counties in the State of Missouri (Columbia-Jefferson City DMA) on 10/29/07. jpm Closed on counties in the States of Michigan(10) & Wisconsin (1) (Marquette DMA) 4/8/09. jpm

**Entity Breakdown**

| Id | Name | Address | City | State | Internal Support | Open Date | Return Count | Status |
|---|---|---|---|---|---|---|---|---|

# Exhibit A-12

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES.

### 1.1 Area Developer Services.

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

### 1.2 Support Services.

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the

"Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d) Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2. At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations. Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e) Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS.

3.1 **Initial Fee.** Area Developer will pay $2,050,000 upon execution of this Agreement, which payment is outlined in purchase and sale between LCF, Inc (Mary Johnson and Laurie York) and Mike Budka and Mufeed Haddad.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to the percentage listed by county on the Schedule A of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to the percentage listed by county on the Schedule A of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax

Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8 **Terminal Services**. Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10 **Payment**. With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest. Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11 **Late Fees**. Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the



proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

7.1 **Non-Compete**.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

7.2 **No Solicitation**.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any

Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3    **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8.    TERM AND TERMINATION.

8.1    **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2    **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3    **Termination**.

(a)    Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b)    Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i)    Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii)    Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

**9. MISCELLANEOUS.**

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of

domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**. We may assign this Agreement to an assignee who agrees to remain bound by its terms. We do not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us. If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us. We do not charge a transfer fee for this change.

d. You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90

days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia

Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

9.9 **<u>Severability</u>**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

9.10 **<u>Notices</u>**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you.

9.11 **<u>Burdens and Benefits</u>**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

9.12 **<u>Entire Agreement</u>**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation, statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13 **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14 **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15 **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a. Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b. Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

Mufeed Haddad and Michael N. Budka

**Area Developer:** ______________________ **Entity Number:** 5167

**Type:** Tenants in Common **(Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership) * See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature]
(Signature)

Mufeed Haddad
(Printed Name)

Title: Partners

Address: 3793 Quarter Horse Dr
Yorba Linda, CA. 92886

Ownership Percentage: 50% (See note below)

By: [signature]
(Signature)

Michael N. Budka
(Printed Name)

Title: Partner

Address: 19906 Trotter Ln
Yorba Linda CA 92886

Ownership Percentage: 50% (See note below)

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

Ownership Percentage: ____% (See note below)

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

Ownership Percentage: ____% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 1/23/08

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

**TERRITORY**

The counties of:

**Orlando-Daytona Beach-Melbourne DMA (part of) including:**

| | |
|---|---|
| Orange County, FL | Initial Franchise Fee = 65% / Royalties = 65% |
| Osceola County, FL | Initial Franchise Fee = 65% / Royalties = 65% |
| Seminole County, FL | Initial Franchise Fee = 60% / Royalties = 60% |
| Volusia County, FL | Initial Franchise Fee = 60% / Royalties = 60% |
| Flagler County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Lake County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Sumter County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Marion County, FL | Initial Franchise Fee = 50% / Royalties = 50% |

**Gainesville DMA including:**

| | |
|---|---|
| Alachua County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Dixie County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Gilchrist County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Levy County, FL | Initial Franchise Fee = 50% / Royalties = 50% |

which shall be divided by JTH Tax, Inc. into 114 Franchise Territories.

Schedule B

**MINIMUM REQUIREMENTS**

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for zero total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for sixteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twenty-six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirty-six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for forty-four total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for fifty-two franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for sixty total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for sixty-six total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for seventy total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

# ASSIGNMENT AND AMENDMENT TO AREA DEVELOPER AGREEMENT

The Area Developer Agreement dated January 23, 2008, between Liberty Tax Service and Mufeed Haddad and Michael N. Budka under entity 5167, is hereby amended as follows:

The name of the Area Developer shall be changed from Mufeed Haddad and Michael N. Budka, Tenants in Common to Mufeed Haddad, Michael N. Budka, Mark C. Johnson and Mary G. Johnson Tenants in Common. Mark C. Johnson and Mary G. Johnson are added as guarantors on the above Area Developer Agreement. Mufeed Haddad and Michael N. Budka shall remain guarantors on the above Area Developer Agreements.

The Area Developers, Mufeed Haddad, Michael N. Budka, Mark C. Johnson and Mary G. Johnson agree on behalf of themselves and all their employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge JTH Tax, Inc. d/b/a Liberty Tax Service and its past and present employees, directors, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages, and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

Except as modified above, the terms of the Area Developer Agreement remain in full force and effect.

**Area Developer: Mufeed Haddad and Michael N. Budka**

By: ______________________
Mufeed Haddad, Individually and as a Tenant in Common

By: ______________________
Michael N. Budka, Individually and as a Tenant in Common

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

By: ______________________
Mark Baumgartner, CFO

**Area Developer: Mufeed Haddad, Michael N. Budka, Mark C. Johnson and Mary G. Johnson**

By: ______________________
Mufeed Haddad, Individually and as a Tenant in Common

By: ______________________
Michael N. Budka, Individually and as a Tenant in Common

Date: 3/29/11

By: ______________________
Mark C. Johnson, Individually and as a Tenant in Common

By: ______________________
Mary G. Johnson, Individually and as a Tenant in Common

**COMPLIANCE OFFICER:** Jane
**REP:** Erica
**DATE CLOSED:** 1/23/08

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Mike Budka + Mufeed Haddad

**ENTITY NUMBER:** 5167 **TOTAL PURCHASE PRICE:** 2,050,000

**STATE(S) WHERE COUNTIES BEING PURCHASED:** FL

**LOCATED:** Central Florida - Please see attached County List

**CHECK:** $ 15,000 #15029 **DATE:** 1/14/08

**CHECK:** $ 15,000 #1354 **DATE:** 12/31/07

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:** AD to AD Sale - Development Fee is being paid to seller. $30,000 Transfer Fee is Being Paid to LTS. Purchaser is taking over the existing P-notes (see attached)

Schedule A

**TERRITORY**

The counties of :

**Orlando-Daytona Beach-Melbourne DMA (part of) including:**

| | |
|---|---|
| Orange County, FL | Initial Franchise Fee = 65% / Royalties = 65% |
| Osceola County, FL | Initial Franchise Fee = 65% / Royalties = 65% |
| Seminole County, FL | Initial Franchise Fee = 60% / Royalties = 60% |
| Volusia County, FL | Initial Franchise Fee = 60% / Royalties = 60% |
| Flagler County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Lake County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Sumter County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Marion County, FL | Initial Franchise Fee = 50% / Royalties = 50% |

**Gainesville DMA including:**

| | |
|---|---|
| Alachua County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Dixie County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Gilchrist County, FL | Initial Franchise Fee = 50% / Royalties = 50% |
| Levy County, FL | Initial Franchise Fee = 50% / Royalties = 50% |

which shall be divided by JTH Tax, Inc. into 114 Franchise Territories.

15029

**M & M BUSINESS GROUP, INC.**
4200 CHINO HILLS PKWY, SUITE 380
CHINO HILLS, CA 91709

WELLS FARGO BANK, N.A.
CALIFORNIA
16-24-1220

01/14/2008

PAY TO THE ORDER OF Liberty Tax Service

$ **15,000.00

Fifteen thousand and 00/100****************************************************************************************** DOLLARS

Liberty Tax Service
Liberty Tax Service
1716 Corporate Landing Pkwy
VA Beach, VB 23454

Transfer Fee - Central Flordia Ent 2392

Security Features Included. Details on back.

---

**LCF, INC.**
7512 Dr. Phillips Blvd., #50-350
Orlando, FL 32819-5131

1354
63-215/631

Date Dec. 31, 2007

Pay to the Order of Liberty Tax Service $ 15,000.00

Fifteen Thousand and 00/100 Dollars

SUNTRUST ACH RT 061000104

For Transfer Fee - LCF INC.

Laurie Cook

# Exhibit A-13



LIBERTY
TAX
SERVICE®

Renewed AD Agreement
11/28/12
(Renewed Agreement dated
#1 2/28/12)

**AREA DEVELOPER AGREEMENT**

**EXHIBIT B**

7-12 Ex B Area Developer Agreement

## TABLE OF CONTENTS

1. Services. ....................................................................................................3

2. Exclusivity ..................................................................................................5

3. Fees And Commissions..................................................................................5

4. Minimum Area Developer Performance. ........................................................7

5. Franchisor — Franchisee Relationship. ...........................................................8

6. Non-Compete And No Solicitation..................................................................9

7. Term And Termination. ................................................................................10

8. Miscellaneous. ...........................................................................................11

9. Death Or Incapacity ....................................................................................15

10. Confidential Information............................................................................15

11. Agreement................................................................................................16

Schedule A ................................................................................................ 19-20

Schedule B ...................................................................................................21



# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

### 1.1 Area Developer Services.

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise.

(c) **Limitation of Services.** You may only offer those services or products through your Area Developer business as authorized by us in this Agreement or the Area Developer Operations Manual, unless you first obtain our prior written approval.

### 1.2 Area Developer Support Services.

(a) **Operational Support.** As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help, and marketing advice.

(b) **Manual.** At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty Franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c) **Contract Enforcement.** Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding. These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

1.3 **Liberty Obligations.**

(a) **Area Developer Operations Manual.** Liberty will provide an Area Developer operations manual to offer guidance in performing Area Developer services.

(b) **Initial and Advanced Training.** Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in paragraphs 1.1 and 1.2. At present, Liberty provides a three-four day initial Area Developer training course, which you and any manager working for you must attend and successfully complete. Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations or Liberty may offer such training on the web or electronically. Although Liberty does not charge for you to attend training, you must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation, incurred in attending any training that Liberty provides.

(c) **Disclosure Document.** Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's Development Services.

1.4 **Joint Duties.** Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5 **Personal Involvement**. Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.6 **Reports**. Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

1.7 **Reviews.** Liberty reserves the right to review your business operations, in person, by mail, or electronically, to inspect your operations and obtain your paper and electronic business records related to the Area Developer business and any other operations taking place through your Area Developer business. If, as part of a review of your business, Liberty requests a copy of any business records, you must send Liberty at your expense these records within five business days of receiving Liberty's request. Liberty has the right to require that you implement a plan to resolve issues that Liberty discerns from any review Liberty conducts.

## 2. EXCLUSIVITY

2.1 **Exclusivity**. Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories"), as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such Franchisee will be deemed a Franchisee for the purposes of this Agreement.

## 3. FEES AND COMMISSIONS

3.1 **Initial Fee.** Initial Fee paid by Area Developer to Liberty in the Area Developer Agreement dated February 8, 2002 was $239,681.00. Area Developer will pay Liberty no additional development fees upon renewal of said agreement, all or any debt still owed under said Agreement will remain in effect upon exectuion of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 70% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees or royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees" and "Royalties"), for the first time that a territory is purchased by a franchisee, except Franchise Fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 70% of all ongoing Royalties

received by Liberty, if any, from a Franchisee during the Term except Royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a Franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4   **Demand for Payment**. Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5   **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective Franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads.

3.6   **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (provided that in the case of a prospective Franchisee under a special stipulation agreement whereby no Franchisee Fee is paid, this amount shall be deemed to be payable under section 3.5 and be $6,000 or such other amount as is established pursuant to section 3.5). Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7   **Advertising and Selling Material**. Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Disclosure Documents, which Liberty provides for Area Developer's use.

3.8   **Terminal Services**. Liberty may charge Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9   **Use of Franchise Broker**. From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree, that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial Franchise Fee and Royalties that Area Developer receives under paragraphs 3.2 and 3.3 above. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 or by $4,550.

3.10   **Payment**. With respect to any month in which Liberty receives Franchise Fees, Royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties

(except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of Royalties, Franchise Fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Royalties only with respect to Royalties actually collected, and Liberty will be entitled to take credits against previous Royalty payments to Area Developer to the extent that any Royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

3.11 **Late Fees**. Payment by you to Liberty for charges Liberty bills to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12 **Fee Amounts**. From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13 **Expenses**. Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14 **Referral Fees**. From time to time, Liberty may offer referral fees to persons who refer new Franchisees to Liberty. Such referral fees do not apply to Area Developer as to Candidates who become Franchisees in Area Developer's Territory.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of Franchise Fees and Royalties paid with respect to Franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the

numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1 **Disclosure**. Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Disclosure Document, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently fourteen calendar days before signing of a binding agreement between the Candidate and Liberty or making any payment by the Candidate to Liberty, in most jurisdictions. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Disclosure Document approved for use by the Area Developer, but will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Disclosure Document.

5.2 **Financial Performance Representations**. Except as may be expressly stated in Item 19 of Liberty's most current unit Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or

arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. NON-COMPETE AND NO SOLICITATION

6.1 **Non-Compete**.

(a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service Franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service Franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

6.2 **No Solicitation**.

(a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity.

(b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3 **Severability**. If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other,

whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7. TERM AND TERMINATION

7.1 **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

7.2 **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing Liberty's then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

7.3 **Termination**.

(a) Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a violation of any law, ordinance, rule or regulation of a government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of paragraphs 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, or fails to disclose a material fact that is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting



documentation upon reasonable request. The present versions of these Forms are appended to the accompanying Disclosure Document as Exhibits D-2 and D-3; or

(iv) Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this Agreement.

(c) Liberty may terminate this Agreement if Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, paragraphs 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

**8. MISCELLANEOUS**

8.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty," "libtax," or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will



not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4 **Assignment**. Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Agreement. Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions. No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to Liberty. Any transfer of an ownership interest in this Agreement must be joined in by all signatories to this Agreement, except any person who is deceased or under a legal disability.

a. If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b. A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, you must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by Liberty. Liberty does not charge a transfer fee for this change.

c. A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by Liberty. Liberty does not charge a transfer fee for this change.

d. Within fourteen (14) days of receipt of the offer, you shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice"). Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have 60 days after the exercise of our Right of First Refusal to close the said purchase. Should Liberty wish to exercise Liberty's Right of First Refusal, Liberty will notify you in writing within 15 days from its receipt of the Notice. Upon the giving of such notice by Liberty, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e. If Liberty does not exercise Liberty's Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not

conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass Liberty's application screening using Liberty's then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by Liberty, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign Liberty's then current transfer and release forms and pay to Liberty a transfer fee of $10,000.00.

8.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6 **Operations Manual, Specifications, and Equipment**. From time to time Liberty may issue specifications to guide you in the provision of Services hereunder. Liberty has an Area Developer Operations Manual, which you agree to follow. Liberty may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network. Liberty also requires you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective Franchisees and may from time to time issue recommendations or requirements in this regard. Liberty may change Liberty's Area Developer Operations Manual from time to time and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

8.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial, or injurious to Liberty.

8.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and personal jurisdiction in the state and federal court of the city or county of Liberty's National Office,

presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against Liberty, including Liberty's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where Liberty's National Office is (presently the City of Virginia Beach, Virginia).

**c. Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of Liberty's, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you and Liberty agree to waive our rights to a jury trial and instead have such action tried by a judge.

**d. Class Action Waiver.** You agree that any claim you may have against Liberty, including Liberty's past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

**e. Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Liberty's, you and Liberty agree to waive our rights, if any, to seek or recover punitive damages.

8.9 **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

8.10 **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Facsimile: (800) 880-6432. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for you. Liberty may also give notice to you by e-mail.

8.11 **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

8.12 · **Entire Agreement**. This Agreement, including the Schedules, is the entire agreement between you and Liberty with respect to the subject matter hereof. This Agreement supersedes all other prior oral and written agreements and understandings between you and Liberty with respect to the subject matter herein. Nothing in this or in any related agreement,

however, is intended to disclaim the representations Liberty made in the franchise disclosure document Liberty furnished to you.

8.13 **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

8.14 **Financing**. If Liberty provides financing to you, you must submit annual financial information to Liberty, such as an income statement, balance sheet, and supporting documents, as Liberty specifies from time to time and in the formats Liberty provides.

## 9. DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a. Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b. Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 10. CONFIDENTIAL INFORMATION

**a. Disclosure.** Liberty possesses confidential information consisting of methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer (the "Confidential Information"). Liberty will disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to you and your representatives in training manuals Liberty provides, in our training programs, and in providing guidance and assistance pursuant to this Agreement. During the term of this Agreement and following the expiration or termination of this Agreement, you covenant not to communicate, directly or indirectly, or to divulge to or use for its benefit or the benefit of any other person or legal entity, any Confidential Information, except as Liberty permits in writing. Upon the expiration, termination or nonrenewal of this Agreement, you agree that you will never use or disclose, and will not permit any of your representatives to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any

business which provides services substantially similar to those stated herein. Notwithstanding the foregoing, the obligations in this paragraph will not apply to information: (a) that at the time of disclosure is readily available to the public; (b) that after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) that is subsequently lawfully and in good faith obtained by you from an independent third party without breach of this Agreement; (d) that was in your possession prior to the date of disclosure; or (e) which is disclosed to others in accordance with the terms of a prior written authorization between us. The protections granted hereunder shall be in addition to and not in lieu of all other protections for such Confidential Information that may otherwise be afforded by law or in equity.

**b. Interest.** .You will acquire no interest in the Confidential Information other than the right to use it in developing and operating pursuant to this Agreement. You acknowledge that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without our prior written consent.

**c. Use.** You agree that you will (a) not use the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of the Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of the Confidential Information disclosed in written form; and (d) adopt and implement all reasonable procedures, including but not limited to, those Liberty prescribes from time to time, to prevent unauthorized use of or disclosure of the Confidential Information, including, without limitation, restrictions on disclosure to your employees and the use of nondisclosure and non-competition clauses in employment agreements with employees who have access to the Confidential Information. Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the signatures of all individuals below, in any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **Section 8.8 above concerning Governing Law, including, but not limited to, the application of Virginia Law, the Jurisdiction and Venue clause, the Jury Waiver, the Class Action Waiver, and the limitation to Compensatory Damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to Liberty, and pay for products later ordered from Liberty. All signators below waive any right to presentment, demand or notice of non-performance and

the right to require Liberty to proceed against the other signators.

