**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| NEXTPOINT FINANCIAL INC., *et al.*, | Case No. 23-10983 (TMH) |
| Debtors in a foreign proceeding. | (Jointly Administered) |
| | Re: D.I. 80 & 142 |
| | **Hearing Date:  December 11, 2023, at 10:00 a.m. (ET)** |

**FOREIGN REPRESENTATIVE'S REPLY TO SSBR ENTERPRISES LLC'S
OBJECTION TO MOTION OF THE FOREIGN REPRESENTATIVE FOR ENTRY
OF AN ORDER (I) RECOGNIZING AND ENFORCING THE CCAA VESTING
ORDER, (II) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, AND
<u>ENCUMBRANCES, AND (III) GRANTING RELATED RELIEF</u>**

NextPoint Financial Inc., in its capacity as Foreign Representative for each of the above-captioned foreign debtors (the "**Debtors**"), including JTH Tax, Inc. d/b/a Liberty Tax Service ("**Liberty**"), files this supplemental reply (the "**Supplemental Reply**") in accordance with the Scheduling Order dated as of November 13, 2023 [D.I. 136] (the "**Scheduling Order**") (a) in support of the *Motion of the Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the CCAA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors' Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [D.I. 80] (the "**Recognition Motion**") and (b) in response to *Objection of SSBR Enterprises LLC to Motion of the Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the CCAA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors' Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [D.I. 142] (the

"**SSBR Objection**") filed by SSBR Enterprises LLC ("**SSBR**").[1]  In support of this Supplemental

Reply, the Foreign Representative submits the *Supplemental Declaration of Jeffrey Bradshaw in*

*Support of the Foreign Representative's Motion for Entry of an Order (I) Recognizing and*

*Enforcing the CCAA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors'*

*Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief*

(the "**Supplemental Bradshaw Declaration**") and the *Supplemental Declaration of*

*Authentication of Business Records* (the "**Ashcraft Declaration**"), each submitted concurrently

herewith, and respectfully states as follows:

## **REPLY**

1.      The relief sought in the Recognition Motion is the culmination of months of

extensive negotiations between the Purchaser, the Foreign Representative, the Debtors, and the

Monitor, resulting in approval of a complex transaction by the Canadian Court that paves the way

to get the Debtors out of bankruptcy before the end of the year.  Recognition of the proposed

transaction is one of the last major conditions to closing the Transaction, which is the ***only***

actionable transaction following a Canadian and U.S. court-sanctioned process that began in July

of this year.  Only one dispute remains with respect to the Recognition Motion—a baseless, facially

deficient objection filed by SSBR.

2.      SSBR primarily argues that it is a party to the underlying franchise agreements (it

is not) and that it is entitled to protections under section 365(n) of the Bankruptcy Code or

*Tempnology* (and, again, it is not).  The SSBR Objection fails for a number of reasons, each of

which is independently fatal:

---

[1]      Capitalized terms used but not defined in this Supplemental Reply have the meaning set forth in the Recognition Motion.

3.      ***SSBR Failed to Take Any Action in the Canadian Proceedings***.  As set forth in the Supplemental Bradshaw Declaration, SSBR had sufficient notice and an opportunity to be heard in the Canadian Proceeding with respect to the SISP and entry of the reverse vesting order (the "**CCAA Vesting Order**") (and other orders).  It never participated in those proceedings. Since July 27, 2023, SSBR has been on notice that a buyer would be able to designate contracts as Excluded Contracts until three days before closing of a transaction.  Despite this, SSBR filed no objection in the Canadian Proceedings. Separately, on October 27, 2023, the Debtors, with the approval of the Monitor, gave notice to SSBR that the Debtors were disclaiming SSBR's Area Developer Agreement pursuant to section 32(2) of the CCAA (the Canadian equivalent of "rejecting" a contract under section 365 of the Bankruptcy Code). The deadline for SSBR to respond to its notice of disclaimer in the Canadian Proceedings was November 13, 2023.  SSBR filed no response in Canada as required by the notice, and the SSBR Area Developer Agreement was "disclaimed" on November 27, 2023.  Because the SSBR Area Developer Agreement has been disclaimed, SSBR can obtain no practical relief through its objection to the Recognition Motion, and its objection is therefore moot.