**Area Developer:** M&M Business Group L.P. **Entity Number:** 2532

**SIGNATORS:**

By: ______________________
(Signature)

MUFEED MASOUD
(Printed Name)

Title: GP

Address: 3793 QUARTER HORSE DR
YORBA LINDA, CA - 92886

Ownership Percentage: 50 %

By: ______________________
(Signature)

MICHAEL BUOKA
(Printed Name)

Title: GP

Address: 19906 TROTTER LN
YORBA LINDA CA-92886

Ownership Percentage: 50 %

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

______________________

Ownership Percentage: ____%

By: ______________________
(Signature)

______________________
(Printed Name)

Title: ______________________

Address: ______________________

______________________

Ownership Percentage: ____%

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By: ______________________
John T. Hewitt, President/CEO, or
Rufe Vanderpool, COO

Effective Date: 11/28/12

Schedule A

**TERRITORY**

The counties of:

San Bernardino County, CA

Los Angeles County, CA (Included part of):
NORTH of the Los Angeles/Orange County Line from the Los Angeles/San Bernardino County Line to SR-57.
EAST of SR-57 from the Los Angeles/Orange County Line to Brea Canyon Cut Off Rd.
NORTHEAST of Brea Canyon Cut Off Rd continuing onto NORTHEAST of Fairway Dr from SR-57 to SR-60.
SOUTH of SR-60 from Fairway Dr to S Lemon Ave.
EAST of S Lemon Ave continuing onto EAST of N Lemon Ave from SR-60 to Amar Rd.
SOUTH of Amar Rd from N Lemon Ave to Heidelberg Ave.
EAST of Heidelberg Ave from Amar Rd to San Jose Hills Rd.
SOUTHEAST of San Jose Hills Rd from Heidelberg Ave to N Grand Ave.
EAST of N Grand Ave continuing onto EAST of S Grand Ave from San Jose Hills Rd to I-10.
SOUTH of I-10 from S Grand Ave to SR-57.
EAST of SR-57 from I-10 to W Covina Blvd.
NORTH of W Covina Blvd from SR-57 to W Badillo St.
NORTHWEST of W Badillo St from W Covina Blvd to E Cypress St.
NORTH of E Cypress St from W Badillo St to N/S Grand Ave.
EAST of N Grand Ave continuing onto EAST of S Grand Ave continuing onto EAST of N Grand Ave from E Cypress St to E Sierra Madre Ave.
SOUTH of E Sierra Madre Ave continuing SOUTH of Latitude 34.14701°N from N Grand Ave to Mt. Baldy Rd.
SOUTHEAST of Mt. Baldy Rd from Latitude 34.14701°N to from the Los Angeles/San Bernardino County Line.
WEST of the Los Angeles/San Bernardino County Line from Mt. Baldy Rd to the Los Angeles/Orange County Line.

AND

NORTH of W Sierra Madre Ave continuing NORTH of E Sierra Madre Ave from N Yucca Ridge Rd to N Todd Ave.
WEST of N Todd Ave from E Sierra Madra Ave to W Foothill Blvd.
NORTH of W Foothill Blvd continuing NORTH of E Foothill Blvd from N Todd Ave to N Irwindale Ave.
WEST of N Irwindale Ave from E Foothill Blvd to I-210.
NORTH of I-210 from N Irwindale Ave to S Mountain Ave.
EAST of S Mountain Ave of EAST of N Mountain Ave from I-210 to E Greystone Ave.
SOUTHEAST of E Greystone Ave from N Mountain Ave to N Bradoaks Ave.
SOUTHEAST of N Bradoaks Ave from E Greystone Ave to Norumbega Dr.
SOUTH of Norumbega Dr from N Bradoaks Ave to Angeles National Forest.

SOUTH of continuing WEST of Angeles National Forest continuing WEST of N Yucca Ridge Rd from Norumbega Dr to W Sierra Madre Ave.

Riverside County, CA (Included parts of):
NORTH of the Riverside/San Diego County Line from "the border of Cleveland National Forest" to the Riverside/Orange County Line.
EAST of continuing NORTHEAST of the Riverside/Orange County Line from the Riverside/San Diego County Line to the Riverside/San Bernardino County Line.
SOUTHEAST of continuing SOUTH of the Riverside/San Bernardino County Line from the Riverside/Orange County Line to San Timoteo Canyon Rd.
SOUTHWEST of San Timoteo Canyon Rd from the Riverside/San Bernardino County Line to Redlands Blvd.
WEST of Redlands Blvd from San Timoteo Canyon Rd to John F Kennedy Dr.
NORTHWEST of John F Kennedy Dr from Redlands Blvd to Championship Dr.
NORTHWEST of Championship Dr from John F Kennedy Dr to Via del Lago.
WEST of Via del Lago continuing WEST of Moreno Beach Dr from Championship Dr to Upper Lake Shore Dr.
NORTHWEST of Upper Lake Shore continuing WEST of Lake Perris Dr from Moreno Beach Dr to Ramona Expy.
NORTH of Ramona Expy from Lake Perris Dr to Evans Rd.
WEST of Evans Rd from Ramona Expy to E Rider St.
SOUTH of E Rider St from Evans Rd to Evans Rd.
WEST of Evans Rd from E Rider St to E Nuevo Rd.
NORTH of E Nuevo Rd from Evans Rd to Redlands Ave.
WEST of Redlands Ave from E Nuevo Rd to I-215.
WEST of I-215 from Redlands Ave to Ethanac Rd.
NORTH of Ethanac Rd from I-215 to Murrieta Rd.
WEST of Murrieta Rd from Ethanac Rd to Bundy Canyon Rd.
NORTH of Bundy Canyon Rd from Murrieta Rd to Mission Trail.
WEST of Mission Trail from Bundy Canyon Rd to Palomar St.
NORTHEAST of Palomar St from Mission Trail to Corydon Rd.
NORTHWEST of Corydon Rd from Palomar St to Grand Ave.
SOUTHWEST of Grand Ave from Corydon Rd to Hansen Pl.
NORTHWEST of Hansen Pl continuing onto NORTHWEST of the Cleveland National Forest from Grand Ave to the Riverside/San Diego County Line.

which shall be divided by JTH Tax, Inc. into 65 Franchise Territories.

Schedule B

## MINIMUM REQUIREMENTS

At closing there are 55 JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each franchisee that is a party to said franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/franchisees such that the following cumulative minimum development obligations are met throughout the duration of the term of the Area Developer Agreement:

| Development Period Ending | Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office |
|---|---|
| April 30, 2013 | 56 |
| April 30, 2014 | 57 |
| April 30, 2015 | 58 |
| April 30, 2016 | 59 |
| April 30, 2017 | 60 |
| April 30, 2018 | 60 |
| April 30, 2019 | 60 |
| April 30, 2020 | 61 |
| April 30, 2014 | 61 |
| April 30, 2021 | 61 |

# Exhibit A-14

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]50974F552EB5

**AREA DEVELOPER AGREEMENT**

**EXHIBIT B**

# TABLE OF CONTENTS

1. **SERVICES** .... 3
2. **EXCLUSIVITY** .... 5
3. **FEES AND COMMISSIONS** .... 6
4. **MINIMUM AREA DEVELOPER PERFORMANCE** .... 8
5. **FRANCHISOR — FRANCHISEE RELATIONSHIP** .... 8
6. **NON-COMPETE AND NO SOLICITATION** .... 9
7. **TERM AND TERMINATION** .... 10
8. **MISCELLANEOUS** .... 12
9. **DEATH OR INCAPACITY** .... 16
10. **CONFIDENTIAL INFORMATION** .... 16
11. **COUNTERPARTS AND ELECTRONIC SIGNATURE** .... 17
12. **HEADINGS** .... 18
13. **AGREEMENT** .... 18

Schedule A .... 20
Schedule B .... 21

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]0974F552EB5

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchises a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, area developer ("Area Developer") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES

### 1.1 Area Developer Services.

(a) **Candidate Development.** Area Developer will use best efforts to find, solicit, and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that a candidate may have the characteristics of a potential Franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) **Franchise Award.** All Candidates must successfully pass Liberty's Effective Operations Training ("EOT") and Hands On Training ("HOT") to be awarded a Franchise.

(c) **Limitation of Services.** Area Developer may only offer those services or products through the Area Developer business as authorized by Liberty in this Agreement or the area developer operations manual ("Area Developer Operations Manual" or "Manual"), unless Liberty provides prior written approval.

### 1.2 Area Developer Support Services and Obligations.

(a) **Operational Support.** Area Developer will be responsible for coaching the Liberty system as described in the Area Developer Operations Manual and will provide Franchisees with timely local support, day-to-day operational help, marketing advice and feedback. Area Developer will host quarterly designated marketing area (DMA) meetings in person or through electronic means. Through these DMA meetings and as required by Liberty, Area Developer will disseminate information, collaborate with Franchisees, discuss advertising and address other issues that may arise or later be specified by Liberty. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising. Area Developer agrees to address reasonable company-owned store issues that may arise or be specified by Liberty. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]0974F552EB5

(b) **Customer Service.** Area Developer shall use best efforts to ensure that all Franchisees provide all appropriate services as outlined in the Franchisee Operations Manual and the Area Developer Operations Manual, abide by customer service policies issued by Liberty and timely respond to customer complaints and issues. Area Developer must operate in a manner that protects the goodwill, reputation of Liberty and the service marks and trademarks of Liberty (collectively "Marks).

(c) **Site Selection.** Area Developer shall provide site selection assistance in accordance with the Area Developer Operations Manual including, but not limited to, utilization of a company that we designate providing retail business intelligence solutions, and current Electronic Return Originator ("ERO") data. Final site selection must be approved by Liberty.

(d) **Budgets, Profit and Loss Statements and Action Plans.** Area Developer shall review and approve Franchisee budgets, profit and loss statements, action plans and the Marketing Plan Generator for submission to corporate for final approval in accordance with the deadlines provided by Liberty.

(e) **Agreement Facilitation.** Area Developers shall review and facilitate Franchisee applications to Liberty for financing, transfers, fee releases, sales, terminations and the like, subject to final approval by Liberty.

(f) **Required Attendance.** Area Developer, or Area Developer's approved representative, shall attend area developer training and EOT within six months of closing. Additionally, Area Developer will attend all meetings that may be required by Liberty.

(g) **Manual.** Area Developer shall provide all assistance and support described in the Area Developer Operations Manual, the Operations Manual provided to Liberty Franchisees and Area Developers and all updates to these Manuals.

(h) **Contract Enforcement.** Upon termination or expiration of the franchise agreement between Liberty and any Franchisee (a "Former Franchisee"), Area Developer will assist Liberty in enforcing the post termination obligations set forth in its franchise agreement with that Former Franchisee ("Post Termination Obligations"), but Area Developer will have no duty to initiate court or other legal proceeding. These obligations include ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers of the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof and obtaining all copies of the Former Franchisee's Operations Manual, including any updates, and performing other reasonable duties as may be assigned by Liberty to assist in the transition or closure of an office.-

1.3 **Liberty Obligations.**

(a) **Area Developer Operations Manual.** Liberty will provide an Area Developer Operations Manual and various updates to the Manual to provide requirements of operation and offer guidance in performing Area Developer services.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]50974F552EB5

(b) **Initial and Advanced Training.** Liberty will provide reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in Sections 1.1 and 1.2. At present, Liberty provides a three to four day initial Area Developer training course, which Area Developer and any manager working for Area Developer must attend and successfully complete within six months of closing. Liberty also requires Area Developer to attend EOT within six months of closing. Liberty may also provide and require Area Developer's attendance at advanced or other trainings that may be offered at select locations or Liberty may offer such training on the web or electronically. Although Liberty does not charge attendance at training, Area Developer must pay the cost incurred with traveling to training, and other incidental expenses such as food, lodging, and transportation incurred in attending any training that Liberty provides.

(c) **Disclosure Document.** Liberty will provide or make available to Area Developer its latest Franchise Disclosure Document to use as part of Area Developer's Development Services.

1.4 **Joint Duties.** Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system. However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.5 **Personal Involvement.** Area Developer must render the Area Developer and support services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course and who is not later disapproved by Liberty.

1.6 **Reports.** Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify, reports detailing Area Developer's activities, sales and other information that may be requested.

1.7 **Reviews.** Liberty reserves the right to review Area Developer's business operations, in person, by mail, or electronically. Liberty may inspect Area Developer's operations and obtain paper and electronic business records related to the business and any other operations taking place through Area Developer's business. Area Developer must send Liberty any business records requested within five (5) business days of receiving Liberty's request for records and shall be responsible for any costs related to this transmission. Liberty has the right to require that Area Developer implement a plan to resolve any issues that Liberty discovers.

## 2. EXCLUSIVITY

2.1 **Exclusivity.** Except as otherwise permitted in this Agreement, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A ("Territory"). This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting or seeking new Franchisees in the Territory (including through the Internet or other means of general electronic communication)

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82 30974F552EB5

or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential Franchisees. As indicated on Schedule A, the Territory has been divided into sub-territories ("Franchise Territories") as defined by Liberty, which will be made available to prospective Franchisees.

2.2 **Non-Area Developer-Proposed Franchisees.** If Liberty is referred, contacted by or comes into communication with any prospective Franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective Franchisee a Franchise. Each such individual will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS**

3.1 **Initial Fee.** Initial Fee paid by Area Developer to Liberty in the Area Developer Agreement dated November 11, 2014 was $312,280.00. Area Developer will pay Liberty no additional development fees upon renewal of said agreement, all or any debt still owed under said Agreement will remain in effect upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee.** Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of the initial franchise fee and interest on promissory notes, if and only to the extent that such interest is on franchise fees or royalties (except on interest already due and owing before the date of this Agreement), paid to Liberty by a Franchisee during the Term, pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees" and "Royalties"), for the first time that a territory is purchased by a franchisee, except Franchise Fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percentage of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchisee pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties.** Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing Royalties received by Liberty, if any, from a Franchisee during the Term except Royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as if the store were still a Franchisee store.

3.4 **Demand for Payment.** Except as authorized herein, or except upon the prior written consent of Liberty, Area Developer will not demand any payment due from a Liberty Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects.** Liberty may provide to Area Developer leads of prospective Franchisees within the Territory. If Liberty provides any such leads to Area

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]50974F552EB5

Developer, Liberty will set fees based upon the cost and the difficulty of acquiring the leads and Area Developer agrees to pay these fees.

3.6 **Fee for Internal Sales.** If Liberty's own franchise development staff handles the selling process with a prospective Franchisee within the Territory covered by this Agreement for the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the Franchise Fee (provided that in the case of a prospective Franchisee under a special stipulation agreement whereby no Franchisee Fee is paid, this amount shall be deemed to be payable under section 3.5 and be $6,000 or such other amount as is established pursuant to Section 3.5). Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7 **Advertising and Selling Material.** Liberty may charge and Area Developer agrees to pay a reasonable charge for preparing, procuring, printing, and/or sending advertising materials and Disclosure Documents to Area Developer.

3.8 **Terminal Services.** Liberty may charge and Area Developer agrees to pay a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9 **Use of Franchise Broker.** Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees ("Franchise Broker"). To participate in this opportunity, Area Developer agrees to pay a proportionate share of the Broker's fee for any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory. Area Developer's share of Broker's fee shall be based on the proportion of initial Franchise Fee and Royalties that Area Developer receives under Sections 3.2 and 3.3. For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial Franchise Fee and Royalty under Sections 3.2 and 3.3 above, then Area Developer's share of the initial Franchise Fee would be reduced by 35% of $13,000 which amounts to $4,550.

3.10 **Payment.** In any month that Liberty receives Franchise Fees, Royalties, or interest on promissory notes (if such interest is on Franchise Fees or Royalties and are not already due and owing before the date of this agreement) from Franchisees in Area Developer's Territory, Liberty will pay Area Developer its share of Royalties, Franchise Fees and interest not later than the last day of the next calendar month. In no case will Liberty advance funds to Area Developer, or be liable for payment on accounts receivables or unpaid Franchise Fees, Royalties or interest. Area Developer will be entitled to its share of Royalties only with respect to Royalties actually collected, and Liberty will be entitled to take credits against previous Royalty payments to Area Developer to the extent that any Royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of Royalties, Franchise Fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the Royalties, Franchise Fees and interest was calculated.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]0974F552EB5

3.11 **Late Fees.** Payments for charges Liberty bills to Area Developer are due within 30 days of billing and will be subject to an 12% per annum late fee, or the maximum allowed by law if less.

3.12 **Fee Amounts.** From time to time, Liberty will set and publish the fee amounts under Sections 3.5 and 3.7-3.8.

3.13 **Expenses.** Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

3.14 **Referral Fees.** Liberty may offer referral fees to individuals that refer new Franchisees to Liberty. These referral fees do not apply to Area Developer for Candidates that become Franchisees in Area Developer's Territory.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE

4.1 **Minimum Requirements.** Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories with an active Liberty office in operation, as described and set forth in Schedule B (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. If Area Developer does not meet the Minimum Requirements, Liberty may, upon notification to Area Developer within ninety (90) days of the end of the year wherein the requirements were not met, delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirements for that year. Liberty's notice will designate which unsold Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion in making this determination. The specified Franchise Territories will be deemed deleted from the Territory as of the date that Liberty sends notice to Area Developer. Area Developer will thereafter not be entitled to any share of Franchise Fees and Royalties paid with respect to Franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories (Initial Fee x (Total Population of Deleted Territories/Total Population of Franchised Territories)). For this calculation, Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP

5.1 **Disclosure.** Area Developer will comply with all federal and state franchise disclosure laws applicable to the solicitation of Franchisees, including providing the Disclosure Document, prepared by Liberty, to all Candidates within the time frame provided by law. In most jurisdictions, this disclosure is currently required fourteen (14) calendar days before the signing

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]60974F552EB5

of a binding agreement between the Candidate and Liberty or making any payment by the Candidate to Liberty. Area Developer will ensure that any disclosure made in any form complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Disclosure Document, but will not be responsible for improper disclosure due to inadequacies or errors in Liberty's most current Disclosure Document.