4.      ***Recognition is not an opportunity to collaterally attack the Canadian Proceedings***.  To the extent the Court determines that SSBR's objections are not moot, the key question in determining if the CCAA Vesting Order entered in Canada should be given legal effect in the U.S. is whether the Canadian proceeding is "manifestly contrary to the public policy of the United States."  There can be no dispute that the Canadian Proceeding is not contrary to U.S. public policy.  As described at length in the Supplemental Bradshaw Declaration, SSBR was provided with repeated notice that the SSBR Area Developer Agreement could be deemed an Excluded Contract under the Transaction Agreement and was informed of its rights to object to those provisions under Canadian law.  As discussed below, the Initial Objectors took advantage of these

procedures while SSBR did not.  The fact that other area developers participated in the Canadian Proceedings shows that there was nothing preventing SSBR from doing so.  This is especially true because SSBR could do there as it did here—copy and paste the exact same language as in the already existing objection, and file it.  SSBR should not be permitted to derail an otherwise consensual transaction with its baseless pleading.

5.      ***Section 365(n) and* Tempnology *Are Not Applicable***.  The substance of the SSBR Objection is largely based on a flawed premise: that SSBR has a right to use the Foreign Debtors' trademark licenses. It doesn't. The SSBR Area Developer Agreement provides SSBR with the right to use Liberty's trademarks only during the term of the agreement for the sole purpose of advertising the availability of franchises within the territory. *See* Section 8.2 of SSBR Area Developer Agreement.  As an initial matter, Canadian law has a provision that allows for continued use of the intellectual property "during the term of the agreement."  SSBR was provided notice of the disclaimer but took no action.  If SSBR wanted to enforce this right it now claims is violated by the Transaction Agreement, it should have pursued it in Canada after receiving notice that its area developer agreement was going to be disclaimed. It did not, and it should not get a second bite at the apple by coming into this Court and seeking the same relief it failed to pursue in Canada.

6.      In any event, however, the right SSBR seeks to vindicate is to use a trademark, which is not a right protected by section 365(n) and even if it were, SSBR would not be able to use the Foreign Debtors' marks because to do so requires Liberty's prior written consent, which may be withheld in Liberty's sole discretion. *See In re Nine Point Energy Holdings, Inc.*, 633 B.R. 124, 136 (D. Del. 2021) ("[U]nlike the trademark licensee who could use the debtor's intellectual property without the involvement of the debtor, "in this case under the express terms of the MSA, Caliber has no right to use the Interests and Dedications except in its performance of the contracts.").

7.    All other ancillary points raised by SSBR are unfounded.  Accordingly, and because the relief requested is consistent with the principles of comity and does not manifestly violate any public policy of the United States, the Recognition Motion should be granted and the SSBR Objection overruled.

## RELEVANT FACTUAL BACKGROUND

### I.    Area Developer Program and SSBR's Agreement

8.    Liberty sells franchises to operate its tax return preparation services.  As part of marketing its franchise opportunities to potential franchisees, Liberty historically has contracted with "area developers" who agreed to market to potential franchisees in exchange for a percentage of royalties generated by franchisees in their designated area.  SSBR is one of those "area developers" pursuant to an agreement with Liberty (the "**SSBR Area Developer Agreement**"), a copy of which is attached to the Ashcraft Declaration as Exhibit A.

9.    The SSBR Area Developer Agreement defines the rights of Liberty and SSBR's obligations.  Importantly, the SSBR Area Developer Agreement expressly states that "Liberty owns the Franchise system, its trademarks and all other intellectual property associated with the Franchise system." *See* Section 8.2 of SSBR Area Developer Agreement.  While the SSBR Area Developer Agreement provides SSBR with the right to use Liberty's trademarks during the term for the sole purpose of advertising franchises for sale within the territory, any marketing involving Liberty's trademarks must be approved in writing by Liberty, and this approval can be withheld in Liberty's sole discretion.  *Id.*

10.    Contrary to SSBR's assertion that it is "deemed" party to various Liberty franchise agreements, *see* Obj. ¶¶ 3-4, there is no provision in the SSBR Area Developer Agreement, the franchise agreements, or under applicable law that says SSBR is a party to any franchise

agreement, which is likely why SSBR does not cite to language in its agreement to support its position. SSBR was not a signatory to the franchise agreements that it sold.