5.2 **Financial Performance Representations.** Except as may be expressly stated in Item 19 of Liberty's most current unit Franchise Disclosure Document in effect in Area Developer's Territory, Area Developer will not make any representation, either orally, in writing, electronically, or otherwise, to any prospective Candidate concerning actual or potential earnings, sales, income or profits of any Franchise. However, Area Developer may disclose financial performance of an existing franchise for sale to a Candidate interested in such unit as may be permitted by law.

5.3 **Improper Representations.** Area Developer will make no representations to any Candidate that conflicts with Liberty's current franchise agreement or Disclosure Document or make any promises, guarantees, or warranties to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments.** Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity.** Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosures under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit, or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreements under Section 5.4.

## 6. NON-COMPETE AND NO SOLICITATION

6.1 **Non-Compete.**

(a) **In-Term.** Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service Franchisees pursuant to the terms of this Agreement, or (ii) aid or facilitate another person or entity (except

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82 0974F552EB5

Liberty Tax Service Franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

(b) **Post-Term.** Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit Franchisees or prospective Franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

6.2 **No Solicitation.**

(a) **In-Term.** Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity.

(b) **Post-Term.** Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration, termination or transfer of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service Franchisee, or any Liberty Tax Service Franchisee, or in the case of a Franchisee which is an entity, the owners of such entity, or any other entity beneficially owned by such owner or entity.

6.3 **Severability.** If any covenant or provision with Section 6.1 or 6.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this Agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 7. TERM AND TERMINATION

7.1 **Term.** This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term").

7.2 **Renewal.** Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]0974F552EB5

execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing Liberty's then current Area Developer Agreement. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above.

7.3 **Termination.**

(a) **Termination by Area Developer.** Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b) **Termination by Liberty Without Opportunity to Cure.** Liberty may terminate this Agreement effective upon the date of Liberty's sending written notice of termination to Area Developer, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i) Area Developer commits a violation of any law, ordinance, rule or regulation of a government or governmental agency or department and such conduct constitutes a material violation of any franchise law, antitrust law or securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation of applicable law, or the Area Developer is convicted of a felony; or

(ii) Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form, which is required in order to enter into this Area Developer Agreement, or the Sales Agent Disclosure Form Update, or fails to disclose a material fact that is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Forms are appended to the accompanying Disclosure Document as Exhibits D-2 and D-3.

(c) **Termination by Liberty After Opportunity to Cure.** Liberty may terminate this Agreement if Area Developer fails to perform any obligation under this Agreement or any other Agreement between the parties ("Breach") and such failure has continued for thirty (30) days after Liberty sent written notice of such Breach to Area Developer. In the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement fourteen (14) days after Liberty sends written notice of delinquency to Area Developer. If Area Developer fails to provide notification of Area Developer's desire to renew within the time and manner provided for in Section 7.2 of this

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82 0974F552EB5

Agreement, Liberty may terminate this Agreement fourteen (14) days after Liberty sends written notice to cure.

7.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

7.5 **Survival of Obligations**. The Parties' obligations that by their nature may require performance after the termination or expiration of this Agreement, including, but not necessarily limited to, Sections 3.11, 5.5, 6, 7.4, 7.5, and 8-11, will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement, sale of this Agreement or sale or other transfer of Area Developer's business operated under this Agreement, Liberty will have no further obligation to pay Area Developer any share of Franchise Fees, Royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 8. MISCELLANEOUS

8.1 **Relationship.** Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

8.2 **Intellectual Property Ownership.** Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's Marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but Area Developer must obtain Liberty's prior written consent to such use, which consent may be withheld in Liberty's sole discretion.

8.3 **Trade and Domain Names.** Area Developer will not use the word "JTH" "Dona Libertad" "Liberty," "Libtax", "Siempre, "SiempreTax" or the name, or any portion of the name of our affiliate companies, as any part of the name of a corporation, LLC or other entity (except as may be agreed between Area Developer and our affiliate company in a separate franchise agreement for that company). Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates.

8.4 **Assignment.** Liberty may assign this Agreement to an assignee who agrees to remain bound by its terms. Liberty does not permit a sub-license of the Agreement. Area Developer's interest under this Agreement may be transferred or assigned only if Area Developer complies with the provisions in this Section. No interest may be transferred unless Area

Developer is in full compliance with this Agreement and current in all monies owed to Liberty. Upon Liberty's request, any transfer of an ownership interest in this Agreement must be joined by all signatories to this Agreement, except in the case of death or legal disability.

(a) **Liberty's Right of First Refusal.** If Area Developer has received and desires to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, Liberty shall have the option (the "Right of First Refusal") to purchase such interest as hereinafter provided. Within fourteen (14) days of receipt of the offer, Area Developer shall offer the Right of First Refusal to Liberty by providing written notice to Liberty which shall include a copy of the signed offer to purchase that Area Developer received ("Notice"). Liberty shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement for the price and upon the terms set out in the Notice, except that Liberty may substitute cash for any non-cash form of payment proposed and Liberty shall have sixty (60) days after the exercise of our Right of First Refusal to close the said purchase. Liberty will notify Area Developer in writing within fifteen (15) days of its receipt of the Notice if it plans to exercise the Right of First Refusal. Upon the transmission of notice by Liberty, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and terms contained in the Notice previously provided by Area Developer.

(b) **Transfer to Controlled Entity.** A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal. A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest. At the time of the desired transfer of interest to a Controlled Entity, Area Developer must notify Liberty in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest. Each such person of the Controlled Entity shall sign the amendment and release forms and/or Area Developer Agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(c) **Transfer of Interest Within Area Developer.** A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, Area Developer must notify Liberty in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest prior to and following the proposed transfer. Each such person of the Controlled Entity shall sign the amendment and release forms and/or Area Developer Agreement as required by Liberty at the time of transfer. Currently, Liberty does not charge a transfer fee for this type of transaction.

(d) **Right of First Refusal Not Exercised By Liberty.** If Liberty does not exercise the Right of First Refusal, Area Developer may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided that Area Developer satisfies the conditions in Section 8.4(e) and completes the sale within ninety (90) days from the date that Liberty received Notice from Area Developer. If Area Developer does not conclude the proposed sale transaction within this 90-day period, the Liberty's Right of First Refusal shall continue in full force and effect.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82██0974F552EB5

(e)    **Additional Requirements and Obligations for Transfer.**

    i)  The proposed transferee(s) must complete Liberty's Area Developer application and pass Liberty's application screening in place at the time of transfer.

    ii)  The proposed transferee(s) must sign the Liberty amendment forms and/or the then current Area Developer Agreement and must personally assume and be bound by all of the terms, covenants and conditions therein.

    iii)  The proposed transferee(s) must attend and successfully complete Area Developer Training.

    iv)  Area Developer shall sign Liberty's transfer and release forms required by Liberty at the time of transfer and pay to Liberty a transfer fee of $10,000.00.

8.5    **Publicity.**  Except as required by law, Area Developer may not make any press release or other public announcement involving the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

8.6    **Operations Manual, Specifications, and Equipment.**    Liberty may issue specifications to guide Area Developer in the provision of Services hereunder.  Liberty has an Area Developer Operations Manual that Area Developer agrees to follow.  Liberty may issue computer and equipment requirements.  At present, Area Developer is required to have business cards, a telephone and telephone line, printer, fax service and computer connected via internet to Liberty's computer network.  Liberty also requires Area Developer to use an appropriate sales lead and contact information database or software to keep track of Area Developer's contacts with prospective Franchisees and may issue recommendations or requirements in this regard.  Liberty may change Liberty's Area Developer Operations Manual and modify Liberty's specifications in order to maintain competitiveness, adjust for legal, technological, and economic changes, and to improve in the marketplace.  Area Developer agrees to be bound by all future changes.

8.7    **Maintenance of Liberty Goodwill.**    Area Developer agrees not to disparage Liberty or its current and former employees or directors.  During the term of this Agreement, Area Developer also agrees not to do any act harmful, prejudicial, or injurious to Liberty.

8.8    **Governing Law.**

(a)    **Virginia Law.**  This Agreement is effective upon its acceptance in Virginia by our authorized officer.  Virginia law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.  However, the Virginia Retail Franchising Act does not apply to any claims by or on Area Developer's behalf if the Territory shown on Schedule A below is located outside of Virginia.

(b)    **Jurisdiction and Venue.**  In any suit brought by Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer consents to venue and personal jurisdiction in the state and federal court of the city or county of

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]50974F552EB5

Liberty's National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against Liberty, including Liberty's present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest Liberty's National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where Liberty's National Office is (presently the City of Virginia Beach, Virginia).

(c) **Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of Liberty, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, Area Developer and Liberty agree to waive our rights to a jury trial and instead have such action tried by a judge.

(d) **Class Action Waiver.** Area Developer agrees that any claim Area Developer may have against Liberty, including Liberty's past and present employees and agents, shall be brought individually and Area Developer shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against Liberty.

(e) **No Punitive Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of Liberty, Area Developer and Liberty agree to waive our rights, if any, to seek or recover punitive damages.

8.9 **Severability.** If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 6 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

8.10 **Notices.** Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO, at Liberty's National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454, Telephone: (757) 493-8855. Any such notice may also be given to Area Developer in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as Liberty may have on file for Area Developer. Liberty may also give notice to Area Developer by e-mail.

8.11 **Burdens and Benefits.** This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

8.12 **Entire Agreement.** This Agreement, including the Schedules, is the entire agreement between Area Developer and Liberty with respect to the subject matter contained herein. This Agreement supersedes all other prior oral and written agreements and

understandings between Area Developer and Liberty with respect to the subject matter herein. However, nothing in this or any related agreement is intended to disclaim the representations Liberty made in the franchise disclosure document Liberty furnished to Area Developer.

8.13 **Amendment and Waiver.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

8.14 **Financing.** If Liberty provides financing, Area Developer must submit annual financial information to Liberty including, but not limited to, income statements, balance sheets, and supporting documents. Area Developer agrees to submit the required information at the time and in the format specified by Liberty.

## 9. DEATH OR INCAPACITY

9.1 **Assistance and Reimbursement.** In the event of the death or incapacity of Area Developer, Liberty is entitled, but not required, to render assistance to maintain smooth and continued provision of Services. Liberty shall be entitled to reimbursement from Area Developer or Area Developer's estate for reasonable expenditures incurred.

9.2 **Required Time Frames.** Pursuant to this Section, death or incapacity shall not be grounds for termination of this Agreement unless either:

(a) Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

(b) Such assignment is not completed within one year after death or incapacity.

9.3 **Termination for Death or Incapacity.** Liberty shall have the right to terminate this Agreement if one of the conditions in Section 9.2 is not satisfied within the time frame provided. Nothing in this Section shall be construed to limit the provisions of Section 7 regarding termination. Further, the terms and conditions of Section 8.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 10. CONFIDENTIAL INFORMATION

10.1 **Disclosure.** Liberty possesses confidential information including, but not limited to, methods of operation, service and other methods, techniques, formats, specifications, procedures, information, system, customer information, marketing information, trade secrets, intellectual property, knowledge of and experience in operating and franchising offices, operating as an Area Developer ("Confidential Information"). Liberty may disclose some or all of the Confidential Information (oral, written, electronic, or otherwise) to Area Developer and Area Developer's representatives. During the term of this Agreement and following the expiration or termination of this Agreement, Area Developer covenants not to directly or indirectly

communicate, divulge, or use Confidential Information for its benefit or the benefit of any other person or legal entity except as specifically provided by the terms of this Agreement or permitted by Liberty in writing. Upon the expiration, termination or nonrenewal of this Agreement, Area Developer agrees that it will never use or disclose, and will not permit any of its representatives to use or disclose, our Confidential Information in any manner whatsoever, including, without limitation, in the design, development or operation of any business which provides services substantially similar to those stated herein. This provision shall not apply to information that: (a) at the time of disclosure is readily available to the public; (b) after disclosure becomes readily available to the trade or public other than through breach of this Agreement; (c) is subsequently lawfully and in good faith obtained by Area Developer from an independent third party without breach of this Agreement; (d) was in Area Developer's possession prior to the date of Liberty's disclosure to Area Developer; or (e) is disclosed to others in accordance with the terms of a prior written authorization between Area Developer and Liberty. The protections granted in this Section shall be in addition to all other protections for Confidential Information provided by law or equity.

10.2 **Interest.** Area Developer will acquire no interest in Liberty's Confidential Information but is provided the right to use the Confidential Information disclosed for the purposes of developing and operating pursuant to this Agreement. Area Developer acknowledges that it would be an unfair method of competition to use or duplicate any Confidential Information other than in connection with the operation under this Agreement. No part of the Liberty franchise system nor any document or exhibit forming any part thereof shall be distributed, utilized or reproduced in any form or by any means, without our prior written consent.

10.3 **Use In Term.** Area Developer agrees that it will (a) refrain from using the Confidential Information for any purpose other than the operation pursuant to this Agreement; (b) maintain absolute confidentiality of Confidential Information during and after the term of this Agreement; (c) not make unauthorized copies of any portion of Confidential Information; and (d) adopt and implement all reasonable procedures, including but not limited to, those required by Liberty, to prevent unauthorized use of or disclosure of Confidential Information, including but not limited to, restrictions on disclosure to employees of Area Developer and the use of nondisclosure and non-competition clauses in employment agreements with employees that have access to Confidential Information.

10.4 **Use Following Term.** Upon termination of this Agreement, Area Developer will return to Liberty all Confidential Information embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, Area Developer may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 11. COUNTERPARTS AND ELECTRONIC SIGNATURE

This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]0974F552EB5

manually executed counterpart of this Agreement. The words "execution," "signed," "signature," and words of similar import in the Agreement shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

## 12. HEADINGS

The headings of the various sections of this Agreement have been inserted for reference only and shall not be deemed to be a part of this Agreement.

## 13. AGREEMENT

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms.

In addition, the Area Developer signatures of all individuals to this Agreement in, any capacity, also constitute their personal joint and several agreement to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligations stated in **Section 8.8 above concerning governing law, including, but not limited to, the application of Virginia law, the jurisdiction and venue clause, the jury waiver, the class action waiver, and the limitation to compensatory damages only,** the obligation to make payments specified herein, pay any other promissory notes and other debts due to Liberty, and pay for products later ordered from Liberty. All signators on the following page waive any right to presentment, demand or notice of non-performance and the right to require Liberty to proceed against the other signators.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82█████0974F552EB5

Area Developer: M&M Business Group, L.P.          Entity Number:   2532

SIGNATORS:

By: _____          By: _____
        (Signature)                          (Signature)

_____       _____
        Mufeed Haddad                       Michael Budka
        (Printed Name)                      (Printed Name)

Title: _____Partner_____          Title: _____Partner_____

Address: ____3793 quarter horse dr___  Address: ____19906 TROTTER LN___

_____yorba linda, ca, 92886_____  _____YORBA LINDA CA 92886_____

Ownership Percentage: 50 %            Ownership Percentage: 50 %


By: _____          By: _____
        (Signature)                          (Signature)

_____       _____
        (Printed Name)                      (Printed Name)

Title: _____        Title: _____

Address: _____        Address: _____

_____       _____

Ownership Percentage: ____%           Ownership Percentage: ____%


                                      **JTH TAX, INC. d/b/a**
                                      **LIBERTY TAX SERVICE**

                                      By: _____

                                      Printed Name: __John Hewitt__

                                      Title: _____CEO_____

                                      Effective Date: __12/3/14__

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82██0974F552EB5

Schedule A

**TERRITORY**

The counties of:

Part of Los Angeles County, CA:
Azusa - CA088
Baldwin Park - CA659
Charter Oak
City of Industry - CA100, CA546
Covina - CA660, CA009
Hacienda Heights - CA661
Irwindale
La Habra Heights
La Puente - CA072
Rowland Heights
South San Jose Hills
Valinda
West Covina - CA560, CA031

Balance of Riverside County: Excluding Blythe, CA - CA377, Including: CA458, CA455, CA457, CA106, CA459, CA118, CA463, CA464, CA131, CA456, CA460, CA461, CA125, CA466

which shall be divided by JTH Tax, Inc. into 29 Franchise Territories.

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]0974F552EB5

Schedule B

## MINIMUM REQUIREMENTS

At closing there are 20 JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty") franchise territories with an active Liberty office currently within Area Developer's Territory, and operating pursuant to franchise agreements by and between Liberty and each Franchisee that is a party to a franchise agreement ("existing active territories"). Area Developer agrees to maintain the number of existing active territories and agrees to identify and secure additional candidates/Franchisees such that the following cumulative minimum development obligations are met during the term of the Area Developer Agreement:

| Development Period Ending | Cumulative Number of Liberty Tax Service Effective Franchise Agreements in Operation with an Active Liberty Office |
|---|---|
| April 30, 2015 | 20 |
| April 30, 2016 | 21 |
| April 30, 2017 | 22 |
| April 30, 2018 | 23 |
| April 30, 2019 | 24 |
| April 30, 2020 | 25 |

DocuSign Envelope ID: 7D02DFBB-659E-43D9-82[illegible]0974F552EB5

# CALIFORNIA RENEWAL AND SPECIFIC RELEASE

Area Developer: M&M Business Group, L.P. Entity No.: 2532

1. Release- Area Developer and all of Area Developer's guarantors, members, employees, agents, successors, assigns and affiliates fully and finally release and forever discharge JTH Tax, Inc. d/b/a Liberty Tax Service, its past and present agents, employees, officers, directors, area developers, successors, assigns and affiliates (collectively "Liberty Released Parties") from any and all claims, actions, causes of action, contractual rights, demands, damages, costs, loss of services, expenses and compensation which Area Developer could assert against the Liberty Released Parties or any of them up through and including the date of this Renewal and Release.

2. Unknown or Unsuspected Consequences- The parties understand and acknowledge that Section 1 of this Renewal and Specific Release applies to and includes all unknown or unsuspected consequences or results arising from or relating to the transactions, occurrences, or agreements referred to in those Sections. You represent and warrant that you have read the contents of California Civil Code §1542, which provides as follows:

   "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

   YOU EXPRESSLY WAIVE ANY AND ALL RIGHTS AND BENEFITS UNDER CALIFORNIA CIVIL CODE §1542.