## II.    Key Procedural Background

11.    In July of 2023, the Debtors proposed and obtained approval of the SISP, which was recognized in this Court on August 15, 2023. As part of the SISP, the Debtors and their advisors contacted 158 separate parties, 112 of which were financial sponsors, and 46 of which were strategic buyers. The only actionable bid to come from this process was the Transaction Agreement. The Transaction (a) represents the Debtors' only qualified Bid and actionable exit from its Canadian proceedings as a going-concern business and (b) was approved by the Canadian Court on October 31, 2023, in a reverse vesting order (the "**CCAA Vesting Order**").

12.    On October 16, 2023, the Foreign Representative filed the Recognition Motion. The objection deadline originally was set for October 30, 2023, at 4:00 p.m. (ET).

13.    On October 27, 2023, the Foreign Representative mailed the notice of disclaimer to SSBR, providing notice of the intent to disclaim (an analog to rejection under the CCAA) the SSBR Area Developer Agreement [D.I. 97]. A copy of the notice of disclaimer is attached hereto as **Exhibit A**. As stated in the notice of disclaimer, SSBR had fifteen days (or until November 13, 2023) to object to the disclaimer in the Canadian Court. SSBR did not object or file a response to the notice of disclaimer in the Canadian Proceeding. Disclaimer of the SSBR Area Developer Agreement accordingly became effective on November 27, 2023. On October 31, 2023, the Canadian Court held a hearing on and entered the CCAA Vesting Order ("**CCAA Vesting Order Hearing**"). No objections were raised by SSBR or any other third party to the relief requested at the CCAA Vesting Order Hearing.

14.    On November 1, 2023, the Foreign Representative filed in this Court a *Notice of Filing of (I) CCAA Vesting Order and (II) Final Transaction Agreement* [D.I. 91], attaching the

CCAA Vesting Order, a redline of the CCAA Vesting Order against the version filed with the Recognition Motion, an executed copy of the Transaction Agreement, and a redline of the Transaction Agreement against the version filed with the Recognition Motion. Under the Transaction Agreement, the SSBR Area Developer Agreement is identified as an excluded asset, in addition to having been previously disclaimed.

15.     The hearing on the Recognition Motion was originally set for November 6, 2023. Several days before the hearing, certain Initial Objectors filed an Objection[2], primarily contending they had not received adequate notice of the exclusion from the Transaction and disclaimer of their area developer agreements. The Foreign Representative, the Purchaser, and the Debtors negotiated a settlement of the Withdrawn Objection and a complete resolution of the Initial Objectors' issues. On November 29, 2023, the Initial Objectors formally withdrew their objection [D.I. 143].

16.     On November 6, 2023, this Court held an initial hearing on the Recognition Motion and continued the hearing to December 11, 2023.   On November 10, 2023, the Foreign Representative re-noticed the Recognition Motion and set a further objection deadline of November 20, 2023, for all parties other than the Initial Objectors [D.I. 132].  To promote efficient adjudication of the Recognition Motion and to ensure compliance with Chambers' procedures, the Debtors and the Initial Objectors agreed to, and the Court entered, a Scheduling Order establishing deadlines in advance of the continued hearing on the Recognition Motion.

17.     On November 20, 2023, SSBR filed the SSBR Objection [D.I. 142].

---

[2] The *Objection to the Motion of the Foreign Representative for Entry of an Order (I) Recognizing and Enforcing the CCCA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors' Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [D.I. 88] (the "**Withdrawn Objection**") filed by Gorilla Tax Services, Inc., Sarkauskas Empire Inc., Sarkauskas Enterprises, LLC, Mufeed Haddad, Mary Johnson, Mark Johnson, Michael Budka, and M&M Business Group, LP (collectively, the "**Initial Objectors**") discussed at the November 6, 2023 hearing has been settled and formally withdrawn [D.I. 143].