3. Nature of Release- Each party acknowledges that it has read this Renewal and Specific Release, that it fully understands the contents of this Renewal and Specific Release, and that THIS IS A SPECIFIC RELEASE GIVING UP ALL RIGHTS WITH RESPECT TO THE TRANSACTIONS OR OCCURRENCES THAT ARE BEING RELEASED UNDER THIS AGREEMENT.

4. The above Release shall not apply to any liabilities arising under the California Franchise Investment Law or the California Franchise Relations Act.

5. This Renewal and Specific Release may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Renewal and Specific Release by facsimile or in electronic (e.g. "pdf") format shall be effective as delivery of a manually executed counterpart of this Renewal and Specific Release. The words "execution," "signed," "signature," and words of similar import in the Renewal and Specific Release shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.) or any other similar state or federal laws.

**SIGNATURES ON FOLLOWING PAGE**

DocuSign Envelope ID: 7D02DFBB-659E-43D9-8[illegible]50974F552EB5

**Area Developer: M&M Business Group, L.P.**

By: 5F29904A9B95474...

Printed Name: Mufeed Haddad

Title: Partner

By: DocuSigned by: 90550E42EA174DE...

Printed Name: Michael Budka

Title: Partner

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By:

Printed Name: John Hewitt

Title: CEO

Date: 12/3/14

7-14 Area Developer Disclosure Document 2

# Exhibit A-15

# AREA DEVELOPER AGREEMENT

WHEREAS, JTH Tax, Inc. d/b/a Liberty Tax Service ("Liberty", "we" or "us) licenses a system for the operation of tax return preparation offices (the "Franchise"); and

WHEREAS, Area Developer (or "you" or "your") desires to find, solicit and recruit candidates willing to become Franchise owners ("Franchisees") and desires to provide continuing services (the "Services") on Liberty's behalf to Franchisees; and

WHEREAS, Liberty wishes to receive the Services and compensate Area Developer therefor.

NOW, THEREFORE, for value received, Liberty and Area Developer hereby agree as follows:

## 1. SERVICES.

### 1.1 Area Developer Services.

(a) Area Developer will use best efforts to find, solicit and recruit candidates interested in operating a Franchise within the Territory (as described in Section 2). Upon Area Developer's determination that in Area Developer's judgment a candidate may have the characteristics of a potential franchisee (a "Candidate"), Area Developer will identify such Candidate in writing to Liberty for Liberty's consideration.

(b) All Candidates must successfully pass Liberty's Effective Operations and Hands On Training to be awarded a Franchise, but Area Developer retains the final authority to approve or disapprove a Candidate who has successfully completed such training. Area Developer will be deemed a party to any franchise agreement that a Candidate enters into with Liberty in the Area Developer's Territory, unless and until Area Developer is no longer Area Developer over the Territory in the franchise agreement at issue.

### 1.2 Support Services.

(a) As a service to Liberty, Area Developer will provide Franchisees with on-going local support, day-to-day operational help and marketing advice.

(b) At Liberty's option and upon request to Area Developer, Area Developer will also be obligated to provide Franchisee with site selection assistance, limited marketing support, and operating assistance. The assistance and support which Area Developer provides will be provided in accordance with the Area Developer Manual, the Operations Manual provided to Liberty franchisees and Area Developers, and any applicable law. Area Developer does not have any authority to approve or disapprove Franchisee marketing or advertising.

(c)     Upon termination or expiration of the franchise agreement with Liberty of any Franchisee (each, a "Former Franchisee"), Area Developer will assist Liberty in enforcing the "Post Termination Obligations" set forth in its franchise agreement with that Former Franchisee, but Area Developer will have no duty to initiate a court or other legal proceeding.   These obligations, which are presently described in Section 9 of Liberty's franchise agreement in effect as of the date of this Agreement, and include, ensuring that all Liberty signs are removed from the Former Franchisee's offices or other premises, receiving or acquiring all telephone numbers, listings and advertisements used in relation to the Former Franchisee's business, receiving or acquiring all copies of lists and other sources of information containing the names of customers who patronized the Former Franchisee, obtaining all Former Franchisee's customer tax returns, files, records and all copies thereof, and obtaining all copies of the Former Franchisee's operations manual, including any updates.

(d)     Liberty will provide an Area Developer Manual and reasonable training to Area Developer, at Area Developer's expense, in order to ensure that Area Developer has the ability to provide the services to Liberty described in this Section 1.2.   At present, Liberty provides a five day initial Area Developer training course which you and any manager working for you must attend and successfully complete.   Liberty may also provide and require your attendance at advanced or other training which may be offered from time to time at select locations.   Although we do not charge for you to attend training, you must pay the cost incurred with traveling to training, and your other incidental expenses such as food, lodging, and transportation, incurred in attending any training that we provide.

(e)     Liberty and Area Developer will be responsible for the enforcement of all agreements ("Franchise Documents") executed in the awarding of a franchise to a Candidate and the monitoring of individual Franchisee performance and adherence to Liberty's Franchise system.   However, Area Developer will not assert any legal claim by way of a lawsuit or otherwise, against a Franchisee without the written permission of Liberty.

1.3     **Personal Involvement**.   Area Developer must render the Area Developer and Support Services hereunder personally, unless Area Developer submits to Liberty a general manager who attends and successfully completes our initial Area Developer training course, and who is not later disapproved by us.

1.4     **Reports**.   Area Developer agrees to file with Liberty, at such times and in such forms as Liberty may specify from time to time, reports detailing Area Developer's activities, sales, and such other information as Liberty may specify.

## 2.     EXCLUSIVITY

2.1     **Exclusivity**.   Except as otherwise permitted in Section 4, Liberty will not appoint or authorize any other person to provide commissioned or paid Area Developer services to Liberty in the territory defined in Schedule A (the "Territory").   This grant of the Territory in no way prevents or restricts Liberty from itself recruiting, soliciting, or seeking new franchisees in the Territory (including through the Internet or other means of general electronic communication) or from using unpaid referrals from other sources or as detailed in Section 2.2 in the obtaining of potential franchisees.   As indicated on Schedule A, the Territory has been divided into sub-

territories ("Franchise Territories"), as defined by Liberty, that will be made available to prospective franchisees.

2.2 **Non-Area Developer-Proposed Franchisees**. If Liberty is referred, contacted by or comes into communication with any prospective franchisee in the Territory not previously identified by Area Developer, Liberty may evaluate, recruit and award such prospective franchisee a Franchise, subject to final approval by Area Developer. Each such franchisee will be deemed a Franchisee for the purposes of this Agreement.

**3. FEES AND COMMISSIONS.**

3.1 **Initial Fee.** Area Developer will pay Liberty $135,575 upon execution of this Agreement, which shall be deemed fully earned by Liberty upon payment.

3.2 **Initial Franchise Fee**. Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of any initial franchise fees and interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), paid to Liberty by a Franchisee during the Term, except franchise fees already due and owing before the Effective Date of this Agreement. Liberty will also pay to Area Developer the same percent of any change fees for modifying the opening schedule of a multi-territory stipulation which a Franchise pays to Liberty during the Term, except change fees already due and owing before the Effective Date of this Agreement.

3.3 **Franchise Royalties**. Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term except royalties already due and owing before the Effective Date of this Agreement.

Liberty will also pay to Area Developer this same royalty percentage on company owned stores in Area Developer's Territory if and only if a franchisee store becomes company owned after Area Developer enters into this Agreement with Liberty. The royalty percentage payable to Area Developer shall be calculated as if the store were still a franchisee store. "Company-owned" refers to a store owned and operated by Liberty or an entity under the control of Liberty or any of its employees.

3.4 **Demand for Payment**. Except as authorized herein, or except upon the prior consent of Liberty, Area Developer will not demand any payment due from a Liberty Tax Service Franchisee or other person or entity to Liberty.

3.5 **Fee for Franchisee Prospects**. From time to time, Liberty may provide to Area Developer leads of prospective franchisees possibly interested in buying a Liberty franchise within the Territory. If Liberty provides any such leads to Area Developer, Liberty will set fees from time to time based upon the cost and the difficulty of acquiring the leads. If so provided, Area Developer agrees to purchase up to $4,500 of leads per year, and may purchase more if offered, but is not obligated to.

3.6 **Fee for Internal Sales**. If Liberty's own Franchise Development staff handles the selling process with a prospective franchisee within the Territory covered by this Agreement for

the sale of an undeveloped territory (meaning one that does not contain an existing Liberty Tax Service office), Area Developer shall pay Liberty 15% of the franchise fee. Liberty may deduct this from amounts Liberty otherwise owes to Area Developer.

3.7    **Advertising and Selling Material**.  Liberty may charge to Area Developer a reasonable charge for preparing or procuring, printing, and sending advertising materials and Uniform Franchise Offering Circulars which Liberty provides for Area Developer's use.

3.8    **Terminal Services**.  Liberty may charge to Area Developer a reasonable charge for providing computer access to information within the Liberty system and for computer access to a sales lead and contact information management system.

3.9    **Use of Franchise Broker**.  From time to time, Liberty may use the services of franchise brokers to identify Candidates who are potentially interested in becoming Franchisees. To participate in this opportunity, Area Developer must agree that as to any broker-generated Candidate who becomes a Franchisee in Area Developer's Territory, to pay a proportionate share of the Broker's fee, based on the proportion of initial franchise fee and royalties that Area Developer receives under paragraphs 3.2 and 3.3 above.  For example, if a Broker charges Liberty $13,000 for a Candidate who becomes a Franchisee, and Area Developer receives 35% of the initial franchise fee and royalty under paragraphs 3.2 and 3.3 above, then Area Developer's share of the initial franchise fee would be reduced by 35% of $13,000 or by $4,550.

3.10    **Payment**.  With respect to any month in which Liberty receives franchise fees, royalties, or interest on promissory notes, if such interest is on Franchise Fees or Royalties (except on interest already due and owing before the date of this agreement), from Franchisees, Liberty will pay Area Developer its share of royalties, franchise fees and interest not later than the last day of the next calendar month.  In no case will Liberty advance funds to Area Developer, or be liable for, payment on accounts receivables or unpaid franchise fees, royalties or interest.  Area Developer will be entitled to its share of royalties only with respect to royalties actually collected, and Liberty will be entitled to take credits against previous royalty payments to Area Developer to the extent that any royalty payments from a Franchisee are subject to a subsequent refund, offset or other credit. Each payment of Area Developer's share of royalties, franchise fees, and interest will be accompanied by information in sufficient detail to allow Area Developer to determine the basis on which Area Developer's share of the royalties, franchise fees and interest was calculated.

3.11    **Late Fees**.  Payment by you to us for charges we bill to you is due within 30 days of billing and will be subject to an 18% per annum late fee, or the maximum allowed by law, if less.

3.12    **Fee Amounts**.  From time to time, Liberty will set and publish the fee amounts under paragraphs 3.5 and 3.7-3.8.

3.13    **Expenses**.  Except as provided herein, each party will bear the expenses incurred by it in the performance of this Agreement.

## 4. MINIMUM AREA DEVELOPER PERFORMANCE.

4.1 **Minimum Requirements**. Area Developer will provide Liberty with a minimum number of Candidates each year that open Franchise Territories. (the "Minimum Requirements"). For this purpose, a year will include each fiscal year of Liberty (including any partial year) ending on April 30. The Minimum Requirement is set forth in Schedule B. If Area Developer does not meet the Minimum Requirement, then within ninety (90) days after the end of the year in which the Minimum Requirement was not met, Liberty may notify Area Developer that it desires to delete from the Territory up to the number of Franchise Territories by which Area Developer failed to meet the Minimum Requirement for that year. Liberty's notice will designate which of the Franchise Territories it desires to delete from the Territory, and Liberty shall have the sole discretion to determine which then unassigned (meaning unsold) Franchise Territories it chooses to delete. Those Franchise Territories will be deemed deleted from the Territory effective upon Liberty's notice, and Area Developer will thereafter not be entitled to any share of franchise fees and royalties paid with respect to franchisees appointed within those Franchise Territories ("Liberty Franchisees") and Liberty Franchisees will not be deemed Franchisees for the purposes of this Agreement. This deletion is Liberty's sole remedy for failure to meet Minimum Requirements.

Liberty's notice will be accompanied by a credit to amounts owed by Area Developer to Liberty or a payment to Area Developer, as Liberty selects. Such credit or payment shall equal the amount of the Initial Fee that is calculated by multiplication of the Initial Fee with a fraction the numerator of which is the total population of the deleted Territories and the denominator of which is the total population of the Franchise Territories indicated on Schedule A. For this calculation Liberty may choose to use either the population figures that existed at the time of entering into this Agreement or more current data available to Liberty.

## 5. FRANCHISOR — FRANCHISEE RELATIONSHIP.

5.1 **Disclosure**. In order to enter into this Area Developer Agreement, Area Developer must provide to Liberty a completed Biographical Information Sheet. From this sheet, Liberty will prepare for Area Developer an Offering Circular which discloses Area Developers' status as such, the support Area Developer will provide, and certain of Area Developer's business experience, litigation and criminal history, if any. Area Developer may not offer or solicit franchises until Liberty issues this completed Offering Circular. If Area Developer will offer or solicit franchises in a state or to residents of a state where the Offering Circular must be sent to state regulators for review and approval, Area Developer may not offer or solicit franchises until the state reviews and approves the Offering Circular.

Area Developer will comply with all other federal and state franchise disclosure laws applicable to the solicitation of franchisees, including providing the Offering Circular, which Liberty prepares and provides to Area Developer, to all Candidates at the time required by law, presently the earlier of (i) the first in-person meeting to discuss the Liberty franchise, (ii) ten business days before signing of a binding agreement between the Candidate and Liberty; or (iii) ten business days before any payment by the Candidate to Liberty. Should Area Developer make any electronic or other disclosure to Candidates, Area Developer will ensure that such disclosure complies with the applicable franchise disclosure laws. Area Developer will be responsible for providing Liberty's most current Offering Circular approved for use by the Area Developer, but

will not be responsible for improper disclosure due to errors in or the inadequacy of Liberty's most current Offering Circular.

5.2 **Earnings Claims**. Except as may be expressly provided in Liberty's most current Offering Circular in effect in Area Developer's Territory, Area Developer will not make any claims or disclosures, either orally, in writing, electronically, or through any other medium, to any prospective Candidate concerning historical earnings or potential sales, costs, income or profits of any Franchise.

5.3 **Improper Representations**. Area Developer will make no representations to any Candidate that conflict with Liberty's current Franchise Agreement or Offering Circular or make any promises, guarantees or warrantees to any party not authorized in writing by Liberty.

5.4 **No Unauthorized Commitments**. Area Developer acknowledges that it has no authority to bind Liberty with respect to any matter, and agrees that it will not enter into any agreements or understandings with any Candidates other than as authorized in writing by Liberty.

5.5 **Indemnity**. Area Developer will indemnify, defend and hold Liberty and its affiliates, officers, directors, employees, agents, contractors, advisors and representatives (the "Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Indemnified Parties resulting from, relating to or arising out of a claim that Area Developer failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

Liberty will indemnify, defend and hold Area Developer and its affiliates, officers, directors, members, partners, employees, agents, contractors, advisors and representatives (the "Area Developer Indemnified Parties") harmless from and against any claim, suit or proceeding brought against any of the Area Developer Indemnified Parties resulting from, relating to or arising out of a claim that Liberty failed to make proper disclosure under Section 5.1, made any improper earnings claim as detailed in Section 5.2, made any improper representations under Section 5.3, or entered into any unauthorized agreement under Section 5.4.

## 6. CONFIDENTIALITY.

6.1 **Definition.** As used herein, "Confidential Information" of a party means information or data (oral, written, electronic or otherwise), including, without limitation, a trade secret, of or about that party that is valuable and not generally known or readily available to third parties obtained by one party from the other party during the Term of this Agreement. The "Confidential Information" of Liberty shall be deemed to include all intellectual property associated with Liberty's Franchise system, as described in Section 9.2, all other materials relating to Liberty's Franchise system and that are not a matter of public record, and all information generated by the parties in the course of the performance of this Agreement, including the information provided by Liberty to Area Developer under Section 3.5.

6.2 **Confidentiality.** Neither party will directly or indirectly disclose, publish, disseminate or use the disclosing party's Confidential Information except as authorized herein. Each party may use the other's Confidential Information to perform its obligations under this



Agreement, but in doing so will only allow dissemination of the disclosing party's Confidential Information on a need-to-know basis and only to those individuals that have been informed of the proprietary and confidential nature of such Confidential Information. If disclosure of any Confidential Information of a disclosing party is required by law, then the receiving party may make such disclosure after providing the disclosing party with reasonable notice so that the disclosing party, at its expense, may seek a protective order or other relief.

  6.3 **Return of Information.** Upon termination of this Agreement, each receiving party will return to the disclosing party all Confidential Information of the disclosing party embodied in tangible form, and will destroy, unless otherwise agreed, all other sources which contain or reflect any such Confidential Information. Notwithstanding the foregoing, any receiving party may retain Confidential Information solely for insurance, warranty, claims and archival purposes, but the information retained will remain subject at all times to the confidentiality restrictions of this Agreement.

## 7. NON-COMPETE AND NO SOLICITATION.

  7.1 **Non-Compete**.

  (a) **In-Term**. Area Developer will not, during the Term of this Agreement, in the United States or Canada, directly or indirectly (i) recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans, except as to seeking Liberty Tax Service franchisees under this Agreement, or (ii) aid or facilitate another person or entity (except Liberty Tax Service franchisees) in the provision of paid income tax preparation offered to the public through retail outlets.

  (b) **Post-Term**. Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Territory defined in Schedule A regardless of any reduction due to application of Section 4.1 (the "Original Territory"), or within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly recruit, search for, or solicit franchisees or prospective franchisees to engage in income tax return preparation, electronic filing of tax returns, or the provision of refund anticipation loans.

  7.2 **No Solicitation**.

  (a) **In-Term**. Except with the permission of Liberty, Area Developer will not, during the term of this Agreement, in the United States or in Canada, directly or indirectly solicit for employment in a management or supervisory capacity, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

  (b) **Post-Term**. Except with the permission of Liberty, Area Developer will not, for a period of two years after expiration or termination of this Agreement, in the Original Territory and within twenty-five (25) miles of the boundaries of the Original Territory, directly or indirectly solicit to own, operate, manage or supervise an income tax preparation office or income tax

preparation franchise, any management or supervisory personnel employed by Liberty, any management or supervisory personnel employed by a Liberty Tax Service franchisee, or any Liberty Tax Service franchisee, or in the case of a franchisee which is an entity, the owners of such entity.