## ARGUMENT

### I.    Recognition Is Proper and the Recognition Motion Should Be Granted

**A.    Recognition is a procedural question, and there is no need to address the substance of the SSBR Area Developer Agreement.**

18.    Chapter 15 of the Bankruptcy Code is designed to promote cooperation and comity between courts in the United States and foreign courts, protect and maximize the value of a debtor's assets, and facilitate the rehabilitation and reorganization of businesses. 11 U.S.C. § 1501(a).  Chapter 15 of the Bankruptcy Code encourages recognition of a foreign proceeding and empowers courts with "broad, flexible rules to fashion relief appropriate for effectuating [chapter 15's] objectives in accordance with comity." *In re Vitro SAB de CV*, 701 F.3d 1031, 1053 (5th Cir. 2012); *see also Lavie v. Ran,* 406 B.R. 277, 282 (S.D. Tex. 2009) (stating that post-recognition relief in a chapter 15 case involves weighing "'flexible and pragmatic' subjective considerations and comity").

19.    A court may deny a request for chapter 15 relief that would be "manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.  Courts have emphasized that section 1506 applies only in very narrow circumstances where the most fundamental policies of the United States are implicated. *See Vitro*, 701 F.3d at 1069; *see also Collins v. Oilsands Quest Inc.,* 484 B.R. 593, 597 (S.D.N.Y. 2012).  Indeed, a US court "need not engage in an independent determination about the propriety of individual acts of a foreign court," and may not employ the public policy exception simply because some procedural or constitutional rights are absent from the foreign proceeding. *Vitro*, 701 F.3d at 1069.

20.    The Recognition Motion seeks recognition of the CCAA Vesting Order, an order entered in the Canadian Proceeding; the Foreign Representative is not seeking plenary relief with respect to the Debtors or their assets that are not included in that order, such as the excluded SSBR Area Developer Agreement. *See In re Just Energy Group Inc.*, Case No. 21-30823, Hr'g Tr. 24:12-

8

22, Dec. 1, 2022 ("What we are doing here today is not second-guessing the Canadian court. That is the opposite of what we are supposed to do today. We are determining whether the orders of the Canadian court should be recognized in the United States, and the argument that you are making as to why this is admissible is that perhaps the judge in Canada could have made a different decision. But that does not go to whether we should recognize the order, which at this point you have not suggested any reason why those proceedings were in some manner so irregular that they are not entitled to recognition.").[3]

21.     Other area developers took steps in the Canadian Proceedings to address their issues under the CCAA:  they retained Canadian counsel, sought leave to appeal the CCAA Vesting Order before the Canadian courts related to their Excluded Contracts, and separately objected to the disclaimer of their contracts; all of these issues were resolved in the Canadian Proceeding, leading to the withdrawal of the Withdrawn Objection.  SSBR did not take action in Canada. Instead, SSBR chose to copy and paste the Initial Objectors' pleading and take its chances in pursuing hold-up value in the US proceedings.

22.     Indeed, because the SSBR Area Developer Agreement was separately disclaimed effective as of November 27, 2023, its objection to the Recognition Motion is moot.  There is no relief it can seek in these recognition proceedings that would reinstate the SSBR Area Developer Agreement.

23.     Accordingly, SSBR has asserted no legal or factual basis upon which to deny the Recognition Motion.

---

[3]     *See* transcript attached as **Exhibit B** to this Supplemental Reply.

**B. Neither Section 365(n) of the Bankruptcy Code Nor *Tempnology* Impacts Recognition of the CCAA Vesting Order**

    **a. The SSBR Area Developer Agreement is not a license to operate locations and is not an IP or trademark license.**

24.    SSBR contends that the Debtors license "a system for the operation of tax return preparation offices within specified territories." Obj. ¶1. This is fundamentally incorrect. The SSBR Area Developer Agreement provides a limited license of a trade name for SSBR to use the "Liberty" name only to advertise the availability of Liberty franchise locations and territories for sale to potential franchisee candidates. SSBR Area Developer Agreement, at ¶8.2. The agreement *does not* grant SSBR a license for the operation of Liberty-branded tax return preparation offices. *Id*. The SSBR Area Developer Agreement specifies that Liberty owns the franchise system, its trademarks, and all other intellectual property associated with the franchise system. *Id.* While SSBR has a limited right to use Liberty's trademarks during the term for the sole purpose of advertising the availability of franchises within SSBR's territory, this limited grant requires Liberty's prior written consent, which may be withheld in Liberty's sole discretion. *Id.*

25.    Accordingly, the SSBR Area Developer Agreement is a routine contract, not a specialized IP license, that can be and has been disclaimed under Canadian law (and, in a plenary proceeding in the U.S., would be subject to rejection under section 365 without implicating any of the concerns addressed by section 365(n) or *Mission Products Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019)). *See In re Nine Point Energy*, 633 B.R. at 136 ("Unlike the trademark licensee who could use the debtor's intellectual property without the involvement of the debtor, in this case under the express terms of the MSA, Caliber has no right to use the Interests and Dedications except in its performance of the contracts."). SSBR has no special rights that are implicated or that must be protected. Its rights are limited to that of a counterparty to a contract

under Canadian law, and it has ignored all relevant deadlines to take any action in the Canadian proceedings.