7.3    **Severability**. If any covenant or provision with Section 7.1 or 7.2 is determined to be void or unenforceable, in whole or in part, it shall be deemed severed and removed from this Agreement and shall not affect or impair the validity of any other covenant or provision. Further, these obligations are considered independent of any other provision in this Agreement, and the existence of any claim or cause of action by either party to this Agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

## 8.    TERM AND TERMINATION.

8.1    **Term**. This Agreement will commence upon its Effective Date and will last for a term of ten (10) years (the "Term").

8.2    **Renewal**. Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services to Liberty similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least 180 days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by signing our then current Area Developer Agreement. The fees and percentages described in paragraphs 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in paragraph 4.1 above.

8.3    **Termination**.

(a)    Area Developer may terminate this Agreement at any time through written notice of termination to Liberty. Area Developer's termination of this Agreement will be effective upon Liberty's receipt of Area Developer's termination notice.

(b)    Liberty may terminate this Agreement effective upon Liberty's sending to Area Developer's written notice of termination, and without the opportunity for Area Developer to cure, for any of the following reasons:

(i)    Area Developer commits a material violation of any law, ordinance, rule or regulation of a government or governmental agency or department which such conduct constitutes a material violation of any franchise law, antitrust law, securities law, fraud or a similar wrong, unfair or deceptive practices, or a comparable violation, or the Area Developer is convicted of a felony; or

(ii)    Area Developer violates any of Sections 5.1, 5.2, 5.3 or 5.4 of this Agreement; or

(iii) Area Developer makes a misstatement of material fact on a Biographical Information Form or the Annual Update to the Biographical Information Form, or fails to disclose a material fact which is requested in any such form, or refuses to fill out or completely fill out such form or tender supporting documentation upon reasonable request. The present versions of these Biographical Information Forms are appended to the accompanying Offering Circular as Exhibits D-2 and D-3.

(iv) Area Developer fails to perform any material obligation under this Agreement ("Breach"), and such failure has continued for 30 days after Liberty sent written notice of such Breach to Area Developer. However, in the case of past due monies owed by Area Developer to Liberty under this Agreement or for any other debt to Liberty, Liberty may terminate this Agreement 14 days after Liberty sent written notice of such delinquency to Area Developer.

8.4 **No Refund of Initial Fee**. Liberty will have no obligation to return or refund any fee to Area Developer upon termination of this Agreement.

8.5 **Survival of Obligations**. The Parties' obligations under Sections 3.5-3.9, 5.5, 6, 7, 8.4, 8.5, 9, and 10 will survive the termination or expiration of this Agreement. Upon the termination or expiration of this Agreement Liberty will have no further obligation to pay Area Developer any share of franchise fees, royalties or interest received by Liberty subsequent to the date of termination or expiration.

## 9. MISCELLANEOUS.

9.1 **Relationship**. Notwithstanding anything herein to the contrary, this Agreement does not create a partnership, company, joint venture, or any other entity or similar legal relationship between the parties, and no party has a fiduciary duty or other special duty or relationship with respect to the other party. The parties acknowledge that Area Developer's relationship with Liberty hereunder is that of an independent contractor.

9.2 **Intellectual Property Ownership**. Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system. To the extent Area Developer has or later obtains any intellectual property, other property rights or interests in the Franchise system by operation of law or otherwise, Area Developer hereby disclaims such rights or interests and will promptly assign and transfer such entire interest exclusively to Liberty. Area Developer will not undertake to obtain, in lieu of Liberty, copyright, trademark, service mark, trade secret, patent rights or other intellectual property right with respect to the Franchise system. Area Developer will have the right to use Liberty's trademarks and service marks during the Term for the sole purpose of advertising the availability of Franchises within the Territory, but to the extent that Area Developer desires to do so, Area Developer will obtain Liberty's prior consent to such use, which consent may be withheld in Liberty's sole discretion.

9.3 **Trade and Domain Names**. **Area Developer will not use the name "Liberty", "libtax", or "JTH" as any part of the name of a corporation, LLC or other entity**. Further, unless Area Developer first receives Liberty's express written permission, Area Developer will not obtain or use any domain name (Internet address) in connection with the provision of services under this Agreement or to facilitate any efforts to find, solicit and recruit Candidates. Liberty will not unreasonably withhold written permission for the Area Developer's obtaining or use of

domain names in conjunction with this Section 9.3 but Liberty reserves the right to periodically review the use of permitted domain names and, in its sole discretion, revoke such permission. Upon revocation of permission from Liberty, Area Developer will cease its use of that domain name.

9.4 **Assignment**.  We may assign this Agreement to an assignee who agrees to remain bound by its terms.  We do not permit a sub-license of the Agreement.  Your interest under this Agreement or your ownership in the Area Developer may be transferred or assigned only if you comply with the following provisions.  No interest may be transferred unless and until you are in full compliance with this Agreement and current in all monies owed to us.  If this Agreement is held by joint tenants or tenants in common, any transfer of an ownership interest in this Agreement must be joined in by all joint tenants or tenants in common, except any person who is deceased or under a legal disability.

a.  If you have received and desire to accept a signed, bona fide offer to purchase or otherwise transfer the Area Developer Agreement or any interest in it, you shall grant Liberty the option (the "Right of First Refusal") to purchase such interest as hereinafter provided.

b.  A transfer to a "Controlled Entity" shall not trigger the Right of First Refusal.  A "Controlled Entity" is an entity in which Area Developer is the beneficial owner of 100% of each class of voting ownership interest.  At the time of the desired transfer of interest to a Controlled Entity, you must notify us in writing of the name of the Controlled Entity and the name and address of each officer, director, shareholder, member, partner, or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us.  We do not charge a transfer fee for this change.

c.  A transfer of interest within an Area Developer which is an entity shall not trigger the Right of First Refusal provided that only the percentage ownership, rather than the identity of the owners, is changing. At the time of the desired transfer of interest within an entity, you must notify us in writing of the name and address of each officer, director, shareholder, member, partner or similar person and their respective ownership interest.  Each such person of the Controlled Entity shall sign the then current amendment and release forms and/or Area Developer Agreement as required by us.  We do not charge a transfer fee for this change.

d.  You shall offer the Right of First Refusal to Liberty by notice in writing, including a copy of the signed offer to purchase which you received ("Notice").  We shall have the right to purchase the Area Developer Agreement or interest in the Area Developer Agreement at and for the price and upon the terms set out in the Notice, except that we may substitute cash for any non-cash form of payment proposed and we shall have 60 days after the exercise of our Right of First Refusal to close the said purchase.  Should we wish to exercise our Right of First Refusal, we will notify you in writing within 15 days from its receipt of the Notice.  Upon the giving of such notice by us, there shall immediately arise between Liberty and Area Developer, or its owners, a binding contract of purchase and sale at the price and upon the terms contained in the Notice.

e.  If we do not exercise our Rights of First Refusal, you may transfer the Area Developer Agreement or ownership interest therein according to the terms set forth in the Notice, provided

that you satisfy the conditions in sub-parts (f) through (i) below and complete the sale within 90 days from the day on which Liberty received the Notice. If you do not conclude the proposed sale transaction within the 90-day period, the Right of First Refusal granted to Liberty hereunder shall continue in full force and effect.

f. The proposed transferee(s) must complete our then current Liberty Area Developer application and pass our application screening using our then current qualifications.

g. The proposed transferee(s) must sign the then current Liberty amendment forms and/or Area Developer Agreement, as required by us, and must personally assume and be bound by all of the terms, covenants and conditions therein.

h. The proposed transferee(s) must attend and successfully complete Area Developer Training.

i. You shall sign our then current transfer and release forms and Area Developer pays to Liberty a transfer fee of $10,000.00.

9.5 **Publicity**. Except as required by law, Area Developer may not make any press release or other public announcement respecting the subject matter of this Agreement without the written agreement of Liberty as to the form of such press release or public announcement.

9.6 **Operations Manual, Specifications, and Equipment**. From time to time we may issue specifications to guide you in the provision of Services hereunder. We have an Are Developer Operations Manual which you agree to follow. We may issue computer and equipment requirements. At present, you are required to have business cards, a telephone and telephone line, and a computer, printer and fax machine and be connected via internet to our computer network. We also require you to use an appropriate sales lead and contact information database or software to keep track of your contacts with prospective franchisees and may from time to time issue recommendations or requirements in this regard. We may change our Operations Manual from time to time and modify our specifications in order to maintain competitiveness, adjust for legal, technological and economic changes, and to improve in the marketplace. You agree to be bound by such future changes.

9.7 **Maintenance of Liberty Goodwill**. You agree not to disparage Liberty or its current and former employees or directors. During the term of this Agreement, you also agree not to do any act harmful, prejudicial or injurious to Liberty.

9.8 **Governing Law**.

**a. Virginia Law.** This Agreement is effective upon its acceptance in Virginia by our authorized officer. Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto. However, the Virginia Retail Franchising Act does not apply to any claims by or on your behalf if the Territory shown on Schedule A below is located outside of Virginia.

**b. Jurisdiction and Venue.** In any suit brought by us, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, you consent to venue and

personal jurisdiction in the state and federal court of the city or county of our National Office, presently Virginia Beach state courts and the United States District Court in Norfolk, Virginia. In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this Agreement, or any of the dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently the U.S. District Court in Norfolk, Virginia), or if neither federal subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

 **c.  Jury Waiver.** In any trial between any of the parties hereto, including present and former employees and agents of ours, you and we agree to waive our rights to a jury trial and instead have such action tried by a judge.

 **d.  Class Action Waiver.** You agree that any claim you may have against us, including our past and present employees and agents, shall be brought individually and you shall not join such claim with claims of any other person or entity or bring, join or participate in a class action against us.

 **e.  Compensatory Damages.** In any lawsuit, dispute or claim between or against any of the parties hereto, including present and former agents and employees of ours, you and we agree to waive our rights, if any, to seek or recover punitive damages.

 9.9 **Severability**. If any one or more of the provisions in this Agreement or any application of such provision is held to be invalid, illegal or unenforceable in any respect by a competent tribunal, the validity, legality and enforceability of the remaining provisions in this Agreement and all other applications of the remaining provisions will not in any way be affected or impaired by such invalidity, illegality or unenforceability. Further, the obligations within Section 7 above are considered independent of any other provision in this agreement, and the existence of any claim or cause of action by either party to this agreement against the other, whether based upon this agreement or otherwise, shall not constitute a defense to the enforcement of these obligations.

 9.10 **Notices**. Any notice, authorization, consent or other communication required or permitted under this Agreement must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally or by facsimile, to our CEO, at our National Office, presently 1716 Corporate Landing Parkway, Virginia Beach, VA 23454. Telephone: (757) 493-8855 Telecopier: (757) 493-0169. Any such notice may also be given to you in the same manner at the address indicated below the Area Developer's signature on this Agreement or such other more current address as we may have on file for you. We may also give notice to you by e-mail.

 9.11 **Burdens and Benefits**. This Agreement will be binding upon and will inure to the benefit of the parties, their successors and assigns, as permitted hereunder.

 9.12 **Entire Agreement**. This Agreement, including the Schedules, constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any prior statement or writing not a part of this Agreement or otherwise referenced in this Agreement, and neither party will be bound by any prior or contemporaneous representation,

statement, promise, warranty, covenant, or agreement pertaining thereto unless set forth or referred to in this Agreement.

9.13    **Amendment and Waiver**. No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver thereof.

9.14    **Relation of Parties**. Area Developer is an independent contractor. Neither party to this Agreement is an agent, employee, fiduciary, partner or in a joint venture with the other party.

9.15    **Financing**. If we provide financing to you, you must submit annual financial information to us, such as an income statement, balance sheet, and supporting documents, as we specify from time to time and in the formats we provide.

## 10.    DEATH OR INCAPACITY

In the event of the death or incapacity of Area Developer, we are entitled, but not required, to render whatever assistance is required to maintain smooth and continued provision of Services. We shall be entitled to reimbursement from Area Developer or Area Developer's estate for any reasonable expenditures thus incurred. Death or incapacity shall not of itself be grounds for termination of this Agreement unless either-

a.    Area Developer or his/her legal representative fails for a period of 180 days after such death or incapacity to commence action to assign this Agreement according to controlling state law regarding the affairs of a deceased or incapacitated person and the terms of this Agreement; or,

b.    Such assignment is not completed within one year after death or incapacity.

If such action or assignment is not timely taken or made as aforesaid, Liberty shall have the right to terminate this Agreement. Further, the terms and conditions of paragraph 9.4 above apply to a transfer upon death or incapacity, in the same manner as such terms and conditions apply to any other transfer to a non-Affiliate.

## 11.    AGREEMENT AND GUARANTY

The Area Developer named at the top of the following page agrees to abide by the terms of this Agreement. The signature of an individual or individuals as sole proprietors, joint tenants, or tenants in common constitutes their personal agreement to such terms. The signature of an individual or individuals on behalf of an entity constitutes the entity's agreement to such terms. In addition, for and in consideration of this Agreement, the signatures of all individuals below, in any capacity, also constitute their personal joint and several guaranty to perform all the obligations in and relating to this Agreement, including, but not limited to, the obligation to make payments specified herein, pay any other promissory notes and other debts due to us, and pay for products later ordered from us. The Guarantors waive presentment, demand or notice of non-performance and the right to require us to proceed against the other Guarantors.

**Area Developer:** MUFEED HADDAD **Entity Number:** 4693

**Type:** Sole proprietor **(Sole Proprietor, LLC, Corp., Joint Tenants with Right of Survivorship ("JTROS"), Tenants in Common, Partnership).* See important note below.**

**SIGNATORS/GUARANTORS:**

By: [signature] (Signature)

MUFEED HADDAD (Printed Name)

Title: SEO

Address: 3793 QUARTER HORSE DR
YORBA LINDA, CA 92886

Ownership Percentage: 100% (See note below)

By: ____________ (Signature)

____________ (Printed Name)

Title: ____________

Address: ____________

Ownership Percentage: ____% (See note below)

By: ____________ (Signature)

____________ (Printed Name)

Title: ____________

Address: ____________

Ownership Percentage: ____% (See note below)

By: ____________ (Signature)

____________ (Printed Name)

Title: ____________

Address: ____________

Ownership Percentage: ____% (See note below)

**LIBERTY TAX SERVICE**

By: [signature]
John T. Hewitt, President/CEO

Effective Date: 8/13/07

***Joint Tenants with Right of Survivorship is typically for spouses and must be owned equally by each tenant, 50-50 for two owners, and if one passes away, the other automatically receives the decedent's share. Tenants in common is normally for non-spouses and if one passes away, his or her share passes by will or state law to his or her heirs.**

Schedule A

## TERRITORY

The counties of :

**State of Wyoming (Excluding Laramie)**

Albany, WY
Big Horn, WY
Campbell, WY
Carbon, WY
Converse, WY
Crook, WY
Fremont, WY
Goshen, WY
Hot Springs, WY
Johnson, WY
Lincoln, WY
Natrona, WY
Niobrara, WY
Park, WY
Platte, WY
Sheridan, WY
Sublette, WY
Sweetwater, WY
Teton, WY
Uinta, WY
Washakie, WY
Weston, WY

which shall be divided by JTH Tax, Inc. into 21 Franchise Territories.

Schedule B

## MINIMUM REQUIREMENTS

a. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2008 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for one total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

b. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2009 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for three total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

c. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2010 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for five total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

d. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2011 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for seven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

e. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2012 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for nine total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

f. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2013 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for ten total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

g. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2014 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for eleven total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

h. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2015 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for twelve total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

i. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2016 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for thirteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

j. For the period beginning May 1 following the Effective Date of this Area Developer Agreement through the following April 30th, 2017 you the Area Developer must identify and secure Candidates/Franchisees such that Franchise Agreements for fourteen total franchise territories (as defined by JTH) have been executed by such Candidates/Franchisees and such Franchise Agreements remain in effect and operation.

## ASSINGMENT AND AMENDMENT TO FRANCHISE AGREEMENT

The Area Developer Agreement dated August 13, 2007 pertaining to the counties of: State of Wyoming (excluding Laramie) DMA between Liberty Tax Service and Mufeed Haddad ("Area Developer") under entity number 4693 is hereby amended as follows:

The above Area Developer Agreement is transferred from entity 4693, Mufeed Haddad, to entity 4878 Mufeed Haddad. Mufeed Haddad shall remain the guarantor on the above Area Developer Agreement.

The Area Developer Mufeed Haddad, further hereby agrees on behalf of himself and all his employees, agents, successors, assigns and affiliates, to fully and finally release and forever discharge JTH Tax, Inc. d/b/a Liberty Tax Service and its past and present employees, directors, agents, area developers, assigns and affiliates, from any and all claims, actions, causes of action, demands, damages and costs, which could be asserted against such persons and entities or any of them up through and including the date of this Assignment and Amendment.

Further, entity 4878 Mufeed Haddad shall specifically agree to and confirm his liability for the promissory note to Liberty Tax Service dated August 13, 2007 in the original principal amount of $135, 575.00.

Except as modified above, the terms of the Area Developer Agreement shall remain in full force and effect.