### b.   SSBR is not a party to any franchise agreements.

26.    Similarly, SSBR attempts to bolster its argument that it is entitled to special intellectual property-related rights by stating, without attaching a single exhibit, that it is "deemed" a party to any franchise agreement that a proposed candidate entered into or enters into with Liberty in the specified territory.  Obj. ¶3.  This is simply false.  Nowhere in the SSBR Objection does SSBR explain what provision of the SSBR Area Developer Agreement it is relying upon in making that claim, because there is no such provision.  As set forth in the Ashcraft Declaration, SSBR is not a party to and does not maintain rights under franchise agreements between Liberty and its system franchisees.

27.    Because SSBR is not a party to the franchise agreements that it markets, it is not entitled to any rights that a *franchisee* may be entitled to.  SSBR's rights are limited to that of a counterparty to an area developer contract under Canadian law.  CCAA § 32 (governing the rights of counterparties to executory contracts).  That contract has been both excluded from the Transaction and disclaimed under Canadian law.

### c.   Section 365(n) of the Bankruptcy Code does not apply on these facts.

28.    Even if SSBR had shown that the SSBR Area Developer Agreement was subject to the provisions of section 365(n) and *Tempnology* (and it has not), this Court should exercise its discretion and decline to apply those provisions here.  It is axiomatic that not all provisions of the Bankruptcy Code automatically apply in chapter 15 cases, even upon recognition.  *See* 11 U.S.C. § 1520 (listing certain Bankruptcy Code provisions that automatically apply upon recognition of a foreign main proceeding).  Neither section 365 of the Bankruptcy Code nor its subsection 365(n) automatically apply upon recognition.  Instead, the purpose of chapter 15 is to recognize and aid

foreign courts, not to provide a second bite at the apple to parties who are dissatisfied with the rulings of foreign courts. *In re Just Energy Group Inc.*, Case No. 21-30823, Hr'g Tr. 17:20 – 18:2, Dec. 15, 2022 ("Well, let me just say that largely the job of a recognition court is not to serve as an appellate court to the Canadian proceeding, but is to determine whether what the Canadian proceeding has undertaken somehow offends U.S. law or is inconsistent with U.S. law, things of that nature. But if you knew the Canadian proceeding since March of 2021, then you had an opportunity to present this evidence in Canada, which has been rejected."). Here, other area developers *did* initiate litigation in Canada and took steps to enforce their rights under Canadian law. Given the strength of the procedural protections in Canada and the fact that SSBR has actually been afforded the opportunity to have those rights resolved by a Canadian court, SSBR should not be given a second chance to litigate finally determined and fully decided issues that it did not challenge in Canada, here.

29.     SSBR cites to *Jaffe v. Samsung Electronics Company, Limited* for the proposition that licensees in a chapter 15 bankruptcy proceeding were entitled to the protections afforded by section 365(n) of the Bankruptcy Code. *See* Obj. ¶9. Section 365(n) of the Bankruptcy Code applies to "Intellectual Property" as defined in section 101 of the Bankruptcy Code. Under section 101(35A) of the Bankruptcy Code, intellectual property "means-(A) trade secret; (B) invention, process design, or plant protected under title 35; (C) patent application; (D) plant variety; (F) work of authorship protected under chapter 9 of title 17." 11 U.S.C. § 101 (35A). Notably, trademarks are excluded by omission from the definition of "intellectual property" under this section. Under the SSBR Area Developer Agreement, the only intellectual property that hypothetically could be implicated is a license to use Liberty trademarks. Consequently, section 365(n) of the Bankruptcy Code does not apply here.