**AREA DEVELOPER: Mufeed Haddad**

By: ______________________
Mufeed Haddad, Individually

**LIBERTY TAX SERVICE**

By: ______________________
John Hewitt, CEO

By: ______________________
Mark Baumgartner, CFO

Date: 11/12/07

**COMPLIANCE OFFICER:** Jane M.
**REP:** Mark J.
**DATE CLOSED:** 8/13/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Mufeed Haddad

**ENTITY NUMBER:** 4693 **TOTAL PURCHASE PRICE:** 135,575

**STATE(S) WHERE COUNTIES BEING PURCHASED:** Wyoming

**LOCATED:** See Attached

---

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**CHECK:** $ **DATE:**

**PROMISSORY NOTE:** $135,575 **PROMISSORY NOTE:** $

**PROMISSORY NOTE:** $ **PROMISSORY NOTE:** $

**COMMENTS:**

transferred via amend dtd 6/12/07 to Jane M. 4878

**COMPLIANCE OFFICER:**
**REP:** Mark J.
**DATE CLOSED:** 8/13/07

**SALES JOURNAL ENTRY/AREA DEVELOPER**

**AD:** Mufeed Haddad #4878

**ENTITY NUMBER:** 4093 **TOTAL PURCHASE PRICE:** 135,575

**STATE(S) WHERE COUNTIES BEING PURCHASED:** Wyoming

**LOCATED:** See Attached

---

**CHECK:** $ ________ **DATE:** ________

**CHECK:** $ ________ **DATE:** ________

**CHECK:** $ ________ **DATE:** ________

**CHECK:** $ ________ **DATE:** ________

**CHECK:** $ ________ **DATE:** ________

**PROMISSORY NOTE:** $135,575 **PROMISSORY NOTE:** $ ________

**PROMISSORY NOTE:** $ ________ **PROMISSORY NOTE:** $ ________

**COMMENTS:**

# EXHIBIT L

## ACKNOWLEDGMENT OF RECEIPT OF COMPLETED AREA DEVELOPER AGREEMENT

Attn: Area Developer Support
Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454

**Re: Receipt of Completed Area Developer Agreement**

I acknowledge that I received the Liberty Tax Service Area Developer Agreement on the date indicated below. The Agreement that I received has been fully completed, including the territory on Schedule A, except that the Agreement has not been executed by either me or Liberty Tax Service. I understand that I must hold this Agreement for five (5) business days before signing the Agreement. Liberty Tax Service will not execute this Agreement unless I have had the Agreement in my possession for at least five (5) business days.

**Upon receiving the Area Developer Agreement, please enter today's date in the line immediately below and sign and return this Acknowledgment to Liberty Tax Service at the address above.**

7/11/07
Date you received Area Developer Agreement

[signature]
Your Signature

Co-Owner's Signature

Mufeed Haddad
Your Printed Name

Co-Owner's Printed Name

Co-Owner's Signature

Co-Owner's Printed Name

EXHIBIT M

## ACKNOWLEDGMENT OF RECEIPT OF LIBERTY TAX SERVICE OFFERING CIRCULAR

THIS OFFERING CIRCULAR SUMMARIZES PROVISIONS OF THE FRANCHISE AGREEMENT AND OTHER INFORMATION IN PLAIN LANGUAGE. READ THIS OFFERING CIRCULAR AND ALL AGREEMENTS CAREFULLY.

IF LIBERTY TAX SERVICE OFFERS YOU A FRANCHISE, LIBERTY TAX SERVICE MUST PROVIDE THIS OFFERING CIRCULAR TO YOU BY THE EARLIEST OF:

(1) THE FIRST PERSONAL MEETING TO DISCUSS OUR FRANCHISE; OR
(2) TEN (10) BUSINESS DAYS BEFORE SIGNING OF A BINDING AGREEMENT; OR
(3) TEN (10) BUSINESS DAYS BEFORE ANY PAYMENT TO LIBERTY TAX SERVICE.

YOU MUST ALSO RECEIVE A FRANCHISE AGREEMENT CONTAINING ALL MATERIAL TERMS AT LEAST FIVE (5) BUSINESS DAYS BEFORE YOU SIGN ANY FRANCHISE AGREEMENT.

IF LIBERTY TAX SERVICE DOES NOT DELIVER THIS OFFERING CIRCULAR ON TIME OR IF IT CONTAINS A FALSE OR MISLEADING STATEMENT, OR A MATERIAL OMISSION, A VIOLATION OF FEDERAL AND STATE LAW MAY HAVE OCCURRED AND SHOULD BE REPORTED TO THE FEDERAL TRADE COMMISSION, WASHINGTON, D.C. 20580 AND YOUR STATE FRANCHISE ADMINISTRATOR LISTED ON EXHIBIT E OF THIS OFFERING CIRCULAR.

Liberty Tax Service authorizes those Registered Agents in Exhibit E to receive service of process for us.

I have received a Uniform Franchise Offering Circular dated July 13, 2007. This Circular included the following Exhibits:

A. State Effective Dates and Offering Circular Addenda
B. Area Developer Agreement and Area Developer Agreement Addenda (IL, IN, MD, MN, ND, RI, WA, WI)
C. Promissory Notes
D-1. Renewal and Release & Transfer and Release Forms
D-2. Biographical Information Form
D-3. Biographical Information Form- Annual Update
D-4. Confidentiality Agreement
D-5. Franchise Broker Agreements
E. List of State Administrators and Registered Agents
F. Table of Contents of Area Developer Operations Manual
G. List of Offices and Area Developers Who Had an Outlet Terminated, Cancelled, Not Renewed or Otherwise Ceased to do Business
H. Financial Statements
I. Franchise Broker/Lead Generator Sources
J.-K. Reserved
L. Acknowledgment of Receipt of Completed Franchise Agreement
M. Acknowledgment of Receipt of Offering Circular and Illinois Acknowledgment of Receipt of Offering Circular

7/16/07
Date you received this Offering Circular

[signature]
Signature

Mufeed Haddad
Printed Name

3793 [handwritten]
Address

Yorba Linda, CA. 92886
714-777-1314
(Telephone number)

Signature

Printed Name

Address

(Telephone number)

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4693 | Mufeed Haddad | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity Age** |
| Sole-proprietorship | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Mufeed | Haddad | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | | Yorba Linda | California | 92886 |
| **Phone** | **Fax** | **Email** | | |
| (714)777-1319 | | mufeedh@msn.com | | |

## Shipping Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Mufeed | Haddad | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | | Yorba Linda | California | 92886 |
| **Phone** | | | | |
| (714)777-1319 | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| Mufeed Haddad | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | Yorba Linda | California | 92886 |

## Entity Region Information

## Entity Territory Information

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

AD entity- closed on counties in North Carolina (Raleigh Durham DMA (part of) on 3/28/07. jpm Closed on 22 counties in Wyoming (Excluding Laramine) on 8/13/07. jpm

**Edit History**

Entity Information - View Mode

Back To Entity Lookup | Edit | Back to Main Page

## Entity Information

| *Entity: | Entity Name | Entity Status | | |
|---|---|---|---|---|
| 4693 | Mufeed Haddad | Contract Closed/Active | | |
| **Ownership Type** | **Withholding Type** | **EIN** | **Termination Date** | **Entity Age** |
| Sole-proprietorship | Standard Fee Intercept | | | 1 |
| **Company Store** | **Area Developer** | **Broker** | **Honor Roll** | |
| ☐ | ☑ | None | Yes | |

## Contact Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Mufeed | Haddad | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | | Yorba Linda | California | 92886 |
| **Phone** | **Fax** | **Email** | | |
| (714)777-1319 | | mufeedh@msn.com | | |

## Shipping Information

| First Name | Last Name | Date Of Birth | | |
|---|---|---|---|---|
| Mufeed | Haddad | | | |
| **Spouse First Name** | **Spouse Last Name** | **Date Of Birth** | | |
| | | | | |
| **Address** | | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | | Yorba Linda | California | 92886 |
| **Phone** | | | | |
| (714)777-1319 | | | | |

## Billing Address

| Name | | | |
|---|---|---|---|
| Mufeed Haddad | | | |
| **Address** | **City** | **State** | **Zip Code** |
| 3793 Quarter Horse Dr. | Yorba Linda | California | 92886 |

## Entity Region Information

## Entity Territory Information

No territory information available for this entity

**Territory Office Information**

No territory office information available for this entity

**Entity Notes**

```
AD entity- closed on counties in North Carolina (Raleigh Durham DMA
(part of) on 3/28/07. jpm Closed on 22 counties in Wyoming (Excluding
Laramine) on 8/13/07. jpm
```

**Edit History**

# Exhibit B



LIBERTYTAX

**November 28, 2022**

**<u>Via Overnight Delivery</u>**
M&M Business Group L.P.
Michael Budka Mufeed Haddad
[redacted]

Re: Non-Renewal of Area Developer Agreement
AD Entity: 2532 San Bernardino and Los Angeles CA DMA

Dear Michael Budka and Mufeed Haddad,

As you know, the Area Developer Agreement by and between M&M Business Group L.P. and JTH Tax LLC d/b/a Liberty Tax Service for the San Bernardino and Los Angeles DMA (the "Area Developer Agreement") expired on November 28, 2022. You did not meet the conditions precedent for renewal as stated in Section 7.2 of the Area Developer Agreement, including, but not limited to, complying with the Minimum Requirements set forth in Schedule B of the Area Developer Agreement.

As such, the Area Developer Agreement is hereby non-renewed such that, effective immediately, you shall no longer retain any rights in the territories listed on Schedule A of the Area Developer Agreement. You are reminded that you are bound by all post-term duties set forth in the Area Developer Agreement, including but not limited to, the covenants not to compete and not to solicit.

Yours truly,

**JTH TAX LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

cc: Ted DeMarino

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| | | |
|---|---|---|
| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
| THE UPS STORE SE HABLA ESPANOL | CVS STORE # 8302 | MICHAELS STORE # 2741 |
| 2476 NIMMO PKWY | 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 |

FOLD HERE





August 14, 2019

**Via Overnight Delivery and**
**E-Mail to brad@sarkauskas.com**
Gorilla Tax Services Inc.
Attn: Brad Sarkauskas

Re: **Non-Renewal of Area Developer Agreements**
**Entity 4248 Territories: NEST003 and NEST014**

As you know, the area developer agreements by and between you and JTH Tax, LLC (formerly JTH Tax, Inc.) d/b/a Liberty Tax Service for territories NEST003 and NEST014 (individually, the "Area Developer Agreement" and collectively, the "Area Developer Agreements") expired on July 25, 2016 and October 29, 2017, respectively. Pursuant to Section 8.2 of each Area Developer Agreement, Liberty provided you with the option to enter into new area developer agreements with Liberty at the time of the expiration of the Area Developer Agreements. You chose not to enter into new area developer agreements, and you failed to notify Liberty in writing at least 180 days prior to the expiration of each Area Developer Agreement of your intent regarding renewal, as required by Section 8.2 of each Area Developer Agreements.

As such, we accept and agree to your voluntary election to non-renew the Area Developer Agreements. Therefore, effective immediately, you shall no longer retain any rights to the territories as listed on Schedule A of each Area Developer Agreement. Please be reminded that you are bound by your post-termination duties under the Area Developer Agreements, including but not limited to, the covenant not to compete.

Yours truly,

**JTH TAX, LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.
2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.
3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
869 LYNNHAVEN PKWY
VIRGINIA BEACH ,VA 23452

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| | | |
|---|---|---|
| UPS Access Point™<br>THE UPS STORE<br>2133 UPTON DR<br>VIRGINIA BEACH ,VA 23454 | UPS Access Point™<br>THE UPS STORE SE HABLA ESPANOL<br>2476 NIMMO PKWY<br>VIRGINIA BEACH ,VA 23456 | UPS Access Point™<br>THE UPS STORE<br>869 LYNNHAVEN PKWY<br>VIRGINIA BEACH ,VA 23452 |

FOLD HERE



**Elizabeth Cabrera**

---

| | |
|---|---|
| **From:** | Legal Transactions |
| **Sent:** | Wednesday, August 14, 2019 4:49 PM |
| **To:** | brad@sarkauskas.com |
| **Subject:** | AD 4248 Gorilla Tax Services Inc. and AD 4671 Sarkauskas Enterprises LLC - Nonrenewal Notices |
| **Attachments:** | 4248 Gorilla Tax Services Inc. - Non-Renewal Notice.doc.pdf; 4671 Sarkauskas Enterprises LLC - Nonrenewal Notice.doc.pdf |

Please see attached notice letters sent today via overnight mail regarding the nonrenewal of AD entity 4248, Gorilla Tax Services, Inc. and AD entity 4671, Sarkauskas Enterprises LLC.

Thank you,

Legal Transactions
**Liberty Tax Service** | www.libertytax.com
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454



LIBERTYTAX

December 8, 2020

**<u>Via UPS</u>**
M & M Business Group, L.P.
Mufeed Haddad
[redacted]

Michael Budka
[redacted]

Re: **Non-Renewal of Area Developer Agreement**
**AD Entity 2532**
**SWST010 Temecula-Palm Springs, CA**

Dear Mufeed Haddad and Michael Budka,

As you know, the Area Developer Agreement by and between M & M Business Group, L.P. and JTH Tax LLC d/b/a Liberty Tax Service for the Temecula-Palm Springs, California DMA (the "Area Developer Agreement") expired on December 3, 2020. This is to notify you that, due to your failure to meet the development goals as set forth in the Area Developer Agreement, Liberty will not renew the Area Developer Agreement.

Therefore, effective immediately, the Area Developer Agreement is hereby non-renewed such that, effective immediately, you shall no longer retain any rights to the territories as listed on Schedule A of the Area Developer Agreement. Please be reminded that you are bound by your post-termination duties under the Area Developer Agreement, including but not limited to, the covenant not to compete.

Yours truly,
**JTH TAX, LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

cc: Ted DeMarino

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
| --- | --- | --- |
| THE UPS STORE SE HABLA ESPANOL | CVS STORE # 8302 | MICHAELS STORE # 2741 |
| 2476 NIMMO PKWY | 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 |

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

FOLD HERE





August 14, 2019

**Via Overnight Delivery and**
**E-Mail to brad.sarkauskas.com**
Sarkauskas Enterprises LLC
Bradley Sarkauskas

Re: **Non-Renewal of Area Developer Agreements**
**AD Entity: 4671 Territories: NEST007, NEST012, and NEST067**

Dear Brad Sarkauskas,

As you know, the area developer agreements by and between you and JTH Tax, LLC (formerly JTH Tax, Inc.) d/b/a Liberty Tax Service for territories NEST007, NEST012 and NEST067 (individually, the "Area Developer Agreement" and collectively, the "Area Developer Agreements") expired on December 29, 2016, October 29, 2017 and April 8, 2019, respectively. Pursuant to Section 8.2 of each Area Developer Agreement, Liberty provided you with the option to enter into new area developer agreements with Liberty at the time of the expiration of each Area Developer Agreement. You chose not to enter into new area developer agreements, and you failed to notify Liberty in writing at least 180 days prior to the expiration of each Area Developer Agreement of your intent regarding renewal, as required by Section 8.2 of each Area Developer Agreement.

As such, we accept and agree to your voluntary election to non-renew the Area Developer Agreements. Therefore, effective immediately, you shall no longer retain any rights to the territories as listed on each Schedule A of the Area Developer Agreements. Please be reminded that you are bound by your post-termination duties under the Area Developer Agreements, including but not limited to, the covenant not to compete.

Yours truly,

**JTH TAX, LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
869 LYNNHAVEN PKWY
VIRGINIA BEACH ,VA 23452

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
869 LYNNHAVEN PKWY
VIRGINIA BEACH ,VA 23452

FOLD HERE



## Elizabeth Cabrera

**From:** Legal Transactions
**Sent:** Wednesday, August 14, 2019 4:49 PM
**To:** brad@sarkauskas.com
**Subject:** AD 4248 Gorilla Tax Services Inc. and AD 4671 Sarkauskas Enterprises LLC - Nonrenewal Notices
**Attachments:** 4248 Gorilla Tax Services Inc. - Non-Renewal Notice.doc.pdf; 4671 Sarkauskas Enterprises LLC - Nonrenewal Notice.doc.pdf

Please see attached notice letters sent today via overnight mail regarding the nonrenewal of AD entity 4248, Gorilla Tax Services, Inc. and AD entity 4671, Sarkauskas Enterprises LLC.

Thank you,

______________________________________________________

Legal Transactions
**Liberty Tax Service** | www.libertytax.com
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454



August 14, 2019

**Via Overnight Delivery and E-Mail**
Sarkauskas Empire Inc.
Brad Sarkauskas
Stan Sarkauskas
Rebecca Hubbard
James Sarkauskas

Re: **Non-Renewal of Area Developer Agreements**
**AD Entity: 4738 Territories: NEST004 and NEST010**

Dear Brad, Stan, Rebecca and James,

As you know, the area developer agreements by and between you and JTH Tax, LLC (formerly JTH Tax, Inc.) d/b/a Liberty Tax Service for territories NEST004 and NEST010 (individually, the "Area Developer Agreement" and collectively, the "Area Developer Agreements") expired on October 29, 2017 and June 7, 2017, respectively. Pursuant to Section 8.2 of each Area Developer Agreement, Liberty provided you with the option to enter into new area developer agreements with Liberty at the time of the expiration of each Area Developer Agreement. You chose not to enter into new area developer agreements, and you failed to notify Liberty in writing at least 180 days prior to the expiration of each Area Developer Agreement of your intent regarding renewal, as required by Section 8.2 of each Area Developer Agreement.

As such, we accept and agree to your voluntary election to non-renew the Area Developer Agreements. Therefore, effective immediately, you shall no longer retain any rights to the territories as listed on each Schedule A of the Area Developer Agreements.

Yours truly,

**JTH TAX, LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
869 LYNNHAVEN PKWY
VIRGINIA BEACH ,VA 23452

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE SE HABLA ESPANOL | THE UPS STORE |
| 2133 UPTON DR | 2476 NIMMO PKWY | 869 LYNNHAVEN PKWY |
| VIRGINIA BEACH ,VA 23454 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23452 |

FOLD HERE

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

UPS Access Point™
THE UPS STORE SE HABLA ESPANOL
2476 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
869 LYNNHAVEN PKWY
VIRGINIA BEACH ,VA 23452

FOLD HERE



## Elizabeth Cabrera

**From:** Legal Transactions
**Sent:** Wednesday, August 14, 2019 4:49 PM
**To:** brad@sarkauskas.com; becky@sarkauskas.com; stan@sarkauskas.com; jim@sarkauskas.com
**Subject:** AD 4738 Sarkauskas Empire Inc. Nonrenewal Notice
**Attachments:** 4738 Sarkauskas Empire - Nonrenewal Notice.doc.pdf

Please see attached notice letter sent today via overnight mail regarding the nonrenewal of AD entity 4738, Sarkauskas Empire Inc.