30.    Moreover, the *Jaffe* and *Qimonda* decisions are factually distinct from the present situation.  Both decisions focused heavily on evidence presented at trial, with the bankruptcy court in *Qimonda* indicating the issue on balance was "close" but finding compelling the facts and circumstances of the industry-specific issues raised during the trial. *In re Qimonda AG*, 462 B.R. 165 (Bankr. E.D. Va. 2011).

31.    The SSBR Area Developer Agreement specifies that Liberty owns the franchise system, its trademarks and all other intellectual property associated with the franchise system, and the SSBR Area Developer Agreement provides SSBR with the right to use Liberty's trademarks only during the term for the sole purpose of advertising the availability of franchises within the territory. *See* Section 8.2 of SSBR Area Developer Agreement.  This is not an intellectual property right that can be used or protected by SSBR under section 365(n). *Jaffe* is irrelevant here because the SSBR Area Developer Agreement allows Liberty to withhold consent for the use of the intellectual property at any time.

32.    Further, unlike in *Jaffe* where it was presumed that there were fewer protections provided under German law, the CCAA proceedings already ensure sufficient protection of creditors, as there is an express provision in Canadian law that would have allowed SSBR to seek to continue to use intellectual property if it had such a right.  *See* CCAA § 32(6).  SSBR did not take proper action in Canada to vindicate that right.  A determination of sufficient protection "requires a balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019) (citing *AJW Offshore, Ltd.*, 488 B.R. 551, 559 (Bankr. E.D.N.Y. 2013)); *SNP Boat Serv. S.A. v. Hotel Le St. James*, 483 B.R. 776, 784 (S.D. Fla. 2012)). Courts have explained "sufficient protection" as embodying three basic principles:  the just treatment of all holders of claims against the bankruptcy estate, the protection of U.S. claimants against prejudice and inconvenience in the processing of claims in the foreign proceeding, and the

distribution of proceeds of the foreign estate substantially in accordance with the order prescribed

by U.S. law. *ENNIA Caribe Holding N.V.*, 596 B.R. at 322 (quoting *In re Atlas Shipping A/S*, 404

B.R. 726, 740 (Bankr. S.D.N.Y. 2009)).

      33.    As further discussed in the Recognition Motion, the CCAA is a just and reasonable

procedure, as previously recognized by numerous United States courts, and principles of comity

dictate that the law of the plenary proceeding govern over congruent considerations of U.S. law.

*See* Mot. ¶43; *Cornfeld v. Invs. Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979)

("The fact that the foreign country involved is Canada is significant. It is well-settled in New York

that the judgments of the Canadian courts are to be given effect under principles of comity. . . .

More importantly, Canada is a sister common law jurisdiction with procedures akin to our own,

and thus there need be no concern over the adequacy of the procedural safeguards of Canadian

proceedings.") (internal quotation marks and citations omitted); *see also In re Grant Forest Prod.,*

*Inc.*, 440 B.R. 616, 622 (Bankr. D. Del. 2010); *In re Crystallex Int'l Corp.*, No. 11-14074 (LSS),

2022 WL 17254660, at *6 (Bankr. D. Del. Nov. 28, 2022).

      34.    In Canada, there are protections afforded to licensees of intellectual property under

the CCAA which are largely similar to those granted under section 365(n) of the Bankruptcy Code.

Section 32(6) of the CCAA provides that "[i]f the company has granted a right to use intellectual

property to a party to an agreement, the disclaimer . . . does not affect the party's right to use the

intellectual property — including the party's right to enforce an exclusive use — during the term

of the agreement, including any period for which the party extends the agreement as of right, as

long as the party continues to perform its obligations under the agreement in relation to the use of

the intellectual property." CCAA §32(6). Further, the protections provided to creditors are

arguably even more robust than those provided in the U.S., as the CCAA provides for the existence

of a Monitor to act as a neutral third party and requires that the Monitor approve the proposed

disclaimer (a process which was undertaken here). CCAA §32(1); *see* Bradshaw Declaration, ¶ 22; *see also* Supplemental Bradshaw Declaration ¶¶ 2, 4, 6. Lastly, in considering whether to permit the debtor to disclaim contracts, the Canadian Court considers several factors, including whether the disclaimer is likely to cause significant financial hardship to a party to the agreement. CCAA §32(4).