Thank you,

___

Legal Transactions
**Liberty Tax Service** | www.libertytax.com
1716 Corporate Landing Pkwy. | Virginia Beach, VA 23454





July 17, 2020

**Via Overnight Delivery**
Mufeed Haddad

Re: **Non-Renewal of Area Developer Agreement**
**AD Entity: 4878**

Dear Mufeed Haddad,

As you know, the area developer agreement by and between you and JTH Tax LLC d/b/a Liberty Tax Service ("Liberty') for the Wyoming DMA expired on August 13, 2017 (the "Area Developer Agreement"). You failed to notify Liberty in writing at least 180 days prior to the expiration of the Area Developer Agreement of your intent regarding renewal, as required by Section 8.2 of the Area Developer Agreement.

As such, we accept and agree to your voluntary election to non-renew the Area Developer Agreement. Therefore, effective immediately, you shall no longer retain any rights to the territories as listed on Schedule A of the Area Developer Agreement. Please be reminded that you are bound by your post-termination duties under the Area Developer Agreement, including but not limited to, the covenant not to compete.

Yours truly,

**JTH TAX LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

cc: Ted DeMarino
Tim Magerle

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

FOLD HERE





July 17, 2020

**<u>Via Overnight Delivery</u>**
Mufeed Haddad
[redacted]

Michael N. Budka
[redacted]

Mark C. Johnson and Mary G. Johnson
[redacted]

Re: **Non-Renewal of Area Developer Agreement**
**AD Entity: 5167**

Dear Michael, Mufeed, Mark and Mary,

As you know, the area developer agreement by and between you and JTH Tax LLC d/b/a Liberty Tax Service for territory SEST031 (the "Area Developer Agreement") expired on January 23, 2018. You failed to notify Liberty in writing at least 180 days prior to the expiration of the Area Developer Agreement of your intent regarding renewal, as required by Section 8.2 of the Area Developer Agreement.

As such, we accept and agree to your voluntary election to non-renew the Area Developer Agreement. Therefore, effective immediately, you shall no longer retain any rights to the territories as listed on Schedule A of the Area Developer Agreement. Please be reminded that you are bound by your post-termination duties under the Area Developer Agreement, including but not limited to, the covenant not to compete.

Yours truly,

**JTH TAX LLC d/b/a**
**LIBERTY TAX SERVICE**

DocuSigned by:
9DBEB4CB279A477...
Brent Turner
Chief Executive Officer

cc: Ted DeMarino
Anthony Cali

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| CVS STORE # 8302 | MICHAELS STORE # 2741 | THE UPS STORE |
| 2232 GENERAL BOOTH BLVD | 1169 NIMMO PKWY | 2133 UPTON DR |
| VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23456 | VIRGINIA BEACH ,VA 23454 |

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

FOLD HERE



**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™
CVS STORE # 8302
2232 GENERAL BOOTH BLVD
VIRGINIA BEACH ,VA 23456

UPS Access Point™
MICHAELS STORE # 2741
1169 NIMMO PKWY
VIRGINIA BEACH ,VA 23456

UPS Access Point™
THE UPS STORE
2133 UPTON DR
VIRGINIA BEACH ,VA 23454

FOLD HERE



# Exhibit C

**FORM 4**

**NOTICE BY DEBTOR COMPANY TO DISCLAIM OR RESILIATE AN AGREEMENT**

To FTI Consulting Canada Inc., in its capacity as court-appointed monitor (the "**Monitor**"), and M&M Business Group L.P.,

Take notice that:

1. Proceedings under the *Companies' Creditors Arrangement Act* ("**the Act**") in respect of NextPoint Financial, Inc. and its subsidiaries, including JTH Tax, LLC (converted from JTH Tax, Inc.), were commenced on the 25th day of July, 2023 in the Supreme Court of British Columbia, Vancouver Registry under No. S-235288, which proceedings were recognized as foreign main proceedings under Chapter 15 of the U.S. Bankruptcy Code by the U.S. Bankruptcy Court for the District of Delaware, Case No. 23-10983, on the 16th day of August, 2023.

2. In accordance with subsection 32(1) of the Act, the debtor company gives you notice of its intention to disclaim or resiliate the following agreement (including any amendments thereto):

   Area Developer Agreement dated as of August 15, 2018 by and among JTH Tax, Inc. and M&M Business Group L.P. (Entity 2532).

3. In accordance with subsection 32(2) of the Act, any party to the agreement may, within 15 days after the day on which this notice is given and with notice to the other parties to the agreement and to the Monitor, apply to court for an order that the agreement is not to be disclaimed or resiliated.

4. In accordance with paragraph 32(5)(*a*) of the Act, if no application for an order is made in accordance with subsection 32(2) of the Act, the agreement is disclaimed or resiliated on the 26th day of November, 2023, being 30 days after the day on which this notice has been given.

Dated at Hurst, Texas on October 27, 2023

NextPoint Financial, Inc.

The Monitor approves the proposed disclaimer or resiliation.

Dated at Vancouver, British Columbia on October 27, 2023

DocuSigned by:
Craig Munro
A71F983316254A5...

FTI Consulting Canada, Inc.

**FORM 4**

**NOTICE BY DEBTOR COMPANY TO DISCLAIM OR RESILIATE AN AGREEMENT**

To FTI Consulting Canada Inc., in its capacity as court-appointed monitor (the "**Monitor**"), and Mufeed Haddad,

Take notice that:

1. Proceedings under the *Companies' Creditors Arrangement Act* ("**the Act**") in respect of NextPoint Financial, Inc. and its subsidiaries, including JTH Tax, LLC (converted from JTH Tax, Inc.), were commenced on the 25th day of July, 2023 in the Supreme Court of British Columbia, Vancouver Registry under No. S-235288, which proceedings were recognized as foreign main proceedings under Chapter 15 of the U.S. Bankruptcy Code by the U.S. Bankruptcy Court for the District of Delaware, Case No. 23-10983, on the 16th day of August, 2023.

2. In accordance with subsection 32(1) of the Act, the debtor company gives you notice of its intention to disclaim or resiliate the following agreement (including any amendments thereto):

   Area Developer Agreement dated as of February 28, 2014 by and among JTH Tax, Inc. and Mufeed Haddad (Entity 7700).

3. In accordance with subsection 32(2) of the Act, any party to the agreement may, within 15 days after the day on which this notice is given and with notice to the other parties to the agreement and to the Monitor, apply to court for an order that the agreement is not to be disclaimed or resiliated.

4. In accordance with paragraph 32(5)(*a*) of the Act, if no application for an order is made in accordance with subsection 32(2) of the Act, the agreement is disclaimed or resiliated on the 26th day of November, 2023, being 30 days after the day on which this notice has been given.

Dated at Hurst, Texas on October 27, 2023

NextPoint Financial, Inc.

The Monitor approves the proposed disclaimer or resiliation.

Dated at Vancouver, British Columbia on October 27, 2023

DocuSigned by:
Craig Munro
A71F983316254A5...

FTI Consulting Canada, Inc.

**FORM 4**

**NOTICE BY DEBTOR COMPANY TO DISCLAIM OR RESILIATE AN AGREEMENT**

To FTI Consulting Canada Inc., in its capacity as court-appointed monitor (the "**Monitor**"), and Mike Budka and Mufeed Haddad,

Take notice that:

1. Proceedings under the *Companies' Creditors Arrangement Act* ("**the Act**") in respect of NextPoint Financial, Inc. and its subsidiaries, including JTH Tax, LLC (converted from JTH Tax, Inc.), were commenced on the 25th day of July, 2023 in the Supreme Court of British Columbia, Vancouver Registry under No. S-235288, which proceedings were recognized as foreign main proceedings under Chapter 15 of the U.S. Bankruptcy Code by the U.S. Bankruptcy Court for the District of Delaware, Case No. 23-10983, on the 16th day of August, 2023.

2. In accordance with subsection 32(1) of the Act, the debtor company gives you notice of its intention to disclaim or resiliate the following agreement (including any amendments thereto):

   Area Developer Agreement dated as of July 13, 2018 by and among JTH Tax, Inc. and Mike Budka and Mufeed Haddad (Entity 4711).

3. In accordance with subsection 32(2) of the Act, any party to the agreement may, within 15 days after the day on which this notice is given and with notice to the other parties to the agreement and to the Monitor, apply to court for an order that the agreement is not to be disclaimed or resiliated.

4. In accordance with paragraph 32(5)(*a*) of the Act, if no application for an order is made in accordance with subsection 32(2) of the Act, the agreement is disclaimed or resiliated on the 26th day of November, 2023, being 30 days after the day on which this notice has been given.

Dated at Hurst, Texas on October 27, 2023

DocuSigned by:
Scott Terrell
5D34C934D175472

NextPoint Financial, Inc.

The Monitor approves the proposed disclaimer or resiliation.

Dated at Vancouver, British Columbia on October 27, 2023

DocuSigned by:
Craig Munro
A71F983316254A5

FTI Consulting Canada, Inc.

**FORM 4**

**NOTICE BY DEBTOR COMPANY TO DISCLAIM OR RESILIATE AN AGREEMENT**

To FTI Consulting Canada Inc., in its capacity as court-appointed monitor (the "**Monitor**"), and Mufeed Haddad,

Take notice that:

1. Proceedings under the *Companies' Creditors Arrangement Act* ("**the Act**") in respect of NextPoint Financial, Inc. and its subsidiaries, including JTH Tax, LLC (converted from JTH Tax, Inc.), were commenced on the 25th day of July, 2023 in the Supreme Court of British Columbia, Vancouver Registry under No. S-235288, which proceedings were recognized as foreign main proceedings under Chapter 15 of the U.S. Bankruptcy Code by the U.S. Bankruptcy Court for the District of Delaware, Case No. 23-10983, on the 16th day of August, 2023.

2. In accordance with subsection 32(1) of the Act, the debtor company gives you notice of its intention to disclaim or resiliate the following agreement (including any amendments thereto):

   Area Developer Agreement dated as of August 15, 2018 by and among JTH Tax, Inc. and Mufeed Haddad (Entity 4693).

3. In accordance with subsection 32(2) of the Act, any party to the agreement may, within 15 days after the day on which this notice is given and with notice to the other parties to the agreement and to the Monitor, apply to court for an order that the agreement is not to be disclaimed or resiliated.

4. In accordance with paragraph 32(5)(*a*) of the Act, if no application for an order is made in accordance with subsection 32(2) of the Act, the agreement is disclaimed or resiliated on the 26th day of November, 2023, being 30 days after the day on which this notice has been given.

Dated at Hurst, Texas on October 27, 2023

NextPoint Financial, Inc.

The Monitor approves the proposed disclaimer or resiliation.

Dated at Vancouver, British Columbia on October 27, 2023

DocuSigned by:
Craig Munro
A71F983316254A5...

FTI Consulting Canada, Inc.

# Exhibit D



CANADA

CONSOLIDATION

# Companies' Creditors Arrangement Act

R.S.C., 1985, c. C-36

Current to October 17, 2023

Last amended on April 27, 2023

Published by the Minister of Justice at the following address:
http://laws-lois.justice.gc.ca

CODIFICATION

# Loi sur les arrangements avec les créanciers des compagnies

L.R.C. (1985), ch. C-36

À jour au 17 octobre 2023

Dernière modification le 27 avril 2023

Publié par le ministre de la Justice à l'adresse suivante :
http://lois-laws.justice.gc.ca

## OFFICIAL STATUS OF CONSOLIDATIONS

Subsections 31(1) and (2) of the *Legislation Revision and Consolidation Act*, in force on June 1, 2009, provide as follows:

**Published consolidation is evidence**

**31 (1)** Every copy of a consolidated statute or consolidated regulation published by the Minister under this Act in either print or electronic form is evidence of that statute or regulation and of its contents and every copy purporting to be published by the Minister is deemed to be so published, unless the contrary is shown.

**Inconsistencies in Acts**

**(2)** In the event of an inconsistency between a consolidated statute published by the Minister under this Act and the original statute or a subsequent amendment as certified by the Clerk of the Parliaments under the *Publication of Statutes Act*, the original statute or amendment prevails to the extent of the inconsistency.

## CARACTÈRE OFFICIEL DES CODIFICATIONS

Les paragraphes 31(1) et (2) de la *Loi sur la révision et la codification des textes législatifs*, en vigueur le 1er juin 2009, prévoient ce qui suit :

**Codifications comme élément de preuve**

**31 (1)** Tout exemplaire d'une loi codifiée ou d'un règlement codifié, publié par le ministre en vertu de la présente loi sur support papier ou sur support électronique, fait foi de cette loi ou de ce règlement et de son contenu. Tout exemplaire donné comme publié par le ministre est réputé avoir été ainsi publié, sauf preuve contraire.

**Incompatibilité — lois**

**(2)** Les dispositions de la loi d'origine avec ses modifications subséquentes par le greffier des Parlements en vertu de la *Loi sur la publication des lois* l'emportent sur les dispositions incompatibles de la loi codifiée publiée par le ministre en vertu de la présente loi.

## LAYOUT

The notes that appeared in the left or right margins are now in boldface text directly above the provisions to which they relate. They form no part of the enactment, but are inserted for convenience of reference only.

## MISE EN PAGE

Les notes apparaissant auparavant dans les marges de droite ou de gauche se retrouvent maintenant en caractères gras juste au-dessus de la disposition à laquelle elles se rattachent. Elles ne font pas partie du texte, n'y figurant qu'à titre de repère ou d'information.

## NOTE

This consolidation is current to October 17, 2023. The last amendments came into force on April 27, 2023. Any amendments that were not in force as of October 17, 2023 are set out at the end of this document under the heading "Amendments Not in Force".

## NOTE

Cette codification est à jour au 17 octobre 2023. Les dernières modifications sont entrées en vigueur le 27 avril 2023. Toutes modifications qui n'étaient pas en vigueur au 17 octobre 2023 sont énoncées à la fin de ce document sous le titre « Modifications non en vigueur ».

## TABLE OF PROVISIONS

**An Act to facilitate compromises and arrangements between companies and their creditors**

### Short Title

1 Short title

### Interpretation

2 Definitions
3 Application

**PART I**

### Compromises and Arrangements

4 Compromise with unsecured creditors
5 Compromise with secured creditors
5.1 Claims against directors — compromise
6 Compromises to be sanctioned by court
7 Court may give directions
8 Scope of Act

**PART II**

### Jurisdiction of Courts

9 Jurisdiction of court to receive applications
10 Form of applications
11 General power of court
11.001 Relief reasonably necessary
11.01 Rights of suppliers
11.02 Stays, etc. — initial application
11.03 Stays — directors
11.04 Persons obligated under letter of credit or guarantee
11.06 Member of the Canadian Payments Association
11.08 Restriction — certain powers, duties and functions
11.09 Stay — Her Majesty
11.1 Meaning of regulatory body
11.2 Interim financing
11.3 Assignment of agreements
11.4 Critical supplier

## TABLE ANALYTIQUE

**Loi facilitant les transactions et arrangements entre les compagnies et leurs créanciers**

### Titre abrégé

1 Titre abrégé

### Définitions et application

2 Définitions
3 Application

**PARTIE I**

### Transactions et arrangements

4 Transaction avec les créanciers chirographaires
5 Transaction avec les créanciers garantis
5.1 Transaction — réclamations contre les administrateurs
6 Homologation par le tribunal
7 Le tribunal peut donner des instructions
8 Champ d’application de la loi

**PARTIE II**

### Juridiction des tribunaux

9 Le tribunal a juridiction pour recevoir des demandes
10 Forme des demandes
11 Pouvoir général du tribunal
11.001 Redressements normalement nécessaires
11.01 Droits des fournisseurs
11.02 Suspension : demande initiale
11.03 Suspension — administrateurs
11.04 Suspension — lettres de crédit ou garanties
11.06 Membre de l’Association canadienne des paiements
11.08 Restrictions : exercice de certaines attributions
11.09 Suspension des procédures : Sa Majesté
11.1 Définition de organisme administratif
11.2 Financement temporaire
11.3 Cessions
11.4 Fournisseurs essentiels

| | | | |
|---|---|---|---|
| **11.5** | Removal of directors | **11.5** | Révocation des administrateurs |
| **11.51** | Security or charge relating to director's indemnification | **11.51** | Biens grevés d'une charge ou sûreté en faveur d'administrateurs ou de dirigeants |
| **11.52** | Court may order security or charge to cover certain costs | **11.52** | Biens grevés d'une charge ou sûreté pour couvrir certains frais |
| **11.6** | Bankruptcy and Insolvency Act matters | **11.6** | Lien avec la Loi sur la faillite et l'insolvabilité |
| **11.7** | Court to appoint monitor | **11.7** | Nomination du contrôleur |
| **11.8** | No personal liability in respect of matters before appointment | **11.8** | Immunité |
| **11.9** | Disclosure of financial information | **11.9** | Divulgation de renseignements financiers |
| **12** | Fixing deadlines | **12** | Échéances |
| **13** | Leave to appeal | **13** | Permission d'en appeler |
| **14** | Court of appeal | **14** | Cour d'appel |
| **15** | Appeals | **15** | Appels |
| **16** | Order of court of one province | **16** | Ordonnance d'un tribunal d'une province |
| **17** | Courts shall aid each other on request | **17** | Les tribunaux doivent s'entraider sur demande |
| | **PART III** | | **PARTIE III** |
| | General | | Dispositions générales |
| | Duty of Good Faith | | Obligation d'agir de bonne foi |
| **18.6** | Good faith | **18.6** | Bonne foi |
| | Claims | | Réclamations |
| **19** | Claims that may be dealt with by a compromise or arrangement | **19** | Réclamations considérées dans le cadre des transactions ou arrangements |
| **20** | Determination of amount of claims | **20** | Détermination du montant de la réclamation |
| **21** | Law of set-off or compensation to apply | **21** | Compensation |
| | Classes of Creditors | | Catégories de créanciers |
| **22** | Company may establish classes | **22** | Établissement des catégories de créanciers |
| **22.1** | Class — creditors having equity claims | **22.1** | Catégorie de créanciers ayant des réclamations relatives à des capitaux propres |
| | Monitors | | Contrôleurs |
| **23** | Duties and functions | **23** | Attributions |
| **24** | Right of access | **24** | Droit d'accès aux biens |
| **25** | Obligation to act honestly and in good faith | **25** | Diligence |
| | Powers, Duties and Functions of Superintendent of Bankruptcy | | Attributions du surintendant des faillites |
| **26** | Public records | **26** | Registres publics |
| **27** | Applications to court and right to intervene | **27** | Demande au tribunal et intervention |
| **28** | Complaints | **28** | Plaintes |
| **29** | Investigations | **29** | Investigations et enquêtes |