35.    SSBR could have taken advantage of these substantive and procedural rights but failed to do so. Accordingly, this Court should overrule the SSBR Objection and find that section 365(n) does not apply to prohibit the disclaimer or exclusion of the SSBR Area Developer Agreement, and that the objection should have been addressed in the Canadian Proceedings.

**C.  No Cure Amounts Are Owed to SSBR**

36.    SSBR contends that to the extent the franchise agreement, but not the SSBR Area Developer Agreement, is to be retained by the debtor companies, SSBR is entitled to the cure of any defaults and provision of adequate assurance of future performance under the franchise agreement, including any obligations to SSBR under the franchise agreement. In making this argument, SSBR relies upon a flawed premise: that SSBR is a party to the underlying franchise agreement. It isn't. SSBR's position is belied by the plain language of the SSBR Area Developer Agreement and other associated documents. As discussed above, there is no provision in the SSBR Area Developer Agreement, the franchise agreements, or under applicable law that makes SBBR a party to any franchise agreement. Consequently, no cure amounts are owed to SSBR under the franchise agreement. Since the SSBR Area Developer Agreement is not being retained by the debtor companies, no cure amount is owed to SSBR under that agreement.

**D.  SSBR Has Not Shown that Liberty Collected Franchise Fees Must Be Turned Over
and Entitlement, if any, to Postpetition Franchise Fees Is a Matter of Canadian Law**

37.    SSBR contends that, to the extent that Liberty has collected postpetition franchise fees and royalties under the franchise agreements and has failed to pay SSBR its designated portion

of franchise fees and royalties, these amounts must be turned over to SSBR.  SSBR cites no facts

in support of this contention, and mere conjecture is not sufficient to raise a factual dispute on this

point.  Based on a review of the Debtors' books and records, there is no amount owing to SSBR

on account of post-filing fees.

**E.  The Court Should Enforce the Third Party Releases in the United States**

38.    Finally, in a single sentence without citation, SSBR objects to the proposed third-

party releases and exculpation provisions set forth in the Recognition Motion on the grounds that

the Recognition Motion fails to identify any basis for such relief under the Bankruptcy Code. Obj.

¶ 12. Granting comity to the Transaction Agreement and CCAA Vesting Order should

appropriately extend to the releases and exculpations provided for therein.

39.    "[P]rinciples of enforcement of foreign judgments and comity in chapter 15 cases

strongly counsel approval of enforcement in the United States of the third-party non-debtor release

and injunction provisions [appropriately granted in a foreign proceeding], even if those provisions

could not be entered in a plenary chapter 11 case." *In re Metcalfe & Mansfield,* 421 B.R. 685, 696

(Bankr. S.D.N.Y. 2010); *Avanti,* 582 B.R. 603, 619 (Bankr. S.D.N.Y. 2018)  (enforcing a scheme

and sanction order including third-party releases).

40.    Courts have enforced similar third-party releases in various foreign proceedings.

Recognition of such releases is appropriate through chapter 15 of the Bankruptcy Code.  *See, e.g*.,

*In re Acerus Pharma. Corp.*, No. 23-10111 (TMH) (Bankr. D. Del. June 13, 2023) (D.I. 78)

(granting recognition to orders issued by the Canadian court, including the releases set forth

therein); *In re Avanti,* 582 B.R. at 606 (recognizing and enforcing a United Kingdom scheme and

sanction order where "failure of a U.S. bankruptcy court to enforce [certain third-party releases]

could result in prejudicial treatment of creditors to the detriment of the Debtor's reorganization");

*In re Sino-Forest Corp.,* 501 B.R. at 665 (enforcing foreign order containing third-party releases);

*In re Ocean Rig UDW Inc.,* 570 B.R. 687, 687 (Bankr. S.D.N.Y. 2017) (recognizing and enforcing terms of Cayman scheme that released subsidiary guarantees); *In re Catalyst Paper Corp.,* No. 16-12419 (CSS), 2017 WL 5479405, at *2 (Bankr. D. Del. Jan. 20, 2017) (granting recognition to orders issued by the Canadian court, including the releases set forth therein); *In re CDS U.S. Holdings, Inc.*, No. 20-11719 (CSS) (Bankr. D. Del. Oct. 29, 2020) (D.I. 112) (recognizing and giving effect in the United States to the Approval and Vesting Order entered in the Canadian Proceeding, including third-party releases therein). In order for a court to grant comity in a case under Chapter 15 to a reorganization plan and its third-party release as approved by foreign court, there must be at least a rudimentary record in the foreign proceeding as to the basis for such a release and the procedural fairness of the underlying process. 11 U.S.C.A. §§ 1507(a), 1520(a). *In re PT Bakrie Telecom Tbk*, 628 B.R. 859 (Bankr. S.D.N.Y. 2021). In determining whether to exercise its discretion to grant additional relief under section 1507(a), a court should consider "whether such additional assistance, consistent with the principles of comity, will reasonably assure" the: (1) just treatment of all holders of claims against or interests in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; and (3) prevention of preferential or fraudulent dispositions of property of the debtor.