| | English | | Français |
|---|---|---|---|
| 30 | Powers in relation to licence | 30 | Décision relative à la licence |
| 31 | Delegation | 31 | Pouvoir de délégation |
| | Agreements | | Contrats et conventions collectives |
| 32 | Disclaimer or resiliation of agreements | 32 | Résiliation de contrats |
| 33 | Collective agreements | 33 | Conventions collectives |
| 34 | Certain rights limited | 34 | Limitation de certains droits |
| | Obligations and Prohibitions | | Obligations et interdiction |
| 35 | Obligation to provide assistance | 35 | Assistance |
| 36 | Restriction on disposition of business assets | 36 | Restriction à la disposition d'actifs |
| | Preferences and Transfers at Undervalue | | Traitements préférentiels et opérations sous-évaluées |
| 36.1 | Application of sections 38 and 95 to 101 of the Bankruptcy and Insolvency Act | 36.1 | Application des articles 38 et 95 à 101 de la Loi sur la faillite et l'insolvabilité |
| | Her Majesty | | Sa Majesté |
| 37 | Deemed trusts | 37 | Fiducies présumées |
| 38 | Status of Crown claims | 38 | Réclamations de la Couronne |
| 39 | Statutory Crown securities | 39 | Garanties créées par législation |
| 40 | Act binding on Her Majesty | 40 | Obligation de Sa Majesté |
| | Miscellaneous | | Dispositions diverses |
| 41 | Certain sections of Winding-up and Restructuring Act do not apply | 41 | Inapplicabilité de certains articles de la Loi sur les liquidations et les restructurations |
| 42 | Act to be applied conjointly with other Acts | 42 | Application concurrente d'autres lois |
| 43 | Claims in foreign currency | 43 | Créances en monnaies étrangères |
| | **PART IV** | | **PARTIE IV** |
| | Cross-border Insolvencies | | Insolvabilité en contexte international |
| | Purpose | | Objet |
| 44 | Purpose | 44 | Objet |
| | Interpretation | | Définitions |
| 45 | Definitions | 45 | Définitions |
| | Recognition of Foreign Proceeding | | Reconnaissance des instances étrangères |
| 46 | Application for recognition of a foreign proceeding | 46 | Demande de reconnaissance de l'instance étrangère |
| 47 | Order recognizing foreign proceeding | 47 | Ordonnance de reconnaissance |
| 48 | Order relating to recognition of a foreign main proceeding | 48 | Effets de la reconnaissance d'une instance étrangère principale |
| 49 | Other orders | 49 | Autre ordonnance |
| 50 | Terms and conditions of orders | 50 | Conditions |
| 51 | Commencement or continuation of proceedings | 51 | Début et continuation de la procédure |

### Obligations

**52** Cooperation — court

**53** Obligations of foreign representative

### Multiple Proceedings

**54** Concurrent proceedings

**55** Multiple foreign proceedings

### Miscellaneous Provisions

**56** Authorization to act as representative of proceeding under this Act

**57** Foreign representative status

**58** Foreign proceeding appeal

**59** Presumption of insolvency

**60** Credit for recovery in other jurisdictions

**61** Court not prevented from applying certain rules

**PART V**

## Administration

**62** Regulations

**63** Review of Act

### Obligations

**52** Collaboration — tribunal

**53** Obligations du représentant étranger

### Instances multiples

**54** Instances concomitantes

**55** Plusieurs instances étrangères

### Dispositions diverses

**56** Autorisation d'agir à titre de représentant dans toute procédure intentée sous le régime de la présente loi

**57** Statut du représentant étranger

**58** Instance étrangère : appel

**59** Présomption d'insolvabilité

**60** Sommes reçues à l'étranger

**61** Application de règles étrangères

**PARTIE V**

## Administration

**62** Règlements

**63** Rapport



**R.S.C., 1985, c. C-36**

## An Act to facilitate compromises and arrangements between companies and their creditors

# Short Title

### Short title

**1** This Act may be cited as the *Companies' Creditors Arrangement Act*.

R.S., c. C-25, s. 1.

# Interpretation

### Definitions

**2 (1)** In this Act,

***aircraft objects*** [Repealed, 2012, c. 31, s. 419]

***bargaining agent*** means any trade union that has entered into a collective agreement on behalf of the employees of a company; (*agent négociateur*)

***bond*** includes a debenture, debenture stock or other evidences of indebtedness; (*obligation*)

***cash-flow statement***, in respect of a company, means the statement referred to in paragraph 10(2)(a) indicating the company's projected cash flow; (*état de l'évolution de l'encaisse*)

***claim*** means any indebtedness, liability or obligation of any kind that would be a claim provable within the meaning of section 2 of the *Bankruptcy and Insolvency Act*; (*réclamation*)

***collective agreement***, in relation to a debtor company, means a collective agreement within the meaning of the jurisdiction governing collective bargaining between the debtor company and a bargaining agent; (*convention collective*)

**L.R.C., 1985, ch. C-36**

## Loi facilitant les transactions et arrangements entre les compagnies et leurs créanciers

# Titre abrégé

### Titre abrégé

**1** *Loi sur les arrangements avec les créanciers des compagnies*.

S.R., ch. C-25, art. 1.

# Définitions et application

### Définitions

**2 (1)** Les définitions qui suivent s'appliquent à la présente loi.

***accord de transfert de titres pour obtention de crédit*** Accord aux termes duquel une compagnie débitrice transfère la propriété d'un bien en vue de garantir le paiement d'une somme ou l'exécution d'une obligation relativement à un contrat financier admissible. (*title transfer credit support agreement*)

***actionnaire*** S'agissant d'une compagnie ou d'une fiducie de revenu assujetties à la présente loi, est assimilée à l'actionnaire la personne ayant un intérêt dans cette compagnie ou détenant des parts de cette fiducie. (*shareholder*)

***administrateur*** S'agissant d'une compagnie autre qu'une fiducie de revenu, toute personne exerçant les fonctions d'administrateur, indépendamment de son titre, et, s'agissant d'une fiducie de revenu, toute personne exerçant les fonctions de fiduciaire, indépendamment de son titre. (*director*)

***agent négociateur*** Syndicat ayant conclu une convention collective pour le compte des employés d'une compagnie. (*bargaining agent*)

***biens aéronautiques*** [Abrogée, 2012, ch. 31, art. 419]

*Companies' Creditors Arrangement*
**PART III** General
Powers, Duties and Functions of Superintendent of Bankruptcy
**Sections** 30-32

*Arrangements avec les créanciers des compagnies*
**PARTIE III** Dispositions générales
Attributions du surintendant des faillites
**Articles** 30-32

### Decision

**(8)** The decision of the Superintendent of Bankruptcy after the hearing, together with the reasons for the decision, must be given in writing to the monitor not later than three months after the conclusion of the hearing, and is public.

### Review by Federal Court

**(9)** A decision of the Superintendent of Bankruptcy given under subsection (8) is deemed to be a decision of a federal board, commission or other tribunal that may be reviewed and set aside under the *Federal Courts Act*.

2005, c. 47, s. 131; 2007, c. 36, s. 75.

### Delegation

**31 (1)** The Superintendent of Bankruptcy may, in writing, authorize any person to exercise or perform, subject to any terms and conditions that he or she may specify in the authorization, any of the powers, duties or functions of the Superintendent of Bankruptcy under sections 29 and 30.

### Notification to monitor

**(2)** If the Superintendent of Bankruptcy delegates in accordance with subsection (1), the Superintendent or the delegate must give notice of the delegation in the prescribed manner to any monitor who may be affected by the delegation.

2005, c. 47, s. 131.

## Agreements

### Disclaimer or resiliation of agreements

**32 (1)** Subject to subsections (2) and (3), a debtor company may — on notice given in the prescribed form and manner to the other parties to the agreement and the monitor — disclaim or resiliate any agreement to which the company is a party on the day on which proceedings commence under this Act. The company may not give notice unless the monitor approves the proposed disclaimer or resiliation.

### Court may prohibit disclaimer or resiliation

**(2)** Within 15 days after the day on which the company gives notice under subsection (1), a party to the agreement may, on notice to the other parties to the agreement and the monitor, apply to a court for an order that the agreement is not to be disclaimed or resiliated.

### Court-ordered disclaimer or resiliation

**(3)** If the monitor does not approve the proposed disclaimer or resiliation, the company may, on notice to the other parties to the agreement and the monitor, apply to

### Décision

**(8)** La décision du surintendant des faillites est rendue par écrit, motivée et remise au contrôleur dans les trois mois suivant la clôture de l'audition, et elle est publique.

### Examen de la Cour fédérale

**(9)** La décision du surintendant, rendue et remise conformément au paragraphe (8), est assimilée à celle d'un office fédéral et est soumise au pouvoir d'examen et d'annulation prévu par la *Loi sur les Cours fédérales*.

2005, ch. 47, art. 131; 2007, ch. 36, art. 75.

### Pouvoir de délégation

**31 (1)** Le surintendant des faillites peut, par écrit, selon les modalités qu'il précise, déléguer les attributions que lui confèrent les articles 29 et 30.

### Notification

**(2)** En cas de délégation, le surintendant des faillites ou le délégué en avise, de la manière réglementaire, tout contrôleur qui pourrait être touché par cette mesure.

2005, ch. 47, art. 131.

## Contrats et conventions collectives

### Résiliation de contrats

**32 (1)** Sous réserve des paragraphes (2) et (3), la compagnie débitrice peut — sur préavis donné en la forme et de la manière réglementaires aux autres parties au contrat et au contrôleur et après avoir obtenu l'acquiescement de celui-ci relativement au projet de résiliation — résilier tout contrat auquel elle est partie à la date à laquelle une procédure a été intentée sous le régime de la présente loi.

### Contestation

**(2)** Dans les quinze jours suivant la date à laquelle la compagnie donne le préavis mentionné au paragraphe (1), toute partie au contrat peut, sur préavis aux autres parties au contrat et au contrôleur, demander au tribunal d'ordonner que le contrat ne soit pas résilié.

### Absence d'acquiescement du contrôleur

**(3)** Si le contrôleur n'acquiesce pas au projet de résiliation, la compagnie peut, sur préavis aux autres

Current to October 17, 2023
Last amended on April 27, 2023
41
À jour au 17 octobre 2023
Dernière modification le 27 avril 2023

*Companies' Creditors Arrangement*
**PART III** General
Agreements
**Section** 32

*Arrangements avec les créanciers des compagnies*
**PARTIE III** Dispositions générales
Contrats et conventions collectives
**Article** 32

a court for an order that the agreement be disclaimed or resiliated.

### Factors to be considered

**(4)** In deciding whether to make the order, the court is to consider, among other things,

**(a)** whether the monitor approved the proposed disclaimer or resiliation;

**(b)** whether the disclaimer or resiliation would enhance the prospects of a viable compromise or arrangement being made in respect of the company; and

**(c)** whether the disclaimer or resiliation would likely cause significant financial hardship to a party to the agreement.

### Date of disclaimer or resiliation

**(5)** An agreement is disclaimed or resiliated

**(a)** if no application is made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1);

**(b)** if the court dismisses the application made under subsection (2), on the day that is 30 days after the day on which the company gives notice under subsection (1) or on any later day fixed by the court; or

**(c)** if the court orders that the agreement is disclaimed or resiliated under subsection (3), on the day that is 30 days after the day on which the company gives notice or on any later day fixed by the court.

### Intellectual property

**(6)** If the company has granted a right to use intellectual property to a party to an agreement, the disclaimer or resiliation does not affect the party's right to use the intellectual property — including the party's right to enforce an exclusive use — during the term of the agreement, including any period for which the party extends the agreement as of right, as long as the party continues to perform its obligations under the agreement in relation to the use of the intellectual property.

### Loss related to disclaimer or resiliation

**(7)** If an agreement is disclaimed or resiliated, a party to the agreement who suffers a loss in relation to the disclaimer or resiliation is considered to have a provable claim.

parties au contrat et au contrôleur, demander au tribunal d'ordonner la résiliation du contrat.

### Facteurs à prendre en considération

**(4)** Pour décider s'il rend l'ordonnance, le tribunal prend en considération, entre autres, les facteurs suivants :

**a)** l'acquiescement du contrôleur au projet de résiliation, le cas échéant;

**b)** la question de savoir si la résiliation favorisera la conclusion d'une transaction ou d'un arrangement viable à l'égard de la compagnie;

**c)** le risque que la résiliation puisse vraisemblablement causer de sérieuses difficultés financières à une partie au contrat.

### Résiliation

**(5)** Le contrat est résilié :

**a)** trente jours après la date à laquelle la compagnie donne le préavis mentionné au paragraphe (1), si aucune demande n'est présentée en vertu du paragraphe (2);

**b)** trente jours après la date à laquelle la compagnie donne le préavis mentionné au paragraphe (1) ou à la date postérieure fixée par le tribunal, si ce dernier rejette la demande présentée en vertu du paragraphe (2);

**c)** trente jours après la date à laquelle la compagnie donne le préavis mentionné au paragraphe (3) ou à la date postérieure fixée par le tribunal, si ce dernier ordonne la résiliation du contrat en vertu de ce paragraphe.

### Propriété intellectuelle

**(6)** Si la compagnie a autorisé par contrat une personne à utiliser un droit de propriété intellectuelle, la résiliation n'empêche pas la personne de l'utiliser ni d'en faire respecter l'utilisation exclusive, à condition qu'elle respecte ses obligations contractuelles à l'égard de l'utilisation de ce droit, et ce pour la période prévue au contrat et pour toute période additionnelle dont elle peut et décide de se prévaloir de son propre gré.

### Pertes découlant de la résiliation

**(7)** En cas de résiliation du contrat, toute partie à celui-ci qui subit des pertes découlant de la résiliation est réputée avoir une réclamation prouvable.

Current to October 17, 2023
Last amended on April 27, 2023
42
À jour au 17 octobre 2023
Dernière modification le 27 avril 2023

*Companies' Creditors Arrangement*
**PART III** General
Agreements
**Sections** 32-33

*Arrangements avec les créanciers des compagnies*
**PARTIE III** Dispositions générales
Contrats et conventions collectives
**Articles** 32-33

### Reasons for disclaimer or resiliation

**(8)** A company shall, on request by a party to the agreement, provide in writing the reasons for the proposed disclaimer or resiliation within five days after the day on which the party requests them.

### Exceptions

**(9)** This section does not apply in respect of

**(a)** an eligible financial contract;

**(b)** a collective agreement;

**(c)** a financing agreement if the company is the borrower; or

**(d)** a lease of real property or of an immovable if the company is the lessor.

2005, c. 47, s. 131; 2007, c. 29, s. 108, c. 36, ss. 76, 112.

### Collective agreements

**33 (1)** If proceedings under this Act have been commenced in respect of a debtor company, any collective agreement that the company has entered into as the employer remains in force, and may not be altered except as provided in this section or under the laws of the jurisdiction governing collective bargaining between the company and the bargaining agent.

### Application for authorization to serve notice to bargain

**(2)** A debtor company that is a party to a collective agreement and that is unable to reach a voluntary agreement with the bargaining agent to revise any of the provisions of the collective agreement may, on giving five days notice to the bargaining agent, apply to the court for an order authorizing the company to serve a notice to bargain under the laws of the jurisdiction governing collective bargaining between the company and the bargaining agent.

### Conditions for issuance of order

**(3)** The court may issue the order only if it is satisfied that

**(a)** a viable compromise or arrangement could not be made in respect of the company, taking into account the terms of the collective agreement;

**(b)** the company has made good faith efforts to renegotiate the provisions of the collective agreement; and

### Motifs de la résiliation

**(8)** Dans les cinq jours qui suivent la date à laquelle une partie au contrat le lui demande, la compagnie lui expose par écrit les motifs de son projet de résiliation.

### Exceptions

**(9)** Le présent article ne s'applique pas aux contrats suivants :

**a)** les contrats financiers admissibles;

**b)** les conventions collectives;

**c)** les accords de financement au titre desquels la compagnie est l'emprunteur;

**d)** les baux d'immeubles ou de biens réels au titre desquels la compagnie est le locateur.

2005, ch. 47, art. 131; 2007, ch. 29, art. 108, ch. 36, art. 76 et 112.

### Conventions collectives

**33 (1)** Si une procédure a été intentée sous le régime de la présente loi à l'égard d'une compagnie débitrice, toute convention collective que celle-ci a conclue à titre d'employeur demeure en vigueur et ne peut être modifiée qu'en conformité avec le présent article ou les règles de droit applicables aux négociations entre les parties.

### Demande pour que le tribunal autorise le début de négociations en vue de la révision

**(2)** Si elle est partie à une convention collective à titre d'employeur et qu'elle ne peut s'entendre librement avec l'agent négociateur sur la révision de celle-ci, la compagnie débitrice peut, après avoir donné un préavis de cinq jours à l'agent négociateur, demander au tribunal de l'autoriser, par ordonnance, à donner à l'agent négociateur un avis de négociations collectives pour que celui-ci entame les négociations collectives en vue de la révision de la convention collective conformément aux règles de droit applicables aux négociations entre les parties.

### Cas où l'autorisation est accordée

**(3)** Le tribunal ne rend l'ordonnance que s'il est convaincu, à la fois :

**a)** qu'une transaction ou un arrangement viable à l'égard de la compagnie ne pourrait être fait compte tenu des dispositions de la convention collective;

**b)** que la compagnie a tenté de bonne foi d'en négocier de nouveau les dispositions;

Current to October 17, 2023
Last amended on April 27, 2023
43
À jour au 17 octobre 2023
Dernière modification le 27 avril 2023