41.     These circumstances are present here. The Canadian Court examined the basis for the third-party releases during the recognition hearing in the Canadian Proceedings. Supplemental Bradshaw Decl. ¶ 10. If the Court declines to enforce the release, exculpation, and injunction provisions set forth in the in the CCAA Vesting Order, creditors could seek to obtain judgments in the U.S. against the Debtors or other Released Parties (as defined in the CCAA Vesting Order). This outcome would undermine the Canadian Proceedings and the Canadian Court's order and would result in prejudicial treatment of certain creditors and parties in interest to the detriment of

the Debtors' reorganization efforts and would prevent the fair and efficient administration of the restructuring contemplated in the Transaction Agreement. Further, if creditors were permitted to commence actions in the United States in contravention of the CCAA Vesting Order, Transaction Agreement, and the release, exculpation, and injunction provisions set forth therein, the Foreign Representative and the Debtors would be forced to waste their limited resources defending those actions. The requested relief is necessary to achieve comity and prevent parties from undermining the purpose of the CCAA Vesting Order and the authority of the Canadian Court.

## II.    Notice Was Proper and Comprehensive

42.    As described in the Bradshaw Declaration[4] and the Supplemental Bradshaw Declaration, SSBR has been on notice since as early as July 27, 2023, when the Debtors filed a form Stalking Horse Purchase Agreement, that a buyer would be able to designate contracts as Excluded Contracts until three days before closing of a transaction.  Further, SSBR has been on notice since October 27, 2023 that its Area Developer Agreement was being disclaimed and was informed of how to address that disclaimer in the Canadian Proceedings.

43.    The Excluded Contracts language has remained unchanged since July 27, 2023— including in the draft Stalking Horse Purchase Agreement,[5] the draft Transaction Agreement,[6] and in the final Transaction Agreement.[7]  Notice of filing of each of these documents, and countless others, was provided by first class mail and/or electronic mail to SSBR.  *See, e.g.*, D.I. 117, 112 and 123.  Despite repeated notice that area developer contracts could be excluded, only on

---

[4]    The "**Bradshaw Declaration**" refers to the *Declaration of Jeffrey Bradshaw in Support of the Foreign Representative's Motion for Entry of an Order (I) Recognizing and Enforcing the CCAA Vesting Order, (II) Approving the Sale of Substantially All of the Debtors' Interests Free and Clear of Liens, Claims, and Encumbrances, and (III) Granting Related Relief* [D.I. 137].

[5]    Filed on July 27, 2023 at D.I. 27.

[6]    Filed on October 16, 2023 at D.I. 80.

[7]    Filed on November 1, 2023 at D.I. 91.

November 20, 2023, did SSBR engage and oppose the Transaction, and only in the ancillary proceedings in this Court.

44.    As explained in the Supplemental Bradshaw Declaration, service and notice was entirely consistent with applicable Canadian law, which comports with U.S. notions of due process and fairness.

[*Remainder of page intentionally left blank*]

## <u>CONCLUSION</u>

The Foreign Representative respectfully submits that, for the reasons set forth herein and in the Recognition Motion, the SSBR Objection should be overruled and the Recognition Motion granted.

December 5, 2023
Wilmington, Delaware

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*
R. Craig Martin, Esq. (DE 5032)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email:  craig.martin@us.dlapiper.com

-and-

Rachel Ehrlich Albanese, Esq. (admitted *pro hac vice*)
Jamila Justine Willis, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email: rachel.albanese@us.dlapiper.com
         jamila.willis@us.dlapiper.com

*Counsel to the Foreign Representative*